United States Court of Appeals
For the Ninth Circuit

_____

No. 20-55633

DR. JEFFREY ISAACS,

Plaintiff – Appellant,

v.

USC KECK SCHOOL OF MEDICINE

Defendant – Appellee,

and

GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH
HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE,
GIBSON, DUNN & CRUTCHER, LLP, and JOHN or JANE DOE,

Defendants.

_____

Appeal from the United States District Court for the
Central District of California, No. 19-cv-08000

**<u>BRIEF OF PLAINTIFF-APPELLANT</u>**

Mark L. Josephs, Esq.
Bar No. 568454
Law Office of Mark L. Josephs, LLC
100 Cambridge Street, 14th Floor
Boston, MA  02114
(857) 226-8251
mark.josephs@markljosephslaw.com

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION                                                1

STATEMENT OF THE ISSUES ON APPEAL                                         1

FACTS                                                                    2

I.      Relevant Factual Background                                       3

II.     The District Court's Award of Attorney's Fees and Costs           8

SUMMARY OF THE ARGUMENT                                                  10

ARGUMENT                                                                 11

I.      Standard of Review                                               11

II.     The District Court Improperly Awarded Attorney's Fees Based      12
        Upon A Settlement Agreement Provision That Did Not Apply To
        Dr. Isaacs' Complaint

III.    The Court's Award Of Attorney's Fees For The Voluntarily         15
        Dismissed Case Violated California Civil Code Section 717(b)(2)
        And Rule 41(d) By Its Terms Does Not Provide For An Award Of
        Attorney's Fees

CONCLUSION                                                               19

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                   <u>Page(s)</u>

*Avazian v. Genworth Life & Annuity Ins. Co.*, 2017 U.S. Dist. LEXIS        17
    199070 (C.D. Cal. Dec. 4, 2017)

*Banga v. First United States, N.A.*, 2010 U.S. Dist. LEXIS 142075      17, 18
    (C.C. Cal. Dec. 8, 2010)

*Caldwell v. Wells Fargo, N.A.*, 2014 U.S. Dist. LEXIS 24371 (N.D.        18
    Cal. Feb. 26, 2014)

*Canaan Taiwanese Christian Church v. All World Mission*              13
    *Ministries*, 211 Cal. App. 4th 1115 (2012)

*Carver v. Cheveron U.S.A., Inc.*, 97 Cal. App. 4th 132 (2002)              11

*Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996)                      18

*Ford v. Baroff*, 105 F.3d 439 (9th Cir. 1997)                              16

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)            17

*Mesa Shopping Center-East, LLC v. O Hill*, 232 Cal. App. 4th 890        16
    (2014)

*Santisas v. Goodin*, 17 Cal. App. 4th 599 (1998)                          16

*Shapira v. Lifetech Resources, LLC,* 22 Cal. App. 5th 429 (2018)      11, 16

<u>Statutes</u>

28 U.S.C. § 1291                                                            1

Cal. Civ. Code § 1717(b)(2)                                             *passim*

<u>Rules</u>

Federal Rule of Appellate Procedure 4(a)(1)(A)                             1

Federal Rule of Civil Procedure 41(d)                    *passim*

## STATEMENT OF JURISDICTION

1.      This Court has jurisdiction over this appeal of a final District Court decision pursuant to 28 U.S.C. § 1291.

2.      Plaintiff-Appellant filed a Notice of Appeal on June 14, 2020, within 30 days of the Order Granting Defendant-Appellant's Motion for Attorney's Fees and Costs dated May 15, 2020.  The deadline for filing of a Notice of Appeal is based upon Federal Rule of Appellate Procedure 4(a)(1)(A).

4.      This appeal is of an Order of the District Court dated May 15, 2020, awarding Defendant-Appellee attorney's fees and costs relating to a District Court action, the dismissal of which is currently on appeal to this Court in No. 20-55239 and a previous action that Plaintiff-Appellant voluntarily dismissed.

## STATEMENT OF THE ISSUES ON APPEAL

1.      Whether the District Court improperly awarded attorney's fees and costs based on the 2008 Settlement Agreement between the parties when the Complaint focused almost exclusively on the time period after execution of that Settlement Agreement.

2.      Whether the lower court violated California Civil Code Section 1717(b)(2) in awarding attorney's fees to Defendant-Appellee for defending against a matter that Dr. Isaacs voluntarily dismissed.

3.　　Whether Rule 41(d) of the Federal Rules of Civil Procedure authorized the District Court to award attorney's fees to Defendant-Appellee.

## FACTS

This appeal relates to two cases brought by Plaintiff-Appellant Dr. Jeffrey Isaacs as part of his years-long efforts to resume is medical career.  Dr. Isaacs's lower court case that went forward was based primarily on his discovery in 2019 that Defendant-Appellee USC Keck School of Medicine ("Keck") breached two Settlement Agreements to which the parties had agreed shortly after executing them, thereby nullifying the only consideration that Dr. Isaacs received – confidentiality -- in these agreements.  This discovery allowed Dr. Isaacs to understand many of the events and circumstances that occurred after his execution of the Settlement Agreements, including his treatment during his residency at Dartmouth Hitchcock Medical Center.  Significantly, this discovery rendered the action that Dr. Isaacs pursued below fundamentally different from the previous action that he voluntarily dismissed.

Despite these facts and circumstances, the lower court granted Keck's and the Defendant New Hampshire Board of Medicine's motions to dismiss.  That case has been briefed on Dr. Isaacs's appeal to this Court.

This appeal addresses the lower court's subsequent award of attorney's fees and costs to Keck and its counsel, Gibson, Dunn & Crutcher LLP ("Gibson

Dunn"). In awarding attorney's fees for not only the dismissed action that is on appeal but also the voluntarily dismissed case, the lower court attempted to thread the needle between the prohibition on imposing fees relating to voluntarily dismissed cases and the Complaint's predominant focus on post-settlement conduct and omissions, all in an apparent effort to punish Dr. Isaacs. In awarding legal fees in favor of Keck, the Court ordered Dr. Isaacs, an individual struggling to restart his once-promising medical career, to pay over $180,000 to the 1200-lawyer Gibson Dunn, one of the most powerful law firms in the world and which employs partners routinely making over $1,000.00 per hour. The contrast is stunning, and the award is unjustified.

## I.    **Relevant Factual Background**

Dr. Isaacs has been trying for several years to restart his medical career, and the action below was an unfortunately necessary part of that process. Dr. Isaacs enrolled in Keck as a first-year medical student, but a misunderstanding with a fellow student ultimately led to Keck's unjustified expulsion of him. Record Excerpt ("Rec") at 66-67. That action occurred within the context of a virtual soap opera of familial and other ties to national health care-related leadership figures – that is, for everyone but Dr. Isaacs. Rec. at 66-68.

Dr. Isaacs understandably took legal action against Keck, and he entered into two Settlement Agreements to resolve his court actions against Keck and its

officials. Rec. at 68. The first of these Settlement Agreements, completed and executed in 2007, sealed Dr. Isaacs' disciplinary records at Keck with an underlying intent to provide him "factual innocence" with respect to the circumstances of his departure from Keck. Rec. at 202. Paragraph 2 of this Agreement provided in part that "USC will not release or disclose Isaacs' disciplinary records to any third party . . . unless it receives consent from Isaacs or a subpoena or court order." *Id.* Dr. Isaacs's consideration under this Settlement Agreement was limited to this confidentiality clause.

Dr. Isaacs obtained similar consideration from the second Settlement Agreement, which was completed and to which he agreed in 2008. Rec. at 206. That Agreement acquitted Dr. Isaacs of all charges and controversies, canceled all contracts between Dr. Isaacs and USC/Keck, and dismissed any administrative charges against him. Rec. at 208. Keck counsel recognized the importance of these provisions to Dr. Isaacs, and counsel revisited particular Agreement language addressing his disclosure obligations and stated that "the parties further agree that Isaacs is not required to disclose this matter to anyone." Dr. Isaacs ended his relationship with Keck and USC confident that these court-approved contracts meant that third parties, including future employers, would not learn of the circumstances of his troubles at Keck.

4

Showing his now familiar resiliency, Dr. Isaacs successfully obtained his medical degree at an international institution, finishing ahead of schedule and experiencing success at several prestigious clerkships. Rec. 72. He also scored highly on the difficult and competitive United States Medical Licensure Exam Step 1. *Id.* Befitting someone of his promise, Dr. Isaacs obtained a residency at Dartmouth Medical School and its associated teaching hospital, Dartmouth Hitchcock Medical Center ("Hitchcock"). Rec. at 75.

Unfortunately, this residency was problematic from the beginning. Within days of his starting the residence program, Dr. Isaacs began to suffer from a medical condition that rendered him unable to stay awake for more than a few hours. *Id.* Worse, Dr. Isaacs suffered harsh treatment from his supervisors, as if they had singled him out for different treatment than the other residents. Rec. at 76-77. Eventually, Dr. Isaacs learned that Dartmouth was aware of his attendance at Keck and his expulsion from that institution, despite the measures Dr. Isaacs understood were in place to ensure confidentiality of that Keck attendance. Rec. at 77-78. Indeed, making sure to abide by the Settlement Agreements, Dr. Isaacs did not disclose his Keck attendance in his application materials. *Id.*

Dartmouth ultimately dismissed Dr. Isaacs from his residency, relying in part on his failure to disclose his attendance at Keck and failed to fulfill Dr. Isaacs's due process rights on doing so. Rec. at 81. Dartmouth also relayed this

5

information to the New Hampshire Board of Medicine, which conducted an investigation and a public disciplinary proceeding, the latter occurring in Dr. Isaacs's absence.  Ignoring the Settlement Agreements, the Board found that Dr. Isaacs had improperly failed to disclose his Keck enrollment on his residency application.  Rec. at 87.  The Board subsequently posted its opinion on the internet, further violating the court-approved Settlement Agreements that it chose to ignore. Rec. at 89.  The Board's conclusion about Dr. Isaacs's lack of disclosure of his Keck attendance was opposite of that of the American Association of Medical Colleges ("AAMC") and the New Hampshire employment agency, which reviewed the relevant circumstances and found that Dr. Isaacs appropriately omitted disclosure of his Keck attendance on his residency application.  Rec. at 83-84.

Dr. Isaacs, however, did not discover until 2019 the reason for the seemingly pervasive knowledge at Dartmouth of his attendance at Keck.  At that time and for the first time, Dr. Isaacs discovered within his student file a copy of his profile in the AAMC database, and that profile disclosed his Keck attendance.  Rec. at 73. Medical education professionals universally have access to this database, and Dr. Isaacs for the first time realized that the medical education professionals at Dartmouth must have learned of his Keck attendance from the AAMC database.

Accordingly, for the first time in 2019, after Dr. Isaacs filed his first complaint in the lower court, Dr. Isaacs knew that Keck/USC had breached the settlement agreement almost before the ink was dry on the agreement's signatures. Further, Dr. Isaacs realized upon his discovery of this document in 2019 that Keck had withheld this document from the student file it had produced to him in discovery years earlier. *Id.* Dr. Isaacs had responded to the difficult Keck circumstances by completing a medical degree early, succeeding in several prestigious clerkships, and obtaining a residency at Dartmouth. Keck's actions in publishing his Keck attendance, unethically withholding it from production, and acting generally in bad faith, rendered it impossible for Dr. Isaacs to succeed.

Over the past few years, Dr. Isaacs has repeatedly applied for residencies throughout the nation in the hopes of restarting his career. Yet even in the worst public health crisis in the last 100 years, Dr. Isaacs remains unable to attract even one interview for a medical residency.

Dr. Isaacs filed the Complaint in the lower court matter on September 16, 2020, and he voluntarily dismissed a previous complaint in the lower court through a notice he filed on September 12, 2020. The Complaint in the case that proceeded in District Court included Dr. Isaacs' 2019 discovery of the AAMC profile page that Keck had created years earlier and resulting allegations and claims. The dismissed Complaint contained no reference to this discovery.

7

II.    **The District Court's Award of Attorney's Fees and Costs**

On February 18, 2020, Keck filed a Motion for Attorney's Fees and Costs. Filed on Keck's behalf of Keck's defense counsel, Gibson Dunn, the Motion sought attorney's fees for the District Court case that had just concluded and for legal fees expended in responding to the complaint that Dr. Isaacs ultimately voluntarily dismissed.  Rec. 26.  Declarations from the attorneys who worked on these matters accompanied the Motion and revealed that a fifth-year associate at Gibson Dunn billed out at $895.00 per hour, an Of Counsel attorney charged $985.00 per hour, and the partner presumably who obtained Keck cost clients over $1,200.00 per hour.  Rec. 51-59.  The Motion sought a total of $182,295.97 in attorney's fees and $1,009.32 in costs.  Dr. Isaacs opposed any award of attorney's fees or costs.

The lower court on May 15, 2020, granted Keck's Motion for attorney's fees and costs and awarded every penny of the $182,925.17 that Keck sought to pay the expensive attorneys at Gibson Dunn.  Rec. at 5.

In its three-page decision, the District Court relied on the 2008 Settlement Agreement between USC and Dr. Isaacs to hold that language in that Agreement required Dr. Isaacs to pay attorney's fees for anything that occurred up to and including the day of execution of the Agreement.  In so holding, the Court acknowledged that "some of the claims and issues raised by this case involve

8

USC's alleged failure to comply with the settlement agreement" and "the other claims technically are based on actions subsequent to the 2008 settlement." Rec. at 6. Yet relying on justifications like the appearance of "references [in the Complaint] to . . . acts prior to the 2008 settlement," the Court nevertheless apparently found that all of the sought legal fees effectively related to matters predating the 2008 settlement and awarded the full amount sought. *Id.*

The lower court relied upon Rule 41(d) to award fees relating to the complaint that Dr. Isaacs voluntary dismissed. Characterizing that dismissal as "illusory," the Court concluded that Rule 41(d) provided a basis to award fees to Keck because the previous, voluntarily dismissed action involved the same claims. Rec. at 6-7. The Court reasoned that, rather than dismiss the complaint, Dr. Isaacs should have amended the complaint, as the lower court action that the Court dismissed upon motions was a "direct continuation" of the prior dismissed case. Rec. at 6. In this part of its Order, the lower court ignored entirely California Civil Code § 1717(b)(2), which bars courts from awarding attorney's fees and costs for voluntarily dismissed contract actions.

The Court then assessed the time spent on the matters and Gibson Dunn's billing rates. The court accepted the attorneys' hourly rates despite noting that they were on the "higher side," and found, without any analysis, that 226 hours

amounted to a reasonable time spent by the Gibson Dunn to defend against the two actions.  Rec. at 7.[1]

## SUMMARY OF THE ARGUMENT

The lower court improperly awarded attorney's fees based upon Paragraph 6 of the 2008 Settlement Agreement.  That language provided for the award of attorney's fees and costs relating to any action that Dr. Isaacs brought relating to acts, events, and omissions that occurred earlier than and up to the date of execution of the Settlement Agreement.  Yet virtually all of Dr. Isaacs's Complaint addressed conduct and omissions after the 2008 Settlement Agreement, and the only references to pre-2008 conduct in the Complaint related to Dr. Isaacs's 2019 discovery of the AAMC profile in his student file or are simply background.  The 2008 Settlement Agreement provided no basis for the lower court to award attorney's fees in the case before the court.

The District Court also erred in awarding attorney's fees for the defense of the voluntarily dismissed case preceding the action that proceeded forward below.

---

[1] The lower court also granted Gibson Dunn's anti-SLAPP Motion, a conclusion that was dramatically incorrect in that the factual circumstances were that Gibson Dunn, a powerful international law firm, banned Dr. Isaacs from the USC campus without any due process.  Dr. Isaacs's constitutional rights were impaired, and Gibson Dunn, assuming it every could, suffered no similar deprivation.  Yet it incredibly was the party that prevailed on the anti-SLAPP Motion.  Dr. Isaacs has appealed the granting of the Anti-SLAPP motions on the merits, but he does not challenge the award of attorney's fees relating to Anti-SLAPP here.

In awarding attorney's fees based on Rule 41(d) and the court's characterization of the two complaints, the District Court ignored California Civil Code Section 1717(b)(2), which provides that there "shall not" be a prevailing party in the circumstances of a voluntary dismissal and therefore no basis existed for awarding attorney's fees.

Moreover, the lower court's use of Rule 41(d) to award attorney's fees when that Rule explicitly identifies only an award of costs was inappropriate. Although this Court has not decided the issue and lower courts within this Circuit are split on it, the better argument is following the plain language of the Rule, when other Rules identify "attorney's fees" when Rules provide for such fees.

## **ARGUMENT**

### I.    **Standard of Review**

The questions presented in this appeal of the lower court's award of attorney's fees and costs involve the application of law to facts. Accordingly, the Court's review is de novo. *See Shapira v. Lifetech Resources, LLC*, 22 Cal. App. 5th 429, 436 (2018); *see also Carver v. Chevron U.S.A., Inc.*, 97 Cal. App. 4th 132, 142 (2002) ("a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo").

**II.      The District Court Improperly Awarded Attorney's Fees Based Upon A Settlement Agreement Provision That Did Not Apply To <u>Dr. Isaacs's Complaint</u>**

The lower court lacked a valid basis to rely upon language in the 2008 Settlement Agreement between Dr. Isaacs and Keck to assess attorney's fees against Dr. Isaacs relating to the District Court case that proceeded forward.  That language, contained in Paragraph 6 of the 2008 Agreement, provided for assessment of attorney's fees against Dr. Isaacs if he brought litigation based on "events, acts or omissions through and including the date [of execution of the Settlement Agreement]."  Rec. at 207.  Virtually all of Dr. Isaacs's Complaint brought causes of action based on allegations that occurred after execution of the 2008 Settlement Agreement.  The District Court was incorrect in finding otherwise, and the award of attorney's fees and costs for the case below should be reversed.

In its Order granting Keck's Motion for Attorney's fees and Costs, the Court stated that it awarded fees and costs for the lower court action "pursuant to the 2008 settlement agreement."  Rec. at 5.  The Court specifically referenced Paragraph 6 of that Agreement, which provided in relevant part:

> if [Dr. Isaacs] violates the promises made in this paragraph and files a lawsuit charge, claim for arbitration, complaint, or appeal of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and

12

losses, including actual attorney's fees, incurred by USC in connection with said lawsuit, charge, complaint, or appeal.

Rec. at 207.[2]  After describing this provision, the Court found that "a large proportion of the case involves matters that occurred before the 2008 settlement." Rec. at 6.  The Court subsequently characterized the post-settlement agreement as "technically . . . based on actions subsequent to the 2008 settlement" and cited several isolated paragraphs as "references to" acts prior to the date of the settlement agreement.  Rec. at 6.

The Court's characterization of Dr. Isaacs' Complaint is misguided. Excluding the alternate claim of rescission, the Complaint contains twelve (12) counts.  Ten, or 83 percent, of these claims involve exclusively acts, events and omissions that occurred after execution of the 2008 Settlement Agreement. Accordingly, the content of the Complaint was contrary to the court's conclusion that "a large proportion of the case involves matters that occurred before the 2008 settlement."  The court's statement is simply incorrect.

Moreover, Dr. Isaacs did not discover the bases for the constructive fraud and fraud claims relied upon by the Court as involving matters predating the Settlement Agreement until 2019.  Dr. Isaacs's Complaint begins its factual

---

[2] A settlement agreement is a contract to which ordinary legal principles of contract interpretation apply.  *See Canaan Taiwanese Christian Church v. All World Mission Ministries*, 211 Cal. App. 4th 1115, 1123 (2012).

allegations with an emphasis on his discovery in 2019 of "substantial new evidence" and later describes his discovery of the AAMC profile identifying his Keck attendance and Keck's exclusion of that profile from his student file in earlier litigation-related discovery. Rec. at 65. That discovery was an "act, event [or] omission" that occurred after the execution of the 2008 Settlement Agreement. Accordingly, even the fraud claims relied upon by the Court occurred at least partially after the Settlement Agreement execution.[3]

The isolated Complaint paragraphs cited by the Court do not save the Court's analysis or conclusion. These paragraphs fall into the following categories: background facts, ¶¶ 22, 184, 276; general references to the 14-year period between Dr. Isaacs's enrollment and the filing of the Complaint, ¶¶ 9 254, 249, 314; partially events occurring in 2018 and 2019, ¶¶ 56, 61; the alternate rescission claim, ¶ 326; and actually no pre-Settlement Agreement allegations at all. ¶¶ 62, 256, 277. *See* Complaint beginning at Rec. at 62. None of these paragraphs converted a predominantly post-Settlement Agreement Complaint and action into a pre-Agreement case.

---

[3] Further, Dr. Isaacs has been repeatedly sought a declaratory judgment through injunction or otherwise so that a court could declare he received no consideration in the Settlement Agreements, and they are therefore subject to rescission. The meaning and effect of the Settlement Agreements are even more relevant now given Dr. Isaacs's 2019 discovery.

The Court relied exclusively on Paragraph 6 of the 2008 Settlement Agreement to award attorney's fees for defending against Dr. Isaacs's action below. That reliance was based on an incorrect characterization of the Complaint's allegations, and the Settlement Agreement language did not provide any basis for the award of attorney's fees, as substantial as they were. The award of fees relating to the action below warrants reversal.

## III. The Court's Award Of Attorney's Fees For The Voluntarily Dismissed Case Violated California Civil Code Section 717(b)(2), And Rule 41(d) By Its Language Does Not Provide For Award Of Attorney's fees

The lower court also improperly awarded Keck attorney's fees for defending against the matter that Dr. Isaacs voluntarily dismissed. California Civil Code Section 717(b)(2) specifically bars the award of attorney's fees relating to voluntarily dismissed cases and provides no discretion for courts to do so in any circumstances. The Court's award of attorney's fees violated this statutory provision. Moreover, Rule 41(d), relied upon the Court to award attorney's fees, does not, by its plain language, provide for the award of attorney's fees – it only provides for the award of costs. While this Court has not ruled on this issue, and the District Courts in this Circuit are split, the better argument supports the plain language of 41(d) only allowing for the award of costs, as "costs" are identified in the Rule, but fees are not.

California Civil Code Section 1717 governs the award of attorney's fees and costs in the context of contract provisions providing for such awards in particular circumstances. This statute provides that the prevailing party in an action on the contract is the party entitled to receive attorney's fees and costs under the contract. The statute also provides, however, that in the case of voluntary dismissal, "there shall be no prevailing party for purposes of this section." Cal. Civ. Code § 1717(b)(2). California courts have routinely interpreted this statute as consistent with its plain language and barring the award of attorney's fees when a plaintiff voluntarily dismisses its case. *See Shapira*, 22 Cal. App. at 441 (defendant could not be a prevailing party under Section 1717 after plaintiff voluntarily dismissed its case and therefore that provision "barred an award of attorney fees"); *Mesa Shopping Center-East, LLC v. O Hill*, 232 Cal. App. 4th 890, 903 (2014) (court "had no discretion to award fees" after plaintiff voluntarily dismissed action"); *Santisas v. Goodin*, 17 Cal. App. 4th 599, 615-17 (1998) (Section 1717(b)(2) bars recovery of attorney's fees even in cases in which the contract provided for attorney's fees in the case of voluntary dismissal).[4]

In awarding attorney's fees after Dr. Isaacs voluntarily dismissed the complaint he filed in September 2019, the Court ignored Section 1717(b)(2).

---

[4] Federal courts apply state law in interpreting and enforcing fee shifting agreements. *Ford v. Baroff*, 105 F.3d 439, 442 (9th Cir. 1997).

Instead, it relied upon Rule 41(d) and found that Dr. Isaacs's voluntary dismissal was "illusory" and that the lower court case that went forward was a "direct continuation of the prior case." Under the statutory language and caselaw cited above, however, the Court did not possess the discretion to award attorney's fees based on its characterization of Dr. Isaacs's voluntary dismissal. The statutory language is "there shall not be" a prevailing party, and, without such a party, the statute provides no basis to award attorney's fees in contract actions. Accordingly, once Dr. Isaacs voluntary dismissed, Section 1717(b)(2) barred the Court from awarding attorney's fees under the Settlement Agreement.[5]

Further, the Rule of Civil Procedure upon which the Court explicitly relied, Rule 41(d), explicitly provides for costs only and does not identify attorney's fees as transfers it authorizes. Rule 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." The Rule says nothing explicit about attorney's fees.

---

[5] The Court was incorrect in its characterization of the relationship between the dismissed Complaint and the one that went forward in any event. A key intervening event – Dr. Isaacs's 2019 discovery of the AAMC profile disclosure – was a fundamental difference between the complaints and rendered amendment of the first complaint exceedingly difficult.

District Courts within this Circuit, in the absence a decision by this Court on the issue, have held that Rule 41(d) does not authorize the award of attorney's fees. For example, in *Banga v. First United States, N.A.*, 2010 U.S. Dist. LEXIS 142075 (C.D. Cal. Dec. 8, 2010), the court reasoned that it "looks to the plain and ordinary meaning of the words in Rule 41(d), which refers only to 'costs' and not to 'fees.' *Banga* at *14 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). The court subsequently cited to other Rules of Civil Procedure taht explicitly referred to "costs" or "attorney's fees," and concluded that under the "plain language of the rule," the defendant in the case would receive only costs and not attorney's fees. *Id.* at *15; *see also Avazian v. Genworth Life & Annuity Ins. Co.*, 2017 U.S. Dist. LEXIS 199070 (C.D. Cal. Dec. 4, 2017) (relying on the 'American rule' that in absence of statutory authority, bad faith or willful disobedience of the court, each party should bear its own attorney's fees); *Caldwell v. Wells Fargo, N.A.*, 2014 U.S. Dist. LEXIS (N.D. Cal. Feb. 26, 2014) (adopting reasoning of *Banga*, in holding that Rule 41(d) does not provide for award of attorney's fees); *but see Esquivel v. Arau*, 913 F. Supp. 1382, 1388-92 (C.D. Cal. 1996) (collecting cases holding that Rule 41(d) authorizes award of attorney's fees).

Consistent with the reasoning of *Banga*, the lower court should not have awarded attorney's fees under Rule 41(d). Interpretation of the plain language of

the Rule is the approach that is most consistent with other interpretation doctrines, and, as the *Banga* court surveyed, other Rules of Civil Procedure that apply to attorney's fees explicitly identify such fees. Rule 41(d) could have added "attorney's fees" to "costs," but it did not, and litigation costs are understood as different from attorney's fees. The lower court should not have awarded attorney's fees to Keck based upon Rule 41(d).

## CONCLUSION

For the foregoing reasons, the Order of the District Court should be reversed as to the award of attorney's fees to Defendant-Appellee Keck, except for the $5,092.64 relating to the anti-SLAPP motion under § 425.16.

Respectfully submitted,

Dated: September 23, 2020

*/s/ Mark L. Josephs*
Mark L. Josephs
Law Office of Mark L. Josephs LLC
100 Cambridge Street, 14th Floor
Boston, MA 02114
(857) 226-8251
mark.josephs@markljosephslaw.com

19

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on September 23, 2020.

/s/ Mark L. Josephs
Mark L. Josephs

## **Certificate of Compliance with FRAP Rule 32(a)(7)(B)(i)**

I hereby certify that the foregoing Brief of Plaintiff-Appellant contains 4,453 words according to the Microsoft Word program used in creating the brief (Ninth Circuit Form Included Herein).

/s/ Mark L. Josephs
Mark L. Josephs