United States Court of Appeals
For the Ninth Circuit

_____

No. 20-55633

DR. JEFFREY ISAACS,

Plaintiff – Appellant,

v.

USC KECK SCHOOL OF MEDICINE,

Defendant – Appellee,

GEISEL SCHOOL OF MEDICINE
AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER,
NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP, and
JOHN or JANE DOE,

Defendants.

_____

Appeal from the United States District Court for the
Central District of California, No. 19-cv-08000

**EXCERPTS OF RECORD, VOLUME 3**

Mark L. Josephs, Esq.
Bar No. 568454
Law Office of Mark L. Josephs, LLC
100 Cambridge Street, 14th Floor
Boston, MA 02114
(202) 904-4736
mark.josephs@markljosephslaw.com

## **INDEX**

| **Document** | **Page** |
|---|---|
| Jeffrey Isaacs's Complaint for Damages, Declaratory, and Injunctive Relief (cont.), Docket No. 1 (09/16/2019) | 104 |
| Docket Sheet | 226 |

253.     As defined by RICO, the Defendants formed an enterprise under at least one of several parallel, non-exclusive theories. First, the Defendants all participated in, and made a living from, federally and state funded medical training allocations that included Plaintiff's share of funding. They were "arbiters and gatekeepers" responsible for allocating taxpayer dollars to medical students, in this case, the Plaintiff. Second, the Defendants all had a reputational and commercial stake in the national health care provider network that was under scrutiny by claims Plaintiff made against them and/or their cohorts. Third, all Defendants had some stake in, or authority over, Plaintiff's medical and/or professional career as his professor, dean, attending, or likewise. Fourth, all Defendants had authoritative control and or publishing rights in nationwide medical training databases, as "academic medicine competent authorities", including board licensure & reprimand databases which now contain false, retaliatory information. Fifth, all Defendants directly had some nexus as Dartmouth, Keck or Harvard Medical School faculty, alumni, and/or professional liaisons. Finally, the Defendants formed a *de facto* enterprise with the sole purpose of carrying out a vendetta and negatively impacting Dr. Isaacs's medical-professional career. Per United States v. Turkette, 452 U.S. 576, 583 (1981), where the court upheld a RICO conviction even though the only purpose of the enterprise was to engage in a pattern of racketeering activity.

254.     The acts of the Defendants persisted over an extended duration and recruited new individuals for functional continuity and pursuit of goal. The Plaintiff alleges each Defendant independently, and all Defendants collectively, violated the Act. More specifically, each Defendant ultimately engaged in a pattern of predicate acts meant to retaliate against Plaintiff's filing of evidence and claims in official proceedings against them. The enormity of the violation is best appreciated, however, when the combined joint enterprise efforts are

1    viewed over the entire fourteen year period. For clarity and exemplification, although

2    Dartmouth defendants didn't participate in the enterprise years 2006-2011, once they were

3    recruited, they acted both in full concert with the prior enterprise, and as their own enterprise

4    for new claims. To the extent declaratory judgment of the disputed and breached settlement

5    finds waiver of 2005-2007 activity, the RICO claim goes on for the remaining predicate acts.

6    255.    The RICO Defendant(s) have directly and indirectly conducted and participated in the

7    conduct of the enterprise's affairs through a pattern of racketeering and activity described

8    herein, in violation of 18 U.S.C. § 1962(c).

9    256.    The Defendants committed numerous predicate acts, spanning no less than twelve

10   years, which constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

11   257.    Defendants used their knowledge of complex federal medical training norms to evade

12   scrutiny, in what one witness describes as "experts in medical training standards....threw

13   down a spike as a long term impediment" in Plaintiff's career. For example, as the operators

14   (in the case of Katsufrakis) of national clearinghouse databases, the working of which cannot

15   be fully known prior to discovery, Defendants have been able to sabotage Plaintiff's career

16   and reputation through complex publication and dissemination channels.

17   258.    Representative predicate acts are enumerated below for each defendant. This list is not

18   exhaustive and shall be refined during discovery. Predicate acts have likewise been pleaded

19   earlier in this complaint. Certain predicate acts may be deemed moot after  declaratory

20   judgement of the settlement agreement terms and disputed breaches.

21   259.    This Second Amended Complaint enumerates substantial civil and criminal

22   complaints ("law enforcement complaints" that Plaintiff filed against Defendants, forming the

23   core basis for a retaliatory enterprise under witness retaliation and obstruction of justice laws

24

Isaacs v. USC et al
Case No. 19-CV-                                                                                      47

105

(see below). Each wrongful deprivation cited in this Second Amended Complaint may be in retaliation for one or more law enforcement complaints. For example, Plaintiff's initial "Zilkha United States District Court" cover sheet served as evidence in an official proceeding , that Keck was aware of, took steps to prevent and to intimidate Plaintiff from further dissemination, and likewise motivated retaliatory events against him including breach of settlement contracts, as well as the initial SPC discipline. Likewise, Dartmouth's refusal to conduct a fair hearing, and their 2019 open ended refusal to consider Plaintiff's applications, exists in retaliation for law enforcement referrals including DOJ/FBI notice of evidence spoliation. It additionally extends to the original Zilkha cover sheet, to the extent John Doe recruited Dartmouth. A non exhaustive list of law enforcement complaints that Defendants possessed knowledge of prior to committing predicate acts includes: 1) the Zilka cover letter, 2) the 2006 CACD civil action and related complaints of illegal activity, 3) numerous letters to Defendants and their counsel indicating violations of civil and criminal code, 4) 2013 motion for referral to US attorney of evidence spoliation, 5) 2012, 2014 and subsequent referrals to DOJ and FBI, 6) January 2012 referral documents to Dartmouth risk management and ethics committees, 7) various other complaints to local, state and federal authorities, such as EEOC, Office of Civil Rights, and NH State Police.

260.    The predicate acts described in this complaint all violate one or more of the following federal statutes:

    a. 18 U.S.C. § 1513 (hereafter "witness retaliation"), which forbids conduct that "damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for-- the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced

by a witness in an official proceeding; or, Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, …Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

b. 18 U.S.C. § 1503, (hereafter "obstruction of justice"), which forbids obstruction of process, generally, including actions taken "corruptly" to "influence, obstruct, or impede the due administration of justice." Under the omnibus clause of this statute, obstruction of justice claims may be bought for attempts to impede Plaintiff's federal civil and criminal charges, claims, causes of action, or allegations. Without limitation, this includes attempts to discredit Plaintiff, wrongfully discipline him, delay or prevent discovery, and disavow or dishonor settlement or contractual responsibilities.

c. 18 U.S.C. § 1512, (hereafter "witness tampering"),  Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—influence, delay, or prevent the testimony of any person in an official proceeding (2)cause or induce any person to—withhold testimony, or withhold a record, document, or other object, from an official proceeding; alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

1          evade legal process summoning that person to appear as a witness, or to produce

2          a record, document, or other object, in an official proceeding;

3     d.  18 U.S.C. § 1343, (hereafter "wire fraud"), forbids any scheme or artifice to defraud,

4        or for obtaining money or property by means of false or fraudulent pretenses,

5        representations, or promises, transmits or causes to be transmitted by means of wire,

6        radio, or television communication in interstate or foreign commerce, any writings,

7        signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

8        Per statute, this shall include any scheme to deprive another of honest services.

9     e.  18 U.S.C. § 1341, (hereafter "mail fraud"), forbids any scheme or artifice to defraud ..

10       by means of false or fraudulent pretenses, representations, or promises … for the

11       purpose of executing such scheme or artifice or attempting so to do, places in any post

12       office or authorized depository for mail matter, any matter or thing whatever to be sent

13       or delivered by the Postal Service.

14

15 **I.    Dartmouth Defendants/ Jim Yong Kim**

16 261.    The factual history describes a pattern of adverse actions taken by Dartmouth and Jim

17 Yong Kim meant to interfere with Plaintiff's livelihood and property. Predicate acts began as

18 soon as Isaacs arrived at Dartmouth for training in July 2011. Specifically, through the

19 unknown communication with John or Jane Doe, and awareness of the AAMC profile,

20 Dartmouth began to retaliate against Isaacs for his complaints against Keck and the NIH and

21 his nondisclosure of the sealed records. Plaintiff was, and should have been, protected from

22 such treatment pursuant to federal witness retaliation code (see, supra). Based upon

23 information and belief, John Doe formed a nexus and enterprise with Dartmouth officials

24

which jointly retaliated against Plaintiff. No later than January 2012, Isaacs had commenced federal proceedings against Dartmouth itself. Adverse actions which occurred after January 2012 violated witness tampering and obstruction of justice statutes, in addition to witness retaliation code.

262.   Representative actions violating these statutes have been described in the factual history. Such actions include, but are not limited to, ordering Isaacs to conduct unnecessary prostate exams, silencing other staff who spoke out against mistreatment, blatantly depriving Isaacs of institutional due process, and falsely accusing Isaacs of medical mistakes and errors. Each of these acts was meant to retaliate against a federal witness, and/or interfere with a proceeding, in violation of the cited statutory authority.

263.   Once Isaacs notified Dartmouth of pending federal litigation, his emails were deleted by Jim Yong Kim or Christine Finn. A warning that emails were being deleted was ignored by Jim Yong Kim. As such, Kim either assented to, or directly ordered, the email destruction. Isaacs' medical records were also destroyed during the same month in January 2012. Isaacs was denied a fair hearing later in 2012, as required by hospital bylaws. Based upon the proximate sequence of retaliatory events following Defendant Kim's receipt of a federal lawsuit notice, evidence shows he either ordered, or assented to, separate acts of email destruction, medical records destruction, and multiple internal due process violations. Dartmouth College and DHMC are legally culpable, having assented to these improper actions carried out by Kim and other administrators.

264.   Multiple instances of evidence spoliation form the basis of a pattern of predicate acts that violated federal witness tampering and obstruction of justice laws. The Dartmouth defendants took repeated steps, over an extended period of time, to destroy the written record

of evidence that was be critical to litigation due process in the federal courts. Plaintiff did not receive due process in prior lawsuits and administrative processes as a direct and foreseeable result of criminal witness tampering and evidence destruction. This caused direct injury in that Isaacs could not recover his residency stipend and inherent residency training value. Had the witnesses not perjured themselves, evidence would have existed that would have certainly resulted in a judge or jury re-admitting him to GME at Dartmouth.

265.     In March 2012, a NH process server noted that Jim Yong Kim appeared to have evaded summons service by issuing false statements. Such activity constitutes a willful and deliberate pattern by Dartmouth defendants to violate federal witness tampering and obstruction of process laws.

266.     During a dozen depositions of Dartmouth physicians taken in 2012-2013, not a single witness was able to recall or describe how they learned about Plaintiff's sealed Keck records. Likewise, most witnesses outright denied, falsely, any knowledge of the sealed records. Similarly, key witnesses had no recollection of the reasons why they ordered Plaintiff to conduct the unnecessary prostate exams. Discovery will produce a detailed register of false statements made by Dartmouth defendants meant to obstruct justice and tamper with witnesses. Plaintiff has been unable to obtain correct closure of this matter as a direct and foreseeable result of Dartmouth defendants witness tampering and obstruction of justice.

267.     As part of their enterprise, Dartmouth entered false statements into interstate computer systems. For example, Dartmouth entered false reasons for termination, and false information about Keck, into interstate computer systems. During a deposition of one Natalie Riblet, Riblet challenged the authenticity of one such purported incident entered into these databases. Such false entries constitute wire fraud, per the above referenced authority.

110

268.    Likewise, Finn transmitted false letters to the NH Board of Dartmouth, Isaacs, and others via US Mail. The documents contained knowingly false information about expunged falsities from Keck. These actions constituted mail fraud as per the above referenced authority. More specific mail and wire fraud pleading requirements will be met once discovery yields the proprietary documents.

## II.    New Hampshire Board of Medicine

269.    The NH Board of Medicine engaged in multiple actions in violation of federal obstruction of justice code, federal anti-retaliation code, and wire and mail fraud statutes:

270.    First, the Board refused to investigate reports of felonious sexual assault, namely, that Khagi ordered him to conduct unnecessary prostate exams, solely for the intent to retaliate against Isaacs for his non-disclosure of Keck. To this day, the Board has not investigated the exams. A proper investigation would have been critical to refer the matter to appropriate authorities, and/or take Board action against Khagi and Dartmouth.

271.    The Board, specifically investigator Jeff Cahill, withheld exonerating evidence – the Keck Settlement agreements – and revoked Isaacs medical license for non-disclosure of the annulled Keck records. They did so with intent to obstruct justice and due process in both their own hearing and related federal lawsuits. They did so to appease and work in conjunction with the enterprise that formed between them and Dartmouth; Cahill told Plaintiff by phone that he had been instructed by a superior to take on the false allegation. The Board also retaliated against Isaacs because he had named them in a PAED lawsuit in 2013. To this day, the Board falsely publishes on nationwide databases that the Keck agreements do not exist.

272.    The Board even went so far as to blame Isaacs for Keck's failure to retract administrative charges, which Keck was contractually bound to do from the settlement agreements.

273.    The Board went ahead with a hearing despite the fact that 8 inches of snow prevented Isaacs from attending. The Board did so with the intent of obstructing due process in both their own hearing and pending federal litigation.

274.    The NH Board's only training facility is operated by Dartmouth, the only academic medical center in New Hampshire. Dartmouth has a liaison physician to the Board, and the Board consists largely of accredited physicians. As such, despite being held under the auspices of a state entity, the Board as defined by its individuals has a close personal and economic nexus to Dartmouth; it cannot administer training licenses without the existence of Dartmouth .

## III.    Keck School of Medicine, Gibson Dunn, and John or Jane Doe

275.    Keck was the origination of the enterprise to retaliate against Dr. Isaacs as a witness of a federal crime (improper NIH influence on Keck).

276.    Keck engaged in multiple predicate acts, which were the subject of a federal lawsuit in 2007. The Plaintiff settled (civil claims) against Keck via the two aforementioned settlement agreements.

277.    Keck illegally withheld the AAMC profile from a 2008 federal discovery production. This constitutes a major predicate act as it caused the following decade of legal proceedings by concealing a material fact, thereby obstructing justice.

278.    Additionally, John or Jane Doe followed Plaintiff, over a span of some five years, and further discussed the sealed records to Dartmouth. Based upon information and belief, John or

1  Jane Doe necessarily had connections with Defendant Keck, given their knowledge of the

2  sealed records.

3  279.    The New Hampshire Board of Medicine determined that Keck breached the settlement

4  agreement, as they never retracted "administrative charges" against Isaacs, including a charge

5  of not demonstrating "Essential Characteristics" that lead to his suspension, and later,

6  separation from the university.

7  280.    As such, Keck has violated anti-retaliation and wire and mail fraud provisions, with

8  predicate acts spanning over a decade. Specifically, they continue to issue false transcript

9  reports via wire and mail and through third parties, including the AAMC. Keck has had

10  knowledge of Plaintiff's continued legal struggles to practice medicine. Keck could have

11  easily intervened and clarified that the records had been sealed, annulled, and discharged,

12  especially upon the request of the AAMC, which they ignored. When they could have so

13  easily helped conclude a decade of litigation in over a dozen venues, Keck's inaction alone

14  evidences continued intent to retaliate.

15  281.    Upon information and belief the exact dates and times that these transmissions have

16  been made can be garnered in discovery, the fact that these transmissions have been made is

17  indisputable as the effects of these transmissions is clear.

18  282.    To the extent Keck counsel has recently, as of July 2019, disavowed the effect of their

19  settlement and their obligations therein, they are promoting an open-ended threat. They assert,

20  in perpetuity, that they will not mitigate any breaches, past or present, of the settlement

21  agreement, leaving Plaintiff with a constant threat and fear of harm. Furthermore, they have

22  repeatedly threatened Plaintiff with "liquidated damages" and Rule 11 sanctions (meritless

23

24

113

1      threats in 2008 and 2019), further violating RICO and California 425.16, for speaking out and

2      seeking to enforce the settlements.

3     283.     Keck furthermore encouraged Isaacs to sign a settlement that precludes his application

4      to their GME programs in perpetuity. As an arbiter and gatekeeper to federally funded

5      residency, Keck encouraged a permanent, open-ended block depriving Plaintiff access to their

6      taxpayer funded program.

7     284.     Keck began enforcing an illegal lifetime campus ban, in concert with Defendant

8      Gibson Dunn. No Due Process was afforded to Plaintiff in issuing this ban. The ban is an

9      attempt to intimidate a federal witness, and to obstruct him from filing related complaints with

10    USC police and the USC Registrar. The ban is an open ended, lifetime threat, and a predicate

11    act under RICO.

12    285.    The purpose of Keck's acts against Isaacs is the same as the other defendants, to make

13    sure that Dr. Isaacs is and was unable to reach his goal of becoming a Doctor, in retaliation

14    for law enforcement referrals he brought against them.

15    286.    RICO concerns "long term criminal conduct," which has existed here since

16    Katsufrakis began to operate an enterprise meant to thwart Plaintiff's federal claims of abuse

17    of power, admissions corruption involving the NIH, and extended via John Doe, under Keck's

18    responsibility, well into the next decade. Furthermore, Operation Varsity Blues underscores

19    this event, and related events, were hardly isolated and represent a decades long "way of

20    doing business." Indeed, with the termination of three consecutive Keck deans, literally a

21    decade of MD students at Keck can no longer seek references, research projects,

22    recommendations, etc from their discredited Deans.

23

24

114

287.    These Defendants, all involved in RICO violations, progress an enterprise whose primary focus was to assassinate Dr. Isaacs's medical career, through harsh, wrongful discipline at Keck, Dartmouth and later at the New Hampshire Board of Medicine. Generally, there is one unifying explanation for Plaintiff's fourteen year predicament: 1) in 2006, he reported activity concerning the improper NIH/Keck relationship, 2) such report included notice of federal litigation, 3) as a federal witness, and party to an official proceeding, Plaintiff should have been protected from retaliation, however 4) clearly Plaintiff has suffered an extensive retaliation that ended his medical career for being a party to said proceeding. The entire retaliation originated with an attempt to discredit him, then a promising medical student, from bringing claims against several of the most senior physicians in California and even the nation. Forced to go "offshore," he completed his medical training and again resumed a promising path, based on his top ranking medical school achievement and national boards. John or Jane Doe transmitted the sealed Keck records to Dartmouth, which Dartmouth does not dispute, and the predicate act pattern of revenging the perceived litigious medical student resumed.

288.    As the result of these actions Dr. Isaacs has suffered financial loss including but not limited to: the tuition he paid to Keck, the stipend he lost at Dartmouth and the inherent value of a GME residency.

289.    These actors are all senior members of the medical profession and used their position in order to hide their intentions and use the courts and board of medicine to make sure that Dr. Isaacs can never practice medicine again. Particularly reprehensible is how Defendants, over more than a decade, used their status within venerable institutions to discredit Plaintiff and deny him any semblance of due process. Defendants planned to continue said mistreatment in

115

perpetuity, forever denying Isaacs a medical career; it only appears questions raised at least one branch of the United States government finally checked Defendants' abuse of power. Punitive damages and/or substantial criminal penalties are particularly appropriate under RICO law.

290.    In addition to Plaintiff, it is expected that discovery in this case, and/or Operation Varsity Blues, will reveal a systemic retaliation against individuals, including students, who protested and sought to reveal improper admissions activity and similar administrative corruption.

291.    This behavior is particularly nefarious when one considers all of the effort it took Isaacs to pursue his singular goal of being a doctor. He worked diligently to help others as a student physician, with the understanding that his settlement agreements would protect him and allow him to move on with his life.

292.    These Defendants, through criminal enterprise, thwarted for good Dr. Isaacs' pursuit of being a medical Doctor and need to be held accountable for their crimes. The Defendants wrongful acts directly deprived Plaintiff the value of 1) three years GME salary stipend no less than $150,000, 2) an inherent knowledge and credential value of residency that far exceeds the government's cost/reimbursement to Dartmouth of approximately $1million, 3) a year tuition at USC Keck, including a trimester paid for but never attended, 4) costs for medical care, and 5) future earnings of an MD/MBA that amount to at least $4 million, 6) the property value of his tuition and student loan payments for his medical degree, amounting to $400,000 and 7) though this is presently not a *qui tam* action, a loss to the federal medicare health system of a skilled physician a value that exceeds items 1 through 5 inclusive, including $200,000 in training subsidies to Dartmouth.

## COUNT VIII

### Retaliation

### (USC Keck)

293.    Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

294.    In this District in 2006, Plaintiff filed claims against Defendant USC pursuant to 29 U.S.C. § 701 and 42 U.S.C. § 12101 and related acts.

295.    The aforementioned claims qualify as protected acts under their respective anti-retaliation statutes.

296.    In 2019, USC Counsel refused a request to "comply with the original settlement by correcting appropriate records and 2) help reinstate Plaintiff's GME training that was prematurely ended as a result of said breach."

297.    USC Counsel further took the position that two heavily negotiated settlement agreements simply didn't exist. They disavowed responsibility for sealing records, discharging administrative claims, acquitting claims, and annulling enrollment contracts. Evidence of this position is found in USC Counsel's statement that "USC did not "cause" Plaintiff's omission [of sealed and acquitted charges]. Had they accepted the validity of the settlement agreements, of course they would not hold Plaintiff responsible for their own breach.

298.    Keck took these actions due to the Plaintiff's previous suit against them and in unlawful retaliation against him.

299.    Keck further retaliated by accepting Gibson Dunn's lifelong campus ban, without affording Plaintiff any Due Process.

117

300.     But for Plaintiff's civil and criminal charges against Defendant USC, Keck would not have breached their settlement. The breach was in retaliation against Plaintiff's claims.

### Count IX
### Section 1983
### (NH Board)

301.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

302.     Section 1983 prevents an individual, acting under the color or state law, from violating Plaintiff's constitutional rights.

303.     Here, the NH Board chose to "reprimand" Plaintiff for complying and accepting the terms of a federal court ordered settlement, by maliciously and deviously publishing the very same allegations against Plaintiff that had been sealed.

304.     The NH Board thereby interfered with a federal court ordered settlement agreement.

305.     The matter originated with a charge of "not maintaining Essential Characteristics," which the purported victim asserted a punishment of a one-semester suspension "didn't set right in [her] stomach."

306.     A decade after Keck acquitted and sealed the charge, the Board nonetheless forged ahead with a reprimand to publicly shame the Plaintiff and permanently ended his medical career (and other potential careers) citing false and unsubstantiated "stalking." This is excessive, pursuant to the language of the law of this claim. Plaintiff had no jury trial for supposed criminal stalking, but was reprimanded by a state agency and his medical career and reputation was assassinated.

307.     The reprimand violates Plaintiff's Eighth Amendment rights, as it is a particularly illogical and harsh reprimand, which defeats decades of successful academic studies and substantially and permanently impairs Plaintiff's ability to contribute meaningfully to society.

308.     There exists no public or state interest argument. The Board had every right, as is common in State Bar association applications, to ask if Plaintiff had ever had an expungement, sealed record, and/or factual innocence legal determination. Rather than address their own shortcomings and incompetency in their application, they decided to dole out the harshest of punishments to Plaintiff, who was merely trying to practice medicine.

309.     The Board successfully dismissed Plaintiff's Section 1983 Due Process claim this year, which is still under certiorari review at the Supreme Court. The Board argued Plaintiff had "no clearly established right" to due process and exonerating evidence admission to their hearing. A motion to amend was disallowed, and hence, this Eighth Amendment claim could not be amended. For this reason, Plaintiff respectfully requests that this Section 1983 Eighth Amendment be allowed to proceed in the interest of justice and preference for merit based adjudication.

## COUNT X

### Due Process & First Amendment Violations

### (Gibson Dunn and USC Keck)

310.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

311.     Where an individual is facing a deprivation of life, liberty, or property, procedural due process mandates that he or she is entitled to adequate notice, a hearing, and a neutral judge

119

312.     Here, Gibson Dunn unilaterally restricted Plaintiff's freedom as a Los Angeles community member, without affording him any semblance of Due Process.

313.     A Gibson Dunn partner and member of the firm's ethics committee, and Co-Chair of Law Firm Defense Practice Group, illegally instructed Plaintiff "You have no right to be on the USC campus." He went on to claim "you have no reason to be there." He scolded Plaintiff for purportedly threatening to "trespass to boot."

314.     By extending their 2006 no trespass instructive to 2019, Defendants illegally issued a fourteen year, or apparently lifelong, campus ban against Plaintiff. This threat violates federal witness intimidation and obstruction of process law, as it was intended to place the Plaintiff in a state of fear and distress and prevent him from meeting with USC police and/or the USC registrar. No proper lifelong campus ban was ever issued with due process.

315.     California Penal Code 626 states Every student or employee who, after a hearing, has been suspended or dismissed from a community college, a state university, the university, or a public or private school for disrupting the orderly operation of the campus or facility of the institution, and as a condition of the suspension or dismissal has been denied access to the campus or facility, or both, of the institution for the period of the suspension *or in the case of dismissal for a period not to exceed one year;* who has been served by registered or certified mail, at the last address given by that person, with a written notice of the suspension or dismissal and condition; and who willfully and knowingly enters upon the campus or facility of the institution to which he or she has been denied access, without the express written permission of the chief administrative officer of the campus or facility, is guilty of a misdemeanor...

1    316.    Instructive here, Plaintiff's dismissal was fourteen years ago, and was annulled and

2    acquitted. Even assuming CA 626 applies, and it appears it does not, USC simply had no legal

3    basis to uphold a no-trespassing directive fourteen years later. Plaintiff is a law abiding citizen

4    with community interests in Los Angeles that may extend, from time to time, to USC's

5    campus.

6    317.    As Plaintiff filed in a pending related Motion for Preliminary Injunction, incorporated

7    herein, he does in fact have valid reason to be on USC campus. The nearest hospital to this

8    Court is LAC+USC Medical Center. Many clinics in the LA areas are owned by USC. He has

9    friends who are physicians and professors at USC who give speeches to the public. USC

10    routinely sponsors public community events, educational activities, museums, sporting events,

11    cultural & music events, and other facilities. Restricting access to these public events and

12    facilities substantially deprives Plaintiff of liberty and property interests, including First

13    Amendment rights to assemble and speak at USC events. Interference with commerce could

14    restrict Plaintiff's business interests.

15    318.    Many facilities in Los Angeles, such as Cedars-Sinai, are affiliated with both USC and

16    USLA; the burden on Plaintiff to avoid any USC provider is simply unreasonable and places

17    him in the direct path of harm.

18    319.    USC Keck and Gibson Dunn falsely responded to this allegation by stating Plaintiff

19    had somehow waived his right in the Settlement Agreements, which bars future applications

20    to formal USC educational degree, certificate, or other educational programs requiring

21    application for admission. The clear language and intent of the Settlement Agreements never

22    sought to bar Plaintiff for life from enjoying his freedom in the Los Angeles community.

23

24

320.     A lifelong campus ban would further harm Plaintiff's reputation and could theoretically spread to other campuses, at other universities, who may incorrectly assume a competent authority found Plaintiff to be a lifelong threat, which is simply baseless.

321.     In fact, USC and Gibson Dunn simply wanted to continue their fourteen year witness retaliation against Plaintiff and make him uncomfortable and unsafe in the Los Angeles area. They also sought to prevent him from filing complaints with USC Police, or mediating contract matters with the USC registrar, both of which they have successfully blocked for fourteen years. These actions constitute felonies under federal witness retaliation and obstruction code (See above.)

322.     As aggravating factors, Defendants had specific knowledge of the medical risks they have inflicted upon Plaintiff by obstructing justice and retaliating over fourteen, including unknown cardiac issues with high morbidity and a month-long hospitalization for trauma stemming from an unwarranted suspension. By banning Plaintiff from the nearest hospital to this Honorable Court, or other USC regional clinics, Defendants sought to place Plaintiff in unnecessary and heightened danger.

323.     The campus ban could have collateral effects such as denial of immigration visas or refusal of entry to other university campuses. Plaintiff has no criminal record, but other entities could view such an extreme lifelong campus ban by a competent authority as reason to believe Plaintiff planned to commit a crime against an educational institution. As such Plaintiff has no recourse other than this lawsuit to prevent further damages.

## COUNT XI

### RESCISSION (California Code Section 1689)

**(USC Keck, *Alternate Claim*)**

Isaacs v. USC et al
Case No. 19-CV-

64

122

324.      Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

325.      Pursuant to CC 1689, (a) A contract may be rescinded if all the parties thereto consent.   (b) A party to a contract may rescind the contract in the following cases:   (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds. (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause. (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause. (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.   (6) If the public interest will be prejudiced by permitting the contract to stand.

326.      In this alternative claim, should Plaintiff's prior claims not succeed and should declaratory judgment not determine he was factually innocent, it is apparent his settlement agreements with Keck should be subject to rescission under California Code.

327.      In this case, any one of the six elements for rescission are easily met:

1) Plaintiff's consent was by mistake, in the case declaratory judgement determines no factual innocence was rendered,

2) The consideration failed as USC Keck never complied with the agreement, failing to update AAMC or USC Registrar records,

3) By definition, the consideration was voided if declaratory judgment failed,

4) The consideration, factual innocence, clearly failed in a material respect,

5) The contract was unlawful in that no consideration was granted to Plaintiff,

6) Public interest should not allow a settlement that clearly deprived Plaintiff of any consideration and lead to ten years of subsequent enforcement proceedings.

## COUNT XII

## CONSTRUCTIVE FRAUD

### (USC Keck, *Alternate Claim*)

328.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

329.     Under California Code 1573, Constructive fraud consists 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

330.     In this alternative claim, should Plaintiff's prior claims not succeed and should declaratory judgment not determine he was factually innocent, it is apparent his settlement agreements with Keck would have been formed out of constructive fraud.

331.     The only consideration Plaintiff received in the Individual Settlement was that of "factual innocence."

332.     Keck would have gained an advantage in settling the case, if no consideration was afforded to Plaintiff in his settlement agreement(s).

333.     Keck had a duty to engage in a good faith "meeting of the minds" in forming two complex settlement contracts. Experts in education and medical training, Keck had a particular negotiation advantage in understanding the entire ramification of the settlement terms, and had a duty not to mislead Plaintiff, lead him on, coerce him, or misrepresent facts and/or intents of the parties.

334.     In short, Keck breached their duty in issuing a proposed settlement, and signing it, in which they knew Plaintiff would not be granted the consideration he believed he would receive.

335.     An appropriate remedy would be re-opening of the claims and facts, pre-2008, that had been subject to settlement, and/or allocation of damages. Public interest warrants re-opening of this case in particular, specifically, there exists a real public concern regarding USC's inability to curtail abuses of power and bribery. Ongoing federal and state investigations have revealed a disturbing incidence at USC & Keck confirming a pattern of existence of both of Plaintiff's original claims, i.e. abuse of power and bribery.

## COUNT XIII

### FRAUD

### (USC Keck)

336.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count. Under common law fraud, the following elements must be met: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity;

1    (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9)

2    the injured party's consequent and proximate injury.

3    337.    Here, USC represented it would seal Plaintiff's disciplinary records, as the only

4    consideration for the Individual Settlement agreement.

5    338.    The representation was false, as USC intentionally did not update its own transcripts

6    with the Registrar, nor did it update clearinghouses such as AAMC where it had an obligation

7    to.

8    339.    This was a material representation, as its truth or falsity would alter Plaintiff's ability

9    to proceed with medical studies.

10   340.    USC had detailed knowledge of the requirements of medical training, and indeed

11   knew it never complied with the Settlement Agreements. Counsel Meyer, in 2019, refused to

12   mitigate damages and discuss resolution of the breach.

13   341.    USC intended Plaintiff to believe they would honor the commitment to seal the

14   records, so that he would dismiss his lawsuit.

15   342.    Plaintiff, clearly, upheld his end for over a decade and believed USC, despite their

16   improper motives. Plaintiff had every right to rely on a settlement agreement as a binding,

17   valid and enforceable document.

18   343.    USC's failure to seal the records cause substantial losses to Plaintiff, as documented in

19   this Complaint.

20   344.    In 2019, Plaintiff learned that USC concealed proof of a long-term breach dating back

21   to 2007. Equitable estoppel prevents USC from raising a statutes of limitations in this case of

22   fraudulent concealment and obstruction of process.

23

24

1    WHEREFORE, The Plaintiff respectfully requests that this Honorable Court:

2        A. Order damages in excess of $18,500,000 under the jurisdictional authority of this Court;

3        B. Award triple damages, under the so-called private attorney general provisions of RICO, costs

4           and attorneys' fees;

5        C. Await the United States Attorney as a criminal prosecutor for RICO criminal violations;

6        D. Permit discovery of RICO civil and criminal claims to proceed pending appointment of the

7           United States as party;

8        E. Issue a permanent injunction under USC 28 Section 1331 and/or Bivens restraining

9           Defendant's Program Directors from blocking access to federal GME training and violating

10          Plaintiff's Due Process rights;

11       F. Issue a permanent injunction upholding the factual innocence and annulment afforded to

12          Plaintiff under the Settlement Agreements;

13       G. Issue a permanent injunction barring USC from enacting an intimidatory and harmful lifelong

14          campus ban;

15       H. Issue a permanent injunction restraining the NH Board from issuing a false order, on the

16          internet and national medical clearinghouse databases, that interferes with a federal court

17          ordered settlement agreement.

18       I. Grant any further relief as may be fair and just under the All Writs Act.

19

20

21

22

23

24

Isaacs v. USC et al
Case No. 19-CV-

69

127

1

# JURY DEMAND

2

3    The Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules

     of Civil Procedure.

4

5

6    Dated: September 13, 2019

7

                                                    Respectfully submitted,

8

9

10   */s/ Jeffrey Isaacs*

11                                                  Dr. Jeffrey Isaacs (*pro se*)

12                                                  3553 West Chester Pk #177

13                                                  Newtown Square, PA 19073

14                                                  (212) 257-0737

15                                                  jeffreydi@gmail.com

16

17

18

19

20

21

22

23

24

Isaacs v. USC et al
Case No. 19-CV-

Gmail - today's rule 26 (f) meeting

7/2/19, 4:36 AM

 Gmail

## today's rule 26 (f) meeting

**Susan Christopher** <treyhobbs@sbcglobal.net>
To: jdi@alum.dartmouth.org, "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Wed, Apr 11, 2007 at 7:04 PM

Dear Mr. Isaacs,

Thank you for meeting with us today pursuant to rule 26(f) in an effort discuss initial disclosures, discovery, and settlement possibilities.

In summary of today's meeting, we have agreed to the following dates and items:

- In an effort to provide you with more time to gather your documents, witness lists, etc., we have stipulated that our initial disclosures do not have to be served on one another until May 11, 2007. All required disclosures are listed in rule 26.

- We discussed settlement options. Robin Dal Soglio will discuss your offer to dismiss all individual defendants upon USC's agreement to seal all of your disciplinary files with our client. Further, you have requested that we speak with our client regarding a range of money that they would be agreeable to for settlement. We have committed to providing you with a response to those requests by April 20, 2007.

- We will provide the first draft of our joint report and proposed discovery plan on May 11, 2007. You will then have the opportunity to propose any changes to the report at that time.

If you have any questions or concerns, please contact us at any time.

Sincerely,

Susan Christopher, Attorney at Law

Dal Soglio & Martens LLP

19-cv-2011 Isaacs v. USC

Exhibits Page 1

129

Gmail - Third Amended Complaint

7/2/19, 5:37 AM

 Gmail

# Third Amended Complaint

**rdalsoglio@dm-lawfirm.com** <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Fri, Jun 29, 2007 at 11:28 AM

June 29, 2007

VIA FACSIMILE and E-MAIL

Jeffrey David Isaacs
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

Re:     Jeffrey David Isaacs v. USC Keck School of Medicine, et al.

Dear Mr. Isaacs:

We have received your Third Amended Complaint.

Pursuant to FRCP 15(a), you are not permitted to file another amended complaint without first filing a motion seeking leave of the court to do so. Given that we have been served with no such motion, we demand that you withdraw this Third Amended Complaint. Please provide written confirmation no later than Monday, July 2, at 12:00 p.m. PDT, that you will be withdrawing the Third Amended Complaint (at least until such time as you receive leave of court to file it) and that Defendants therefore do not to file any response at this time.

If you fail to withdraw the Third Amended Complaint, please be advised that Defendants will seek sanctions against you for their unnecessarily incurred legal fees.

We look forward to your prompt response in this matter.

Very truly yours,

Robin D. Dal Soglio

Robin D. Dal Soglio
**Dal Soglio & Martens LLP**
27240 Turnberry Lane

19-cv-2011 Isaacs v. USC

Exhibits Page 2

130

1 | Tracking Details

2 | **Opened**

3 | Opened 10-Jan-06 at 19:13:38pm (UTC -5:00)   ·   1hour25mins20secs after sending

4 | Location Bethesda, Maryland, United States (86% likelihood)

5

6 | Opened on | b12-arbiter-b.net.nih.gov (128.231.88.6:60446),fernwood-arbiter-b.net.nih.gov (128.231.88.7:64823)

7

8 | Language of recipient's PC: en-us (English/United States)

9 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

10 | Last log | No more activity after 10-Jan-06 at 19:19:24pm (UTC -5:00)   ·   Log data indicates email was read
11 | for at least 5mins46secs (approx.)

12

13

14 | **Forwarded**

15 | Opened 10-Jan-06 at 19:36:18pm (UTC -5:00)   ·   1hour48mins after sending

16 | Location Los Angeles, California, United States (86% likelihood)

17 | Opened on zni100-1.hsc.usc.edu (128.125.75.181:3058)

18

19 | Language of recipient's PC: en-us (English/United States)

20 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1)

21 | Last log | No more activity after 10-Jan-06 at 19:37:46pm (UTC -5:00)   ·   Log data indicates email was read
22 | for at least 1min28secs (approx.)

23

24

25 | **Forwarded**

26 | Opened 10-Jan-06 at 19:38:42pm (UTC -5:00)   ·   1hour50mins24secs after sending

27 | Location Los Angeles, California, United States (86% likelihood)

28

-38-

| 1 | Opened on zni100-1.hsc.usc.edu (128.125.75.181:3063) |
|---|---|
| 2 | Browser used by recipient: Eudora |
| 3-5 | Last log | No more activity after 10-Jan-06 at 19:49:02pm (UTC -5:00) - Log data indicates email was open for at least 10mins20secs (approx.) |

**Re-opened (by earlier reader #1)**

| 9 | Opened 10-Jan-06 at 21:49:36pm (UTC -5:00) - 4hours1min18secs after sending |
|---|---|
| 10 | Location Bethesda, Maryland, United States (86% likelihood) |
| 11-12 | Opened on b12-arbiter-b.net.nih.gov (128.231.88.6:38907),fernwood-arbiter-b.net.nih.gov (128.231.88.7:34903) |
| 13 | Language of recipient's PC: en-us (English/United States) |
| 14 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727) |
| 15-17 | Last log | No more activity after 10-Jan-06 at 21:57:10pm (UTC -5:00) - Log data indicates email was read for at least 7mins34secs (approx.) |

**Re-opened (by earlier reader #2)**

| 21 | Opened 11-Jan-06 at 00:14:41am (UTC -5:00) - 6hours26mins23secs after sending |
|---|---|
| 22 | Location Los Angeles, California, United States (86% likelihood) |
| 23 | Opened on vpn-052-038.usc.edu (128.125.52.38:4766) |
| 24 | Language of recipient's PC: en-us (English/United States) |
| 25 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |

-39-

| 1 | **Re-Opened (by earlier reader #2)** |
|---|---|
| 2 | Opened 11-Jan-06 at 09:38:31am (UTC -5:00) - 15hours50mins13secs after sending |
| 3 | Location San Juan, Puerto Rico (86% likelihood) |
| 4 | Opened on 207.166.116-82.isla.net (207.166.116.82:63526) |
| 5 | Language of recipient's PC: en-us (English/United States) |
| 6 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| 7 | |

8

9

| 10 | **Re-Opened (by earlier reader #2)** |
|---|---|
| 11 | Opened 11-Jan-06 at 16:12:42pm (UTC -5:00) - 22hours24mins24secs after sending |
| 12 | Location Los Angeles, California, United States (86% likelihood) |
| 13 | Opened on zni100-1.hsc.usc.edu (128.125.75.181:4212) |
| 14 | Language of recipient's PC: en-us (English/United States) |
| 15 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| 16 | |
| 17, 18 | Last log   No more activity after 11-Jan-06 at 16:15:04pm (UTC -5:00) - Log data indicates email was read for at least 2mins22secs (approx.) |

19

20

| 21 | **Re-opened (by earlier reader #3)** |
|---|---|
| 22 | Opened 11-Jan-06 at 16:15:07pm (UTC -5:00) - 22hours26mins49secs after sending |
| 23 | Location Los Angeles, California, United States (86% likelihood) |
| 24 | Opened on zni100-1.hsc.usc.edu (128.125.75.181:4227) |
| 25 | Browser used by recipient: Eudora |
| 26 | |

27

28

-40-

No. CV-06-1338 GAF (Ex)        PLAINTIFF'S SECOND REQUEST
19-cv-2011 Isaacs v. USC PRODUCTION OF DOCUMENTS        Exhibits Page 5

| 1 | **Forwarded** |
| 2 | Opened 28-Feb-06 at 18:53:08pm (UTC -5:00) - 49days1hour4mins50secs after sending |
| 3 | Location Bethesda, Maryland, United States (86% likelihood) |
| 4 | Opened on fernwood-arbiter-b.net.nih.gov (128.231.88.7:9652),b12-arbiter-b.net.nih.gov (128.231.88.6:10654) |
| 5 | Language of recipient's PC: en-us (English/United States) |
| 6 | Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322) |
| 7 | |
| 8 | |
| 9 | |
| 10 | **Summary** - **as at 22-Sep-07 at 12:40:11pm (UTC -5:00)** - 619days18hours51mins53secs after sending |
| 11 | Total Opened 9 times by 4 readers |
| 12 | Reader #1 Opened 2 times for 13mins20secs total |
| 13 | Reader #2 Opened 4 times for 3mins50secs total |
| 14 | Reader #3 Opened 2 times for 10mins20secs total |
| 15 | Reader #4 Opened 1 time |

-41-

134

Gmail - Isaacs v. USC, et al.

7/2/19, 4:42 AM

# M Gmail

## Isaacs v. USC, et al.

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Tue, Jul 3, 2007 at 6:37 PM

Mr. Isaacs,

As you know, I represent the defendants in your lawsuit. I have previously advised you that your communications to any and all of the defendants, including the University of Southern California, need to be directed to me and not directly to the University, including the President's office. If you continue to direct communications regarding the lawsuit directly to the University, we will seek appropriate sanctions.
I also am not sure what you mean by whether I represent Mr. Baughman "during discovery." I have already appeared on his behalf and, therefore, represent him for purposes of this litigation.

I have confirmed with the University that they are willing to enter into an agreement sealing your KSOM disciplinary records in exchange for a complete dismissal of all individual defendants. I will draft the appropriate documentation and forward it to you for your review next week.

With respect to your offer to settle the rest of the lawsuit against the University for $645,000, the University rejects the offer. Moreover, as I mentioned to you on June 4, the University is not willing to discuss settlement in that approximate range.

Sincerely,

Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0736
Fax: (661) 244-4942

Gmail - Re: Dismissal of CV-06-3338

7/2/19, 5:39 AM

# M Gmail

## Re: Dismissal of CV-06-3338

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Wed, Jul 11, 2007 at 5:15 PM

Mr. Isaacs:

As discussed, I will convey this offer to my clients and get back to you.

Robin

----- Original Message -----
**From:** Jeffrey D. Isaacs 99
**To:** rdalsoglio@dm-lawfirm.com
**Sent:** Wednesday, July 11, 2007 1:52 PM
**Subject:** Dismissal of CV-06-3338

Dear Ms. Dal Soglio:

As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in getting rid of this action.

Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been fortunate enough to receive a second chance; to pursue this opportunity is only possible with both the financial liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway train' and hope your client can arrive at the same rational opinion.

This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
Regards,
Jeffrey Isaacs

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/16/19 Page 36 of 139 Page ID #:79
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-8, Page 36 of 139

Gmail - Re: Settlement follow-up

7/2/19, 5:45 AM



# Re: Settlement follow-up

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: Jeffrey.Isaacs@alumni.insead.edu

Tue, Jul 17, 2007 at 5:50 PM

Mr. Isaacs,

Attached please find the proposed settlement documentation regarding the release of the individual defendants. If the document is acceptable, please sign and return the original to me. Otherwise, let me know if you have questions or comments. I look forward to hearing from you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0736
Fax: (661) 244-4942

----- Original Message -----
**From:** Jeffrey D. Isaacs 99
**To:** rdalsoglio@dm-lawfirm.com
**Sent:** Monday, July 16, 2007 9:36 AM
**Subject:** Settlement follow-up

Dear Ms. Dal Soglio:
Could you please confirm via email or fax the status of the partial settlement papers you said you were sending on July 3rd? Also, please confirm that your client has seen and has rejected the most recent global settlement offer. Again, please confirm this by email or fax as soon as possible.
Regards,
Jeffrey Isaacs

**Isaacs Settlement Agreement re Individual Defs.DOC**
59K

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/16/19 Page 37 of 139 Page ID #:80
Case: 20-55633, 09/23/2020, ID: 11835120, DktEntry: 14-3, Page 37 of 139

Gmail - Re: CV 06-3338 remaining claims

7/2/19, 4:39 AM

# M Gmail

## Re: CV 06-3338 remaining claims

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffreydi@gmail.com>, treyhobbs@sbcglobal.net

Tue, Sep 4, 2007 at 1:50 PM

Mr. Isaacs:

I am in receipt of the signed Settlement Agreement for your claims against the individual defendants. I will prepare the proper Dismissal form for your signature, and then I can file it for you if you wish. I will forward it shortly.

I will discuss your offer to mediate the remaining claims with my client and get back to you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0736
Fax: (661) 244-4942

----- Original Message -----
**From:** JDI
**To:** rdalsoglio@dm-lawfirm.com ; treyhobbs@sbcglobal.net
**Sent:** Sunday, September 02, 2007 1:30 PM
**Subject:** CV 06-3338 remaining claims

Dear Ms Dal Soglio:

I would like to know if your client is still interested in mediation for the remaining claim against USC. You had mentioned this as a possibility over the phone a month or two ago. My goal for the mediation would be to settle at an expungement, withdrawal, or withdrawal for medical reasons. I would be willing to defer discovery, if the Court allows this, while a mediation conference is pending. Please let me know as soon as possible. I also left you voicemail regarding the papers for dismissal with prejudice re the settlement agreement. Please let me know if you will be providing these soon, otherwise, it seems that I would be able to file them on my own unless you indicate otherwise.

Regards,
Jeffrey Isaacs

**ReadNotify.com E-mail Posting-Time Digital Certificate.** On Sun, 02 Sep 2007 20:30:51 GMT the above e-mail arrived from jeffreydi@gmail.com for rdalsoglio@dm-lawfirm.com, was assigned sequence number #7027937 and ReadNotify reference **e1591c84c4efad714befad461ddbe65e**, digitally signed, and immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time they were dispatched. The following signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com.

-----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2)

19-cv-2011 Isaacs v. USC                              Exhibits Page 10

138

# M Gmail

## Re: Dismissal of CV-06-3338

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org
Cc: Susan Christopher <dmattorney@sbcglobal.net>

Wed, Jul 11, 2007 at 6:02 PM

Mr. Isaacs,

I have communicated your most recent offer to USC and, as I expected, they have rejected it. They also are not interested in making a counter-offer at this time, as it appears that we have vastly diverging views about the value of your case. The defendants and I remain confident that we will prevail in this matter.

Sincerely,
Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (661) 362-0736
Fax: (661) 244-4942

----- Original Message -----
**From:** Jeffrey D. Isaacs 99
**To:** rdalsoglio@dm-lawfirm.com
**Sent:** Wednesday, July 11, 2007 1:52 PM
**Subject:** Dismissal of CV-06-3338

Dear Ms. Dal Soglio:
As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in getting rid of this action.
Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been fortunate enough to receive a second chance: to pursue this opportunity is only possible with both the financial liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway train' and hope your client can arrive at the same rational opinion.
This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
Regards,
Jeffrey Isaacs

Gmail - [no subject]

7/2/19, 4:04 AM

# M Gmail

## (no subject)

**JDI** <jeffreydi@gmail.com>
To: MPayne@phslegal.com

Wed, Oct 17, 2007 at 7:14 PM

Hi Michael,

Just to update you, I replied to the USC lawyer about mediation and she's ignored the email and two phone calls. I suspect that she may just be offering mediation to ride out the clock on discovery.

To summarize, I think it would be helpful to have an attorney step in at this point to:

- Get a copy of the settlement agreement they seem to be dishonoring, as a prerequisite to any mediation talks

- See if the mediation options they propose are in good faith

- Get a "stay" on discovery if mediation is going to proceed, if possible

If they don't seem to be cooperative, then I guess I'd want to know what options there are with the court and subpoenas, etc

Thanks,
Jeff

 **Gmail**

## mediation

**JDI** <jeffreydi@gmail.com>
To: MPayne@phslegal.com

Fri, Oct 26, 2007 at 9:25 AM

Hello Michael,

Yesterday Robin Dal Soglio's (USC's lawyer) office called me to set up mediation. However, they apparently have chosen a mediator, whereas initially they told me they would suggest a few. I had mentioned using the court's mediation program, and they seemed to ignore this. not sure if you have wrapped up the case you were working on - when you have a chance i would appreciate your input on how i should proceed with this.

Thanks,
Jeff

19-cv-2011 Isaacs v. USC                                    Exhibits Page 13

141

## Re: mediation ⊃



**jeffreydi@gmail.com**
to Michael ▾

Nov 7, 2007, 9:07 AM   ☆   ↩

Hi Michael,

The total loans USC authorized the bank to issue to me as "cost of attendance" were $63,064. These were three separate loans, one at no interest ($8500), one at 4.5% ($30,000) and the remainder was a private loan at 9%.

The tuition for the year I attended was $40,322.

I was also thinking about USC's claim that expunging my record might be logistically difficult. I wanted to tell you that when I went out to the Court for the case scheduling conference, the judge almost laughed when he heard all I wanted was my record cleared. I don't know if the court can play a role in a possible settlement, but if they can, it would seem that this judge would have no problem signing off on an order that clears/expunges my record. So if this is right, it would seem an expungement and refund of tuition should be rather simple for USC - if they want to settle.

Regards,
Jeff

19-cv-2011 Isaacs v. USC

Exhibits Page 14

# M Gmail

## RE: mediation

**Michael Payne** <MPayne@phslegal.com>
To: JDI <jeffreydi@gmail.com>
Cc: wlisaacs@aol.com

Wed, Oct 31, 2007 at 3:43 PM

Jeff -

I just had a lengthy discussion with Robin and she seemed relieved to be
speaking to an attorney (she meant no offense to you). We discussed the
case in general terms and I reminded her that there are two sides to
every story. I further pointed out that, in my view, the University
handled the situation very badly.

In any event, without attempting to recall the entire conversation, I
told her that I would represent you at the mediation, but that a
negotiated settlement short of mediation was preferable. She agreed and
asked me what I had in mind. I told her that I would recommend that you
accept a settlement that expunged your record of admission and
attendance, together with a refund of your tuition. Her reply was that
she could probably get the University to accept your voluntary
withdrawal, but she thought that the University would not agree to any
significant monetary payment.

I told her that a voluntary withdrawal was something that could be
discussed, but that an expungement was what I was really after. I also
told her that I saw no reason why such a wealthy University would need
to retain your money under either a withdrawal or an expungement
arrangement. She promised to run it by the University and she explained
that getting anything approved in the University's administrative system
is difficult. In fact, she stated that she would only pursue the
expungement idea if I assured her that it would lead to a settlement. I
gave her that assurance, provided that the tuition was refunded as well.

We decided to put the mediation aside for the moment, and I also told
her that she did not need to respond to any further discovery requests
at this time. Is there a Court ordered discovery deadline? If so,
please let me know and I will arrange for a stay pending the completion
of settlement negotiations.

I also asked her for a copy of the settlement agreement and she promised
to e-mail it to me. She swears that she has already mailed it to you
three times. What address does she have for you?

I also need to know how much you paid to the University, whether by
direct payment or loan. If we can get all or part of that back, coupled
with an expungement of your record, I would recommend that you accept
it. Short of that, since it appears that the disciplinary record has
been sealed, a voluntary withdrawal would also probably work.

19-cv-2011 Isaacs v. USC                              Exhibits Page 15

143

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/19/19 Page 43 of 139 Page ID #:86
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 43 of 139

Gmail - RE: Isaacs v. USC

7/2/19, 4:13 AM

# M Gmail

## RE: Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>
To: rdalsoglio@dm-lawfirm.com

Mon, Dec 31, 2007 at 11:53 AM

Hi Robin -

Thank you for responding and I am sorry about all of the problems you have been having lately. I will be back in my office on Friday, the 4th, and I would like to speak to you at that time. It seems to me that a wealthy university like USC shouldn't need to retain money for schooling that it did not provide. Please remember that Jeff did not attend any second semester classes. There is a punitive aspect to the University's retention of money under those circumstances that is not warranted.

The "cleaning up" of the record is important, as well, although I would like to go even further than a voluntary withdrawal. In any event, these are things that we can discuss on Friday. If a mediator can help to bring this to a conclusion more quickly, I am certainly willing to consider that possibility. I really believe that this is a case that can be settled with just a little bit more flexibility on the University's part.

Michael

> **From:** rdalsoglio@dm-lawfirm.com [mailto:rdalsoglio@dm-lawfirm.com]
> **Sent:** Mon 12/31/2007 10:55 AM
> **To:** Michael Payne
> **Cc:** rdalsoglio@dm-lawfirm.com
> **Subject:** Re: Isaacs v. USC

Hi Michael -- I'm sorry that I haven't gotten back to you sooner. Please be assured that I, too, have approached our discussions with sincere intentions. It has simply been an unusually busy year-end, together with my daughter's accident and being evacuated from my home due to fires .... I do appreciate your patience. I am out of the office until this Thursday, Jan. 3, but am checking in remotely this morning.

I have spoken to the client but at this time their position remains unchanged. They are willing to work with Mr. Isaacs towards a resolution that includes some mechanism to "clean up" his University record, i.e., perhaps to indicate a voluntary withdrawal. But they are not willing to make any substantial monetary payment. We obviously disagree that the University's conduct was outrageous, but are confident that it was imminently reasonable. If you think that an in-person mediation might be useful to explain your position, USC is willing to consider it.

As for the discovery deadline, I am away from the office until Thursday and don't have the deadlines in mind. I will have to check the file and my office calendar when I return to work on Thursday. Perhaps we can speak on Thursday afternoon or Friday morning, and address your concerns at that time. Are you available?

Robin

-----Original Message-----
From: Michael Payne [mailto:MPayne@phslegal.com]
Sent: Monday, December 31, 2007 01:35 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC

Gmail - RE: Isaacs v. USC

7/2/19, 4:13 AM

Robin -

In your last message you stated that you would have a response to me by Monday, December 31, but I have not heard from you. I approached you with a settlement offer in good faith and I hope that I did not misjudge your intentions. You sounded sincere in your willingness to work toward a resolution. Your silence is both puzzling and troubling, particularly since you ignored my comment about the discovery deadline in your December 11 response.

If this case cannot be settled along the lines I suggested, I think that the University will be making a mistake. The more I learn about what happened, the more outrageous the University's conduct becomes. If the only alternative is to take this case to trial, so be it.

I would appreciate a response this week and I wish you a Happy New Year.

Michael

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Thu 12/13/2007 6:30 PM
To: Michael Payne
Subject: Re: Isaacs v. USC

Michael -- I am meeting with the client tomorrow and will have a response to you by Monday. Robin

----- Original Message -----
From: Michael Payne <mailto:MPayne@phslegal.com>
To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>
Sent: Tuesday, December 11, 2007 12:11 PM
Subject: RE: Isaacs v. USC

Robin -

I hope that your daughter is okay and I certainly understand if you have been occupied with more important matters. As you know, there is a fast approaching discovery deadline. If we cannot settle the case, I need to associate with local counsel in order to proceed. I had hoped that this would not be necessary given my client's very reasonable settlement offer.

Please let me know where we stand on this. If the case is not going to be settled, I need to know whether you will join in a request for an extension of the discovery deadline.

Michael

https://mail.google.com/mail/u/1?ik=ddd6cc16f1&view=pt&search=...f%3A1257367838807617892&simpl=msg-f%3A1257367838807617892&mb=1

Page 2 of 5

19-cv-2011 Isaacs v. USC

Exhibits Page 17

145

Case 2:19-cv-08000-DSF-BAO Document 1-1 Filed 09/19 6/19 Page 45 of 139ge ID #:88
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 45 of 139

Gmail - RE: Isaacs v. USC

7/2/19, 4:13 AM

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Monday, November 26, 2007 7:53 PM
To: Michael Payne
Subject: Re: Isaacs v. USC


Michael -- I do apologize for the delay in getting back to you. My 7-year-old daughter was involved in a very serious accident on Halloween, and I have not had the chance to follow up on this. I will speak with my client and get back to you this week. Robin

----- Original Message -----

From: Michael Payne <mailto:MPayne@phslegal.com>

To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>

Sent: Tuesday, November 20, 2007 11:43 AM

Subject: FW: Isaacs v. USC


Robin -


Would you please let me know the status of the settlement offer I made on November 7? I understand that there is a discovery cutoff at the end of December.


Michael


From: Michael Payne
Sent: Wednesday, November 07, 2007 11:37 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC


Robin -


As a follow-up to our recent conversation about how the case can be settled, I have learned that the total loans USC authorized the bank to issue to Jeff as "cost of attendance" amounted to $63,064. There were three separate loans, one at no interest ($8500), one at 4.5% ($30,000) and the remainder was a private loan at 9%. The tuition for the first year was $40,322.

19-cv-2011 Isaacs v. USC                                    Exhibits Page 18

146

In order to settle the case, I propose that the University refund the tuition in the amount of $40,322, and Jeff will absorb the $23,000 in additional costs. This should not be too difficult for the University to justify since Jeff was not even permitted to attend any of the second semester classes. It seems to me that the University will survive without Jeff's money.

A refund is also consistent with the second part of the offer - that Jeff's record of admission and attendance be expunged. In other words, if Jeff never attended there would obviously not have been a payment of tuition. Given everything that happened, and the fact that each side must bear some responsibility, that would seem to me to be a fair result. I also believe that if the University is reluctant to agree to expunge the record, the Court might be willing to assist us by issuing an order in connection with a settlement. In other words, if the Judge understands that the case can be resolved by expunging the record and by issuing a tuition refund, my guess is that he will do whatever he can to facilitate the settlement.

In any event, you appropriately asked me whether the case could actually be settled on this basis given the considerable effort it will take on your part to obtain the University's approval. I want to confirm that my client will agree to a settlement on the terms I have proposed.

I appreciate your courtesy and please feel free to contact me for further discussion.

Michael

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Wednesday, October 31, 2007 5:44 PM
To: Michael Payne
Subject: Isaacs v. USC

Hi Michael,

It was a pleasure speaking with you. I do look forward to working with you towards a resolution of this matter in the best interests of all parties. Towards that end, attached please find a copy of the fully executed Settlement Agreement, which led to the dismissal of the individual defendants.

Robin

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/16/19 Page 26 of 58 Page ID #:90
Case: 20-55633, 09/23/2020, ID: 11835128, DktEntry: 14-3, Page 47 of 139

Gmail - Discussion with Robin

7/2/19, 4:16 AM

 **Gmail**

## Discussion with Robin

**Michael Payne** <MPayne@phslegal.com>
To: JDI <jeffreydi@gmail.com>
Cc: webhost@webhosths.com

Tue, Jan 8, 2008 at 4:47 PM

Jeff –

USC is not willing to consider a refund of any amount and they have concluded that they cannot, as a matter of University policy or educational ethics, expunge a record. They are willing to change your record to reflect a voluntary withdrawal, but that would be apparently be effective at the end of the first semester. Robin is having a difficult time understanding why an expungement is significantly different from a voluntary withdrawal and I, of course, am not in a position to make it clear to her. Robin's position is that if you voluntarily withdraw from the University, and you don't tell anyone that you attended the University, there will never be a reason for anyone to check with USC. She may be correct.

The University is willing to participate in a mediation where the issue of a tuition refund would still be on the table, and the offer of a voluntary withdrawal would remain on the table, as well. Although I can make a passionate and well-reasoned presentation on your behalf, there is no way of telling how a mediator will react to the University's presentation, which will undoubtedly not cast your actions in the most favorable light.

The more I think about it, if you decide to mediate we should do it in person. It will be difficult for me to do the kind of wheeling and dealing I would need to do with the mediator on the telephone. The issue becomes whether you believe that you can do that much better as the result of a mediation than what is being offered now. Of course, you can proceed with litigation, but then you will need to devote a number of trips to LA and an enormous time to an effort that could end up in a loss of the case. That would definitely be worse than what is being offered.

My advice is to either take the offer of a voluntary withdrawal and put this unhappy matter behind you, or go for the mediation. I can help you with and represent you at the mediation, but since I am not licensed to practice law in California I cannot take over the litigation. In any event, I think that litigating the case any further would be a big mistake. This is the kind of a decision that you must make without emotion and in consideration of everything that is involved. If the fact that you failed to disclose that you attended USC could come back to haunt you later, that problem will remain even if you win the lawsuit (i.e., you will still have failed to disclose that you attended USC). It may actually be easier to explain why you failed to disclose you attendance at USC if you voluntarily withdrew. You could simply say that it was an unhappy experience, that you made a mistake, and that you wanted to put it behind you.

Please let me know what you would like to do. I feel that my discussions with Robin have been exhausted.

Gmail - FW: Isaacs v. USC

7/2/19, 4:20 AM

 Gmail

## FW: Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>
To: jeffreydi@gmail.com
Cc: wlisaacs@aol.com

Tue, Jan 29, 2008 at 1:46 PM

**From:** Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
**Sent:** Tuesday, January 29, 2008 1:40 PM
**To:** Michael Payne
**Subject:** Re: Isaacs v. USC

Michael --

Unfortunately, after extensive discussion and research, the University has determined that it is not able to alter school records along the lines of our discussions. However, pursuant to the earlier settlement with Mr. Isaacs in connection with his dismissal of the individual defendants, USC will not release any information concerning Mr. Isaacs' disciplinary or academic record without written authorization from him.

In a showing of good faith, the USC is willing to offer Mr. Isaacs $5,000 for a complete dismissal of the lawsuit, with prejudice, and a full general release.

Robin

----- Original Message -----

**From:** Michael Payne

**To:** Robin D. Dal Soglio

**Sent:** Tuesday, January 29, 2008 7:14 AM

**Subject:** RE: Isaacs v. USC

19-cv-2011 Isaacs v. USC                    Exhibits Page 21

149

7/2/19, 4:20 AM

Robin –

Your failure to follow-up on our settlement discussions, as you promised to do, and your failure to even reply to my e-mail message below are discourteous and unprofessional. I apparently misjudged your intentions and your willingness to negotiate a reasonable settlement. I thought that I could bring the litigation to an amicable conclusion, but it is obviously impossible for me to do so without the cooperation of opposing counsel.

The settlement offer I made in our recent discussion will be off the table at the end of this week, and the litigation will then resume. I assume that you will join Jeff in a motion to extend discovery and that you will respond to his outstanding discovery requests in an expeditious manner.

Michael

**From:** Michael Payne
**Sent:** Wednesday, January 23, 2008 4:06 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** Isaacs v. USC

Robin –

I really have tried to be reasonable and to work with you to achieve a reasonable resolution of this case. Unfortunately, your lack of response, even when it seemed like there was no impediment to a settlement, is mystifying. I anticipated receiving word from you after our last discussion where a minor point, the granting of a voluntary withdrawal after the first semester, was the last remaining issue. Of course, the possibility of mediating the issue of a tuition refund is also on the table.

At this point, I would appreciate if you would tell me, once and for all, whether the settlement I have proposed is acceptable. If it is not, the outstanding discovery request must be responded to and the litigation must go forward. If that happens, since I am not admitted to practice in California, my client will either continue to go forward pro se, or local counsel will be engaged. Does the University really want this case to go forward when it can be settled so easily?

I would appreciate a timely response.

Michael

150

Gmail - Isaacs v. USC

 Gmail

## Isaacs v. USC

**Michael Payne** <MPayne@phslegal.com>
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Wed, Jan 30, 2008 at 4:24 PM

Robin –

I interpret your failure to respond to my message yesterday as a refusal to negotiate any further. Quite frankly, I now understand why Jeff was so frustrated by your slow and untimely responses. If that is simply your negotiating style when dealing with pro se litigants or opposing counsel, it is unprofessional. In an event, I am withdrawing from any further involvement. The only thing that remains is that Jeff needs to know whether you will join in a request for an extension of time to complete discovery.

If you do not respond positively, or promptly, I will assist Jeff to present the matter to the Court.

Michael

**From:** Michael Payne
**Sent:** Tuesday, January 29, 2008 4:12 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** RE: Isaacs v. USC

Robin –

I am a little confused. I interpret your message to mean that the University will not fix a date of withdrawal at the end of the first semester, as I suggested. Are you still offering a "voluntary withdrawal?" If so, might it be possible to settle the case based upon a voluntary withdrawal coupled with mediation on the tuition refund issue? I don't want to go back to Jeff without a full, and clear, understanding of what the University is actually offering.

You need to give me something to work with if this case has any chance of settling.

19-cv-2011 Isaacs v. USC                                    Exhibits Page 23

151

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/16/19 Page 52 of 159 Page ID #:94
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 51 of 139

Gmail - Re: CV 06-3338 remaining claims                                                                          7/2/19, 4:23 AM

# M Gmail

## Re: CV 06-3338 remaining claims

**Jeffrey D. Isaacs** <jeffrey.isaacs@alumni.insead.edu>                              Wed, Jan 30, 2008 at 5:50 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Michael Payne <MPayne@phslegal.com>

Ms. Dal Soglio:

On September 5th, you confirmed that you would look into the
possibility of mediating this case. There was no ambiguity (see
attached email) that such a mediation session would concern further
cleaning my academic record, as opposed to monetary settlement. In
mid-October, you answered in the affirmative regarding this mediation,
and asked to schedule it along with my local attorney, Michael Payne.
In the meantime, on September 22nd you were served via a digitally
encrypted and tracked PDF file containing the Second Request for
Documents. Previously, you consented to this form of electronic
service. Furthermore, you signed for the paper courtesy copy I sent to
your Valencia office. You have not responded to the Second Request for
Documents, and you recently made a settlement offer (which baffles me)
of $5000, which was against our prior agreement to mediate a
withdrawal or expungement.

When Mr. Payne contacted you in late October to arrange the mediation,
you were already in default on responding to my discovery request.
Believing your intent to schedule this mediation was sincere, I didn't
raise the discovery issue with you. Obviously this would be a moot
point, had the case settled.

It also appears you made a verbal offer last week to Mr Payne to
permit a voluntary withdrawal, then retracted this offer?

Where is your response to my second request for documents? Given that
this is clearly your mistake and/or deceptive strategy, that is, the
mediation with a withdrawal on the table that you promised never
existed, will you draft the paperwork for an enlargement of time? Your
deadline for the discovery production is seriously past due, and this
is certainly not the first time you have ignored the Federal Rules.

Please respond by February 1st, in full to my concerns to avoid
involvement with the Court. By in full, I mean your written and
complete response to the past-due Second document request, along with
a stipulation that you will draft the enlargement of time motion,
which is necessary due to either your intentional misrepresentation or
unintentional 'mistake.'

Regards,
Jeffrey D. Isaacs

On Sep 5, 2007 3:20 PM, Robin D. Dal Soglio <rdalsoglio@dm-lawfirm.com> wrote:

https://mail.google.com/mail/u/T?ik=ddd6cc16f1&view=pt&search=a...f%3A1260108851005370571&simpl=msg-f%3A1260108851005370571&mb=1          Page 1 of 3

19-cv-2011 Isaacs v. USC                                               Exhibits Page 24

152

Case 2:19-cv-08000-DSF-RAO Document 1-1 Filed 09/16/19 Page 31 of 250 Page ID #:95
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 52 of 189

Gmail - Re: Settlement Offer

7/2/19, 4:51 AM

# M Gmail

## Re: Settlement Offer

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com

Fri, Mar 14, 2008 at 6:09 PM

That is correct. The terms of such a settlement would represent a
total and full cancellation of tuition consideration previously paid,
less reasonable admin charges.

As part of this agreement, I would like a statement (which can be
sealed) that neither party is required to disclose my enrollment at
USC because the enrollment contract was effectively cancelled. This
is the slight variation from the currently sealed record that permits
me to accept a settlement around $20,000 , as it reduces/eliminates
potential career/financial risk down the road.

Hence, this settlement would not seek any revised
transcripts/withdrawal/expungement, it would simply be an agreement of
full non-disclosure and tuition consideration cancellation.


On Fri, Mar 14, 2008 at 5:38 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
>
>
>
>
> Dear Mr. Isaacs:
>
>
>
> I want to make sure I understand before I communicate your offer to USC.
> Are you suggesting that the settlement would be somehow referred to as a
> "refund of tuition, less administrative charges." The documentation would
> then include an agreement between the parties as to what the net amount of
> the settlement would be. Is that what you are saying?
>
>
>
> Robin D. Dal Soglio
>
>
>
>
>
> From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> Sent: Friday, March 14, 2008 12:43 PM
> To: rdalsoglio@dm-lawfirm.com

19-cv-2011 Isaacs v. USC                                    Exhibits Page 25

153

Gmail - Re: Settlement Offer

7/2/19, 4:51 AM

> Subject: Re: Settlement Offer
>
>
>
>
>
> Ms Dal Soglio:
>
>
>
>
>
> No, I did receive and understand your email yesterday. Perhaps you
>
>
> didn't understand that I was proposing a lower Net Settlement amount,
>
>
> after reimbursement of administrative expenses for USC. In other
>
>
> words, this is an accounting mechanism whereby USC would refund my
>
>
> tuition, but only pay a settlement in the $10-$20,000 range. This
>
>
> would seemingly satisfy the requirements of all parties (i.e. limiting
>
>
> disclosure liability and simultaneously settling the case in a lower
>
>
> range of $20,000 or less.
>
>
>
>
>
> Regards
>
>
> Jeffrey Isaacs
>
>
>
>
>
>
>
>
>
> On Fri, Mar 14, 2008 at 3:20 PM, Robin Dal Soglio
>

19-cv-2011 Isaacs v. USC                                    Exhibits Page 26

154

Case 2:19-cv-08000-DSF-RAO  Document 1-1  Filed 09/16/19  Page 33 of 139  Page ID #:97
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 54 of 139

Gmail - Re: Rule 37 Conference

7/4/19, 2:33 AM

# M Gmail

## Re: Rule 37 Conference

**JDI** <jeffreydi@gmail.com>
To: rdalsoglio@dm-lawfirm.com

Thu, Mar 20, 2008 at 1:52 PM

i will call in about 15 minutes

On Thu, Mar 20, 2008 at 1:51 PM, <rdalsoglio@dm-lawfirm.com> wrote:
> Jeff - I am still available and will be until 1:00 my time. Please call at your convenience.
>
> Robin D. Dal Soglio
>
> Sent from my Verizon Wireless BlackBerry
>
> -----Original Message-----
>
> From: rdalsoglio@dm-lawfirm.com
>
> Date: Thu, 20 Mar 2008 03:11:10
> To:"JDI" <jeffreydi@gmail.com>
> Subject: Re: Rule 37 Conference
>
>
>
> 10:00 am is fine.
>
> Sent from my Verizon Wireless BlackBerry
>
> -----Original Message-----
>
> From: JDI <jeffreydi@gmail.com>
>
> Date: Wed, 19 Mar 2008 22:54:54
> To:rdalsoglio@dm-lawfirm.com
>
> Subject: Re: Rule 37 Conference
>
>
>
>        on-behalf-of jeffreydi@gmail.com; Thu Mar 20 02:54:57 2008 Received: from rv-out-0910.google.com (rv-out-
0910.google.com [209.85.198.191])        by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id m2K2suHV014253        for ;
Thu, 20 Mar 2008 02:54:57 GMT Received: by rv-out-0910.google.com with SMTP id c24so334081rvf.47 for ; Wed,
19 Mar 2008 19:54:54 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=gmail.com; s=beta;
h=domainkey-signature:received:received:message-id:date:from:to:subject:in-reply-to:mime-version:content-type:
content-transfer-encoding:content-disposition:references; bh=m85IhjE1JynaogyvAyy2HcGHNM3rlA
QT6HfRMBXyUog=; b=oXQ9RNRQPqKM4sXqKlLyu/ayUG9hLJ2QwSaJrBlbyhZaP5sG2m+
bWRw47gX8I6AbDkxN11kdXeq788X5ZKY2LstksPyrL8eFfL3sQ83qtnpk27VMnhj4n3LnuINB9T2I/BvAL+
sMP9R8J84exxncB0zwxcPM91uJhsGTVRFrz1w= Received: by 10.141.123.4 with SMTP id a4mr551707rvn.172.
1205981694592; Wed, 19 Mar 2008 19:54:54 -0700 (PDT) Received: by 10.141.53.13 with HTTP; Wed, 19 Mar 2008
19:54:54 -0700 (PDT) Message-ID: Date: Wed, 19 Mar 2008 22:54:54 -0400 From: JDI To: rdalsoglio@dm-

19-cv-2011 Isaacs v. USC

Exhibits Page 27

155

Gmail - Re: Rule 37 Conference

7/4/19, 2:33 AM

lawfirm.com Subject: Re: Rule 37 Conference In-Reply-To: References:     Reply-To: JDI MIME-Version: 1.0
Content-Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: quoted-printable Disposition-Notification-
To: "them" X-Confirm-Reading-To: jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Return-Receipt-To:
jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Notice-Requested-Upon-Delivery-To: jeffreydi@gmail.com.
kdsbzmpgxtnxyav.emsvr.com Errors-To: jeffreydi@gmail.com.kdsbzmpgxtnxyav.emsvr.com -->
>
> It might be helpful to set a time. I am available from 8-9AM PST and
> after 10AM PST.
>
>
> On Wed, Mar 19, 2008 at 6:23 PM, <rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> > wrote:
> > Mr. Isaacs:
> >
> > I will be back in the office tomorrow and will be happy to discuss the discovery issues with you.
> >
> > Robin Dal Soglio
> > Sent from my Verizon Wireless BlackBerry
> >
> >
> >
> > -----Original Message-----
>
> > From: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu <mailto:jeffrey.isaacs.wg03@wharton.upenn.edu> >
> >
> > Date: Wed, 19 Mar 2008 17:48:49
>
> > To:rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink" <robinmfink@hotmail.com
<mailto:robinmfink@hotmail.com> >
> > Subject: Rule 37 Conference
> >
> >
>
> > on-behalf-of jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> ; Wed Mar 19 21:48:52 2008 Received: from wf-
out-1314.google.com (wf-out-1314.google.com [209.85.200.171]) by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id
m2JLmpdN023564 for ; Wed, 19 Mar 2008 21:48:52 GMT Received: by wf-out-1314.google.com with SMTP id
28so658700wfc.14 for ; Wed, 19 Mar 2008 14:48:49 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256;
c=relaxed/relaxed; d=gmail.com; s=beta; h=domainkey-signature:received:received:message-id:
date:from:sender:to:subject:mime-version:content-type:content-transfer-encoding:content-disposition:x-google-sender-
auth; bh=EM/O/9KdCprqVEvwBylaxfjZYjfOGdvHh/xtNFUrZRY=; b=cj4aHYoYLCE7wtgSZDVkL+
J4YzNRd7SyBfTzs7Q3Vh3AQ9gLvrWepskGkGNOKS2sEzyZYanzYwpMo1h4Zm
YHpyeX83ERDxJbuuBeqoiQwmOFmJtSz3FUHzrkcyTfTf9DMJM/0P74W1Sse9C20PN4+
BDMEdz5F1JEk08dnxUlhuA= Received: by 10.143.6.1 with SMTP id j1mr684218wfi.45.1205963329256; Wed, 19
Mar 2008 14:48:49 -0700 (PDT) Received: by 10.142.216.7 with HTTP; Wed, 19 Mar 2008 14:48:49 -0700 (PDT)
Message-ID: Date: Wed, 19 Mar 2008 17:48:49 -0400 From: JDI Sender: jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com> To: rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink"
Subject: Rule 37 Conference X-Google-Sender-Auth: 9e40791bcd1b825a Reply-To: JDI MIME-Version: 1.0 Content -
Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: 7bit Disposition-Notification-To: "them" X-Confirm-
Reading-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoh.emsvr.com> Return-Receipt-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com
<mailto:jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com> Notice-Requested-Upon-Delivery-To:
jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com>
Errors-To: jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoi.emsvr.com> -->
> >
> > Ms Dal Soglio:
> >
> > I attempted to telephone your office today but received voicemail for

19-cv-2011 Isaacs v. USC                                      Exhibits Page 28

156

> > both you and your paralegal. Three weeks ago you informed me that your
> > paralegal would discuss my discovery issues. Last week I was informed
> > that your firm believes that it has no more discovery to produce. Will
> > you teleconference on this issue, or am I to file a motion to compel
> > without your joint stipulation? It seems you have been aware of my
> > concerns for weeks - if not months - and once again, these delays are
> > rather concerning.
> >
> > Please note that all outstanding settlement offers are canceled, as
> > per the emails last week; Nonetheless I remain willing to discuss them
> > if you have made any progress with your client.
> >
> > Regards
> > Jeffrey Isaacs
> >

> > ReadNotify.com E-mail Posting-Time Digital Certificate. On Wed, 19 Mar 2008 21:48:54 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&amp;when=Wed, <http://www.ReadNotify.com/timezone.asp?
zone=&when=Wed,> 19 Mar 2008 21:48:54 GMT> the above e-mail arrived from jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com> <mailto:jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> > for rdalsoglio@dm-
lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> <mailto:rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-
lawfirm.com> > , was assigned sequence number #8399695 <http://www.readnotify.com/readnotify/showsig.asp/
8399695.htm#8399695 <http://www.readnotify.com/readnotify/showsig.asp/8399695.htm#8399695> > and ReadNotify
reference 49acad30c8e6081f4309e929f8c1bb41, digitally signed, and immediately dispatched. NB: This certificate
irrevocably links the body and headers of this email to the date and time they were dispatched. The following
signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com
<http://www.ReadNotify.com> <http://www.readnotify.com/readnotify/postcert.asp/8399695.htm#8399695
<http://www.readnotify.com/readnotify/postcert.asp/8399695.htm#8399695> > . -----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate #8399695, created Wed, 19
Mar 2008 21:48:54 GMT iQBvAwUBR+GKRjanThAdit3tAQEw6gLQkbYswgIjjREHGt8/d78KaSinYG4IO28v
IFGt9sWbHLIKcYxYzDuP6KKwKDbfKlwsczC4ucpLsd5cLTTB7/Z8egmR4PememQ4 3LSvPGO/YtuxFywZpD3zrZV6
=Le/U -----END PGP SIGNATURE-----
>
> >
> > <>
> >
> > Rule 37 Conference Rule 37 Conference
>
>
>
> ReadNotify.com E-mail Posting-Time Digital Certificate. On Thu, 20 Mar 2008 02:54:58 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&when=Thu, 20 Mar 2008 02:54:58 GMT> the above e-mail arrived
from jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> for rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-
lawfirm.com> , was assigned sequence number #8401223 <http://www.readnotify.com/readnotify/showsig.asp/
8401223.htm#8401223> and ReadNotify reference 7242c15d06dfd77f8d82a78a4adc85af, digitally signed, and
immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time
they were dispatched. The following signature is now published online; to view it, verify it, or for more information,
please visit www.ReadNotify.com <http://www.readnotify.com/readnotify/postcert.asp/8401223.htm#8401223> . -----
BEGIN PGP SIGNATURE----- Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate
#8401223, created Thu, 20 Mar 2008 02:54:58 GMT iQBvAwUBR+HSAzanThAdit3tAQET7ALPVyz1yVs9
wgQPkzH1xrOqn9TvDt6RUNr7 TXnXHaKXAgKfMq1J3/CjGov1eeYXjJBspneD/
MseTQWwspxBWdzQ1aCl6WgnGEXN FRmxumOfgsvfBCRQpV+m+w3+ =5A6y -----END PGP SIGNATURE-----
>
> <>
>

19-cv-2011 Isaacs v. USC                                    Exhibits Page 29

157

Gmail - Follow up to Rule 37 Conference

7/4/19, 2:33 AM

# M Gmail

## Follow up to Rule 37 Conference

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Thu, Mar 20, 2008 at 5:32 PM

Ms Dal Soglio:

I understand you will be providing written responses to me on Monday -
I assume these will be electronic so that the March 31st filing
deadline can be met.

It remains my position that USC views this matter in an
over-simplified way, consisting of several procedural rubber stamps
that absolutely failed to investigate the substance of the
cross-allegations.

As discussed, I am attaching some excerpts from interrogatories I
answered for Mr Payne, as well as an affidavit I prepared. As always,
if your client is interested in actually mediating on such issues, I
am available by phone and /or videoconference.

Regards
Jeffrey Isaacs

"Upon leaving the SPC meeting, Fred Kuyt telephoned me, he was very
upset. He said that he was beyond his ability to help, that this case
had somehow enough become me versus the something much larger. He
told [in his exact words] me to "sue the fuck" out of USC, that they
had "screwed" me, that it was entirely wrong what had happened. These
were his exact words; he recommended that I sue USC. He said he had
absolutely no respect for Katsufrakis, rather, disdain. He further
commented that Henderson, in his opinion, wasn't "impressive,"
neither as an Oncologist nor a Dean.
...

I felt that this whole ordeal gave Katsufrakis some form of perverse
pleasure. He seemed to take an interest in me that went above and
beyond that of Deans I have previously interacted with at other
schools. In our meeting, Katsufrakis would frequently look strangely
at my clothes, my shoes, etc and treat me in an odd manner. He
commented on my clothes and "sophisticated" style of dress, and made
comments that could be construed as improper advances. There were
always double-entendres; he asked me how I felt being "caught with my
pants down" in reference to the behavior I attribute as a reaction to
harassment from others, and my disability. I believe his handling of
the entire manner had ill intentions. To make matters worse, he knew
that I was afraid of the NIH involvement and played on my fears. He
took advantage of this fact.
...

I had an anxiety disorder (PTSD) and was taking the wrong medication
at the time all this unraveled. To the extent that any of emails

19-cv-2011 Isaacs v. USC

Exhibits Page 30

158

indeed showed anxiety that was not abnormal , there can be little doubt that such anxious behavior immediately ceased upon correction – i.e. cessation - of the incorrect medication. To me, the disability claim in my case is supported by the fact that USC still refuses to acknowledge the role of my disability – and improper medication – on this situation. I never would have done anything illegal at USC, and their defense that they were looking out for student safety represents an unfortunate stigma, and nothing more.

...

I am happy that Keck has found a new Dean who seems passionate about an environment that fosters academic enrichment and quest for medical knowledge. As I mentioned in an earlier settlement paper, I also strongly feel USC is better off without Katsufrakis. I believe a good Dean , with good motives, could have easily averted this whole situation.

19-cv-2011 Isaacs v. USC

Exhibits Page 31

159

# M Gmail

## RE: Receipt of Documents; Motion/Appeal status

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Wed, Mar 26, 2008 at 3:37 PM

Mr. Isaacs:

I believe that the documents produced cover more than one request. I will
be sending you my portion of the Joint Stipulation later today and it should
clarify that there are very few disputes remaining.

I also have a few additional documents which I plan on producing to you
today. Would you like me to have the scanned and emailed to you, as I did
yesterday. If so, I can simply add it to the cost of yesterday's production
to be deducted from your deposit. Otherwise, I will mail them to your
address of record.

I do not believe that the judge will give me a continuance for my SJ filing
deadline, even upon stipulation of the parties. What I suggest is that I
proceed with filing my SJ motion, but then we can submit a stipulation to
continue the hearing date (and the filing deadlines for your opposition and
my reply), until after resolution of the motion to compel. That way, we can
assure that you have all documents, if any, to which the judge determines
you are entitled prior to having to oppose the motion for SJ.

With respect to your settlement offer, USC rejects your offer to the extent
that it purports to characterize the settlement as a "tuition
reimbursement." USC's offer to settle this matter for $10,000 total will
remain open until 5:00 p.m. on April 7, 2008.

Sincerely,
Robin Dal Soglio

Robin D. Dal Soglio
DAL SOGLIO & MARTENS LLP
27240 Turnberry Lane, Suite 200
Valencia, California 91355
Phone (661) 362-0736
Fax (661) 244-4942

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Wednesday, March 26, 2008 10:26 AM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com; Robin Dal Soglio
Subject: Receipt of Documents; Motion/Appeal status

Ms Dal Soglio:

# M Gmail

## USC Settlement Acceptance Terms

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>
Wed, Mar 26, 2008 at 5:47 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>

Dear Ms Dal Soglio:

I wish to make an in - principal terms agreement which hereby accepts
the $10,000 settlement offer your client made today. The following
terms are drafted as per our conversation this afternoon.

1) USC issues immediate compensation of $7,250 to me in exchange for
an immediate bilateral general release and dismissal of CV-06-3338.
Specifically, from this point forward, no appeals will be filed now
will any additional motions be filed.

2) In approximately six months, USC agrees to re-hear, confidentially
and in good faith, my appeal of student status among a group of five
to twenty Keck faculty members. I hereby represent that this appeal
would present substantial new information. I submit that this
significant new information would outweigh evidence presented two
years ago regarding my ability to conform to the Keck School of
Medicine essential characteristics. .

3) In the event Isaacs and the appeal committee are unable to reach a
mutually agreed upon appeal outcome, USC will issue the remaining
compensation of $2,500 under the settlement terms offered.

I would appreciate a response on this as soon as possible, given the
time constraints you recognized.

Regards,
Jeffrey Isaacs

19-cv-2011 Isaacs v. USC                    Exhibits Page 33

# M Gmail

## Re: Isaacs v. USC Settlement Agreement

JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>                                    Mon, Mar 31, 2008 at 5:21 PM
To: Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>, rdalsoglio@dm-lawfirm.com.certified.readnotify.com

Hopefully, in response to this email, you can send me a FINAL PDF copy
that I will SIGN AND RETURN.

On Mon, Mar 31, 2008 at 5:20 PM, JDI
<jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:
> I just received this email. Unfortunately I thought that USC was at
> least acknowledging that there is a factual dispute -- not denying
> right or wrong -- and agreeing that I don't need to disclose anything
> because it is disputed and was never determined as right or wrong in a
> Court of law. I don't see how this creates any problem for them - it
> is simply saying the case settled for $10000 before it was tried on
> its merits, and as such, that I don't need to disclose anything about
> any related history.
>
>
>
> On Mon, Mar 31, 2008 at 3:44 PM, Robin Dal Soglio
>
>
> <rdalsoglio@dm-lawfirm.com> wrote:
> > Mr. Isaacs:
> >
> > I have forwarded your inquiry to my client, as it again re-opens the issue
> > of your desire to have USC advise you on what you do or do not have to
> > disclose to 3rd parties about your academic and disciplinary history at USC.
> > As you know, I have repeatedly made clear that USC cannot advise you or
> > provide you any assurances concerning your obligations in that regard.
> > Contrary to your assertion, this was not limited to their reluctance to
> > alter records. I also previously rejected your request to characterize the
> > settlement payment as a "tuition reimbursement" on the same grounds. What
> > you choose to disclose to 3rd parties about your educational/disciplinary
> > history at USC is a private matter between you and any 3rd parties you deal
> > with. Nevertheless, I have forwarded your request to expand the language to
> > include "this matter and related history."
> >
> > I will respond as soon as I hear back from USC.
> >
> > Robin Dal Soglio
> >
> >
> > -----Original Message-----
> > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> >
> >
> > Sent: Monday, March 31, 2008 12:02 PM

162

> > To: Robin Dal Soglio
> > Subject: Re: Isaacs v. USC Settlement Agreement
> >
> > I agree with your comments about MSJ.
> >
> > My query on "this matter" was on the revised settlement agreement.
> > Does this refer only to the lawsuit or the entire academic history. If
> > USC can agree that I don't need to disclose any of this matter -- ie
> > anything in 2005-2006 at USC< then i will accept your proposed revised
> > agreement. please advise ASAP.
> >
> > As far as the MSJ, no surprises there.
> >
> > On Mon, Mar 31, 2008 at 2:51 PM, Robin Dal Soglio
> > <rdalsoglio@dm-lawfirm.com> wrote:
> > > Mr. Isaacs:
> > >
> > > We can include a sentence at the end of Paragraph 14.c. (erroneously
> > labeled
> > > as d. in the prior draft) that states "However, the parties further agree
> > > that Isaacs is not required to disclose this matter to anyone." Keep in
> > > mind, the court does not approve the settlement terms themselves, just
> > the
> > > dismissal. I have attached the revised Agreement to include this term.
> > I
> > > am also attaching the Stipulation of Dismissal for your review.
> > >
> > > Do you have other comments to the Settlement Agreement?
> > >
> > > Attached is a copy of the MSJ. I understand that you will disagree with
> > > much that is stated in here. However, Mr. Isaacs, I strongly encourage
> > you
> > > to not become distracted on the MSJ. Let's focus on settling this matter
> > > and putting it behind us. I believe it would be a waste of time to start
> > > going back and forth about the contents of the MSJ, and I am not going to
> > > spend any of my time doing so.
> > >
> > > Please let me know if you have additional comments to the Settlement
> > > Agreement. Otherwise, please pdf the executed Settlement Agreement to me
> > as
> > > soon as possible.
> > >
> > > Sincerely,
> > >
> > > Robin D. Dal Soglio
> > >
> > > -----Original Message-----
> > > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> > > Sent: Monday, March 31, 2008 10:16 AM
> > > To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
> > > Subject: Re: Isaacs v. USC Settlement Agreement
> > >
> > >
> > > Dear Ms Dal Soglio:
> > >
> > > I have read the proposed settlement agreement. With respect to

19-cv-2011 Isaacs v. USC       Exhibits Page 35

163

> > > paragraph 14, as you know I have no desire to disclose this matter to
> > > anyone. However, by signing off that the matter has been resolved, I
> > > would have difficulty answering future applications. Do you think
> > > there is  away to do this where the Court approves a settlement that I
> > > have no requirement to disclose this matter to anybody?
> > >
> > > Also, will you be sending me the SJ motion in PDF now so I can review
> > > your clients view of events?
> > >
> > > Jeffrey Isaacs
> > >
> > > On Mon, Mar 31, 2008 at 1:03 PM, Robin Dal Soglio
> > > <rdalsoglio@dm-lawfirm.com> wrote:
> > > >
> > > >
> > > >
> > > >
> > > > Mr. Isaacs:
> > > >
> > > >
> > > >
> > > > Attached please find the draft settlement agreement.  Please
> > sign/initial
> > > > where indicated and return the Agreement to me via pdf.
> > > >
> > > >
> > > >
> > > > Thank you,
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > >
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > > DAL SOGLIO & MARTENS LLP
> > > >
> > > > 27240 Turnberry Lane, Suite 200
> > > >
> > > > Valencia, California  91355
> > > >
> > > > Phone (661) 362-0736
> > > >
> > > > Fax (661) 244-4942
> > > >
> > > >
> > > >
> > > >
> > >
> > >
> >
> >
> >

19-cv-2011 Isaacs v. USC                                    Exhibits Page 36

164

Case 2:19-cv-08000-DSF-RAO   Document 1-1   Filed 09/16/19   Page 64 of 139   Page ID #:107
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 64 of 139

Gmail - RE: Isaacs v. USC Settlement Agreement

7/2/19, 5:21 AM

# M Gmail

## RE: Isaacs v. USC Settlement Agreement

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Mon, Mar 31, 2008 at 7:05 PM

That language is acceptable. The pdf is attached.

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Monday, March 31, 2008 3:03 PM
To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
Subject: Re: Isaacs v. USC Settlement Agreement

Ms Dal Soglio:

I hope you can appreciate that the wording here is quite important to
me. I am not trying to drag this on. With the wording you propose, I
just want to make the paragraph a bit more specific. Let me know if
tis is ok for 14c. If so forward me the final version and i will
review it with my attorney for signing.

c) If Isaacs is asked about his claims against USC, including breach
of enrollment contract and wrongful dismissal, and only if asked, he
may state only that "the matter has been resolved." However, the
parties further agree that Isaacs is not required to disclose this
matter to anyone.

On Mon, Mar 31, 2008 at 5:53 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
> Mr. Isaacs:
>
> USC will agree to either of the following --
>
>
> "However, the parties further agree that Isaacs is not required to
disclose
> this matter to anyone."
>
> OR
>
>
> "The parties further agree that nothing in this Agreement requires Isaacs
to
> disclose this matter or any related history to anyone."
>
> Please advise whether either of these is acceptable.
>
>
> Robin D. Dal Soglio
>

# ASSOCIATED ATTORNEYS
## OF NEW ENGLAND

USC OFFICE OF GENERAL COUNSEL
Via Email:

RE: Jeffrey Isaacs v. USC

To Whom It May Concern,

I represent Dr. Jeffrey Isaacs and am authorized to send you this brief outline of my client's position with the intention of scheduling a meeting to discuss possible resolution short of litigation. You will find the complaint filed against you by my client attached. This matter originates with Dr. Isaacs time as a Keck medical student. He was dismissed from the program while undergoing treatment for a head injury. He signed two settlement agreements with Keck to allow him a chance to start again in his pursuit a career in medicine. Despite the sealed nature of these records they were disclosed to Dartmouth, via the actions of John Doe, and needlessly ended the career of a talented physician. The unacceptable result is that Dr. Isaacs currently faces lifelong career and reputational assassination.

I anticipate discovery will show that the Keck SPC individual faculty members never would have imagined their actions would effectively punish Dr Isaacs for ultimately excelling in medical school, which is what has happened. Though they were acting as agents of the college at the time it is expected that Ball and Henderson's retaliation and the intended effects of the same were hidden from USC and other institutions. Given the behavior of Ball and Henderson and the eventual release of Dr. Isaacs' records by USC Keck is liable for the horrific events that Dr. Isaacs has suffered for the last ten years.

The New Hampshire Board, a competent authority, found that USC breached their

587 Union Street, Manchester, New Hampshire 03104
Tel: 603-622-8100 Fax: 888-912-1497

166

settlement promises to Dr Isaacs by failing to discharge his negative administrative record. The NH Board order has withstood review at both the New Hampshire Supreme Court and the United States Supreme Court. In view of the breached contract and your apparent liability for John Doe's disclosure of sealed academic records, we submit that this matter is very much ongoing and unsettled. Keck has an opportunity to correct damages inflicted from their past mistake of favoring a student who had, in her own words, been admitted only through her NIH connections and contributions to the Dean. Dr. Isaacs was undergoing treatment for a concussion at the time of the SPC dismissal; any jury will find it unconscionable if Keck continues to assert that Dr. Isaacs, who later excelled in medical school, deserves lifelong punishment because of a student whose place in medical school was obtained through *quid pro quo*. It is also expected that discovery will show what Dr. Isaacs always claimed, that the discipline Dr. Isaacs suffered was particularly harsh because that student's father oversaw government funding to the institution.

Admittedly, Keck USC is in an interesting position with regards to this case. On the one hand, the actions of Attorney Ball and others mentioned are retaliation in violation of RICO, but on the other, it does not appear that it was ever USC faculty's intention to bar Dr. Isaacs from rehabilitating and practicing medicine. This point, before service of the complaint offers us a short lived opportunity to resolve these issues.

Local Rule 16-15 states that it is the policy of the Court to have the parties discuss settlement. I am reaching out to you with the intention of conducting in person settlement discussions via a California licensed mediator/ADR, prior to requiring your answer or response to the complaint. Dr. Isaacs is a promising physician who has been looking for an opportunity to pursue his chosen career, and he is hopeful that the school where he began that path will reverse course and aid him in fulfilling that goal. USC is in a unique position to remedy the wrongs that,

167

Associated Attorneys of New England
August 3, 2018
Page 3 of 3

as we can detail in the ADR, lead to a chain of misinformation and mistreatment at downstream institutions, and ultimately, White House factfinding and the World Bank President's resignation.[1]

In 2007, Dr Isaacs, *pro se*, appeared at the scheduling conference with United States District Judge Feess. He stated he wanted nothing from the lawsuit other than readmission to Keck. Feess, apparently incredulous that the matter had reached his courtroom, asked the parties to work out a settlement. Keck, apparently at the direction of Ball and Henderson, chose not to do the right thing. One can only hope, after over a decade of my client's suffering, we will not be making the same argument to United States District Judge Fischer.

In efforts to advance prompt exchange of information and reduce litigation costs, my client is willing to pay for the proposed ADR/mediation.[2] Kindly, accept or decline his offer at your earliest convenience.

Regards,

Atty. Keith A. Mathews

---

[1] USC's incoming President was also Jim Yong Kim's successor at Dartmouth, and had some duty to investigate the matter that ultimately, we believe, lead to White House questioning and said resignation. These matters will be detailed in discovery in the event Dr. Isaacs' RICO claims progress.

[2] If he would be willing/able to take the case, we propose Judge Gary A. Feess as an ADR mediator at Phillips ADR. We believe his potential; recollection of the case, at a relatively early time in the current dispute, would be beneficial to both sides. Alternatively, please provide us three other mediators to choose from.

587 Union Street, Manchester, New Hampshire 03104
Tel: 603-622-8100 Fax: 888-912-1197
19-cv-2011 Isaacs v. USC                                    Exhibits Page 40

168

# M Gmail

## [FWD: Re: Isaacs matter]

**keith@aaone.law** <keith@aaone.law>
To: Jeffrey Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu>

Fri, May 31, 2019 at 8:08 AM

Not good, let me think about the best way to handle.

Keith

-------- Original Message --------
Subject: Re: Isaacs matter
From: Andreas Joerg Meyer <andreasm@usc.edu>
Date: Thu, May 30, 2019 8:15 pm
To: "Keith Mathews, Esq." <keith@aaone.law>

Mr. Mathews,
I am in receipt of your correspondence and the complaint filed by your client.

The University of Southern California (USC) unequivocally rejects your client's request to engage in mediation. Not only does the University dispute the facts set forth in the complaint and in your letter, but we believe the complaint to suffer from so many legal deficiencies and factual inaccuracies that it is not only inviable but also frivolous and harassing. We demand that the complaint be dismissed in its entirety immediately. If your client proceeds with the complaint, USC will not only mount a vigorous defense, but we will also pursue all remedies available to the University, including sanctions under Rule 11 and a counterclaim for liquidated damages, costs, and attorneys' fees caused by your client's breach of more than one provision contained in the Confidential Settlement Agreement and Release he entered into with the University in 2008.

Sincerely,

Andreas J. Meyer
University Counsel
University of Southern California
Office of the General Counsel
Tel: (213) 740-7922
Asst: Erin Snyder (erinsnyd@usc.edu)

**From:** Keith Mathews, Esq. <keith@aaone.law>
**Sent:** Friday, May 24, 2019 4:06:22 PM
**To:** Andreas Joerg Meyer
**Subject:** Isaacs matter

We had spoken a few weeks ago regarding Mr. Isaacs. I have attached a letter explaining his position as well as the suit that has recently been filed. Please do not hesitate to contact me if additional information would be useful to you. I look forward to speaking with you further about the case.
Regards,
Keith

Gmail - [FWD: Re: Isaacs matter]

7/4/19, 2:42 AM

Atty. Keith A. Mathews
Associated Attorneys of New England
587 Union Street
Manchester, NH 03104
****************************

www.AAONE.law
Tel: (603) 622-8100
Fax: (888)912-1497

CONFIDENTIALITY NOTICE:

This e-mail and any files transmitted with it are confidential, may be protected by the
attorney-client privilege, and are intended for use by the addressee(s) only. If you are
not the intended recipient or the person responsible for delivering e-mail for the
intended recipient, be advised that any use, dissemination, forwarding, printing, or
copying of this e-mail is strictly prohibited. If you believe you have received this e-mail
in error, please destroy it immediately and notify me at 603-622-8100. Thank you.

19-cv-2011 Isaacs v. USC                                    Exhibits Page 42

170

# M Gmail

## Re: Keck Service of Process

**Jeffrey** <jeffreydi@gmail.com>
To: Andreas Joerg Meyer <andreasm@usc.edu>
Cc: "Fogelman, James P. (JFogelman@gibsondunn.com)" <JFogelman@gibsondunn.com>, "Stacy R. Bratcher"
<bratcher@usc.edu>

Thu, Jun 6, 2019 at 8:37 PM

To clarify, you decline to correct your breach or you decline ADR with Judge Feess?

On Thu, Jun 6, 2019 at 8:34 PM Andreas Joerg Meyer <andreasm@usc.edu> wrote:

Dr. Isaacs:

We decline. Please refer all future correspondence to James Fogelman of Gibson, Dunn & Crutcher. He
represents the University in this matter and I have copied him here.


Sincerely,


Andreas J. Meyer

University Counsel

University of Southern California

Office of the General Counsel

Tel: (213) 740-7922

Asst: Erin Snyder (erinsnyd@usc.edu)


**From:** Jeffrey <jeffreydi@gmail.com>
**Sent:** Thursday, June 6, 2019 3:42 PM
**To:** Stacy R. Bratcher <bratcher@usc.edu>; Lil Gomez Delcampo <ldelcamp@usc.edu>; Andreas Joerg Meyer
<andreasm@usc.edu>
**Subject:** Keck Service of Process


USC General Counsel:


I have received notice that you were served yesterday, despite you not responding to my inquiry re an agent to
accept service.

19-cv-2011 Isaacs v. USC                                    Exhibits Page 43

171

I remain willing to extend your answer date, by stipulation, should you decide to accept my offer to participate in ADR with Judge Feess.

I do not know if Attorney Mathews mentioned to you or not, but I am not seeking monetary compensation through ADR (although I believe a jury would award substantial damages for the decade long loss I've incurred). I am merely seeking USC make efforts 1) to comply with the original settlement by correcting appropriate records  and 2) help reinstate my GME training that was prematurely ended as a result of said breach.

Dr Jeffrey Isaacs

--
Sent from Gmail mobile

Exhibits Page 45

19-CV-2011 USC v. ISSACS
DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS

Gibson Dunn &
Crutcher LLP

13

conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)

(emphasis added). Accordingly, "[w]hen a court evaluates a RICO claim for proximate

causation, the central question it must ask is whether the alleged violation led *directly* to

the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)

(emphasis added). Yet, Plaintiff fails to explain how the alleged transmission of his

Keck transcripts led directly to his termination from the DHMC residency program and

the revocation of his medical license. It was not Keck's transmission of his transcript

that prompted the revocation of his license, but rather *his* failure to disclose his

attendance at Keck that led to his reprimand and the revocation of his license. *In re*

*Jeffrey D. Isaacs M.D.*, Final Decision and Order, at 8-9. USC did not ... cause .

Plaintiff's intentional omissions.

### D. Plaintiff's Claims Are Barred by Res Judicata

Res judicata bars Plaintiff's complaint because it arises from exactly the same

facts alleged in his 2012 lawsuit against the Trustees of Dartmouth College, which was

resolved against him. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at

*1-2. "Res judicata, or claim preclusion, prohibits lawsuits on any claims that were

raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d

953, 956 (9th Cir. 2002) (quotation omitted). "Res judicata applies when there is: (1) an

identity of claims; (2) a final judgment on the merits; and (3) identity or privity between

parties." *Id.* Here, all three elements are present.

*First*, there is an identity of claims. "The central criterion in determining whether

there is an identity of claims between the first and second adjudications is whether the

two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found.*

*Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quotations omitted). Whether the

"common nucleus criterion" is met depends on "whether [the events] are related to the

same set of facts and whether they could conveniently be tried together." *Stewart*, 297

F.3d at 987 (quotation omitted).

Case 2:19-cv-02011-DSF-RAO Document 14 Filed 06/26/19 Page 21 of 24 Page ID #:109
Case 2:19-cv-08000-DSF-RAO Document 1-2 Filed 09/16/19 Page 1 of 53 Page ID #:115

Exhibits Page 46

19-cv-2011 Isaacs v. USC



## RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY-DAVID ISAACS AAMC ID
## 1212531

**ERASInvestigations** <erasinvestigations@aamc.org>                    Thu, May 3, 2012 at 1:00 PM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Thank you for your response.  Your request is reasonable, and as such, we will honor your request to keep the
Keck information off of the report.  This will require that you submit a new statement that does not mention the
Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.  Please
note, that our director is out of the office this week, so the report may be delayed waiting on her approval.

Best Regards -

-----Original Message-----
From: jeffreydk@gmail.com [mailto:jeffreydk@gmail.com] On Behalf Of Jeffrey D. Isaacs
Sent: Wednesday, May 02, 2012 12:45 PM
To: ERASInvestigations
Subject: Re: ERAS INVESTIGATION NOTIFICATION-JEFFREY-DAVID ISAACS AAMC ID 1212531

Dear Rochelle,

Attached is my signed response to the ERAS investigation you notified me about on April 18, 2012. Please let
me know if there is any further information that will be of use to you.

Regards,
Jeffrey Isaacs

On Wed, Apr 18, 2012 at 4:49 PM, ERASInvestigations <erasinvestigations@aamc.org> wrote:
> complete, timely and accurate information



# ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID

## 1212151531

**ERASInvestigations** <erasinvestigations@aamc.org>                                        Wed, Apr 18, 2012 at 4:49 PM
To: "jeffrey.isaacs.wg03@wharton.upenn.edu" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Dear Dr. Isaacs:

ERAS-the Electronic Residency Application Service (ERAS(r)) has initiated an investigation of your ERAS 2012 application. We have been informed that there is a discrepancy with your ERAS application. Specifically:

It was discovered you attended Keck School of Medicine of the University of Southern California from August 2005 through June 2006. Additionally, there is information that from July 1, 2010 through August 13, 2010 you held a position with the University of Arizona, as a Surgery Resident. In viewing your certified application dated October 13, 2011 this information was not provided.

By omitting this information, you failed to provide complete, timely and accurate information.

We request that you provide us with any information you may have about this matter in a written and signed statement within two weeks of your receipt of this letter. Unless you specifically request otherwise, a copy of your statement will be appended to any future report issued, along with any other relevant information collected.

A copy of the allegation letter, AAMC Policies and Procedures for Investigating Reported Violations of Residency/Fellowships Application Standards', and your application is enclosed for your viewing.

Your response can be sent electronically to ERASInvestigations@aamc.org as well as hard copy to:

Association of American Medical Colleges
2450 N Street NW
Attn: B. Renee Overton, Director, ERAS
Washington, DC 20037

Best wishes,
Rochelle Campbell
ERAS Administrative Specialist
Association of American Medical Colleges
2450 N Street NW
Washington, DC 20037
202 828-0508
rcampbell@aamc.org

📄 ERASInvestigationPackageElectronicVersion.pdf
3114K

19-cv-2011 Isaacs v USC
Exhibits Page 48

37

```
 1   evidence.
 2        MS. MOONEY:  All right.  And that will be
 3   so.  Go ahead with your questions to Dr. Finn,
 4   Attorney Bytes.
 5        (Claim Evidence number 3 admitted into evidence.)
 6        MR. BYLES:  Thank you, Chairperson.
 7        BY MR. BYLES:
 8        Q.  Dr. Finn, looking at page 7 of Mr. Isaacs',
 9   packet, do you recognize that form?
10        A.  Yes.
11        Q.  And that's a standard form; isn't it?
12        A.  It is, to the GME office.
13        Q.  Question 3, do you see that there?
14        A.  Yeah.
15        Q.  That question asked, "Have you ever been
16   reprimanded, sanctioned, restricted or disciplined in
17   any activities involving medical education or
18   practice?"  Mr. Isaacs wrote "no."  Do you have
19   reason to believe that that statement is false?
20        A.  Yes.
21        Q.  And what do you -- why do you believe that
22   statement is false?
23        A.  I believe that both the Arizona and USC I
```

1    propose would trigger a "yes" response to that

2    question.

3    Q.   Is that a misrepresentation?

4    A.   Yes.

5    Q.   Now is this form part of the application

6    packet you rely on when taking in those 500

7    applications for seven spots?

8    A.   No.  This form is generated after applicants

9    have been accepted to the program and is part of

10   their employment and credentialing at Dartmouth

11   Hitchcock Medical Center.

12   Q.   So this wasn't something you relied on in

13   making your decision; correct?

14   A.   No.

15   Q.   But it is a form submitted to what, the

16   Board of Medicine?

17   A.   This I believe is an internal document for

18   our hospital credentials.

19   Q.   Okay.  And underneath that it's certified

20   under pains and penalties of perjury to be true and

21   accurate; correct?

22   A.   Correct.

23   Q.   And it is not true and accurate; is it?

38

177



## RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID

Inbox x    Wharton x

ERASInvestigations @ via wharton.upenn.edu    May 3

to Jeffrey

Thank you for your response. Your request is reasonable, and as such, we will honor your request to keep the Keck information off of the report. This will require that you submit a new statement that does not mention the Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.

Best Regards -

DEPOSITION EXHIBIT
O
16 1/15/21

RE: resident issue-confidential
[illegible]

Thanks. Chris -- please try to use my dartmouth.edu email, since I don't always get emails through hitchcock.

Thanks, A

---

**From:** Christine T. Finn
**Sent:** Tuesday, January 17, 2012 5:05 PM
**To:** Alan I. Green; William C. Torrey
**Cc:** William C. Torrey
**Subject:** resident issue-confidential

Dear Will and Alan-

As I believe you already know, we have been having some significant difficulties with one of our interns, Jeffrey Isaacs. In addition to performance issues, it has come to light that he falsified his residency application, omitting a residency program that he had started the previous year. He was placed on administrative leave on Friday morning as a result.

Today, he sent a email to Jim Kim and legal representatives at the college and DHMC with numerous allegations against us and the environment at Dartmouth, intimating his intention to seek compensation for damages. I've not seen the document, but what I heard from Art Higgins is completely ridiculous. Still, it could likely be a hassle for us. We will be represented by Ed Kaplan in this matter, and, were you to receive anything from Jeff, all contact should go through his office.

We will likely be moving to terminate for cause (for falsification of credentials) quickly, so as to not have this drag out. I will let you know when I have more information.

Chris

Christine T. Finn, MD
Director, Psychiatry Residency Training Program
Director, Crisis and Consultation Service
1 Medical Center Drive
Lebanon, NH 03756
603-650-4529 (office)
603-650-9442 (fax)
603-650-5000 (pager)
christine.t.finn@hitchcock.org

Jeffrey D. Isaacs, M.D. v.
Dartmouth Hitchcock Medical Center, et al

Christine Finn, M.D.
January 15, 2014

Page 129

1    A. I don't know.
2    Q. Have you ever seen the settlement
3  agreement?
4    A. No.
5    Q. Can you read what paragraph two says?
6    A. "Sealing of Disciplinary Records. In
7  exchange for the dismissal with prejudice of
8  the individual Defendants referenced above,
9  Defendant, USC, agrees that commencing
10 immediately upon the execution of the
11 settlement agreement and receipt of the signed
12 dismissal with prejudice, USC will not release
13 or disclose Isaac's disciplinary records to any
14 third party, including but not limited to other
15 educational institutions and/or potential
16 employers unless it receives written consent
17 from Isaacs or a subpoena or court order."
18   Q. Okay. Do you know what that means
19 legally? Are you comfortable with the full
20 meaning of that?
21     MR. CHABOT: I'm going to object to
22 the question. I mean, Dr. Isaacs, she can't
23 give you a legal opinion.

Page 130

1      DR. ISAACS: I'm just asking if she
2  can give me a legal opinion.
3      MR. CHABOT: I'm telling you she
4  can't.
5    A. I would say I cannot give a legal
6  opinion on this matter.
7    Q. Did Attorney Kaplan give you an
8  opinion on that at the point he told you I
9  should be terminated for USC?
10     MR. CHABOT: If he did I'm going to
11 instruct you not to inform Dr. Isaacs.
12     MR. KAPLAN: I'm going to actually,
13 for the purposes of the record, I don't mind if
14 she answers if I gave an opinion, I am only
15 concerned about breaching confidence to provide
16 the opinion. So if it's okay with you.
17     MR. CHABOT: That's fine.
18     MR. KAPLAN: You need to answer from
19 your own memory whether or not I gave you an
20 opinion, but then, I would, if I did, and
21 that's up to you to say, that opinion would be
22 privileged.
23   A. Right.

Page 131

1      MR. KAPLAN: So why don't you repeat
2  your question, Dr. Isaacs, given those
3  instructions to the witness and perhaps we can
4  get through this.
5    Q. Did Attorney Kaplan explain to you or
6  give you a legal opinion on the sealing of the
7  records at the point you were deciding whether
8  or not to include USC on the termination
9  letter?
10   A. No.
11   Q. Okay. Turn on to the next one. Do
12 you think it's typical for a university to seal
13 disciplinary records?
14     MR. CHABOT: Objection, foundation.
15   A. No.
16   Q. Do you have any general knowledge, not
17 a binding legal opinion, what it means to seal
18 something?
19   A. I mean, I would say that in general
20 parlance it would refer to keeping something
21 private.
22   Q. Might it mean that you don't have to
23 disclose it in certain situations?

Page 132

1      MR. CHABOT: I'm just going to object
2  to the relevance and to the foundation. You can
3  answer if you have an answer.
4    A. I guess what I understood the last
5  document I just read was that USC would not be
6  revealing information, but we had not asked of
7  any institution for specific information.
8    Q. But actually you testified you were
9  not comfortable legally, you're making a legal
10 decision from that which you actually said you
11 didn't want to make. So I'd actually just like
12 answer to this question. Do you think that
13 in some circumstances sealed records need not
14 be disclosed?
15   A. By the institution?
16   Q. By an individual, by anyone subject to
17 a sealed record.
18   A. I don't know the specifics of the law
19 that governs that.
20   Q. There might not be one. Okay. Keep
21 going. So do you know what FERPA is? Family
22 Educational Right to Privacy Act?
23   A. No.

**Jeffrey D. Isaacs, M.D. v.**
**Dartmouth Hitchcock Medical Center, et al**

**Christine Finn, M.D.**
**January 15, 2014**

Page 133

1  Q. Record privacy act.
2      MR. KAPLAN: Are you looking at a tab
3  now?
4  Q. We are going page by page, this is F.
5      MR. KAPLAN: Oh, you're up to F now.
6  Q. Can you just read the title in bold
7  and the first sentence under it?
8      MR. CHABOT: I'm just going to note
9  that for the record we would object to the
10  introduction of any statute or any other
11  legislative material through this witness at
12  least.
13  A. So the title reads, "Disciplinary
14  records disclosure. Nothing in this section
15  shall prohibit an educational agency or
16  institution from," want me to keep reading?
17  Q. Yes.
18  A. "Including appropriate information in
19  the education record of any student concerning
20  disciplinary action taken against such student
21  for conduct that posed a significant risk,
22  safety or well-being of that student, other
23  students or other members of the school

Page 135

1  Q. And I'm not going to be asking about
2  legal interpretations, but does it seem like
3  USC sealing a record violates the FERPA right,
4  the FERPA rule?
5      MR. CHABOT: Objection. Foundation.
6  A. I can't really say.
7  Q. Do you think the Plaintiff knew any
8  better when he was applying to your program?
9      MR. KAPLAN: Objection.
10  A. I also don't know.
11  Q. Okay. All right. That's the end of
12  that legal subject. We will leave it for the
13  judges to determine. You can skip that, keep
14  going. I think we are almost finished with
15  that packet.
16  A. This one, actually.
17  Q. O.
18      MR. CHABOT: Tab O Of Exhibit A.
19  Q. Can you read the name, this is proof
20  of service, the name of who was served here?
21  A. Jim Yong Kim.
22      MR. CHABOT: I am going to object just
23  to your statement about what the document

Page 134

1  community."
2  Q. Or.
3  A. "Or disclosing such information to
4  teachers and school officials including
5  teachers and school officials in other schools
6  who have legitimate educational interests in
7  the behavior of the student."
8  Q. So you had just testified you don't
9  know any rules about sealing the records
10  specifically, correct?
11  A. Yes.
12  Q. Would you agree that is a federal
13  statute saying a school has an absolute right
14  to disclose disciplinary records?
15      MR. CHABOT: Objection, foundation.
16  Q. Based on reading it, does it appear
17  to be a federal statute that the school has an
18  absolute right to disclose disciplinary
19  records?
20      MR. CHABOT: Same objection.
21  A. I don't know. I guess I would
22  question whether having a right is the same
23  thing as nothing shall prohibit.

Page 136

1  means. She can certainly read the name from
2  the document.
3  Q. Is there a name of who actually
4  received a the summons?
5  A. Yes.
6  Q. And what is that name?
7  A. Vivian Barbadoro.
8  Q. Do you know who Vivian Barbadoro is?
9  A. No.
10  Q. Okay. All right. You can keep paging
11  through I think. This is P, it's P, but you
12  can go forward. This is a letter, actually the
13  last paragraph on the next page. Can you read
14  this paragraph I'm pointing to?
15  A. "In order to mitigate damages, I shall
16  be requesting expedited discovery. Pursuant to
17  Rule 34 of the Federal Rules of Civil
18  Procedure, I hereby request that all electronic
19  records relevant to my employment including
20  GIM/site, program director e-mail, phone logs,
21  department of psychiatry internal
22  communications be immediately audited and
23  preserved."

181

Page 297

1 the question.

2 Q. Well, I'm trying to clarify.

3 A. Again, I can't really say to the

4 investigative quality of it. If ERAS has

5 determined that it did not need to be listed

6 under your educational experience, I would

7 accept ERAS's qualification.

8 Q. Okay. And same goes if a federal

9 judge ruled on these two settlements if they

10 agreed with ERAS or if they agreed with me,

11 would you accept their ruling or would you

12 think that Attorney Kaplan's information given

13 to you was correct?

14 MR. CHABOT: Same objection.

15 A. I mean, again, depending on what

16 criteria are being applied, I would agree with

17 the federal court ruling.

18 Q. If you had your choice, you

19 acknowledged earlier that these settlement

20 agreements were a little confusing to you,

21 right? Didn't you say you didn't have the full

22 legal knowledge to interpret them?

23 A. Yes.

Page 299

1 termination to have had something that landed

2 him in a psychiatric hospital used against him

3 as an evidence of fraud?

4 MR. CHABOT: Foundation.

5 A. I can't really say.

6 Q. Do you think it might be traumatic to

7 make an accusation that's wrong to someone?

8 MR. CHABOT: Foundation and misstates

9 prior testimony.

10 Q. Might a wrong allegation be traumatic

11 to somebody?

12 MR. CHABOT: Same objection.

13 A. It could be, depending on the context.

14 Q. So then do you still believe it's not

15 important to have authoritative unbiased

16 decision on that allegation?

17 MR. CHABOT: Same objection.

18 A. I think I said it was not important to

19 the decision to terminate you.

20 Q. Right. But in terms of the overall

21 damages to the Plaintiff, do you think it's

22 important to know whether or not you were right

23 or wrong on that statement?

Page 298

1 Q. If you had your choice now separate

2 from your own attorneys, who would you believe

3 could authoritatively interpret them in an

4 unbiased way other than myself or your own

5 attorney?

6 MR. CHABOT: Objection, relevance.

7 A. I can't really say who would be

8 qualified to do that.

9 Q. Do you think that would be important

10 for the letter at this point to get an unbiased

11 opinion on whether or not ERAS, the Plaintiff

12 or Attorney Kaplan were correct?

13 MR. CHABOT: Same objection.

14 A. No.

15 Q. You don't think that would be

16 appropriate?

17 A. No.

18 Q. Why not?

19 A. Because the USC decision, the USC

20 knowledge came significantly after the decision

21 to terminate you.

22 Q. Okay. Might that still have been

23 traumatic to the Plaintiff separate from the

Page 300

1 MR. CHABOT: Foundation.

2 A. I don't know.

3 Q. You don't know? Do you think it would

4 be unreasonable for a federal court to find out

5 if you were right or wrong on the statement on

6 the termination letter?

7 MR. CHABOT: Objection, relevance.

8 A. I'm not sure of the court's interest

9 in the matter.

10 Q. What do you think of the legal system

11 in general and due process?

12 MR. CHABOT: Objection, relevance.

13 A. I have a generally favorable view of

14 it.

15 Q. Did you ever think about going to law

16 school?

17 MR. CHABOT: Same objection.

18 A. No.

19 Q. Do you have parents or direct siblings

20 that are lawyers?

21 A. No.

22 Q. Are they doctors?

23 A. No.

**Before the**
**New Hampshire Board of Medicine**
**Concord, New Hampshire**

In the Matter of:                                                    Docket #: 13-07
Jeffrey D. Isaacs, M.D.
License No.: RT-2198
(Adjudicatory/Disciplinary Proceeding)

## FINAL DECISION AND ORDER

Before the New Hampshire Board of Medicine ("Board") is an adjudicatory/disciplinary

proceeding in the matter of Jeffrey D. Isaacs, M.D. ("Respondent" or "Dr. Isaacs").

### Background Information
### (Procedural History and Motions)

The Board of Medicine ("Board") granted Dr. Isaacs a Resident Training license pursuant

to N.H. Admin. Rules Med 305.04, in May 2011. The license was granted where the application

revealed Dr. Isaacs was pursuing post graduate training at the Dartmouth Hitchcock Medical

Center ("DHMC") in the psychiatry residency program ("Program").

In March 2012 the Board received information from DHMC indicating that Dr. Isaacs

had been terminated from the Program where Respondent had allegedly omitted material facts

from his Application for Training License for Residents and Graduate Fellows and the

supplement filed along with the application. As a result of this information, the Board

commenced an investigation to determine whether Respondent committed professional

misconduct pursuant to RSA 329:17, VI and RSA 329:18.

The investigation revealed the following:

Between August 2005 and June 2006 Respondent attended the Keck School of Medicine, a

medical education institution, at the University of Southern California ("USC"). In February

19-cv-2011 Isaacs v. USC                    Exhibit 2                    Exhibits Page 55
                                            Page 24

183

Case 2:19-cv-08000-DSF-RAO Document 1-3 Filed 09/16/19 Page 83 of 139 Page ID #:126
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 83 of 139

Case 2:19-cv-02011-DSF-RAO Document 14-1 Filed 06/26/19 Page 26 of 112 Page ID #:138

2006 the Keck School suspended Respondent due to behavior-related issues, and ultimately the School expelled him. In June 2010 Respondent received a medical degree from the American University of the Caribbean. On May 18, 2011, Respondent filed his application for training license with the Board having been enrolled in the Program at DHMC.

The application required Respondent to disclose medical schools attended. Respondent listed the American University of the Caribbean but failed to disclose attendance at the Keck School. Additionally, Respondent answered "No" to a question on the supplement to the application which asked whether he had "ever been reprimanded, sanctioned, restricted or disciplined in any activities involving medical education or practice."

Given the investigatory revelations the Board found reasonable basis for commencing an adjudicatory/disciplinary proceeding against Respondent. On October 7, 2013 the Board issued a Notice of Hearing ("Notice") commencing a proceeding pursuant to RSA 329:18-a and N.H. Admin. R. Med 206 for February 5, 2014 at 1:00 p.m. The purpose of the hearing was to determine whether in May 2011 Respondent engaged in professional misconduct by submitting false information to the Board and for failing to fully disclose all previous medical schools attended. The Notice further indicated that Respondent could be subjected to disciplinary sanctions pursuant to RSA 329:17, VII. The Notice also informed Respondent that he may be represented by counsel at the hearing, at his own expense; and that failure to appear may result in the hearing being held *in absentia* with disciplinary sanctions imposed without further notice or opportunity to be heard.

On January 29, 2014, at 3:14 p.m., Respondent sent the Board via e-mail, a so-called "Motion to Stay Hearing or Appear by Teleconference." The e-mail indicated Respondent was moving to stay the proceeding because he had pending "federal litigation in the Pennsylvania

2

Exhibit 2
Page 25

184

District Court." The e-mail further indicated that Respondent entered into a settlement agreement with USC which he alleges sealed his disciplinary records. He further claimed that "the AAMC and NHES ...both investigated this issue already and agreed with [him]." He additionally alleged that the Board failed to investigate his allegations against DHMC, including that he was "defrauded, instructed to perform unnecessary [medical] exams and abandoned as a patient."

Respondent's January 29, 2014 e-mail also noted that he was "taking action against the Board for what appears to be punitive actions against [him]" and he requested that the Board defer "to the legal authority of the federal judiciary system and postpone [the] hearing." Respondent also wrote that he was not able to drive to New Hampshire for medical reasons, that he conducted three depositions via Skype and that if the stay was denied he requested to appear by telephone or video conference.

On February 3, 2014 hearing counsel objected to the request. The objection indicated that Respondent failed to comply with Board rules, in that any requests to continue or postpone are required to be filed at least ten days prior to the scheduled hearing. Additionally, hearing counsel noted further procedural issues with the request; specifically that it did not comply with the provisions of N.H. Admin. R. Med 204, et. seq.

The presiding officer denied the request to Stay the proceeding, finding first that Respondent failed to follow Board procedural regulation and for the reasons articulated in hearing counsel's objection, the so-called "motion" should be denied. The Board found unpersuasive the notion that the case should be stayed because of a pending federal lawsuit in Pennsylvania. Moreover, Respondent provided no information relative to his "illness." Respondent was informed of the denial on February 3, 2014 at approximately 4:30 p.m. He

3

Exhibit 2
Page 26

subsequently forwarded another e-mail on February 5, 2014, at approximately 6:00 a.m.

indicating that a winter storm and his current automobile situation would preclude him from

attending the hearing.

The hearing went forward as scheduled on February 5, 2014, commencing just after 1:00

p.m. Board members present included:

Mark Sullivan, P.A.
John H. Wheeler, D.O.
Robert M. Vidaver, M.D.
Louis E. Rosenthall, M.D.
Gail Barba, Public Member
Edmund J. Waters, Jr., Public Member

Gail Barba, Public Member, served as presiding officer. Respondent did not appear, and

Attorney Jeff Cahill appeared as hearing counsel.

## Discussion and Rulings

It is first necessary to discuss Respondent's request for a stay and his decision not to

attend the hearing. Regardless of the procedural irregularities concerning Respondent's request

to stay the proceeding sent via e-mail on January 29, 2014 the Board finds substantively, the

rational for the request to be both lacking in factual detail and unpersuasive. The issue before the

Board is a narrow one. It revolves around whether Respondent violated RSA 329:17, VI (a) by

failing to disclose, in 2011 on the residency training application and supplement, his attendance

and dismissal from the Keck School of Medicine. The fact that Respondent named the Board in

a federal lawsuit that is currently pending is of no moment in the determination of that issue.

Moreover, pursuant to RSA 329:17, IX, no civil action shall be maintained against the board

with regard to any activity or action taken in the performance of its statutory duties. *See* RSA

329:17, IX. The Board thus determined it was appropriate to proceed.

4

Case 2:19-cv-08000-DSF-RAO Document 1-3 Filed 09/16/19 Page 86 of 139 Page ID #:129
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 86 of 139
Case 2:19-cv-02011-DSF-RAO Document 14-1 Filed 06/26/19 Page 29 of 112 Page ID #:141

The Board finds that timely notice had been provided to the Respondent with regard to the hearing. Here, where Respondent had over four months to prepare and attend or timely ask for a continuance, his eleventh hour request to stay the proceeding was without merit. Had there been some legitimate medical reason that had been articulated by the Respondent, the Board would have given that issue consideration. Respondent, however, simply indicated that he had medical reasons that precluded him from driving to New Hampshire, which he then did not reassert on February 5, 2014 when he provided notice that he would not attend the hearing, citing instead to weather conditions and automobile issues. Petitioner provided no reasonable grounds for continuing the hearing, nor did he ask for reconsideration, indicating that weather - given the forecast - would prevent him from attending.

The Board opened the hearing just after 1:00 p.m. on February 5, 2014. It first entered Exhibits A and B, Respondents e-mails dated January 29 and February 5, as exhibits for Respondent. It also accepted Exhibits 1-3 from hearing counsel. Exhibit 1 is Respondent's 2011 NH Application for Residency Training License; Exhibit 2 is an excerpt of a March 1, 2007 court order in *Isaacs v. USC*; and Exhibit 3, the April 2008 Confidential Settlement in *Isaacs v. USC*. These exhibits along with notice of witnesses to be presented were provided to Respondent on January 31, 2014.

Hearing counsel also presented the testimony of Dori Lefevbre, Board Investigator. Ms. Lefevbre testified that she was able to obtain the documents that were marked as exhibits 2 and 3 as public records available on-line from the federal court system. She explained that the documents reflect that Respondent was dismissed from the Keck School. In fact, Exhibit 2, the California Federal District Court, Central District's Order on a Motion to Dismiss reveals that Respondent alleged he suffered from PTSD and an organic brain injury and in 2005 began his

5

Exhibit 2
Page 28

studies at Keck School of Medicine. The Order further indicates that Respondent had numerous social problems with his classmates and engaged in offensive messaging to a female classmate that Respondent attributes to his Bipolar II diagnosis. The Order indicated Respondent alleged that several defendants attempted to harm his standing at USC, that Respondent attended a disciplinary hearing before the Student Performance Committee – where he did not contest stalking allegations against him; and that he was suspended and ultimately dismissed from the school. The Order at Exhibit 2 also indicated that Plaintiff requested that USC postpone the dismissal hearing scheduled for June 7, 2006, but that the hearing went ahead as scheduled.

Ms. Lefevbre also testified that she obtained Exhibit 3, as a public court record from the federal court's on-line system, which purportedly is the confidential settlement agreement between Respondent and USC. The document at page 1, indicates that Respondent understood and agreed "that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future."

In Exhibit A, Respondent alleges that the settlement agreement with USC "clearly sealed [his] disciplinary records, and a subsequent agreement annulled all contracts and acquitted all controversies with USC." It appears this is the reason Respondent contends he was not required to disclose the Keck School information on his training license application. A review, however, of Exhibit 3 indicates that it is only information related to the lawsuit, and the negotiation of the Settlement Agreement's terms and conditions that is confidential, along with the monetary settlement amount. There is no provision in Exhibit 3 "sealing the disciplinary records."

Exhibit 1, page 4 asks whether the applicant has been "reprimanded, sanctioned, restricted or disciplined in any activities involving medical education…" and Respondent certified, under penalty of perjury that he had not, where he marked "No" to the question.

6

Case 2:19-cv-08000-DSF-RAO Document 12-3 Filed 09/15/19 Page 17 of 153 Page ID #:131
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 88 of 139
Case 2:19-cv-02011-DSF-RAO Document 14-1 Filed 06/26/19 Page 31 of 112 Page ID #:143

Whether Respondent entered into a settlement agreement does not negate the fact that he attended a medical educational institution which ultimately dismissed him and will never allow him to return. The fact remains that there was discipline and expulsion from a medical educational institution notwithstanding the representation that the records have been sealed or a subsequent agreement "annulled all contracts." That Respondent brought a lawsuit against USC, which the parties settled and where USC specifically denied liability for the claims against it does not immunize Respondent from answering the application question truthfully.

The question on the application did not require Respondent to divulge information regarding the Confidential Settlement Agreement. The answer in the license application was, however, required to be correct. Respondent could have chosen to say, "Yes" which would have likely given him an opportunity to explain; or he could have indicated that he contends he was wrongfully dismissed.

RSA 329:17, IV (a) reads that disciplinary action may be taken against a licensee where the Board finds the person "has knowingly provided false information during any application for professional licensure… whether by making any affirmative statement which was false at the time it was made or by failing to disclose any fact material to the application." The Board finds that Respondent was required to truthfully divulge an answer to question 3 on the supplement to the application. The Board also finds that Respondent was required to list all medical schools attended. The application form and the supplement do not distinguish and inform the applicant that an answer is not required if some record was sealed or records were nullified by operation of law.

Here, Respondent was aware that he attended the Keck School, he was further aware that he was "sanctioned" or "restricted" or "disciplined" in "activities involving medical education."

7

Exhibit 2
Page 30

189

Case 2:19-cv-08000-DSF-RAO Document 1-3 Filed 09/16/19 Page 18 of 53 Page ID #:132
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 89 of 139
Case 2:19-cv-02011-DSF-RAO Document 14-1 Filed 06/26/19 Page 32 of 112 Page ID #:144

As such, Respondent deliberately, consciously, and with purpose of design answered question 3 falsely. Likewise, it is a material fact that Respondent attended a medical school other than American University of the Caribbean. Inaccuracies in the information provided which are false, constitute a valid basis for discipline and license denial.

In this case, we need not take action on the license itself since pursuant to N.H. Admin R. Med 305.04(b) training licenses are only valid for the practice of medicine when *inter alia* the licensee is practicing under the auspices of the training program. *See* N.H. Admin R. Med 305.04 (b) (1). Here, there was evidence that the DHMC terminated Respondent from their Program. Accordingly, the license is revoked as of the date of termination; as such it was canceled by operation of law.

We, however, believe a reprimand is appropriate in this situation. Respondent treated his time at the Keck School as if it never occurred. He provided no documents to suggest or provided no credible evidence regarding the dissolution of his record of attendance at the Keck School. Even where Respondent chose not to attend the hearing, he still could have provided documentary support for his position in advance of the hearing. N.H. Admin. R. Med 206.09 (c). For example, he could have submitted his exhibits supporting the statements found in Exhibit A; but chose instead an alternate course of action. Exhibit 3 certainly does not suggest the nullity of the sanction or discipline, where Exhibit 2 clearly evinces Respondent was dismissed from the medical school on June 13, 2006.[1] We find this Agreement does not insulate Respondent from having to affirmatively disclose his attendance. As such, where we also find the evidence submitted supports the conclusion that Respondent knowingly made a false statement and further

---

[1] Exhibit 2 does indicate that on June 22, 2006 Respondent appealed the decision asking for a reversal. Exhibit 3, at paragraph 19 references the potentiality of effecting the dismissal of all outstanding administrative charges. There, however, is no credible evidence before this Board which suggests Respondent's termination from the school was dismissed. Further we are aware of no New Hampshire requirement that would equate a civil settlement to the annulment of a criminal record pursuant to RSA 651:5, X.

8

Exhibit 2
Page 31

190

Case 2:19-cv-08000-DSF-RAO, Document 1-2, Filed 09/16/19, Page 90 of 139, Page ID #:133
Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 90 of 139, Page ID #:133

Gmail - Re: hey

7/4/19, 4:58 AM

# M Gmail

## Re: hey

**Scot** 
To: jeffrey.isaacs.wg03@wharton.upenn.edu                    Tue, Feb 7, 2012 at 7:31 PM

Alright -- I just hope you're not pinning too much on this. My read of all this is that USC -- expert in the medical training /standards -- threw down a spike that they knew was going to be a long term impediment. I've not read what Dartmouth asked you to disclose, but I am sure it's broadly worded and based on fact (rather than legal disposition).

I'm in Detroit. Boarding plane for Ft Wayne.
F. Scot



19-cv-2011 Isaacs v. USC                              Exhibits Page 63

191



# Dr. Peter J. Katsufrakis Appointed President of National Board of Medical Examiners (NBME)

PHILADELPHIA, PA January 30, 2017 – Following a national search, the Executive Board of the National Board of Medical Examiners has selected Peter J. Katsufrakis, MD, MBA to lead the NBME as its next president. The NBME, which creates and administers a wide range of health professions assessments and assessment tools, is best known as the creator and co-sponsor of the United States Medical Licensing Examination® (USMLE®), which all medical doctors must pass to be licensed to practice in the U.S. The appointment of Dr. Katsufrakis as president will be effective January 30, 2017 upon the retirement of Donald E. Melnick, MD, who has led the NBME since 2000.



19-cv-2011 Isaacs v. USC

Exhibits Page 64

192

 Gmail

# FWD: Transferring Second Amended Complaint to respective USC entities

**Jeffrey Isaacs** <jdi@alum.dartmouth.org>                                 Sun, Aug 12, 2007 at 10:47 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, treyhobbs@sbcglobal.net.certified.readnotify.com

Dear Ms. Dal Soglio:

Nearly ONE YEAR ago, I sent you a request to transfer my complaints to respective entities at USC. You have threatened me not to contact your client without first contacting you. At this point, a lawsuit against "DAL SOGLIO & MARTENS" as well as "Mr TODD DICKEY" is imminent for this interference. The SAC/TAC contain complaints that shall suffice, standalone, as initial complaints to the departments listed in my below email. Please also include the USC Board of Trustees in the list of entities I now deserve an appeal to. As you know, the administrative appeal with Taylor only represents one of many avenues that my case may be appealed to. Again, should you wish to provide me with any forms that would supplement my complaint, please deliver these to me WITHIN ONE WEEK. While the evidence shows last time my request was forwarded TWENTY-EIGHT times (see attached certified receipts) in an apparent effort to find a work-around to my request, this will not be tolerated any more and will result in immediate litigation against your firm and your client.

Regards,
Jeffrey Isaacs

>>>
Ms. Dal Soglio:

On July 31st I attempted to deliver a Petition (SAC Exhibit L) to numerous USC authorities. I received no response from any of the addressees. It is important to me that each and every allegation in the Petition, and now, the Second Amended Comlaint, is filed with the appropriate persons at USC. Please see that the Second Amended Complaint is filed as an official grievance with these persons and departments, to the fullest extent that any contractual right of mine to issue a grievance exists. Please see that this grievance/complaint is distributed, without limitation, to Dr. Steven B. Sample, the Keck SPC, the Department of Public Safety, the Vice President of Student Affairs, and the Student Judicial Affairs Committee. Please let me know if there are any additional forms I may need to fill out in conjunction with the SAC; because I am not permitted on campus, I cannot do this myself. Because the SAC is a verified court declaration, as you know, it should suffice in stand-alone form. Please see that this entire request is executed before any dismissal may occur.

Regards,

Jeffrey D. Isaacs

**transferSAC.pdf**
113K

Case 2:19-cv-08000-DSF-RAO Document 1-3 Filed 09/16/19 Page 93 of 139 Page ID #:136
Read-Notification for Case: 20-55633, 09/23/2020, ID: 11835126, DktEntry: 14-3, Page 93 of 139 http://www.readnotify.com/readnotify/show.asp/c17471ce122b1d9433fe...

# Re dNotify

**Refresh Display   Close Window**

### ReadNotify email tracking history

To  rdalsoglio@dm-lawfirm.com

From  Jeffrey.D.Isaacs.99@Alum.Dartmouth.ORG

Subject  **Transferring Second Amended Complaint to respective USC entities**

Sent on  14-Sep-06 at 17:38:34pm 'US/Central' time

1st Open  **14-Sep-06 at 17:41:10pm  -5:00**



(81%) Valencia, California, United States

#### Tracking Details

**Opened** at apparent address of: rdalsoglio@dm-lawfirm.com

Opened 14-Sep-06 at 17:41:10pm (UTC -5:00)  ·  2mins36secs after sending

Location Valencia, California, United States (81% likelihood)

Opened on (66.251.119.2:23068)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

Last log No more activity after 14-Sep-06 at 17:47:55pm (UTC -5:00)  ·  Log data indicates email was read for at least 6mins45secs (approx.)

#### Forwarded

Opened 14-Sep-06 at 18:00:25pm (UTC -5:00)  ·  21mins51secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc003.usc.edu (128.125.59.64:2130)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

#### Re-opened (by earlier reader #1) at apparent address of: rdalsoglio@dm-lawfirm.com

Opened 18-Sep-06 at 10:30:19am (UTC -5:00)  ·  3days16hours51mins45secs after sending

Location Valencia, California, United States (81% likelihood)

Opened on (66.251.119.2:55444)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

#### Re-opened (by earlier reader #2)

Opened 21-Sep-06 at 11:56:17am (UTC -5:00)  ·  6days16hours17mins43secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc003.usc.edu (128.125.59.64:1197)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

Last log No more activity after 21-Sep-06 at 11:56:47am (UTC -5:00)  ·  Log data indicates email was read for at least 30secs (approx.)

#### Forwarded

Opened 21-Sep-06 at 11:58:32am (UTC -5:00)  ·  6days18hours19mins56secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc006.usc.edu (128.125.59.77:1221)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

Last log No more activity after 21-Sep-06 at 12:13:40pm (UTC -5:00)  ·  Log data indicates email was open for at least 15mins8secs (approx.)

#### Re-Opened (by earlier reader #3)

Opened 21-Sep-06 at 12:27:00pm (UTC -5:00)  ·  6days18hours48mins26secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc006.usc.edu (128.125.59.77:1282)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

#### Re-Opened (by earlier reader #1)

Opened 21-Sep-06 at 12:52:11pm (UTC -5:00)  ·  6days19hours13mins37secs after sending

Location Valencia, California, United States (81% likelihood)

Opened on (66.251.119.2:26633)

## 19-cv-2011 Isaacs v. USC

## Exhibits Page 66

8/12/2007 10:37 PM

194

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

Last log No more activity after 21-Sep-06 at 12:55:54pm (UTC -5:00)  –  Log data indicates email was read for at least 3mins43secs (approx.)

### Re-opened (by earlier reader #3)

Opened 21-Sep-06 at 13:22:59pm (UTC -5:00)  -  6days19hours44mins25secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc008.usc.edu (128.125.59.77:1366)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

Last log No more activity after 21-Sep-06 at 13:31:54pm (UTC -5:00)  -  Log data indicates email was read for at least 8mins55secs (approx.)

### Re-Opened (by earlier reader #3)

Opened 22-Sep-06 at 11:30:48am (UTC -5:00)  -  7days17hours52mins14secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc008.usc.edu (128.125.59.77:2801)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

### Re-Opened (by earlier reader #1)

Opened 22-Sep-06 at 12:30:13pm (UTC -5:00)  -  7days18hours51mins39secs after sending

Location Fairport, New York, United States (40% likelihood)

### Re-Opened (by earlier reader #3)

Opened 22-Sep-06 at 15:38:33pm (UTC -5:00)  -  7days21hours59mins59secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc008.usc.edu (128.125.59.77:3555)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

Last log No more activity after 22-Sep-06 at 15:44:46pm (UTC -5:00)  –  Log data indicates email was read for at least 6mins13secs (approx.)

### Re-opened (by earlier reader #2)

Opened 22-Sep-06 at 16:00:48pm (UTC -5:00)  -  7days22hours22mins14secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc003.usc.edu (128.125.59.64:1679)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

Last log No more activity after 22-Sep-06 at 16:01:18pm (UTC -5:00)  –  Log data indicates email was read for at least 30secs (approx.)

### Re-opened (by earlier reader #1)

Opened 22-Sep-06 at 16:10:48pm (UTC -5:00)  -  7days22hours32mins14secs after sending

Location Valencia, California, United States (81% likelihood)

Opened on (65.251.119.2:21854)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

Last log No more activity after 22-Sep-06 at 16:11:15pm (UTC -5:00)  -  Log data indicates email was read for at least 27secs (approx.)

### Re-Opened (by earlier reader #3)

Opened 25-Sep-06 at 11:13:57am (UTC -5:00)  -  10days17hours35mins23secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc008.usc.edu (128.125.59.77:3896)

Language of recipient's PC: en-us (English/United States)

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

Last log No more activity after 25-Sep-06 at 11:20:07am (UTC -5:00)  -  Log data indicates email was read for at least 6mins10secs (approx.)

### Re-opened (by earlier reader #2)

Opened 25-Sep-06 at 11:22:43am (UTC -5:00)  -  10days17hours44mins9secs after sending

Location Los Angeles, California, United States (81% likelihood)

Opened on uscgc003.usc.edu (128.125.59.64:1163)

Language of recipient's PC: en-us (English/United States)

## 19-cv-2011 Isaacs v. USC

## Exhibits Page 67

Read-Notification for... http://www.readnotify.com/readnotify/show.aspx?1471ce122b1d9433fe...

Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

## Re-opened (by earlier reader #1)
Opened 25-Sep-06 at 11:24:43am (UTC -5:00)  -  10days17hours46mins9secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:42469)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

## Re-opened (by earlier reader #2)
Opened 25-Sep-06 at 11:31:29am (UTC -5:00)  -  10days17hours52mins55secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1180)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)
Last log No more activity after 25-Sep-06 at 11:39:20am (UTC -5:00)  -  Log data indicates email was read for at least 7mins51secs (approx.)

## Re-Opened (by earlier reader #2)
Opened 25-Sep-06 at 12:07:17pm (UTC -5:00)  -  10days18hours28mins43secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1131)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

## Re-opened (by earlier reader #1)
Opened 25-Sep-06 at 12:10:01pm (UTC -5:00)  -  10days18hours31mins27secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:47695)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
Last log No more activity after 25-Sep-06 at 12:12:13pm (UTC -5:00)  -  Log data indicates email was read for at least 2mins12secs (approx.)

## Re-opened (by earlier reader #3)
Opened 25-Sep-06 at 12:12:45pm (UTC -5:00)  -  10days18hours34mins11secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1109)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

## Re-Opened (by earlier reader #3)
Opened 26-Sep-06 at 11:42:38am (UTC -5:00)  -  11days18hours4mins4secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:2464)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)
Last log No more activity after 26-Sep-06 at 11:47:33am (UTC -5:00)  -  Log data indicates email was read for at least 4mins55secs (approx.)

## Re-opened (by earlier reader #2)
Opened 26-Sep-06 at 13:08:12pm (UTC -5:00)  -  11days19hours29mins38secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc003.usc.edu (128.125.59.64:1347)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; InfoPath.1; .NET CLR 1.1.4322; .NET CLR 2.0.50727)

## Re-opened (by earlier reader #3)
Opened 26-Sep-06 at 16:50:22pm (UTC -5:00)  -  12days1hour11mins48secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1409)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

19-cv-2011 Isaacs v. USC

Exhibits Page 68

8/12/2007 10:37 PM

### Re-Opened (by earlier reader #3)

Opened 29-Sep-06 at 19:07:37pm (UTC -5:00)  -  15days1hour29mins3secs after sending
Location Los Angeles, California, United States (81% likelihood)
Opened on uscgc008.usc.edu (128.125.59.77:1549)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727; InfoPath.1)

### Re-Opened (by earlier reader #1)

Opened 1-Oct-06 at 19:55:27pm (UTC -5:00)  -  17days2hours16mins53secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:59862)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)
Last log No more activity after 1-Oct-06 at 19:58:08pm (UTC -5:00)  -  Log data indicates email was read for at least 2mins41secs (approx.)

### Re-Opened (by earlier reader #1)

Opened 31-Oct-06 at 16:34:26pm (UTC -5:00)  -  46days22hours55mins52secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:19198)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

### Re-Opened (by earlier reader #1)

Opened 5-Nov-06 at 19:54:50pm (UTC -5:00)  -  52days2hours16mins16secs after sending
Location Valencia, California, United States (81% likelihood)
Opened on (66.251.119.2:32162)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

### Re-Opened (by earlier reader #1)

Opened 5-Feb-07 at 16:39:02pm (UTC -5:00)  -  143days23hours28secs after sending
Location Chicago, Illinois, United States (81% likelihood)
Opened on jd-131-26.jdrp.com (168.98.131.26:53469)
Language of recipient's PC: en-us (English/United States)
Browser used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; YPC 3.2.0; .NET CLR 1.1.4322)

### Summary  -  as at 12-Aug-07 at 21:30:54pm (UTC -5:00)  -  332days3hours52mins20secs after sending

Total Opened 28 times by 3 readers
Reader #1 (rdalsoglio@tkm.lawfirm.com) Opened 11 times for 15mins48secs total
Reader #2 Opened 7 times for 8mins51secs total
Reader #3 Opened 10 times for 41mins21secs total

notification

19-cv-2011 Isaacs v. USC

Exhibits Page 69

Jeff Isaacs
MS I
March 2, 2006

Denied no trespassing letter + SPC letter
(412 mtg.).

BM

Delivered no trespassing letter + SPC letter   FOR



# ALERT
# NOTIFICATION
## UNIVERSITY OF SOUTHERN CALIFORNIA
OFFICIAL PUBLICATION OF THE USC DEPARTMENT OF PUBLIC SAFETY

### OFFICER SAFETY

S-ISAACS is currently ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ tatements: "You have no idea how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "I don't think they will expel me because they are afraid I'll come back with a gun". USC will be notified of S-ISAACS release. This information will be forwarded to all Watch Commanders. POC Mr. Peter Katsufrakis, Associate Dean of Students (323) 442-2420.

S-ISAACS, former medical student at USC HSC campus, has been served with a suspension letter. He is also the subject of a harassment investigation and has been served a stay away letter. Both the stay away letter and suspension notice are on file in USC Communications Center.

**NAME:** ISAACS, JEFFREY D.
**SEX:** M
**RACE:** W
**HAIR:** Bro
**EYE:** Bro
**HT:** Unk
**WT:** Unk
**DOB:** ▮▮▮▮▮▮▮▮▮ Y.O.

**NOTE:**
Address: 425 Broadway Santa Monica, Ca.

**Prior Contacts**
06-00078   01/10/06   Harassment
06-00733   03/17/06   Criminal Threats



## FOR INTERNAL DISTRIBUTION ONLY, NOT TO BE DISTRIBUTED OUTSIDE OF USC DEPARTMENT OF PUBLIC SAFETY.

**APPROVED BY: CAPT. GLORIA GRAHAM**
**Prepared by: DET. LEESA SANDELL (213) 740-2489   Cell# (213) 276-7933      Date: 02-17-06**

 **Gmail**

## Service of Process- URGENT

**Jeffrey** <jeffreydi@gmail.com>
To: andreasm@usc.edu, Keith <keith@aaone.law>

Fri, May 31, 2019 at 11:53 PM

Andreas:

Your letter is shameful. USC apparently has no remorse for allowing a med student to be admitted through NIH connections, and moreover, to collude with your less than perfect (2 felons I believe) med school deans to mislead the faculty (in violation of RICO) and harm my life and career to simply serve others as a doctor. We thought after a decade, USC administration might do the right thing. We were wrong.

It is frankly not surprising you are charged in dozens of RICO claims alleging similar activity.

You should be ashamed for your letter to Atty Mathews. Moreover, I advise you that I consider the threats contained therein it to be further violations of the RICO statute.

Please advise , within 1 business day, who you have authorized (name & location & phone) to accept formal summons service. We have waited patiently for your response re ADR but further delays in service of process shall not be tolerated.

Please direct further correspondence on this matter to me at this point as the Plaintiff in pro per. Please be advised any correspondence I receive from you shall be part of the record, I reserve the right to re-publish it, forward it to appropriate entities; we are in no way engaged in privileged settlement discussions at this point as you declined ADR.

Dr Jeffrey Isaacs

Subject: Re: Isaacs matter
From: Andreas Joerg Meyer <andreasm@usc.edu>
Date: Thu, May 30, 2019 8:15 pm
To: "Keith Mathews, Esq." <keith@aaone.law>

Mr. Mathews,
I am in receipt of your correspondence and the complaint filed by your client.

The University of Southern California (USC) unequivocally rejects your client's request to engage in mediation. Not only does the University dispute the facts set forth in the complaint and in your letter, but we believe the complaint to suffer from so many legal deficiencies and factual inaccuracies that it is not only inviable but also frivolous and harassing. We demand that the complaint be dismissed in its entirety immediately. If your client proceeds with the complaint, USC will not only mount a vigorous defense, but we will also pursue all remedies available to the University, including sanctions under Rule 11 and a counterclaim for liquidated damages, costs, and attorneys' fees caused by your client's breach of more than one provision contained in the Confidential Settlement Agreement and Release he entered into with the University in 2008.

200

Sincerely,

Andreas J. Meyer
University Counsel
University of Southern California
Office of the General Counsel
Tel: (213) 740-7922

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

Jeffrey Isaacs ("Isaacs"), on the one hand, and University of Southern California ("USC"), on the other hand, have agreed to enter into this Confidential Settlement Agreement and Release (the "Agreement").

### 1. Dismissal With Prejudice.

Isaacs agrees that he will execute and deliver for filing to counsel of record for USC, Robin D. Dal Soglio of Dal Soglio & Martens LLP, the Dismissal with Prejudice (attached hereto as Exhibit A) of Robert Baughman, Brian E. Henderson, Peter J. Katsufrakis and James M.H. Ball (together, the "Individual Defendants") from United States District Court Case No. CV-06-3338 GAF (Ex). Counsel for USC will file the Dismissal with Prejudice with the Court.

### 2. Sealing of Disciplinary Records.

In exchange for the Dismissal with Prejudice of the Individual Defendants, referenced above, Defendant USC agrees that commencing immediately upon the execution of this Settlement Agreement and receipt of the signed Dismissal with Prejudice, USC will not release or disclose Isaacs' disciplinary records to any third party, including but not limited to other educational institutions and/or potential employers, unless it receives written consent from Isaacs or a subpoena or court order.

### 3. Non-Admission of Liability.

This Agreement shall not in any way be construed as an admission by USC or any of the Individual Defendants that they have harassed, discriminated against or retaliated against Isaacs in any way, or otherwise acted wrongfully with respect to Isaacs. USC and the Individual Defendants specifically deny that they have any liability to or have done any wrongful acts against Isaacs.

### 4. No Other or Future Lawsuits, Charges, Claims.

With the exception of United States District Court Case No. CV-06-3338 GAF (Ex) (the "Lawsuit"), Isaacs represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against the Individual Defendants or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges, complaints, or appeals at any time hereafter based on, referring to, or incorporating any events, acts or omissions through and including the date hereof.

If Isaacs's representations in this paragraph prove to be false, or if he violates the promises made in this paragraph and files a lawsuit, charge, complaint, or appeal of any kind with any court or administrative or governmental agency against the Individual Defendants, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorneys' fees, incurred by Defendants in connection with said lawsuit, charge, complaint, or appeal.

Initialed JDI

I

Exhibits Page 74

202

### 5. Complete Release by Isaacs.

As a material inducement to USC to enter into this Agreement, Isaacs hereby irrevocably and unconditionally waives and releases all rights and claims, known and unknown, which he may have against each and all of the Individual Defendants and each of their respective assigns, agents, representatives, attorneys, spouses, children and other family members, and all persons acting by, through, under or in concert with any of them, from the beginning of time to the date Isaacs signs this Agreement. This includes but is not limited to a release of all rights and claims Isaacs may have against the Individual Defendants under any federal or state anti-discrimination statutes, including but not limited to the Americans with Disabilities Act and the Rehabilitation Act of 1973, as well as all claims, known and unknown, which he may have for breach of contract, express or implied; breach of the covenant of good faith and fair dealing; and retaliation, defamation, conspiracy, infliction of emotional distress, invasion of privacy, assault, battery, misrepresentation, or any other tort.

### 6. Knowing and Voluntary Waiver of Known and Unknown Claims

Isaacs agrees that, as a condition of this Agreement, he expressly releases all rights and claims that he does not know about, as well as those he knows about. Thus, consistent with the terms of his release, Isaacs expressly waives all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

### 7. Encouragement to Consult With Attorney

Counsel for USC has strongly encouraged Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has either fully consulted with an attorney prior to signing or has knowingly and voluntarily decided not to do so.

### 8. No Representations

The parties hereto represent and agree that no promises, statements or inducements have been made to them which caused them to sign this Agreement other than those expressly stated in this Agreement.

### 9. Successors

This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the parties and others released herein, their representatives, executors, successors and assigns.

Initialed JH
$\partial \sigma \partial$

2

Exhibits Page 93

USC 3

203

## 10. Confidentiality of This Agreement

a. As a material inducement for USC to enter into this Agreement, Isaacs agrees not to disclose the negotiation, terms, or conditions of this Agreement to anyone other than Isaacs's attorneys and parents (hereafter referred to as "Isaacs's Confidants") and, even as to such a person, only if such persons agree to honor this confidentiality requirement. Violation of this confidentiality requirement by any of Isaacs's Confidants will be treated as a violation of this Agreement by Isaacs.

b. This section does not prohibit disclosure of the negotiation, terms or conditions of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise required by law (but only if the enforcing party notifies the other party and its attorneys of a disclosure obligation or request within three business days after he/it learns of it and does not actively oppose the party taking all steps it deems to be appropriate to prevent or limit the required disclosure).

c. If Isaacs is asked about his claims against the Individual Defendants, and only if asked, he may state only that "the matter has been resolved."

## 11. Newly Discovered Facts

Isaacs acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to a claim or claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

## 12. Voluntary Participation in This Agreement

The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to consider signing this Agreement, and that they are voluntarily signing this Agreement.

## 13. Governing Law

This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said State.

## 14. Further Necessary Actions

The parties agree, without further consideration, to sign and/or cause to be signed, and to deliver to counsel for one another, any other documents and to take any other action as may be necessary to fulfill their obligations under this Agreement, including, but not limited to, effecting the dismissal of all outstanding administrative charges.

3

### 15.  Severability

Should any of the provisions in this Agreement, other than the Release set forth in Paragraph 5, be declared or be determined to be illegal or invalid, all remaining parts, terms or provisions shall be valid, and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

### 16.  Proper Construction

a.  The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

b.  As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

c.  The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

### 17.  Entire Agreement

This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.

**PLEASE READ CAREFULLY.  THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.**

Executed at Berwyn Pennsylvania, this 29th day of August 2007.

By: _____
    Jeffrey Isaacs

Executed at Los Angeles, California, this 31st day of August 2007.

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____
    Dennis F. Dougherty
    Senior Vice President for Finance

Initialed  BDR

4

19-cv-2011 Isaacs v. USC

Exhibits Page 97

205

# CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The University of Southern California ("USC") and Jeffrey Isaacs ("Isaacs") have agreed to enter into this Confidential Settlement Agreement and Mutual Release (the "Agreement").

## 1. Dismissal With Prejudice.

Isaacs agrees that he will execute and deliver for filing to counsel of record for USC, Robin D. Dal Soglio of Dal Soglio & Martens LLP, the Stipulation of Dismissal with Prejudice (attached hereto as Exhibit A) of USC from United States District Court Case No. CV-06-3338 GAF (Ex). Counsel for USC will file the Dismissal with Prejudice with the Court.

## 2. No Future Application to University.

Isaacs understands and agrees that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future. Isaacs further agrees that he will not apply for or otherwise seek admission to USC or any related or affiliated entity at any time in the future, under any circumstances whatsoever.

## 3. Non-Admission of Liability.

This Agreement shall not in any way be construed as an admission by USC that it has discriminated against or retaliated against Isaacs in any way, or otherwise acted wrongfully with respect to Isaacs or any other person, or that Isaacs has any rights whatsoever against it. USC specifically denies that it has any liability to or has done any wrongful acts against Isaacs or any other person.

## 4. Benefits for Isaacs.

Within fourteen (14) days of USC's receipt of the original of this Agreement signed by Isaacs and including executed copies of Exhibits A and B, USC will transmit to Isaacs one check made payable to Isaacs in the gross amount of Ten Thousand Dollars ($10,000).

## 5. Responsibility for Taxes.

Isaacs understands and acknowledges that USC will report the payment described in paragraph 4 to the appropriate taxing authorities as required by law. Isaacs agrees that he is solely responsible for all tax obligations, including, but not limited to, all payment obligations which may arise as a consequence of this Agreement. Isaacs further agrees promptly to pay and to indemnify and hold USC and others released herein harmless from and against any and all loss, cost, damage or expense, including, without limitation, attorneys' fees, interest, assessments, withholding and penalties, arising out of any dispute over underwithholding or other tax treatment of any of the proceeds received by Isaacs as a result of this Agreement. Isaacs further agrees not to seek or make any claim against USC or others released herein for any loss, cost, damage or expense if a claim or adverse determination is made in connection with underwithholding or other tax treatment of any of the proceeds of this Agreement or any portion

Initialed 2 DA

1

thereof. Isaacs understands and agrees that neither USC nor others released herein has any duty to defend against any claim or assertion in connection with underwithholding or other tax treatment of the proceeds of this settlement or any portion thereof, and Isaacs agrees to assume full responsibility for defending against any such claim or assertion.

## 6. No Other or Future Lawsuits, Charges, Claims for Arbitration or Complaints of Any Nature Whatsoever.

With the exception of United States District Court Case No. CV-06-3338 GAF (Ex), which is fully and finally settled herein, Isaacs represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges, claims for arbitration, complaints, or appeals at any time hereafter based on, referring to, or incorporating any events, acts or omissions through and including the date hereof.

If Isaacs's representations in this paragraph prove to be false, or if he violates the promises made in this paragraph and files a lawsuit, charge, claim for arbitration, complaint, or appeal of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorneys' fees, incurred by USC in connection with said lawsuit, charge, complaint, or appeal.

## 7. Complete Release by Isaacs.

As a material inducement to USC to enter into this Agreement, Isaacs hereby irrevocably and unconditionally waives and releases all rights and claims, known and unknown, which he may have against USC, the Keck School of Medicine, and each of their respective successors, assigns, agents, trustees, officers, administrators, faculty, students, current and former employees, representatives, attorneys, divisions, subsidiaries, affiliates (and agents, trustees, officers, administrators, faculty, current and former employees, representatives and attorneys of such divisions, subsidiaries, and affiliates), and Robert Baughman and each of his family members, and all persons acting by, through, under or in concert with any of them (collectively, the "Releasees") from the beginning of time to the date Isaacs signs this Agreement from any and all claims, demands, contracts, expenses, liens, covenants, debts, attorney's fees, causes of action, damages, judgments, orders, and liabilities (collectively "Claims") of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, suspected, or unsuspected, and whether or not concealed or hidden, which Isaacs now owns or holds or had at any time heretofore owned or held against the Releasees.

Initialed ____

2

### 8.  Release by USC

As a material inducement to Isaacs to enter into this Agreement, USC does hereby irrevocably and unconditionally release, acquit and forever discharge Isaacs from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, grievances, costs, losses, and expenses (including attorneys' fees and costs) of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including but not limited to any claim for malicious institution of civil proceedings, and abuse of process. Notwithstanding any other provision herein, this release by the University is not intended to, and does not, release debts unrelated to the lawsuit, including but not limited to tuition or loans.

### 9.  Knowing and Voluntary Waiver of Known and Unknown Claims

Consistent with the terms of their respective releases in paragraphs 7 and 8, Isaacs and USC acknowledge and agree that, as a condition of this Agreement, they expressly release all rights and claims that they do not know about, as well as those they know about. Thus, consistent with the terms of their respective releases, Isaacs and USC expressly waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor."

### 10.  Ownership of Claims

Isaacs represents and agrees that he has not assigned or transferred, or attempted to assign or transfer, to any person or entity, any of the claims he is releasing in this Agreement.

### 11.  Encouragement to Consult With Attorney

USC encourages Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has had the opportunity to consult with an attorney prior to signing, and has either done so or voluntarily chosen not to do wo.

### 12.  No Representations

The parties represent and agree that no promises, statements or inducements have been made to them which caused them to sign this Agreement other than those expressly stated in this Agreement.

Initial __ 2 D d

3

### 13. Successors

This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the parties and others released herein, their representatives, executors, successors and assigns.

### 14. Confidentiality of This Agreement

a. As a material inducement for USC to enter into this Agreement, Isaacs agrees not to disclose the negotiation, terms, conditions, or amount of this Agreement to anyone other than Isaacs's attorneys and tax adviser (hereafter referred to as "Isaacs's Confidants") and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Violation of this confidentiality requirement by any of Isaacs's Confidants will be treated as a violation of this Agreement by Isaacs.

b. This section does not prohibit Isaacs's disclosure of the negotiation, terms, conditions, or amount of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise required by law (but only if Isaacs notifies USC and its attorneys of a disclosure obligation or request within three business days after he learns of it and does not actively oppose USC's taking all steps it deems to be appropriate to prevent or limit the required disclosure).

c. If Isaacs is asked about his claims against USC, including breach of enrollment contract and wrongful dismissal, and only if asked, he may state only that "the matter has been resolved." However, the parties further agree that Isaacs is not required to disclose this matter to anyone.

### 15. Damages for Isaacs's Breach of Confidentiality

A breach of paragraph 14 will be deemed a material breach of this entire Agreement. Isaacs agrees to pay USC the sum of Five Thousand Dollars ($5,000) as liquidated damages for each violation in the event USC obtains a judgment, ruling, award, or decision that paragraph 14 has been violated. The parties to this Agreement agree that this liquidated damages provision is appropriate with regard to any breach of paragraph 14 because: (1) paragraph 14 is essential for the protection of USC's interests; (2) damages for breach of paragraph 14 would be difficult to prove with certainty; and (3) the sum of Five Thousand Dollars ($5,000) per breach represents a reasonable estimate of the harm likely to result from each such breach.

### 16. Newly Discovered Facts

Isaacs acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to a claim or claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

Initials Q.I.a

4

## 17. Voluntary Participation in This Agreement

The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to consider signing this Agreement, and that they are voluntarily signing this Agreement.

## 18. Governing Law

This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said State.

## 19. Further Necessary Actions

The parties agree, without further consideration, to sign and/or cause to be signed, and to deliver to counsel for one another, any other documents and to take any other action as may be necessary to fulfill their obligations under this Agreement, including, but not limited to, effecting the dismissal of all outstanding administrative charges.

## 20. Severability

Should any of the provisions in this Agreement, other than the Release set forth in Paragraph 7, be declared or be determined to be illegal or invalid, all remaining parts, terms or provisions shall be valid, and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

## 21. Proper Construction

a. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

b. As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

c. The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

## 22. Entire Agreement

This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.

Initialed 2 D d
A SA

5

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT
AGREEMENT AND MUTUAL RELEASE INCLUDES A RELEASE OF ALL KNOWN
AND UNKNOWN CLAIMS.**

Executed at <u>Saint-Jean, FRANCE</u> this 31st day of March 2008.

By: _____

Jeffrey Isaacs

Executed at Los Angeles, California, this   **APR 0 4**   _____ 2008.

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____

Dennis F. Dougherty
Senior Vice President for Finance

6



# KECK
SCHOOL OF MEDICINE OF USC
Office of Student Services
1975 Zonal Avenue, KAM 100-B, Los Angeles, California 90089-9020
Tel: 323-442-2553   Fax: 323-442-2663   Email: medstuaf@usc.edu

UNIVERSITY OF SOUTHERN CALIFORNIA
## OFFICIAL ACADEMIC TRANSCRIPT

USC
UNIVERSITY OF SOUTHERN CALIFORNIA

UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA • UNIVERSITY OF SOUTHERN CALIFORNIA •

| Name: | Jeffrey David Isaacs | Matriculation: | 08/08/2005 |
| ID: | 5897207328 | Degree Program: | M.D. |
| DOB: | | Anticipated Graduation: | 05/2009 |
| Degree Title: | | Degree Conferred: | |

| COURSE TITLE | WEEKS | GRADE | MEMORANDUM |
| --- | --- | --- | --- |
| Academic Year: 2005-2006 YEAR I | | | |
| CORE PRINCIPLES | 19.80 | P | |
| HEMATOLOGY & CLINICAL IMMUNOLOGY | 7.00 | F | |
| Status Update: 06/13/2006- Dismissed - Non-Academic Reasons | | | |

End of Transcript

Registrar: _Teresa Cook_

**Teresa Cook, Registrar**

Transcript Printed: Oct-28-2013

**Cook, Teresa**

Dismuse2006

| | |
|---|---|
| From: | ERASInvestigations [erasinvestigations@aamc.org] |
| Sent: | Tuesday, April 10, 2012 12:02 PM |
| To: | Cook, Teresa |
| Subject: | AAMC-ERAS INVESTIGATION INFORMATION REQUEST-JEFFREY DAVID ISAACS |
| Attachments: | ISAACSCERTIFIEDELECSIGNATUREREDACTED.pdf |

Greetings Ms. Cook,

I am the Administrative specialist for ERAS-the Electronic Residency Application Service; a service that transmits residency applications, fellowship applications and supporting credentials from applicants and medical schools to fellowship, osteopathic internship, and residency programs using the Internet in the United States. Additionally, ERAS is committed to supporting a high standard of integrity throughout the application process for residency and fellowship positions. Unethical behavior is strongly discouraged and will be thoroughly investigated and addressed appropriately.

Applicants are required to certify that the information provided in their application is complete and accurate. Further, that false or missing information may result in an investigation by the AAMC, with the policy accessible for their viewing.

ERAS received notification that ~~Jeffrey David Isaacs~~ served as a medical student at the Keck School of Medicine University of Southern California from August 2005 to February 2006. If, Dr. Isaacs attended for the period stated, this information was omitted from his application. Thereby, failing to provide complete, timely and accurate information as certified through his submission to ERAS. A copy of Dr. Isaacs' electronic certification is attached for your viewing.

Any written information you can provide regarding Dr. Isaacs' attendance with Keck School of Medicine is appreciated. Your response may be sent to ERASInvestigations@aamc.org.

Thank you in advance for your time and attention in this matter.

Warm regards,
Rochelle Campbell
ERAS Administrative Specialist
Association of American Medical Colleges
2450 N Street NW
Washington, DC 20037
202 828-0508
rcampbell@aamc.org

 **Gmail**

## Re: NO TRESPASS LETTER AND USC POLICE REPORT

**Fogelman, James P.** <JFogelman@gibsondunn.com>
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>

Sat, Aug 3, 2019 at 12:19 AM

You have no right to be on the USC campus. And you have no reason to be there. You asked me if USC or this firm is blocking you from calling a police department. We are not. But that is not the same as appearing in person on USC's campus. USC does not have a police station on campus—it has a private department of public safety. You do not need to access the campus in order to file a police report. Entering USC's campus would be trespassing. JPF

**James P. Fogelman**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 2, 2019, at 8:49 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

I am not asking legal advice. I am asking if your client has lifted their prior instruction to communicate through counsel.

I expect a concrete answer or this will go straight to the judge.

Yes, or no, I am allowed on campus? (Or, you do not know, and direct me to USC counsel Andres Meyer, who you previously told me not to contact)

On Fri, Aug 2, 2019 at 11:44 PM Fogelman, James P. <JFogelman@gibsondunn.com> wrote:

I am not going to provide you advice. I still have no idea what you are talking about. If this is some new way of asking whether anyone is "blocking" you from calling the police, all I can do is reiterate that we have nothing to do with it and are not "blocking" such a call or standing in your way. I have nothing further to add.

**James P. Fogelman**

### GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 2, 2019, at 8:39 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:

USC's last instruction to me - by Dal Soglio - was to communicate to all USC entities through her. I assume you have replaced her role. You did not respond about the trespass letter. Am I permitted on USC campus to file a police report?
If so, since when?
Additionally, what I would like the registrar to clarify, within 5 business days, whether my student records have been sealed, acquitted, dismissed, and annulled.
May I go directly to the registrar's office, or will your firm , or Andreas, handle this?

Not sure what you mean by threatening. You have threatened me. I have asked you to follow up on a police report that should have been filed over a decade ago.

If you don't answer regarding the trespass letter, I will have to take action against your firm. That is not disrespectful, it is the simple nature of the situation. Hopefully you can understand

Dr Isaacs

On Fri, Aug 2, 2019 at 11:34 PM Fogelman, James P. <JFogelman@gibsondunn.com> wrote:
I have no idea what you are talking about, but I know you are misrepresenting our conversation. You told me you wanted to file a police report. I told you then I had no idea what you are talking about (and still don't) but I told you that you are free to call any police department and tell them anything you want. You told me you would "confirm" that in writing. While unnecessary, you never did. We have no role in whether or not you call a police department. Your constant threats and insults are completely unprofessional, and beyond inappropriate. You have asked us to be respectful of you, and we have, and yet you continue to show me and my firm disrespect. The court will decide whether your claim is allowed to proceed. We don't think it should be allowed and we provide legal arguments to the court to support our position. You state your position. The court will decide. There is no reason for us to communicate about anything unless required by the court. This falls outside anything required and I am asking you to stop sending such threatening and harassing emails to me and my associates. Consult your own lawyer if you have any misunderstanding. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue. Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 2, 2019, at 8:24 PM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:

Per our telephone discussion, I asked you to put in writing the status of my USC police report request that was forwarded to Dal Soglio over ten years ago. The No Trespass letter has never been retracted.
It is my position USC Counsel continues, and has for over a decade, to block me from filing criminal charges with USC police.

215

Please advise within 3 business days 1) the status of the no trespass letter, 2) at what point in time I was permitted back on USC property, 3) the status of the police report I requested, and 4) whether you will take additional information and file the report on my behalf.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

19-cv-2011 Isaacs v. USC

Exhibits Page 88

216

# M Gmail

## Re: Please

**Fogelman, James P.** <JFogelman@gibsondunn.com>
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>

Sat, Aug 3, 2019 at 3:22 PM

This is now just getting ridiculous. When was the last time you reviewed the settlement agreement you executed in 2008? Section 2 of that agreement expressly states that your affiliation with USC is over forever and that you will never apply to USC again. You have already breached the settlement agreement by filing your lawsuit against USC. USC is entitled to collect its attorneys fees from you as a result of that breach. And now you want to breach your agreement again by filing an application with USC? And threatening to trespass on the USC campus to boot? You should really consult your lawyer about these matters. But this firm will not be responding to any more of your emails unless it is required by court rules. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 3, 2019, at 11:32 AM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

provide an answer within two business days as to how I may ascertain from the registrar my current academic status (i.e. acquitted/sealed/annulled/discharged charges)?

>>Additionally, what I would like the registrar to clarify, within 5 business days, whether my student records have been sealed, acquitted, dismissed, and annulled.
May I go directly to the registrar's office, or will your firm , or Andreas, handle this?

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

# M Gmail

## Re: 7-3 overdue

**Fogelman, James P.** <JFogelman@gibsondunn.com>                    Tue, Aug 20, 2019 at 7:56 AM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>
Cc: "Ryzewska, Kat" <KRyzewska@gibsondunn.com>, Keith <keith@aaone.law>, "Mader, Shannon"
<SMader@gibsondunn.com>

Your emails are nothing but intentional harassment and will not be tolerated. You should seek the advice of an
attorney before you proceed any further. JPF

**James P. Fogelman**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197
Tel +1 213.229.7234 • Fax +1 213.229.6234
JFogelman@gibsondunn.com • www.gibsondunn.com

On Aug 20, 2019, at 1:53 AM, Jeffrey D. Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:

[External Email]

Attorney Fogelman:
I understand from your filing today that you did receive my request for a 7-3 conference, and have not answered me.
Please advise when you are able to meet & confer on this matter, or if you are refusing.

Thank you
Jeffrey Isaacs

This message may contain confidential and privileged information for the sole use of the intended recipient. Any
review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been
sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

19-cv-2011 Isaacs v. USC                                        Exhibits Page 90

218



**KAPLAN MARINO**
ATTORNEYS AT LAW

A PROFESSIONAL CORPORATION

9454 Wilshire Boulevard, Suite 500
Beverly Hills, California 90212
Telephone (310) 557-0007
Facsimile (310) 557-0008
www.KaplanMarino.com

Nina Marino
Richard Kaplan

Of Counsel:
Allen G. Weinberg

Writer's Direct E-mail:
Marino@KaplanMarino.com

June 22, 2006

Clive Taylor, MD, PhD
Senior Associate Dean for Educational Affairs
2011 Zonal Avenue, Room 204
Los Angeles, California 90033
*Via Personal Delivery*

    Re:   Jeff Isaacs

Dear Dr. Taylor:

As you know, I represent Jeff Isaacs in this matter. Please consider the following appeal of the Student Performance Committee recommendation that Jeffrey Isaacs be dismissed from the School of Medicine.

## Procedural History

On February 27, 2006 the SPC determined that Mr. Isaacs was suspended from attendance at the medical school pending a dismissal hearing. On April 26, 2006 Mr. Isaacs Petitioned the Medical School for a retroactive medical leave of absence. The request for a retroactive medical leave was denied on May 20, 2006 by Dr. Katsufrakis.[1] On June 8, 2006 the SPC recommended that Mr. Isaacs be dismissed from the School of Medicine "for behavior that was not consistent with the essential characteristics and abilities required for completion of the M.D. degree at the Keck School of Medicine".

## Factual Background

---

[1]In his letter, Dr. Katsufrakis states that the reason the retroactive request for medical leave was being denied was because Jeff was "already on leave". Without belaboring the point, the following would seem fairly obvious: 1.) The request was made retroactively to precede the involuntary suspension; and 2.) An involuntary suspension is significantly different from a voluntary request for medical leave for the purpose of obtaining needed medical treatment.

1

**USC 0521**
Exhibits Page 91

219



**KAPLAN MARINO**
ATTORNEYS AT LAW

Attached as Exhibit "A" please find factual statement of Jeffrey Isaacs.

## Grounds for Appeal

**1. The Procedures for dismissal as Outlined in the Student Handbook were not followed. The following "numbers" refer to the numerical order as listed in the student handbook procedure for dismissal.**

1 - Dr. Katsufrakis allotted 1 hour (*only*) for a meeting with counsel on behalf of Mr. Isaacs. Dr. Katsufrakis did not make himself available as required by the procedures.

3 - The student file provided by Dr. Katsufrakis to Mr. Isaacs was incomplete. Specifically, correspondence sent to Katsufrakis by Dr. Kuyt on behalf of Mr. Isaacs and in support of Mr. Isaacs was redacted from the student file. Additionally, meetings with Dr. Katsufrakis and students in support of Mr. Isaacs were redacted from the student file.

9 - Mr. Isaacs was not presented with all the evidence against him. Mr. Isaacs was informed that the chronology of Jeff Isaac's actions and related events as prepared by the SPC consisted of the "evidence" against him. At the hearing of June 7 before the SPC Dr. Katsufrakis produced notes dated February 22 of his personal and confidential meetings with Jeff Isaacs. These notes were not included in the chronology and therefore, Mr. Isaacs was not provided notice that this evidence would be introduced against him at the hearing.

12 - The recommendations of the Committee were not transmitted in writing to Mr. Isaacs by Dr. Katsufrakis within the required three (3) business days following termination of the meeting. The meeting occurred on June 7, 2006. The written transmission was faxed to counsel for Mr. Isaacs on June 13, 2006 - 6 days later.

**2. The Associate Dean for Student Affairs who conducted the SPC hearing was not impartial.**

**A. Dr. Katsufrakis has demonstrated a clear bias toward Jeff Isaacs.**

Dr. Katsufrakis "counseled" Jeff Isaacs during the period of time in which the events took place. Dr. Katsufrakis had personal knowledge of the emotional and psychological turmoil which Jeff was suffering during the period of time between November 2005 and January 2006. Dr. Katsufrakis met with Jeff Isaacs on numerous occasions (See Attached - notes of Katsufrakis contained in Exhibit "C" to Materials provided to committee by Jeff Isaacs.) Dr. Katsufrakis had personal knowledge that Mr. Isaacs was _____ On March 21, 2006 Dr. Katsufrakis was notified in writing of Mr. Jeff Isaacs' legal representation in the hearing before the Student Performance Committee and that all correspondence should

2

19-cv-2011 Isaacs v. USC

**USC 0522**
Exhibits Page 92

220



**KAPLAN MARINO**
ATTORNEYS AT LAW

therefore be directed to counsel regarding Mr. Isaacs. Nevertheless, on the very day Mr. Isaacs was discharged ▆▆▆▆▆▆, Dr. Katsufrakis sent to Mr. Isaacs at his home a notice rescheduling the hearing for dismissal. This is but one example of Dr. Katsufrakis's blatant disregard for Jeff's emotional well being and is indicative of Dr. Katsufrakis's bias and prejudice toward Jeff.

Furthermore, as evidenced in Jeff's statement, on numerous occasions Dr. Katsufrakis behaved improperly towards Jeff. It is notable that is was Dr. Katsufrakis, who singularly and summarily denied Jeff's retroactive request for medical leave.

**B.     Dr. Katsufrakis acted in a conflicted capacity as "counselor" to Mr. Isaacs and "chairperson" of the SPC determining the issue of dismissal.**

At the hearing of June 7 before the SPC Dr. Katsufrakis, while acting as chairperson of the committee, produced notes dated February 22 of his personal and confidential meetings with Jeff Isaacs. Dr. Katsufrakis acted as a "counselor" to Jeff Isaacs at these meetings. Dr. Katsufrakis used these notes for the purpose of casting dispersions on Jeff - he used Jeff's words which he interpreted to discredit Jeff before the committee.

**3.     The decision reached by the SPC dismissing Mr. Isaacs from Medical School is not commensurate with the behavior.**

Statements of Dr. Kuyt -

Dr. Kuyt stated that Jeff was a student of his. Dr. Kuyt stated that Jeff was an excellent student, a team player, and well regarded by his classmates. He stated that Jeff's heart was extraordinarily kind and that Jeff was highly intelligent and gifted. Dr. Kuyt further stated that he was a good candidate for medical school.

Dr. Kuyt stated that he observed Jeff's deteriorating ▆▆▆▆▆ condition beginning in or about October/November 2005. Dr. Kuyt stated that he has discussed the situation between Jeff and Ms. Baughman with other classmates. Dr. Kuyt is informed that Ms. Baughman's provocative behavior and mean spiritedness exacerbated Jeff's then weakened psychological state.



3

Exhibits Page 93     **USC 0523**

221



**MEDICAL BOARD** OF CALIFORNIA

Protecting consumers by advancing high quality, safe medical care.

**Licensing Program**
2005 Evergreen Street, Suite 1200
Sacramento, CA 95815-5401
Phone: (916) 263-2382
Fax: (916) 263-2487
www.mbc.ca.gov

Gavin Newsom, Governor, State of California | Business, Consumer Services and Housing Agency | Department of Consumer Affairs

## CERTIFICATE OF MEDICAL EDUCATION

Check one: ☐ U.S. or Canadian Medical School Graduate      ☐ International Medical School Graduate

| APPLICANT INFORMATION | | | | MBC Use Only |
|---|---|---|---|---|
| Type or Print Legibly **LEGAL NAME:** Last | First | Middle | Suffix | |
| **Date of Birth** (mm/dd/yyyy) | **Last 4 Digits of U.S. SSN or ITIN** | **Medical School of Graduation** | | Applicant Information ☐ |

**MEDICAL SCHOOL: PLEASE COMPLETE THIS FORM IN THE ENGLISH LANGUAGE**

NOTE: If the applicant had an accelerated or extended curriculum, withdrew from this institution, or was accepted with advanced standing, a letter of explanation from a school official is required. The letter must be on medical school letterhead, signed by a school official, and be mailed directly to the Board from the medical school.

Medical School Information

School Code

1. Name of Medical School

2. State/Province/Country     ☐

3. The undersigned further certifies that the records of this institution show that the applicant attended in this institution _____ years of resident instruction, completing at least 4,000 hours, of which at least 80 percent actual attendance is required in the subjects set forth hereunder (Business and Professions Code Sections 2089, 2089.5, 2089.7, 2090, 2091.1, 2091.2).     ☐

Rev L2 Start Initials & Date

| | | | |
|---|---|---|---|
| Alcoholism and Chemical Dependency | Geriatric Medicine | Otolaryngology | Psychiatry |
| Anatomy | Histology | Pain Management and End-of-Life-Care** | Radiology, including Radiation Safety |
| Anesthesia | Human Sexuality | Pathology, Bacteriology, and Immunology | Spousal Partner Abuse Detection & |
| Biochemistry | Medicine | Pediatrics | Treatment*** |
| Child Abuse Detection and Treatment | Neuroanatomy | Pharmacology | Surgery, including Orthopedic Surgery |
| Dermatology | Neurology | Physical Medicine | Therapeutics |
| Embryology | Obstetrics and Gynecology | Physiology | Tropical Medicine |
| Family Medicine* | Ophthalmology | Preventative Medicine, including Nutrition | Urology |

*ONLY applicable to medical students who enrolled in medical school on or after May 1, 1998
**ONLY applicable to medical students who enrolled in medical school on or after June 1, 2000
***ONLY applicable to medical students who enrolled in medical school on or after September 1, 1994

| | | |
|---|---|---|
| 4. Did the applicant withdraw or transfer from this medical school? | ☐ Yes ☐ No | ☐ |
| 5. What is the standard duration of the curriculum at this institution? | _____ years | ☐ |
| 6. Date the applicant was enrolled in medical school? | (mm/dd/yyyy) | ☐ |
| 7. Date the applicant was issued the diploma of Bachelor/Doctor of Medicine | (mm/dd/yyyy) | ☐ |

**UNUSUAL CIRCUMSTANCES DURING MEDICAL SCHOOL**

Any "Yes" response below requires a signed and dated letter of explanation by school official.

Unusual Circumstances

| | | |
|---|---|---|
| 8. Did this applicant ever take a leave of absence from his/her medical education? | ☐ Yes ☐ No | ☐ |
| 9. Was this applicant ever placed on probation? | ☐ Yes ☐ No | ☐ |
| 10. Was this applicant ever disciplined or placed under investigation? | ☐ Yes ☐ No | ☐ |
| 11. Were any limitations or special requirements imposed on this applicant because of questions of academic or disciplinary problems, or for any other reason? | ☐ Yes ☐ No | ☐ |

**MEDICAL SCHOOL OFFICIAL CERTIFICATION**

| **AFFIX MEDICAL SCHOOL SEAL** | I certify that I am the President, Dean, or Registrar and hereby declare under penalty of perjury under the laws of the State of California that the above statements are true and correct. | School Seal ☐ |
|---|---|---|
| | PRINTED NAME OF SCHOOL OFFICIAL      TITLE OF SCHOOL OFFICIAL | Signature and Date ☐ |
| | SIGNATURE OF SCHOOL OFFICIAL      DATE | |

Attention Medical School: THE PERSON WHO SIGNS THIS FORM MAY NOT BE RELATED TO THE APPLICANT BY BLOOD, MARRIAGE OR ADOPTION. Only the President, Dean, or Registrar may sign the form. If the signature is being delegated to another person, evidence of that delegation must be attached to this form (may be a photocopy). Such delegation must be on official letterhead and must be dated within the last 12 months.

**L2**

**NOTE:** The completed form must be mailed directly from the medical school to the Board to be acceptable.
07A-100 (Revised 01/2019)

Gmail - RE: batch 3/6 not received

# M Gmail

## RE: batch 3/6 not received

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

Wed, Mar 26, 2008 at 12:51 PM

Sorry about that. Not sure why you didn't get it. I think this is the one
you are missing. The entire bates range should be USC 0281-0549.

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Tuesday, March 25, 2008 8:59 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com; Robin Dal Soglio
Subject: batch 3/6 not received

Ms Dal Soglio:

I have received five emails from you; i am not sure if there is a
delay or if there was an error in transmitting batch 3/6. Please let
me know or re-send it possible

Thank you
Jeffrey Isaacs

📎 **USC 0380-0429.pdf**
1455K

1 **DEMAND NO. 4**

2   Documents constituting the entire Keck School of Medicine Student

3 File and Admissions file (including letters of recommendation) for Plaintiff as well

4 as for any student who lodged any form of complaint, retaliatory or otherwise,

5 against Plaintiff.

6 **SUPPLEMENTAL RESPONSE TO DEMAND NO. 4**

7   Defendant objects to this demand on the grounds that it is grossly

8 overbroad, hopelessly burdensome, vague, and ambiguous and seek the production

9 of documents which are neither relevant nor reasonably calculated to lead to the

10 discovery of admissible evidence to the extent that it seeks "the entire Keck School

11 of Medicine Student File and Admissions File" for any student other than Plaintiff.

12 In addition, Defendant objects to this demand to the extent that it seeks to invade

13 the privacy rights of third parties. Subject to and without waiving these objections

14 and the foregoing General Objections, Defendant has already produced Plaintiff's

15 KSOM student file and Admissions file.

16 **DEMAND NO. 5**

17   All documents evidencing or pertaining to the USC DPS involvement

18 in this matter, including, without limitation, those leading to the issuance of any

19 "stay-away" letter(s) or any other matter involving any party to this lawsuit, or any

20 person who lodged any form of complaint, retaliatory or otherwise, against

21 Plaintiff.

22 **SUPPLEMENTAL RESPONSE TO DEMAND NO. 5**

23   Defendant objects to this demand on the grounds that it is vague and

24 ambiguous in its use of the phrase "involvement in this matter." Defendant further

25 objects to this demand on the grounds that it is grossly overbroad, hopelessly

26 burdensome, vague, and ambiguous and seek the production of documents which

27 are neither relevant nor reasonably calculated to lead to the discovery of admissible

28 evidence in its use of the phrase "any other matter, involving any other party to this

19-cv-2011 Isaacs v. USC   4  DEFENDANT'S SUPPLEMENTAL RESPONSES TO
PLAINTIFF'S SECOND REQUEST FOR PRODUCTION

Exhibits Page 96

224

Student Records System

Page 1 of 1



https://srs.aamc.org/srs/index.cfm?fuseaction=student_den_summary&retBut=&grad     6/14/2006

225

(RAOx),APPEAL,CLOSED,DISCOVERY,MANADR,RELATED-G

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:19-cv-08000-DSF-RAO

Dr. Jeffrey Isaacs v. USC Keck School of Medicine et al
Assigned to: Judge Dale S. Fischer
Referred to: Magistrate Judge Rozella A. Oliver
Demand: $9,999,000
Related Case: 2:19-cv-02011-DSF-RAO
Case in other court: 9th CCA, 20-55239
9TH CCA, 20-55633
Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 09/16/2019
Date Terminated: 02/03/2020
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt
Organization
Jurisdiction: Federal Question

**Plaintiff**

**Dr. Jeffrey Isaacs**     represented by **Keith A Mathews**

Associated Attorneys of New England
1000 Elm Street Suite 803
Manchester, NH 03101
603-622-8100
Fax: 888-912-1497
Email: keith@aaone.law
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark Jason Austin**
Burke Williams and Sorensen LLP
1851 East First Street Suite 1550
Santa Ana, CA 92705
949-863-3363
Fax: 949-863-3350
Email: maustin@bwslaw.com
*ATTORNEY TO BE NOTICED*

**Mark L. Josephs**
Law Office of Mark L. Josephs LLC
10 Derne Street
Boston, MA 02114
857-250-4998
Fax: 617-723-6892
Email: mark.josephs@markljosephslaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**USC Keck School of Medicine**

represented by **James P Fogelman**
Gibson Dunn and Crutcher LLP
333 S Grand Avenue 47th Floor
Los Angeles, CA 90071-3197
213-229-7000
Fax: 213-229-7520
Email: jfogelman@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Katarzyna Ryzewska**
Gibson Dunn and Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
213-229-7000
Fax: 213-229-7520
Email: kryzewska@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Shannon Edward Mader**
Gibson Dunn and Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
213-229-7000
Fax: 213-229-7520
Email: smader@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Geisel School of Medicine at Dartmouth**

**Defendant**

**Dartmouth Hitchcock Medical Center**

represented by **Kanika D Corley**
Akerman LLP
601 West 5th Street Suite 300
Los Angeles, CA 90071
213-688-5000
Fax: 213-627-6342
Email: kanika.corley@akerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William D Pandolph**
Sulloway and Hollis PLLC
9 Capitol Street
Concord, NH 03301
603-223-2862
Fax: 603-224-2557
Email: wpandolph@sulloway.com
*PRO HAC VICE*

227

ATTORNEY TO BE NOTICED

**Defendant**

**NH Board of Medicine**

represented by **Kanika D Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lawrence M Edelman**
New Hampshire Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301
603-271-3650
Fax: 603-271-2110
Email: lawrence.edelman@doj.nh.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gibson Dunn and Crutcher LLP**

represented by **James P Fogelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katarzyna Ryzewska**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shannon Edward Mader**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John Doe**

**Defendant**

**Jane Doe**

**Defendant**

**Trustees of Dartmouth College**

represented by **Elizabeth E Ewing**
Wadleigh Starr and Peters PLLC
95 Market Street
Manchester, NH 03101
603-206-7286
Fax: 603-669-6018
Email: eewing@wadleighlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kanika D Corley**
(See above for address)

228

ATTORNEY TO BE NOTICED

**Pierre A Chabot**
Wadleigh Starr and Peters PLLC
95 Market Street
Manchester, NH 03101
603-206-7204
Fax: 603-669-6018
Email: pchabot@wadleighlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2019 | 1 | COMPLAINT against Defendants Dartmouth Hitchcock Medical Center, Jane Doe, John Doe, Geisel School of Medicine at Dartmouth, Gibson Dunn and Crutcher LLP, NH Board of Medicine, USC Keck School of Medicine.Case assigned to Judge Michael W. Fitzgerald for all further proceedings. Discovery referred to Magistrate Judge John E. McDermott. (Filing fee $ 400 PAID) Jury Demanded, filed by Plaintiff Jeffrey Isaacs. (Attachments: # 1 Part 2 of Complaint, # 2 Part 3 of Complaint, # 3 Civil Cover Sheet) (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 2 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendant Dartmouth Hitchcock Medical Center. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 3 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendant Geisel School of Medicine at Dartmouth. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 4 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendant NH Board of Medicine. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 5 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendant Gibson Dunn and Crutcher LLP. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 6 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendant USC Keck School of Medicine. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 7 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Jeffrey Isaacs. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 8 | NOTICE OF ASSIGNMENT to District Judge Michael W. Fitzgerald and Magistrate Judge John E. McDermott. (lh) (Entered: 09/17/2019) |
| 09/16/2019 | 9 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: 09/17/2019) |
| 09/18/2019 | 10 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 19-03-Related Case-filed. Related Case No: 2:19-cv-02011 DSF (RAOx). Case transferred from Judge Michael W. Fitzgerald and Magistrate Judge John E. McDermott to Judge Dale S. Fischer and Magistrate Judge Rozella A. Oliver for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:19-cv-0800 DSF (RAOx). Signed by Judge Dale S. Fischer (esa) (Entered: 09/18/2019) |
| 09/18/2019 | 11 | STANDING ORDER FOR CASES ASSIGNED TO JUDGE DALE S. FISCHER |

| | | |
|---|---|---|
| | | upon filing of the complaint by Judge Dale S. Fischer. If a party would be entitled to attorneys fees, counsel are referred to the Order Re Fees found on Court's website under Judge Fischer's Procedures and Schedules contained in the Judge's Requirements tab. Read all Orders carefully. They govern this case and differ in some respects from the Local Rules. COUNSEL ARE ORDERED TO PROVIDE A MANDATORY CHAMBERS COPY OF THE COMPLAINT, NOTICE OF REMOVAL, AND ANY OTHER INITIATING DOCUMENTS. (rfi) (Entered: 09/18/2019) |
| 09/23/2019 | 13 | NOTICE OF MOTION AND MOTION for Preliminary Injunction; Memorandum of Points and Authorities filed by plaintiff Jeffrey Isaacs. Motion set for hearing on 10/21/2019 at 01:30 PM before Judge Dale S. Fischer. (jp) (Entered: 09/25/2019) |
| 09/24/2019 | 12 | STIPULATION for Extension of Time to File RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION UNTIL OCTOBER 4, 2019 filed by Defendant NH Board of Medicine. (Attachments: # 1 Proposed Order)(Attorney Kanika D Corley added to party NH Board of Medicine(pty:dft))(Corley, Kanika) (Entered: 09/24/2019) |
| 09/26/2019 | 14 | TEXT ONLY ENTRY: (IN CHAMBERS) ORDER by Judge Dale S. Fischer: The hearing on Plaintiff's motion for a preliminary injunction 13 set for October 21, 2019 is removed from the Court's calendar. Oppositions are now due October 7. Plaintiff's reply is due October 21. At that point, the matter will be under submission without oral argument unless further ordered by the Court. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 09/26/2019) |
| 10/01/2019 | 15 | APPLICATION of Non-Resident Attorney Lawrence M. Edelman to Appear Pro Hac Vice on behalf of Defendant NH Board of Medicine (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24532193) filed by Defendant NH Board of Medicine. (Attachments: # 1 Proposed Order) (Corley, Kanika) (Entered: 10/01/2019) |
| 10/02/2019 | 16 | ORDER by Judge Dale S. Fischer: granting 15 Non-Resident Attorney Lawrence M Edelman APPLICATION to Appear Pro Hac Vice on behalf of Defendant NH Board of Medicine, designating Kamika D Corley as local counsel. (jp) (Entered: 10/02/2019) |
| 10/04/2019 | 17 | APPLICATION of Non-Resident Attorney PIERRE A. CHABOT to Appear Pro Hac Vice on behalf of Defendant Trustees of Dartmouth College (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24554685) filed by Defendant Trustees of Dartmouth College. (Attachments: # 1 Proposed Order) (Attorney Kanika D Corley added to party Trustees of Dartmouth College(pty:dft)) (Corley, Kanika) (Entered: 10/04/2019) |
| 10/04/2019 | 18 | APPLICATION of Non-Resident Attorney ELIZABETH E. EWING to Appear Pro Hac Vice on behalf of Defendant Trustees of Dartmouth College (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24554792) filed by Defendant Trustees of Dartmouth College. (Attachments: # 1 Proposed Order) (Corley, Kanika) (Entered: 10/04/2019) |
| 10/04/2019 | 19 | Notice of Appearance or Withdrawal of Counsel: for attorney Katarzyna Ryzewska counsel for Defendant USC Keck School of Medicine. Adding Katarzyna Ryzewska as counsel of record for USC Keck School of Medicine for the reason indicated in the G-123 Notice. Filed by Defendant USC Keck School of Medicine. (Attorney Katarzyna Ryzewska added to party USC Keck School of Medicine(pty:dft)) |

| | | |
|---|---|---|
| 10/04/2019 | 20 | NOTICE of Appearance filed by attorney Shannon Edward Mader on behalf of Defendant USC Keck School of Medicine (Attorney Shannon Edward Mader added to party USC Keck School of Medicine(pty:dft))(Mader, Shannon) (Entered: 10/04/2019) |
| 10/04/2019 | 21 | Notice of Appearance or Withdrawal of Counsel: for attorney Katarzyna Ryzewska counsel for Defendant Gibson Dunn and Crutcher LLP. Filed by Defendant Gibson, Dunn & Crutcher, LLP. (Attorney Katarzyna Ryzewska added to party Gibson Dunn and Crutcher LLP(pty:dft))(Ryzewska, Katarzyna) (Entered: 10/04/2019) |
| 10/04/2019 | 22 | Notice of Appearance or Withdrawal of Counsel: for attorney Shannon Edward Mader counsel for Defendant Gibson Dunn and Crutcher LLP. Adding Shannon E. Mader as counsel of record for Gibson, Dunn & Crutcher LLP for the reason indicated in the G-123 Notice. Filed by Defendant Gibson, Dunn & Crutcher, LLP. (Attorney Shannon Edward Mader added to party Gibson Dunn and Crutcher LLP(pty:dft))(Mader, Shannon) (Entered: 10/04/2019) |
| 10/07/2019 | 23 | Notice of Appearance or Withdrawal of Counsel: for attorney James P Fogelman counsel for Defendant Gibson Dunn and Crutcher LLP. Filed by Defendant Gibson, Dunn & Crutcher, LLP. (Attorney James P Fogelman added to party Gibson Dunn and Crutcher LLP(pty:dft))(Fogelman, James) (Entered: 10/07/2019) |
| 10/07/2019 | 24 | Notice of Appearance or Withdrawal of Counsel: for attorney James P Fogelman counsel for Defendant USC Keck School of Medicine. Adding James P. Fogelman as counsel of record for USC Keck School of Medicine for the reason indicated in the G-123 Notice. Filed by Defendant USC Keck School of Medicine. (Attorney James P Fogelman added to party USC Keck School of Medicine(pty:dft))(Fogelman, James) (Entered: 10/07/2019) |
| 10/07/2019 | 25 | ORDER by Judge Dale S. Fischer: granting 17 Non-Resident Attorney Pierre A Chabot APPLICATION to Appear Pro Hac Vice on behalf of Trustees of Dartmouth College, designating Kanika D Corley as local counsel. (lom) (Entered: 10/07/2019) |
| 10/07/2019 | 26 | ORDER by Judge Dale S. Fischer: granting 18 Non-Resident Attorney Elizabeth E Ewing APPLICATION to Appear Pro Hac Vice on behalf of Trustees of Dartmouth College, designating Kanika D Corley as local counsel. (lom) (Entered: 10/07/2019) |
| 10/07/2019 | 27 | OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION re: NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Defendant NH Board of Medicine. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Proposed Order)(Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 28 | NOTICE of Interested Parties filed by Defendant Trustees of Dartmouth College. (Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 29 | NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* filed by Defendant Trustees of Dartmouth College. Motion set for hearing on 11/4/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order) (Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 30 | Notice of Appearance or Withdrawal of Counsel: for attorney Mark Jason Austin counsel for Plaintiff Jeffrey Isaacs. Adding Mark Jason Austin as counsel of record for |

| | | |
|---|---|---|
| | | Dr. Jeffrey Isaacs. (Attorney Mark Jason Austin added to party Jeffrey Isaacs(pty:pla)) (Austin, Mark) (Entered: 10/07/2019) |
| 10/07/2019 | 31 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 filed by Defendant Trustees of Dartmouth College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V)(Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 32 | APPLICATION of Non-Resident Attorney Keith A. Mathews to Appear Pro Hac Vice on behalf of Plaintiff Jeffrey Isaacs (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24567881) filed by Plaintiff Jeffrey Isaacs. (Attachments: # 1 Proposed Order On Application of Non-Resident Attorney (Keith A. Mathews) to Appear in a Specific Case Pro Hac Vice) (Austin, Mark) (Entered: 10/07/2019) |
| 10/07/2019 | 33 | OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION re: NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Defendant Trustees of Dartmouth College. (Attachments: # 1 Proposed Order) (Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 34 | NOTICE OF JOINDER IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [DOCUMENT NO. 33] filed by DEFENDANT Dartmouth Hitchcock Medical Center. (Corley, Kanika) (Entered: 10/07/2019) |
| 10/07/2019 | 35 | Opposition re: NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support, # 2 Proposed Order)(Ryzewska, Katarzyna) (Entered: 10/07/2019) |
| 10/07/2019 | 36 | NOTICE of Interested Parties filed by Defendant USC Keck School of Medicine, (Ryzewska, Katarzyna) (Entered: 10/07/2019) |
| 10/07/2019 | 37 | Opposition Opposition re: NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Defendant Gibson Dunn and Crutcher LLP. (Attachments: # 1 Proposed Order)(Ryzewska, Katarzyna) (Entered: 10/07/2019) |
| 10/07/2019 | 38 | NOTICE of Interested Parties filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 10/07/2019) |
| 10/08/2019 | 39 | ORDER by Judge Dale S. Fischer: granting 32 Non-Resident Attorney Keith A Mathews APPLICATION to Appear Pro Hac Vice on behalf of Plaintiff Jeffrey Isaacs, designating Mark J Austin as local counsel. (jp) (Entered: 10/09/2019) |
| 10/11/2019 | 40 | *CERTIFICATION AND* NOTICE of Interested Parties filed by Defendant Dartmouth Hitchcock Medical Center, (Attorney Kanika D Corley added to party Dartmouth Hitchcock Medical Center(pty:dft))(Corley, Kanika) (Entered: 10/11/2019) |
| 10/14/2019 | 41 | STIPULATION to Continue Hearing Date on Motion to Dismiss Case from 11/04/2019 to 11/25/2019 Re: NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 filed by Defendant Trustees of Dartmouth College. (Attachments: # 1 Proposed Order) |

| 10/15/2019 | 42 | ORDER by Judge Dale S. Fischer GRANTING Stipulation to Continue Hearing Date on Motion to Dismiss Case Pursuant to FRCP 12(b)(2) and FRCP 12(b)(6) Filed by Defendant Trustees of Dartmouth College [Document No. 29 ] Until 11/25/2019 41 . (SEE ORDER FOR SPECIFICS). (jp) (Entered: 10/16/2019) |
|---|---|---|
| 10/16/2019 | 43 | APPLICATION of Non-Resident Attorney William D. Pandolph to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24615932) filed by Defendant Dartmouth Hitchcock Medical Center. (Attachments: # 1 Proposed Order) (Corley, Kanika) (Entered: 10/16/2019) |
| 10/16/2019 | 44 | STIPULATION Extending Time to Answer the complaint as to Dartmouth Hitchcock Medical Center answer now due 10/30/2019, re Complaint - (Discovery)., 1 filed by Defendant Dartmouth Hitchcock Medical Center.(Corley, Kanika) (Entered: 10/16/2019) |
| 10/16/2019 | 47 | ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE PRO HAC VICE by Judge Dale S. Fischer: GRANTING 43 Non-Resident Attorney William D. Pandolph APPLICATION to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center, designating Kanika D. Corley as local counsel. (lt) (Entered: 10/18/2019) |
| 10/17/2019 | 45 | NOTICE OF MOTION AND MOTION to Dismiss *Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* filed by Defendant USC Keck School of Medicine. Motion hearing set for 11/18/2019 at 1:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Proposed Order, # 2 Declaration of Katarzyna Ryzewska) (Ryzewska, Katarzyna). Modified on 10/24/2019 (jp). (Entered: 10/17/2019) |
| 10/17/2019 | 46 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 10/17/2019) |
| 10/21/2019 | 48 | Opposition support re: NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 10/21/2019) |
| 10/25/2019 | 49 | PROOF OF SERVICE Executed by Attorney Jeffrey Isaacs, upon Defendant Dartmouth Hitchcock Medical Center served on 9/26/2019, answer due 10/30/2019. Service of the Summons and Complaint were executed upon Frank Korn-Risk Manager in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. *Keith Mathews* (Mathews, Keith) (Entered: 10/25/2019) |
| 10/25/2019 | 50 | PROOF OF SERVICE Executed by Attorney Jeffrey Isaacs, upon Defendant USC Keck School of Medicine served on 9/27/2019, answer due 10/18/2019. Service of the Summons and Complaint were executed upon Michelle Direaux - Executive Secretary in compliance with Federal Rules of Civil Procedure by service on a domestic corporation, unincorporated association, or public entity.Original Summons NOT returned. *Keith Mathews* (Mathews, Keith) (Entered: 10/25/2019) |

| 10/25/2019 | 51 | PROOF OF SERVICE Executed by Attorney Jeffrey Isaacs, upon Defendant Geisel School of Medicine at Dartmouth served on 9/26/2019, answer due 10/17/2019. Service of the Summons and Complaint were executed upon Sandhya'Li Iyer - General Counsel in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. *Keith Mathews* (Mathews, Keith) (Entered: 10/25/2019) |
|---|---|---|
| 10/25/2019 | 52 | PROOF OF SERVICE Executed by Attorney Jeffrey Isaacs, upon Defendant Gibson Dunn and Crutcher LLP served on 10/5/2019, answer due 10/28/2019. Service of the Summons and Complaint were executed upon Ramona Gonzalez-Gibson Dunn Crutcher in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. *Keith Mathews* (Mathews, Keith) (Entered: 10/25/2019) |
| 10/25/2019 | 53 | NOTICE OF MOTION re NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 , NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 , NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 filed by Defendant Gibson Dunn and Crutcher LLP. Motion set for hearing on 11/25/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration of Katarzyna Ryzewska, # 2 Proposed Order) (Ryzewska, Katarzyna) (Entered: 10/25/2019) |
| 10/25/2019 | 54 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 10/25/2019) |
| 10/25/2019 | 55 | JOINDER in NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 10/25/2019) |
| 10/28/2019 | 56 | NOTICE OF MOTION AND MOTION to Continue hearing from November 18, 2019 to December 16, 2019 filed by plaintiff Jeffrey Isaacs. Motion set for hearing on 11/18/2019 at 01:15 PM before Judge Dale S. Fischer. (Mathews, Keith) (Entered: 10/28/2019) |
| 10/29/2019 | 57 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: NOTICE OF MOTION AND MOTION to Continue hearing from 11/18/2019 to 12/16/2019 56 . The following error(s) was/were found: Proposed Document was not submitted as separate attachment. Other error(s) with document(s): Proposed Order shall be filed as separate attachment to the e-filed a "NOTICE OF LODGING" and e-mailed to Judge Fischer generic email addresses a WordPerfect or Microsoft Word version of the document. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (jp) (Entered: 10/29/2019) |

234

| | | |
|---|---|---|
| 10/30/2019 | | *Plaintiff's Complaint and Memorandum of Points and Authorities* filed by Defendant Dartmouth Hitchcock Medical Center. Motion set for hearing on 1/6/2020 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration of William D. Pandolph, # 2 Exhibit 1 to 5 to William D. Pandolph Declaration, # 3 Exhibit 6 to 9 to William D. Pandolph, # 4 Proposed Order) (Corley, Kanika) (Entered: 10/30/2019) |
| 10/30/2019 | 59 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Complaint and Memorandum of Points and Authorities* 58 filed by Defendant Dartmouth Hitchcock Medical Center. (Corley, Kanika) (Entered: 10/30/2019) |
| 10/30/2019 | 60 | NOTICE OF ERRATA filed by Defendant Gibson Dunn and Crutcher LLP. correcting Request for Judicial Notice, 54 , Notice of Motion,, 53 , Joinder (Motion Related), 55 *// Re: Gibson Dunns Motion to Dismiss docket entry, and related filing docket entries.* (Ryzewska, Katarzyna) (Entered: 10/30/2019) |
| 10/30/2019 | 61 | NOTICE OF MOTION AND MOTION to Dismiss Case *// Defendant Gibson, Dunn & Crutcher Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss "Corrected Docket Entry, See Errata ECF 60"* filed by Defendant Gibson Dunn and Crutcher LLP. (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support, # 2 Proposed Order) (Ryzewska, Katarzyna) (Entered: 10/30/2019) |
| 10/30/2019 | 62 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *// Defendant Gibson, Dunn & Crutcher Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss "Corrected Docket Entry, See Errata ECF 60&* 61 *filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 10/30/2019)* |
| 10/30/2019 | 63 | JOINDER in NOTICE OF MOTION AND MOTION to Dismiss Case *// Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 *Gibson Dunn and Crutcher LLP Joinder to Motion* filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 10/30/2019) |
| 11/04/2019 | 64 | NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *; Memorandum of Points and Authorities in Support of Motion to Strike* filed by Defendant Gibson Dunn and Crutcher LLP. (Attachments: # 1 Declaration of James P Fogelman, # 2 Declaration of Katarzyna Ryzewska, # 3 Proposed Order) (Ryzewska, Katarzyna) (Entered: 11/04/2019) |
| 11/04/2019 | 65 | REQUEST FOR JUDICIAL NOTICE filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 11/04/2019) |
| 11/04/2019 | 66 | NOTICE OF ERRATA filed by Defendant Gibson Dunn and Crutcher LLP. correcting NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *; Memorandum of Points and Authorities in Support of Motion to Strike* 64 *"Corrected Declaration of Katarzyna Ryzewska "* (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support)(Ryzewska, Katarzyna) (Entered: 11/04/2019) |
| 11/05/2019 | 67 | NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *, and Joinder in Gibson, Dunn & Crutcher, LLP Motion to Strike* filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support, # 2 |

| 11/06/2019 | 68 | ORDER by Judge Dale S. Fischer DENYING MOTION for Preliminary Injunction 13 . (SEE ORDER FOR SPECIFICS). (jp) (Entered: 11/06/2019) |
|---|---|---|
| 11/07/2019 | 69 | STIPULATION for Hearing re NOTICE OF MOTION AND MOTION for Preliminary Injunction. Motion 13 , NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint ; *Memorandum of Points and Authorities in Support of Motion to Strike* 64 , NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 , NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 , NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint , *and Joinder in Gibson, Dunn & Crutcher, LLP Motion to Strike* 67 , NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant Gibson, Dunn & Crutcher Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss "Corrected Docket Entry, See Errata ECF 60&* 61 , *Notice of Motion,,* 53 , NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Complaint and Memorandum of Points and Authorities* 58 , STIPULATION to Reschedule Consolidate Motion Hearings and Briefing Schedule *filed by Plaintiff Jeffrey Isaacs. (Attachments: #* 1 *Proposed Order On Stipulation to Cosolidate Motion Hearings and Briefing Schedule)(Austin, Mark) (Entered: 11/07/2019)* |
| 11/07/2019 | 70 | NOTICE OF ERRATA filed by Defendant Gibson Dunn and Crutcher LLP. correcting NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint ; *Memorandum of Points and Authorities in Support of Motion to Strike* 64 *Gibson Dunns Errata to anti-SLAPP Motion* (Attachments: # 1 Exhibit 1 Corrected anti-SLAPP Motion, # 2 Exhibit 2 - Redline)(Ryzewska, Katarzyna) (Entered: 11/07/2019) |
| 11/08/2019 | 71 | ORDER by Judge Dale S. Fischer, re Stipulation to Consolidate Motion hearings and Briefing Schedule 69 . (SEE ORDER FOR SPECIFICS). (jp) (Entered: 11/12/2019) |
| 11/15/2019 | 72 | NOTICE OF MOTION AND MOTION to Dismiss Case // *Memorandum of Points & Authorities in Support of New Hampshire Board of Medicines Motion To Dismiss Complaint Under FED. R. CIV. P. 12(b)(1), (2), (6)* filed by Defendant NH Board of Medicine. Motion set for hearing on 2/3/2020 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order) (Corley, Kanika) (Entered: 11/15/2019) |
| 12/09/2019 | 73 | NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Preliminary Injunction 68 Jeffrey Isaacs. Motion set for hearing on 1/13/2020 at 01:30 PM before Judge Dale S. Fischer. (Mathews, Keith) (Entered: 12/09/2019) |
| 12/13/2019 | 74 | OBJECTION AND OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND STAY OF PROCEEDINGS re: NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Preliminary Injunction 68 73 filed by Defendant NH Board of Medicine. (Corley, Kanika) (Entered: 12/13/2019) |
| 12/17/2019 | 75 | BRIEF OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OR STAY OF PROCEEDINGS AND JOINDER IN ECF 74 re: NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Preliminary Injunction 68 73 filed by Defendant Trustees of Dartmouth College. (Corley, Kanika) (Entered: 12/17/2019) |

| 12/17/2019 | 76 | ORDER by Judge Dale S. Fischer DENYING MOTION for Reconsideration (Dkt. No. 73 ). (SEE ORDER FOR SPECIFICS). (jp) (Entered: 12/17/2019) |
|---|---|---|
| 01/13/2020 | 77 | Opposition opposition re: NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 , NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *, and Joinder in Gibson, Dunn & Crutcher, LLP Motion to Strike* 67 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 01/13/2020) |
| 01/13/2020 | 78 | Opposition opposition re: NOTICE OF MOTION AND MOTION to Dismiss Case // *Memorandum of Points & Authorities in Support of New Hampshire Board of Medicines Motion To Dismiss Complaint Under FED. R. CIV. P. 12(b)(1), (2), (6)* 72 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 01/13/2020) |
| 01/13/2020 | 79 | EXHIBIT 1 to NOTICE OF MOTION AND MOTION to Dismiss Case // *Memorandum of Points & Authorities in Support of New Hampshire Board of Medicines Motion To Dismiss Complaint Under FED. R. CIV. P. 12(b)(1), (2), (6)* 72 *exhibit to opposition* filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 01/13/2020) |
| 01/13/2020 | 80 | OPPOSITION to NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *; Memorandum of Points and Authorities in Support of Motion to Strike* 64 , NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *, and Joinder in Gibson, Dunn & Crutcher, LLP Motion to Strike* 67 , NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant Gibson, Dunn & Crutcher Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss "Corrected Docket Entry, See Errata ECF 60&* 61 *filed by Plaintiff Jeffrey Isaacs. (Attachments: #* 1 *Declaration of Jeffrey Isaacs, #* 2 *Declaration of Mark J. Austin)(Austin, Mark) (Entered: 01/13/2020)* |
| 01/17/2020 | 81 | REPLY to Plaintiff's Opposition to Motion to Dismiss Complaint NOTICE OF MOTION AND MOTION to Dismiss Case // *Memorandum of Points & Authorities in Support of New Hampshire Board of Medicines Motion To Dismiss Complaint Under FED. R. CIV. P. 12(b)(1), (2), (6)* 72 filed by Defendant NH Board of Medicine. (Corley, Kanika) (Entered: 01/17/2020) |
| 01/17/2020 | 82 | NOTICE OF NON-OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 *- Notice of Plaintiff's Failure to File Opposition to Motion to Dismiss Amended Complaint* filed by Defendant Trustees of Dartmouth College. (Corley, Kanika) (Entered: 01/17/2020) |
| 01/17/2020 | 83 | NOTICE OF NON-OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Complaint and Memorandum of Points and Authorities* 58 *- Notice of Plaintiff's Failure to File Opposition to DHMC's Motion to Dismiss Amended Complaint* filed by Defendant Dartmouth Hitchcock Medical Center. (Corley, Kanika) (Entered: 01/17/2020) |
| 01/18/2020 | 84 | REPLY Reply in Support of USC's Motion NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint *, and Joinder in Gibson, Dunn & Crutcher, LLP Motion to Strike* 67 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 01/18/2020) |

| 01/18/2020 | 85 | REPLY Reply in Support of USC's NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant USC Keck School of Medicine Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss* 45 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 01/18/2020) |
|---|---|---|
| 01/18/2020 | 86 | REPLY Reply in Support of Gibson Dunn's NOTICE OF MOTION AND MOTION to Strike Plaintiffs Complaint ; *Memorandum of Points and Authorities in Support of Motion to Strike* 64 , re-filed as ECF 70-1, filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 01/18/2020) |
| 01/18/2020 | 87 | REPLY Reply in Support of Gibson Dunn's NOTICE OF MOTION AND MOTION to Dismiss Case // *Defendant Gibson, Dunn & Crutcher Notice of Motion to Dismiss Plaintiffs Complaint; Memorandum of Points and Authorities in Support of Motion to Dismiss "Corrected Docket Entry, See Errata ECF 60&* 61 *filed by Defendant Gibson Dunn and Crutcher LLP. (Ryzewska, Katarzyna) (Entered: 01/18/2020)* |
| 01/23/2020 | 88 | APPLICATION of Non-Resident Attorney Mark L. Josephs to Appear Pro Hac Vice on behalf of Plaintiff Jeffrey Isaacs (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-25178857) filed by Plaintiff Jeffrey Isaacs. (Attachments: # 1 Proposed Order G-64 Order) (Austin, Mark) (Entered: 01/23/2020) |
| 01/24/2020 | 89 | ORDER by Judge Dale S. Fischer: granting 88 Non-Resident Attorney Mark L. Josephs APPLICATION to Appear Pro Hac Vice on behalf of Dr. Jeffrey Isaacs, designating Mark J Austin as local counsel. (lom) (Entered: 01/24/2020) |
| 01/27/2020 | 90 | NOTICE OF NON-OPPOSITION to NOTICE OF MOTION AND MOTION to Dismiss Case *PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)* 29 , NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Complaint and Memorandum of Points and Authorities* 58 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 01/27/2020) |
| 01/31/2020 | 91 | TEXT ONLY ENTRY (IN CHAMBERS) ORDER TAKING MOTION OFF CALENDAR AND UNDER SUBMISSION Judge Dale S. Fischer. The Court, on its own motion, takes the Motion 29 set for Monday, February 3, 2020 off calendar and under submission. The Court will set a new hearing date if it decides oral argument would be helpful. A written order will follow. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (pbl) TEXT ONLY ENTRY (Entered: 01/31/2020) |
| 01/31/2020 | 92 | TEXT ONLY ENTRY (IN CHAMBERS) ORDER TAKING MOTION OFF CALENDAR AND UNDER SUBMISSION Judge Dale S. Fischer. The Court, on its own motion, ALSO takes Motions 45 , 53 , 55 , 58 , 61 , 63 , 64 , 67 and 72 set for Monday, February 3, 2020 off calendar and under submission. The Court will set a new hearing date if it decides oral argument would be helpful. A written order will follow. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (pbl) TEXT ONLY ENTRY (Entered: 01/31/2020) |
| 02/03/2020 | 93 | ORDER by Judge Dale S. Fischer GRANTING Motions to Dismiss (Dkt. Nos. 29 , 45 , 58 , 61 , 72 ); Order GRANTING Special Motions to Strike (Dkt. Nos. 64 , 67 ). (SEE ORDER FOR SPECIFICS). (jp) (Entered: 02/04/2020) |
| 02/03/2020 | 94 | JUDGMENT by Judge Dale S. Fischer. (MD JS-6, Case Terminated). (SEE JUDGMENT FOR SPECIFICS). (jp) (Entered: 02/04/2020) |

| 02/14/2020 | 95 | Notice of Withdrawal of Non-Opposition to Motion, 90 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 02/14/2020) |
|---|---|---|
| 02/14/2020 | 96 | NOTICE filed by Plaintiff Jeffrey Isaacs. *Non-Opposition To Dartmouth Hitchcock Medical Center and Giesel School of Medicine At Dartmouths Motions to Dismiss; Amended* (Mathews, Keith) (Entered: 02/14/2020) |
| 02/18/2020 | 97 | APPLICATION to the Clerk to Tax Costs against defendant Jeffrey Isaacs filed by Defendant Gibson Dunn and Crutcher LLP. (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support) (Ryzewska, Katarzyna) (Entered: 02/18/2020) |
| 02/18/2020 | 98 | APPLICATION to the Clerk to Tax Costs against defendant Jeffrey Isaacs filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Declaration of Katarzyna Ryzewska in Support) (Ryzewska, Katarzyna) (Entered: 02/18/2020) |
| 02/18/2020 | 99 | NOTICE OF MOTION AND MOTION for Attorney Fees *and Costs* filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Declaration of James P Fogelman, # 2 Declaration of Shannon Mader, # 3 Declaration of Katarzyna Ryzewska, # 4 Proposed Order) (Ryzewska, Katarzyna) (Entered: 02/18/2020) |
| 02/28/2020 | 100 | Motion for Extension of Deadline to file Opposition to Defendant's Motion for Fees Opposition re: NOTICE OF MOTION AND MOTION for Attorney Fees *and Costs* 99 *Motion to Extend Deadline* filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 02/28/2020) |
| 03/02/2020 | 101 | NOTICE Notice of Appeal from Final Judgment filed by Plaintiff Jeffrey Isaacs. *Notice of Appeal and Representation Statement* (Mathews, Keith) (Entered: 03/02/2020) |
| 03/02/2020 | 102 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Jeffrey Isaacs. Appeal of Judgment 94 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-25570665.) (Mathews, Keith) (Entered: 03/02/2020) |
| 03/02/2020 | 103 | REPRESENTATION STATEMENT re Notice of Appeal to 9th Circuit Court of Appeals 102 . (Mathews, Keith) (Entered: 03/02/2020) |
| 03/03/2020 | 104 | TEXT ONLY ENTRY: (IN CHAMBERS) ORDER by Judge Dale S. Fischer: Plaintiff's request for an extension of time to respond to the motion for fees and costs is GRANTED. The opposition is now due April 13, 2020. The reply is due April 27. At that time the matter will be under submission without oral argument unless later ordered by the Court. 99 100 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 03/03/2020) |
| 03/03/2020 | 108 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 20-55239 assigned to Notice of Appeal to 9th Circuit Court of Appeals 102 as to plaintiff Jeffrey Isaacs. (jp) (Entered: 03/06/2020) |
| 03/04/2020 | 105 | BILL OF COSTS. Costs Taxed in amount of $513.40 (SEE FORM CV-59 FOR SPECIFICS) 97 (kr) (Entered: 03/04/2020) |
| 03/04/2020 | 106 | BILL OF COSTS. Costs Taxed in amount of $273.33 (SEE FORM CV-59 FOR SPECIFICS) 98 (kr) (Entered: 03/04/2020) |
| 03/04/2020 | 107 | NOTICE OF CLERICAL ERROR: Due to clerical error Re: Bill of Costs (CV-59) 106 . Amount of costs taxed not entered on Form CV-59. Amended Bill of costs attached. |

| 03/17/2020 | 109 | Notice of Electronic Filing re Bill of Costs (CV-59) 105 , Notice (Other) 96 , Text Only Scheduling Notice, 104 , Notice of Appeal to 9th Circuit Court of Appeals 102 , Notice (Other) 101 , USCA Notification of Case Number 108 , NOTICE OF MOTION AND MOTION for Attorney Fees *and Costs* 99 , Representation Statement 103 e-mailed to mark.josephs@markjosephslaw.com bounced due to 5.1.2 - Bad destination host 'DNS Hard Error looking up markjosephslaw.com (MX): NXDomain'. The primary e-mail address associated with the attorney record has been deleted. Pursuant to Local Rules it is the attorneys obligation to maintain all personal contact information including e-mail address in the CM/ECF system. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ew) TEXT ONLY ENTRY (Entered: 03/17/2020) |
| 04/07/2020 | 110 | Opposition opposition re: NOTICE OF MOTION AND MOTION for Attorney Fees *and Costs* 99 filed by Plaintiff Jeffrey Isaacs. (Mathews, Keith) (Entered: 04/07/2020) |
| 04/27/2020 | 111 | REPLY in Support of NOTICE OF MOTION AND MOTION for Attorney Fees *and Costs* 99 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 04/27/2020) |
| 05/15/2020 | 112 | ORDER by Judge Dale S. Fischer GRANTING Motion for Attorney's Fees and Costs (Dkt. No. 99 ). (See Order for Specifics). (jp) (Entered: 05/18/2020) |
| 06/15/2020 | 113 | NOTICE Appeal Attorney's Fees Costs filed by Plaintiff Jeffrey Isaacs. (Josephs, Mark) (Entered: 06/15/2020) |
| 06/18/2020 | 114 | NOTICE OF ERRATA filed by Plaintiff Jeffrey Isaacs. correcting Notice (Other) 113 (Josephs, Mark) (Entered: 06/18/2020) |
| 06/18/2020 | 115 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Jeffrey Isaacs. Appeal of Order on Motion for Attorney Fees 112 . (Appeal fee of $505 paid.) (Josephs, Mark) (Entered: 06/18/2020) |
| 06/19/2020 | 116 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 20-55633 assigned to Notice of Appeal to 9th Circuit Court of Appeals 115 as to plaintiff Jeffrey Isaacs. (mat) (Entered: 06/22/2020) |

| **PACER Service Center** | | | |
| **Transaction Receipt** | | | |
| 09/23/2020 16:46:29 | | | |
| **PACER Login:** | markjosephs | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-08000-DSF-RAO End date: 9/23/2020 |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |