No. 20-55633

*In the*

# United States Court of Appeals for the Ninth Circuit

JEFFREY ISAACS,

*Plaintiff-Appellant,*

v.

USC KECK SCHOOL OF MEDICINE,

*Defendant-Appellee,*

and

GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP, and JOHN or JANE DOE.

On Appeal from the U.S. District Court
for the Central District of California, Los Angeles
Case No. 19-CV-08000, the Hon. Dale S. Fischer, District Judge

**DEFENDANT-APPELLEE USC KECK SCHOOL OF MEDICINE'S SUPPLEMENTAL EXCERPTS OF RECORD**

James P. Fogelman
  *Counsel of Record*
Shannon Mader
Katarzyna Ryzewska
GIBSON, DUNN & CRUTCHER, LLP
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

Linda D. Lam
  *Counsel of Record*
Lori G. Ginex-Orinion
AVISO LEGAL GROUP LLP
4000 Barranca Parkway, Suite 250
Irvine, California 92604
Telephone: (949) 262-3271
Facsimile: (949) 271-4037

*Attorneys for USC Keck School of Medicine,*
*Defendant-Appellee*

# INDEX OF SUPPLEMENTAL EXCERPTS OF THE RECORD

| TAB-LINKED | DATE | DOCUMENT | BATES RANGE |
|---|---|---|---|
| **2006 CASE FILINGS** | | | |
| Tab 1 | 04/21/2008 | [ECF 45-2] USC's Motion to Enforce the Settlement Agreement, filed in *Isaacs v. USC*, Case No. CV-06-3338-GAF (C.D. Cal. May 8, 2008), ECF 77, filed in Support of USC's Motion to Dismiss in the Underlying Action | 001-008 |
| Tab 2 | 05/08/2008 | [ECF 45-2] Order Granting USC's Motion to Enforce the Settlement Agreement, entered in *Isaacs v. USC*, Case No. CV-06-3338-GAF (C.D. Cal. May 8, 2008), ECF 81, filed in Support of USC's Motion to Dismiss in the Underlying Action | 009-014 |
| **PRIOR ACTION FILINGS** | | | |
| Tab 3 | 03/18/2019-10/11/2019 | Civil Docket for *Isaacs v. DHMC*, Case No. 2:19-cv-02011-DSF-RAO (C.D. Cal. Oct. 11, 2019) (the "Prior Action") | 015-023 |
| Tab 4 | 03/18/2019 | [Prior Action ECF 1] Original Complaint, Pages 1-3, 5-9, 31-32, 34, 39-44 | 024-040 |
| Tab 5 | 07/19/2019 | [Prior Action ECF 33] First Amended Complaint ("FAC"), Pages 1, 6-12, 29-38, 41-42, 48, 52-53, 55-57 | 041-066 |
| Tab 6 | 08/02/2019 | [Prior Action ECF 41] USC's Motion to Dismiss Plaintiff's FAC, Pages 1-5 | 067-071 |
| Tab 7 | 09/12/2019 | [Prior Action ECF 60] Plaintiff's Voluntary Dismissal, Pages 1-2, 4 | 072-074 |
| **UNDERLYING ACTION FILINGS** | | | |
| Tab 8 | 11/06/2019 | [ECF 68] Order Denying Plaintiff's Motion for Preliminary Injunction | 075-076 |
| Tab 9 | 12/17/2019 | [ECF 76] Order Denying Plaintiff's Motion for Reconsideration | 077-078 |
| Tab 10 | 02/03/2020 | [ECF 93] Order Granting Motions to Dismiss and Special Motions to Strike | 079-086 |
| Tab 11 | 02/03/2020 | [ECF 94] Judgment | 087 |
| Tab 12 | 04/27/2020 | [ECF 111] Defendant USC Keck School of Medicine's Reply in Support of Its Motion for Attorneys' Fees and Costs | 088-105 |

1  DAL SOGLIO & MARTENS LLP
2     Robin D. Dal Soglio (State Bar No. 155334)
   27240 Turnberry Lane, Suite 200
3  Valencia, California 91355
4  Telephone: (661) 362-0736
   Facsimile: (661) 244-4942
5  E-mail: rdalsoglio@dm-lawfirm.com

6
   Attorneys for Defendants University of
7  Southern California, Robert Baughman, Brian
   E. Henderson, Peter J. Katsufrakis and James
8  M.H. Ball

9

10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA

12
   JEFFREY DAVID ISAACS,              CASE NO. CV-06-3338 GAF (Ex)
13
14          Plaintiff,                **DEFENDANT UNIVERSITY OF**
                                       **SOUTHERN CALIFORNIA'S**
15     v.                             **MOTION TO ENFORCE**
                                       **SETTLEMENT AGREEMENT;**
16                                     **MEMORANDUM OF POINTS AND**
   UNIVERSITY OF SOUTHERN            **AUTHORITIES AND DECLARATION**
17 CALIFORNIA; ROBERT WILLIAM        **OF ROBIN D. DAL SOGLIO IN**
18 BAUGHMAN; BRIAN E.                **SUPPORT THEREOF**
   HENDERSON; PETER J.
19 KATSUFRAKIS; and JAMES M.H.
20 BALL                               Date:      May 12, 2008
                                      Time:      9:30 a.m.
21          Defendants.               Courtroom: 740 – Roybal
                                                 Hon. Gary A. Feess
22

23

24 **TO PLAINTIFF JEFFREY DAVID ISAACS, IN PRO SE:**

25        **PLEASE TAKE NOTICE** that on Monday, May 12, 2008, at 9:30

26 a.m., or as soon thereafter as the matter can be heard, before the Honorable Gary

27 A. Feess in Courtroom 740 of the United States District Court, Central District of

28 California, Roybal Federal Building located at 255 East Temple Street, Los

1  Angeles, California 90012, Defendant University of Southern California ("USC")

2  will, and hereby does, move the Court for an Order enforcing the settlement

3  agreement entered into by the parties to this action.

4         Defendant makes this motion on the grounds that the parties reached

5  an agreement in principle to settle this matter on March 28, 2008, and thereafter

6  negotiated and executed a Settlement Agreement on March 31 (Plaintiff) and April

7  4, 2008 (Defendant).  Thereafter, prior to signing the agreed upon Stipulation for

8  Dismissal, Plaintiff notified Defendant of his intention to attempt "void" the

9  Settlement Agreement and proceed with litigation.

10         Nevertheless, the Settlement Agreement entered into by the parties,

11  and fully executed, is an enforceable contract.  Defendant seeks an order from the

12  Court enforcing that agreement.

13         Pursuant to Local Rule 16-12, this case is exempt from the meet and

14  confer requirement of Local Rule 7-3, on the grounds that Plaintiff is appearing

15  *pro se* and is not an attorney.

16

17  Dated:    April 21, 2008                    Respectfully submitted,

18                                              DAL SOGLIO & MARTENS LLP
19                                              Robin D. Dal Soglio

20

21

22  By:  _Robin D Dal Soglio_
                                                Robin D. Dal Soglio
23                                              Attorneys for Defendants University of
24                                              Southern California, *et al.*

25

26

27

28

                                        2        **Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 120

TAB 1

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2           Defendant University of Southern California ("Defendant") hereby

3    moves the Court for an Order enforcing the terms of the Settlement Agreement

4    negotiated and executed by Plaintiff and Defendant.  This litigation has been

5    ongoing for over two years.  Finally, after extensive negotiations with Plaintiff

6    (and previously with his attorney-friend who negotiated on his behalf from

7    approximately September 2007 through January 2008), the parties were able to

8    reach an agreement to settle this matter.  Plaintiff has executed the Settlement

9    Agreement, but now seeks to "void" the Agreement and refuses to sign the

10   Stipulation for Dismissal necessary to end this action.  Defendant asks the Court to

11   intervene and bring this matter to an end.

12                                          **I.**

13                              **FACTUAL SUMMARY**

14          As set forth in the attached Declaration of Robin D. Dal Soglio,

15   settlement discussions have been ongoing throughout the course of this litigation.

16   Dal Soglio Decl., ¶ 1.  These discussions continued until an agreement was reached

17   in principle on March 28, 2008.  Throughout the negotiations, Plaintiff displayed

18   understanding and skill in the negotiation process.  Dal Soglio Decl., ¶ 2.  He

19   sought clarification on offers made by defense counsel, and made counter offers.

20   He never displayed confusion over the substance or process of the settlement

21   negotiations.  Dal Soglio Decl., ¶ 2.

22          On Friday, March 28, 2008, Plaintiff sent defense counsel an email

23   accepting Defendant's most recent settlement offer.  He stated that the offer was

24   "immediately accepted pending the forthcoming bilateral/mutual general release

25   terms agreement."  Dal Soglio Decl., ¶ 3 and Exh. A thereto.  Plaintiff e-mailed

26   defense counsel later that same evening, seeking to confirm that she received his

27   earlier e-mail and to "set a schedule for finalizing the settlement contract."  He

28   stated that he would "need to confirm (preferably in writing and verbally) this with

                                          1              **Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 121

TAB 1                                                                                    SER003

1   you today as a binding contract...."  Dal Soglio Decl., ¶ 3 and Exh. A thereto.

2          USC's attorney responded to Plaintiff via e-mail informing him that

3   she would commence drafting a written agreement to document the terms of the

4   settlement.  Dal Soglio Decl., ¶ 4.

5          On Monday, March 31, 2008, defense counsel provided a draft of the

6   Settlement Agreement to Plaintiff via e-mail.  Plaintiff e-mailed back comments

7   and requested certain changes to the draft Agreement.  Plaintiff and Defendant's

8   attorney proceeded throughout the day on Monday to continue to negotiate the

9   specific language and various minor aspects of the agreement, although the amount

10  of the settlement and major terms and already been accepted through e-mail.  Dal

11  Soglio Decl., ¶ 5 and Exh. B thereto.

12         Later that afternoon, at 4:12 p.m. on March 31, 2008, Plaintiff e-

13  mailed to defense counsel the signed Settlement Agreement, thereby fully

14  accepting all the terms and language of the Settlement Agreement.  Dal Soglio

15  Decl., ¶ 6 and Exh. C thereto.  Defendant's attorney immediately forwarded the

16  agreement to USC for signing.  Defendant executed the Settlement Agreement on

17  April 2, 2008.

18         Among other things, the final executed Settlement Agreement

19  contained the following provisions relevant to this enforcement action:

20         • Plaintiff will execute and deliver to defense counsel a

21           Stipulation for Dismissal with Prejudice to be filed with the

22           Court.  (Paragraphs 1 and 19)

23         • Plaintiff has the opportunity to review the Agreement with an

24           attorney and either did so or has knowingly and voluntarily

25           chosen not do so.  (Paragraph 17)

26  ///

27  ///

28  ///

2

**Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 122

TAB 1

- Plaintiff carefully read and fully understands all of the provisions of the Agreement and has been given a reasonable period of time to consider signing the Agreement, and is voluntarily doing so.

- This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements and understandings between the parties. (Paragraph 22)

On April 2, 2008, Plaintiff sent defense counsel another copy of the signed Settlement Agreement. He was concerned because he had originally typed his initials on each of the pages of the Settlement Agreement, and the new copy contained his handwritten initials. Dal Soglio Decl., ¶ 7 and Exh. D thereto.

Over the next several days, Plaintiff and Defendant's attorney exchanged several emails regarding whether payment would be made by USC by wire transfer or check and whether USC would be willing to join in a stipulation to strike or seal the papers in support of the motions filed on March 31. During the next several days, Plaintiff expressed no remorse over the settlement itself, just interest in ironing out these post-settlement issues. Dal Soglio Decl., ¶ 8.

On Friday, April 4, 2008, the second version of settlement agreement (containing Plaintiff's handwritten initials) was executed by Defendant and counsel thereafter forwarded this copy of the final, fully executed Settlement Agreement to Plaintiff on Monday, April 7, 2008. Dal Soglio Decl., ¶ 9 and Exh. E thereto. That same afternoon, defense counsel inquired about the status of the Stipulation for Dismissal, which was Exhibit A to the Settlement Agreement, and which Plaintiff had agreed to sign upon execution of Settlement Agreement. However, Plaintiff did not respond to this inquiry.

On Tuesday, April 8, 2008, more than one week after he signed the settlement agreement, Plaintiff emailed defense counsel to inform her for the first time that he "intended to void the settlement." Plaintiff stated that he believed that

1  he had accepted a settlement that "was far short of what is appropriate" but

2  explained that he "was honestly trying to put this matter behind [him]."  Dal Soglio

3  Decl., ¶ 11 and Exh. F thereto.

4  # I.

5  ## ARGUMENT

6  After months of negotiations, Plaintiff and Defendant finally

7  negotiated and entered into a written, binding Settlement Agreement.  Plaintiff is

8  now apparently suffering from "buyer's remorse" and is sorry that he accepted an

9  offer that is, in his own words, "far short" of what he wanted.   He claims that he is

10  seeking to "void" the Settlement Agreement but he has no valid legal grounds to

11  do so.

12  A district court has the inherent power to enforce an agreement to

13  settle a litigation pending before the court.  In re Suchy, 786 F.2d 900, 902-903 (9th

14  Cir. 1985).  The court can order specific performance of a settlement agreement or

15  award damages against the party in breach.  TNT Marketing, Inc. v. Agresti, 796 F.

16  2d 276, 278 (9th Cir. 1986); Hobbs & Co. v. American Investors Management, Inc.,

17  576 F.2d 29, 33 and n. 7 (3rd Cir. 1978).

18  This Court should exercise its inherent power to enforce this

19  Settlement Agreement.  USC has been subjected to two years of litigation from a

20  student who was dismissed for stalking and harassing a fellow medical student.

21  After two years of defending itself against Plaintiff's baseless accusations,

22  Defendant prepared to file its Motion for Summary Judgment on March 31, 2008.

23  One day before Defendant's filing and faced with the impending dismissal of his

24  lawsuit, Plaintiff agreed to a reasonable settlement of his claims.  Indeed, Plaintiff

25  was so frantic about the possibility of losing summary judgment and ending up

26  with nothing that he sent a second email to defense counsel after accepting the

27  settlement offer, anxiously seeking to set up a teleconference to confirm receipt of

28  his email accepting the offer and wanting to set a schedule for finalizing the

4          **Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 124

TAB 1                                                    SER006

1   settlement. He stressed: "I'll need to confirm (preferably in writing and verbally)

2   this with you today as binding contract...." Thus, while Plaintiff may claim that he

3   felt some sort of "duress" in later signing written Agreement (although certainly

4   not legally cognizable duress), his immediate response was to nervously seek to

5   confirm what he obviously viewed as a desirable settlement.

6       His conduct in the following days further confirmed both his desire to

7   finalize the settlement to which he had agreed and his ability to negotiate a written

8   agreement expressing the terms and language he desired. Upon receipt of the draft

9   agreement, after having a weekend to think about the deal he had struck, he

10  provided substantive comments and requested changes to the Agreement. In

11  particular, Plaintiff negotiated aggressively the aspects of the Settlement

12  Agreement related to confidentiality. However, he never raised any concerns or

13  sought to re-negotiate the settlement amount.

14      On March 31, 2008, three days after the initial agreement was reached

15  in principle, Plaintiff signed the written Settlement Agreement and e-mailed it back

16  to defense counsel.

17      Even after signing the Agreement, Plaintiff continued to seek

18  cooperation from defense counsel in effectuating the settlement. He sought an

19  agreement to wire the settlement funds rather than mailing a check. He requested

20  that Defendant join in a Stipulation to strike or seal the various documents filed

21  with the Court on March 31. He even *re-initialed* the pages of the Settlement

22  Agreement on April 2, apparently concerned that the type-written initials might not

23  be enforceable!

24      Thus, while Plaintiff may try to belatedly claim some unknown duress

25  in signing the Agreement, his conduct before, during and after executing the

26  Agreement evidences otherwise. He entered into the Agreement knowingly and

27  voluntarily and the Settlement Agreement should be enforced.

28  / / /

**Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 125

TAB 1                                                               SER007

# I.

## CONCLUSION

For the foregoing reasons, Defendant University of Southern California respectfully requests that this Court issue an order enforcing the Settlement Agreement and dismissing this Action in accordance with the Agreement.

Dated:     April 21, 2008

Respectfully submitted,

DAL SOGLIO & MARTENS LLP
Robin D. Dal Soglio

By: _Robin D Dal Soglio_____
Robin D. Dal Soglio
Attorneys for Defendants University of Southern California, Robert Baughman, Brian E. Henderson, Peter J. Katsufrakis and James M.H. Ball

6     **Defendant's Motion to Enforce Settlement**

Exhibit 11
Page 126

TAB 1

LINK: 77

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | | Date | May 8, 2008 |
|---|---|---|---|---|
| Title | Isaacs v. University of Southern California, et al. | | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Michele Murray | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**    **(In Chambers)**

### ORDER RE: MOTION TO ENFORCE SETTLEMENT

#### I. INTRODUCTION & BACKGROUND

Pro se Plaintiff Jeffrey David Isaacs brought this action against the University of Southern California ("USC") and various individuals, alleging that he has been discriminated against because of his post-traumatic stress disorder and "Bipolar II Affective Disorder." Isaacs contends that during his first year of medical school at USC, a fellow female classmate ridiculed and harassed him, thereby exacerbating his medical disabilities. According to Isaacs, administrators at the medical school did not help him overcome his emotional distress, but rather were influenced by the taunter's father, Robert Baughman, who is also the director of the National Institutes of Health Neurological Disease division, to retaliate against Isaacs and portray the taunter as a victim of stalking and harassment. After administrative hearings regarding his alleged harassment of his classmate, Issacs was suspended and dismissed from USC.

After two years of wrangling, Isaacs and USC reached a settlement and executed a Confidential Settlement Agreement and Mutual Release (the "Settlement"). Isaacs sought, through his law suit, to clear his record. He is now not sure whether the Settlement effectuates that goal. As such, Isaacs wants to "void" the Settlement and refuses to dismiss his case, in contravention to the terms of the agreement. Isaacs states that he was under duress when he entered into the agreement and that key provisions of the Settlement are unintelligible. USC has filed a motion asking the Court to enforce the Settlement.

The Court concludes that Isaacs fails to puts forth any grounds to void the Settlement. As discussed in detail below, the mere fact that Isaacs claims to no longer know if the Settlement accomplishes his ultimate goal is not grounds to undo the agreement. Accordingly, USC's motion to enforce the settlement is **GRANTED**.

Case 2:19-cv-08393-DSF-RAO Document 45-2 Filed 10/17/19 Page 137 of 301 Page ID
Case 2:06-cv-03338-GAF-E Document 45 Filed 05/08/08 Page 2 of 6 Page ID #:854
#:1182

**LINK: 77**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | Date | May 8, 2008 |
|---|---|---|---|

| Title | Isaacs v. University of Southern California, et al. |
|---|---|

## II. STATEMENT OF FACTS

On March 31, 2008, Isaacs signed a Confidential Settlement Agreement and Mutual Release. (Dal Soglio Decl. ¶ 6, Ex. C [Settlement with Isaacs' typed initials on each page] at 47-52 .) He transmitted the Settlement to USC's counsel that day. (Dal Soglio Decl. ¶ 6.) USC executed the agreement on April 2, 2008. (Dal Soglio Decl. ¶ 6.)

Isaacs subsequently executed another copy of the agreement, putting handwritten initials in place of where he had typed his initials. (Dal Soglio Decl., ¶ 7, Ex. D [Settlement with Isaacs' signed initials].) He transmitted that version of the Settlement to USC's counsel on April 2, 2008. (Dal Soglio Decl. ¶ 7.)

By April 3, 2008, Isaacs had received the executed Settlement (with typed initials) from USC. (Dal Soglio Decl., Ex. E [e-mail string with April 3, 2008 email from Isaacs (Isaacs stating "Thank you for the fully exectued agreement. While I agree it now suffices as a binding agreement, I noticed the pages aren't initialed by your client.")] at 60.)

On April 4, 2008, USC executed the Settlement (with the handwritten initials). (Dal Soglio Decl. ¶ 9, Ex. E at 61-66 [executed settlement ("Final Settlement")].)[1]

Key provisions of the Final Settlement are as follows:

- "Isaacs agrees that he will execute and deliver for filing . . . the Stipulation of Dismissal with Prejudice." (Final Settlement § 1.)

- "USC will transmit to Isaacs one check made payable to Isaacs in the gross amount of [redacted]." (Final Settlement § 4.)

- " USC encourages Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has had the opportunity to consult with an attorney prior to signing, and has either done so or voluntarily chosen not to do wo." [sic] (Final Settlement § 11.)

- "The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to

---

[1]The parties do not claim that there are any substantive differences among the executed agreements.

TAB 2                                                                        SER010

Case 2:19-cv-08999-DSF-RAO Document 45-2 Filed 09/03/19 Page 138 of 301 Page ID
Case 2:06-cv-03338-GAF-E Document 45 Filed 05/08/08 Page 3 of 6 Page ID #:855
#:1183

**LINK: 77**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | Date | May 8, 2008 |
|---|---|---|---|
| Title | Isaacs v. University of Southern California, et al. | | |

consider signing this Agreement, and that they are voluntarily signing this Agreement."
(Final Settlement § 17.)

- "This Agreement is made and entered into in the State of California and shall in all
respects be interpreted, enforced and governed under the laws of said State." (Final
Settlement § 18.)

- "This Agreement is the entire agreement between Isaacs and USC and fully supersedes
any and all prior agreements or understandings between the parties pertaining to its
subject matter." (Final Settlement § 22.)

## III. DISCUSSION

USC's argument is rather simple: Isaacs signed a valid and binding agreement that should be
enforced. USC relies on a Court's "inherent power to enforce an agreement to settle litigation pending
before the court." (Mem. at 4 (citing In re Suchy, 786 F.2d 900, 902-903 (9th Cir. 1985) ("[I]t is well
settled that a court has inherent power to enforce summarily a settlement agreement involving an action
pending before it.") (citation omitted).) Isaacs, in turn presents seven unconvincing arguments as to why
the Settlement should not be enforced. The Court will discuss each in turn.

### A. LACK OF CONSIDERATION

Isaacs argues that his intent all along has been to clear his academic record and have his student
loans refunded and that if the Settlement does not do so, it lacks consideration. (Opp. at 6.) As noted
above, Isaacs is receiving monetary payment in exchange for settlement. (Final Settlement § 4.) "A
contract is supported by an adequate consideration if there is some benefit to the promisor or detriment
to the promisee." Hayman v. Shoemake, 203 Cal. App. 2d 140, 154 (Ct. App. 1962) (citation omitted).
Isaacs is receiving a benefit: payment. Accordingly, there is consideration.

### B. NON EST FACTUM

To support his non est factum argument, Isaacs states that "the contract was signed without full
knowledge of its meaning, absent any neglect on behalf of the Plaintiff." (Opp. at 6.) However, this is
an improper invocation of the non est factum doctrine. Non est factum "puts in issue on the actual
execution of the instrument." Paul M . Coltoff, et al. Corpus Juris Secundum, Contracts § 678 (2008);
see also Richard A. Lord, Willston on Contracts, §69:4 (4th ed.) ("Where a person is fraudulently
induced to sign or indorse a bill or note in the reasonable belief that it is something else, the signer
cannot really be said to have made or indorsed the bill or note; hence the ancient plea of non est factum
is applicable."). The defense arises when the instrument signed by a party is different from the one the
party thought was being signed, i.e, if a contract is altered after being signed (see, e.g., McCaskey

**LINK: 77**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | Date | May 8, 2008 |
|---|---|---|---|

| Title | Isaacs v. University of Southern California, et al. |
|---|---|

Register Co. v. Bennett, 60 So. 541, 542 (Ala. Ct. App. 1912).)

Here there are no such allegations. Isaacs simply argues that he is not sure what all of the terms of the Final Settlement mean, despite that one clauses expressly states that the parties "have carefully read and fully understand all of the provisions of this Agreement." (Final Settlement § 17.) Isaacs' after-the-fact assertion is not enough to invoke the ancient plea of non est factum.

### C. ILLEGALITY AND/OR IMPRACTICALITY

Isaacs, without citing any clause in the Settlement, states that it prohibits him from truthfully answering "future job application or academic admissions applications that require disclosure of past disciplinary actions." (Opp. at 6.) The Court is uncertain how this is so, or what Isaacs relies on in support of this argument. However, the confidentiality section of the agreement specifically notes that it does not "prohibit disclosures to the extent otherwise required by law." (Final Settlement § 14.b.) Accordingly, the Court does not find any credence in Isaacs' illegality/impracticality argument.

### D. DURESS

Isaacs claims he entered into the Settlement under duress because shortly before settlement "USC communicated in a suspicions manner, with Plaintiff's close friends" and because USC produced 500 pages of documents, which Isaacs viewed as an indication that USC would not abide by discovery rules, and because USC "threatened to seek sanctions against Plaintiff for filing a Motion to Compel." (Opp. at 7.) None of these alleged acts result in any sort of duress that would void an agreement.

"In addition to statutory duress [which requires confinement or detention], the law recognizes the concept of economic duress as a basis for vitiating a coerced party's consent to an agreement." Tarpy v. County of San Diego, 110 Cal. App. 4th 267, 277 (Ct. App. 2003). This "may arise from an act that is so coercive as to cause a reasonably prudent person, *faced with no reasonable alternative*, to agree to an unfavorable contract." Tarpy, 110 Cal. App. 4th at 277 (citations omitted) (emphasis added).

Isaacs' duress claim fails because he always had a reasonable alterative to settling: pursuing the litigation. As to the belief that USC was engaged in discovery abuse, Isaacs could have sought relief from the Court. As to the threatened motion for sanctions, Isaacs could have either opposed the motion on the merits, or altered his position as to his motion to compel. (Nor does the Court view USC's counsel's indication that it would seek sanctions as anything other than ordinary discourse incumbent with litigation (Opp. Ex. A [transcript of voice message from USC's counsel ("I am putting you on notice that we will seek cost [sic] from you from having to oppose this . . . . otherwise I'm going to be adding my request for sanctions and [costs] to my opposition to this motion.")].)

Accordingly, there is no evidence of duress sufficient to void the Settlement. Indeed, Isaacs was

TAB 2
Exhibit 13 - Page 138

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | Date | May 8, 2008 |
|---|---|---|---|
| Title | Isaacs v. University of Southern California, et al. | | |

more than adamant in ensuring that the Settlement would be binding, transmitting multiple copies and requesting that USC initial each page. (See generally, Dal Soglio Decl.)

### E. UNCLEAN HANDS

Isaacs argues that "USC has dodged discovery, used delay tactics (including taking two months to sign the prior partial settlement agreement), made careless errors with Plaintiff's confidential information, retaliated, invoked 'foul' litigation tactics in communicating with Plaintiff's close friends, and finally, made an empty - or entirely vague - settlement offer." (Opp. at 7.) However, all of this conduct (save the obtuse reference to the "empty" and "vague" settlement offer) appears to have been prior to the parties entering into the settlement agreement. Isaacs was fully aware of this alleged conduct when he decided to settle -- it is disingenuous for him to now rely on this alleged "unclean" conduct in an attempt to negate the agreement simply because he has buyer's remorse. The principles underlying the very doctrine Isaacs seeks to invoke prohibits its application. See Alys Masek, California Jurisprudence 3d, Equity § 26 (2008) ("In sum, the unclean hands doctrine demands that a plaintiff act fairly in the matter for which he or she seeks a remedy").

### F. UNDUE INFLUENCE

Isaacs seems to claim that USC exerted undue influence over him, manipulating his participation in the Settlement, although it is not exactly clear how this is supposed to have occurred. Apparently the undue influence somehow stems from USC's control of his academic records. (Opp. at 7.) Isaacs claims that, "[w]rongfully dismissed, USC is able to exert undue influence on [him]. Indeed, back in 2006 this undue influence (in the form of retaliatory disciplinary hearings) caused Plaintiff to accept blame for a student controversy in hopes that the matter would go away." (Opp. at 7-8.) However, "under California law a party cannot successfully invoke the doctrine of 'undue influence' to escape an apparent contract unless that party proves two things: (1) that she had *a lessened capacity to make a free contract* and (2) that the other party applied its excessive strength to her to secure her agreement." Olam v. Congress Mortgage. Co., 68 F. Supp. 2d 1110, 1141 (N.D. Cal 1999) (emphasis added). Isaacs simply presents no evidence of a lessened capacity . Furthermore, just as there was no duress, there is no evidence that USC applied any "excessive strength."

### G. UNCONSCIONABILITY

As to unconscionability, Isaacs offers only one sentence: "The consideration offered is so obviously inadequate that to enforce this contract would be unfair to a Plaintiff who has spent years trying to either clear his academic record or be readmitted to USC Keck." (Opp. at 8.) However, it is not at all clear that the consideration was inadequate. Third Story Music, Inc. v. Waits, 41 Cal. App. 4th 798, 808 n.5 (Ct. App. 1995) ("But unless the consideration given was so one-sided as to create an issue of unconscionability, the courts are not in a position to decide whether legal consideration agreed to by

**LINK: 77**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3338 GAF (Ex) | Date | May 8, 2008 |
|---|---|---|---|
| Title | Isaacs v. University of Southern California, et al. | | |

the parties is or is not fair.").

Although the parties have redacted the amount of money Isaacs is to receive, Issacs does receive payment under the agreement. Swanson v. Skiff, 92 Cal. App. 3d 805, 809 (Ct. App. 1979) ("*any* benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered other than that which a person is lawfully bound to suffer, is a good consideration for a promise") (emphasis added) (citing Cal. Civ. Code § 1605). Furthermore, in addition to monetary payment, the parties release claims against each other. (Final Settlement §§ 7-8.) This too, serves as adequate consideration. See Carey v. Kraft-Phenix Cheese Corp., 24 Cal. App. 2d 517, 525 (Ct. App. 1938) ("The compromise of a claim which is asserted in good faith and of the validity of which the parties at the time entertain a doubt, and about which there is a bona fide controversy, is a valuable consideration and will support a promise or a contract.") (citation and internal quotations omitted).

Accordingly, there is no evidence that the consideration was "so one-sided as to create an issue of unconscionability."

### III. CONCLUSION

Isaacs has present no grounds on which to void the Final Settlement. He is bound by its terms. The Court **GRANTS** USC's motion to enforce the terms of the settlement. Isaacs is **ORDERED** to comply with its terms. In addition, per the terms of the Final Settlement (see Final Settlement § 1), the Court **DISMISSES, WITH PREJUDICE,** this case, in its entirety. The hearing previously scheduled for Monday, May 12, 2008 is hereby **VACATED.** Fed. R. Civ. P. 78; L.R. 7-15.

IT IS SO ORDERED.

**Query    Reports    Utilities    Help    Log Out**

(RAOx),CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:19-cv-02011-DSF-RAO

| | |
|---|---|
| Dr. Jeffrey Isaacs v. Dartmouth Hitchcock Medical Center et al | Date Filed: 03/18/2019 |
| Assigned to: Judge Dale S. Fischer | Date Terminated: 10/11/2019 |
| Referred to: Magistrate Judge Rozella A. Oliver | Jury Demand: Plaintiff |
| Related Case: 2:19-cv-08000-DSF-RAO | Nature of Suit: 470 Racketeer/Corrupt Organization |
| Cause: 18:1962 Racketeering (RICO) Act | Jurisdiction: Federal Question |

**Plaintiff**

**Jeffrey David Isaacs**                    represented by    **Jeffrey David Isaacs**
3553 West Chester Pike PMB 177
Newtown Square, PA 19073
610-202-1460
Email: jeffreydi@gmail.com
PRO SE

V.

**Defendant**

**Dartmouth Hitchcock Medical Center**      represented by    **Kanika D Corley**
*TERMINATED: 09/12/2019*                                      Akerman LLP
601 West 5th Street Suite 300
Los Angeles, CA 90071
213-688-5000
Fax: 213-627-6342
Email: kanika.corley@akerman.com
*TERMINATED: 09/12/2019*
*LEAD ATTORNEY*

**William D Pandolph**
Sulloway and Hollis PLLC
9 Capitol Street
Concord, NH 03301
603-223-2862
Fax: 603-224-2557
Email: wpandolph@sulloway.com
*TERMINATED: 09/12/2019*
*PRO HAC VICE*

**Defendant**

**Geisel School of Medicine at Dartmouth**
*TERMINATED: 09/12/2019*

**Defendant**

TAB 3                                                                    SER015

**USC Keck School of Medicine**                represented by   **Katarzyna Ryzewska**
*TERMINATED: 09/12/2019*                                       Gibson Dunn and Crutcher LLP
                                                               333 South Grand Avenue
                                                               Los Angeles, CA 90071
                                                               213-229-7789
                                                               Fax: 213-229-6789
                                                               Email: kryzewska@gibsondunn.com
                                                               *TERMINATED: 09/12/2019*

**Defendant**

**NH Board of Medicine**                       represented by   **Kanika D Corley**
*individually*                                                 (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Lawrence M Edelman**
                                                               New Hampshire Department of Justice
                                                               Civil Bureau
                                                               33 Capitol Street
                                                               Concord, NH 03301
                                                               603-271-3650
                                                               Fax: 603-271-2110
                                                               Email: lawrence.edelman@doj.nh.gov
                                                               *PRO HAC VICE*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**John or Jane Doe**
*TERMINATED: 09/12/2019*

**Defendant**

**Trustee of Dartmouth College**              represented by   **Kanika D Corley**
*TERMINATED: 07/19/2019*                                       (See above for address)
                                                               *TERMINATED: 09/12/2019*
                                                               *LEAD ATTORNEY*

                                                               **Elizabeth E Ewing**
                                                               Wadleigh Starr and Peters PLLC
                                                               95 Market Street
                                                               Manchester, NH 03101
                                                               603-206-7286
                                                               Fax: 603-669-6018
                                                               Email: eewing@wadleighlaw.com
                                                               *TERMINATED: 09/12/2019*
                                                               *PRO HAC VICE*

                                                               **Pierre A Chabot**
                                                               Wadleigh Starr and Peters PLLC
                                                               95 Market Street
                                                               Manchester, NH 03101
                                                               603-206-7204
                                                               Fax: 603-669-6018
                                                               Email: pchabot@wadleighlaw.com

TAB 3                                                                              SER016

11/19/2020                                        CM/ECF - California Central District

*TERMINATED: 09/12/2019*
*PRO HAC VICE*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/18/2019 | 1 | COMPLAINT filed by Plaintiff Dr. Jeffrey Isaacs against Defendants Dartmouth Hitchcock Medical Center, Geisel School of Medicine at Dartmouth, NH Board of Medicine, USC Keck School of Medicine. Case assigned to Judge Dale S. Fischer for all further proceedings. Discovery referred to Magistrate Judge Rozella A. Oliver.(Filing fee $ 400 Paid). (Attachments: # 1 CV-71) (jtil) (Entered: 03/20/2019) |
| 03/18/2019 | 2 | CERTIFICATE of Interested Parties filed by Plaintiff Dr. Jeffrey Isaacs. (jtil) (Entered: 03/20/2019) |
| 03/18/2019 | 3 | NOTICE OF ASSIGNMENT to District Judge Dale S. Fischer and Magistrate Judge Rozella A. Oliver. (jtil) (Entered: 03/20/2019) |
| 03/18/2019 | 4 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (jtil) (Entered: 03/20/2019) |
| 03/20/2019 | 5 | 21 DAY Summons Issued re Complaint - (Discovery), 1 as to Defendants Dartmouth Hitchcock Medical Center, Geisel School of Medicine at Dartmouth, NH Board of Medicine, USC Keck School of Medicine. (Attachments: # 1 Geisel, # 2 New Hampshire Board of Med, # 3 USC Keck) (jtil) (Entered: 03/20/2019) |
| 03/20/2019 | 6 | 21 DAY Summons Issued re Complaint, 1 as to Defendant Dartmouth Hitchcock Medical Center. (jtil) (Entered: 03/20/2019) |
| 03/20/2019 | 7 | 21 DAY Summons Issued re Complaint, 1 as to Defendant NH Board of Medicine. (jtil) (Entered: 03/20/2019) |
| 03/20/2019 | 8 | 21 DAY Summons Issued re Complaint, 1 as to Defendant USC Keck School of Medicine. (jtil) (Entered: 03/20/2019) |
| 03/20/2019 | 9 | 21 DAY Summons Issued re Complaint, 1 as to Defendant Geisel School of Medicine at Dartmouth. (jtil) (Entered: 03/20/2019) |
| 03/21/2019 | 10 | STANDING ORDER FOR CASES ASSIGNED TO JUDGE DALE S. FISCHER upon filing of the complaint by Judge Dale S. Fischer. If a party would be entitled to attorneys fees, counsel are referred to the Order Re Fees found on Court's website under Judge Fischer's Procedures and Schedules contained in the Judge's Requirements tab. Read all Orders carefully. They govern this case and differ in some respects from the Local Rules. COUNSEL ARE ORDERED TO PROVIDE A MANDATORY CHAMBERS COPY OF THE COMPLAINT, NOTICE OF REMOVAL, AND ANY OTHER INITIATING DOCUMENTS. (vv) (Entered: 03/21/2019) |
| 06/17/2019 | 11 | APPLICATION for Pro Se Litigant to electronically file documents in a specific case filed by plaintiff Dr. Jeffrey Isaacs. (jp) (Entered: 06/19/2019) |
| 06/21/2019 | 12 | ORDER by Judge Dale S. Fischer: granting 11 APPLICATION for Pro Se Electronic Filing. The applicant must register to use the Courts CM/ECF System within five (5) days of being served with this order. Registration information is available at the Pro Se Litigant E-Filing web page located on the Courts website. Upon registering, the applicant will receive a CM/ECF login and password that will allow him/her to file non-sealed documents electronically in this case only. Any documents being submitted under seal must be manually filed with the Clerk. (jp) (Entered: 06/21/2019) |
| 06/26/2019 | 13 | NOTICE of Interested Parties filed by Defendant USC Keck School of Medicine, |

TAB 3                                                                                    SER017

| | | identifying USC Keck School of Medicine. (Attorney Katarzyna Ryzewska added to party USC Keck School of Medicine(pty:dft))(Ryzewska, Katarzyna) (Entered: 06/26/2019) |
|---|---|---|
| 06/26/2019 | 14 | NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's Complaint filed by Defendant USC Keck School of Medicine. Motion hearing set for 08/12/2019 at 1:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration of Katarzyna Ryzewska) (Ryzewska, Katarzyna). Modified on 7/1/2019 (jp). (Entered: 06/26/2019) |
| 06/26/2019 | 15 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's Complaint *; and Memorandum of Points and Authorities in Support* 14 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 06/26/2019) |
| 06/26/2019 | 16 | PROOF OF SERVICE filed by Defendant USC Keck School of Medicine, re Request for Judicial Notice 15 , NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's Complaint *; and Memorandum of Points and Authorities in Support* 14 served on June 26, 2019. (Ryzewska, Katarzyna) (Entered: 06/26/2019) |
| 07/08/2019 | 17 | APPLICATION of Non-Resident Attorney PIERRE A. CHABOT to Appear Pro Hac Vice on behalf of Defendant Trustee of Dartmouth College (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24046488) filed by Defendant Trustee of Dartmouth College. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Attorney Kanika D Corley added to party Trustee of Dartmouth College(pty:dft)) (Corley, Kanika) (Entered: 07/08/2019) |
| 07/08/2019 | 18 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney PIERRE A. CHABOT to Appear Pro Hac Vice on behalf of Defendant Trustee of Dartmouth College (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24046488) 17 . The following error(s) was/were found: Local Rule 5-4.3.4 Application not hand-signed. Other error(s) with document(s): Please note that electronic, image or stamp signatures are not allowed. (lt) (Entered: 07/09/2019) |
| 07/10/2019 | 19 | APPLICATION of Non-Resident Attorney ELIZABETH E. EWING to Appear Pro Hac Vice on behalf of Defendant Trustee of Dartmouth College (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24058165) filed by Defendant Trustee of Dartmouth College. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Corley, Kanika) (Entered: 07/10/2019) |
| 07/11/2019 | 20 | ORDER by Judge Dale S. Fischer: granting 17 Non-Resident Attorney Piere A Chabot APPLICATION to Appear Pro Hac Vice on behalf of Defendant Trustee of Dartmouth College, designating Kanika D Corley as local counsel. (jp) (Entered: 07/11/2019) |
| 07/11/2019 | 21 | ORDER by Judge Dale S. Fischer: granting 19 Non-Resident Attorney Elizabeth E Ewing APPLICATION to Appear Pro Hac Vice on behalf of Defendant Trustee of Dartmouth College, designating Kanika D Corley as local counsel. (jp) (Entered: 07/11/2019) |
| 07/12/2019 | 22 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant Trustee of Dartmouth College. Motion set for hearing on 8/19/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Affidavit of Amy T. Baker, # 3 Proposed Order) (Corley, Kanika) (Entered: 07/12/2019) |
| 07/12/2019 | 23 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 22 filed by Defendant Trustee of Dartmouth College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V)(Corley, Kanika) (Entered: 07/12/2019) |

TAB 3                           SER018

CM/ECF - California Central District

| 07/12/2019 | 24 | NOTICE of Interested Parties filed by Defendant Trustee of Dartmouth College, (Corley, Kanika) (Entered: 07/12/2019) |
|---|---|---|
| 07/12/2019 | 25 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant Dartmouth Hitchcock Medical Center. Motion set for hearing on 8/19/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Exhibit of William D. Pandolph, # 2 Proposed Order) (Attorney Kanika D Corley added to party Dartmouth Hitchcock Medical Center(pty:dft)) (Corley, Kanika) (Entered: 07/12/2019) |
| 07/12/2019 | 26 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case 25 filed by Defendant Dartmouth Hitchcock Medical Center. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Corley, Kanika) (Entered: 07/12/2019) |
| 07/12/2019 | 27 | NOTICE of Interested Parties filed by Defendant Dartmouth Hitchcock Medical Center, (Corley, Kanika) (Entered: 07/12/2019) |
| 07/15/2019 | 28 | STRICKEN, see docket entry no. 30 - APPLICATION of Non-Resident Attorney WILLIAM D. PANDOLPH to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24083649) filed by Defendant Dartmouth Hitchcock Medical Center. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Corley, Kanika) Modified on 7/17/2019 (lom). (Entered: 07/15/2019) |
| 07/16/2019 | 29 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney WILLIAM D. PANDOLPH to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24083649) 28 . The following error(s) was/were found: Local Rule 5-4.3.4 Application not hand-signed. Local Rule 83-2.1.3.3(a) Application not complete: state and/or federal courts to which the applicant has been admitted are not listed. Application is missing. Proposed order and GSC with an additional proposed order was attached. Submission is incomplete. (lt) (Entered: 07/16/2019) |
| 07/17/2019 | 30 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS RE: APPLICATION of Non-Resident Attorney WILLIAM D. PANDOLPH to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24083649) 28 by Clerk. The document is stricken and counsel is ordered to file an amended or corrected document by July 26, 2019. (lom) (Entered: 07/17/2019) |
| 07/17/2019 | 31 | APPLICATION of Non-Resident Attorney WILLIAM D. PANDOLPH to Appear Pro Hac Vice on behalf of Defendant Dartmouth Hitchcock Medical Center (Pro Hac Vice Fee - $400 Previously Paid on 7/15/2019, Receipt No. Receipt No. 0973-24083649) filed by Defendant Dartmouth Hitchcock Medical Center. (Attachments: # 1 Certificate of Good Standing, # 2 Proposed Order) (Corley, Kanika) (Entered: 07/17/2019) |
| 07/18/2019 | 32 | ORDER by Judge Dale S. Fischer: granting 31 Non-Resident Attorney William D Pandolph APPLICATION to Appear Pro Hac Vice on behalf of behalf of Defendant Dartmouth Hitchcock Medical Center, designating Kamika D Corley as local counsel. (jp) (Entered: 07/18/2019) |
| 07/19/2019 | 33 | First AMENDED COMPLAINT against Defendants All Defendants amending Complaint - (Discovery), 1 , filed by Plaintiff Jeffrey David Isaacs (Attachments: # 1 Exhibit A - Amended Complaint Evidence, # 2 Affidavit of Dr Jeffrey Isaacs)(Isaacs, Jeffrey) (Entered: 07/19/2019) |
| 07/19/2019 | 34 | TEXT ONLY ENTRY (IN CHAMBERS) ORDER TAKING MOTIONS TO DISMISS OFF CALENDAR. In light of the filing of an amended complaint 33 , the motion(s) to |

| | | dismiss 14 , 22 , 25 , set for hearing on August 12, 2019 and August 19, 2019 are taken off-calendar. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 07/19/2019) |
|---|---|---|
| 08/01/2019 | 35 | PROOF OF SERVICE Executed by Plaintiff Jeffrey David Isaacs, upon Defendant NH Board of Medicine served on 6/21/2019, answer due 7/12/2019. Service of the Summons and Complaint were executed upon Peggy Berube, Clerk in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Isaacs, Jeffrey) (Entered: 08/01/2019) |
| 08/01/2019 | 36 | NOTICE OF MOTION AND MOTION for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . Motion filed by Plaintiff Jeffrey David Isaacs. Motion set for hearing on 9/9/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Exhibit A - Preliminary Injunction Hearing Evidence, # 2 Proposed Order Granting Preliminary Injunction, # 3 Proposed Order Granting Preliminary Injunction (Alternate)) (Isaacs, Jeffrey) (Entered: 08/01/2019) |
| 08/02/2019 | 37 | NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Amended Complaint; Memorandum of Points & Authorities* filed by Defendant Dartmouth Hitchcock Medical Center. Motion set for hearing on 9/16/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration of William D. Pandolph, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Proposed Order) (Corley, Kanika) (Entered: 08/02/2019) |
| 08/02/2019 | 38 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Amended Complaint; Memorandum of Points & Authorities* 37 filed by Defendant Dartmouth Hitchcock Medical Center. (Corley, Kanika) (Entered: 08/02/2019) |
| 08/02/2019 | 39 | NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Amended Complaint Pursuant to FED.R.CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(6)* filed by Defendant Trustee of Dartmouth College. Motion set for hearing on 9/16/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Affidavit of Amy T. Baker, # 3 Proposed Order) (Corley, Kanika) (Entered: 08/02/2019) |
| 08/02/2019 | 40 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Case *Plaintiff's Amended Complaint Pursuant to FED.R.CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(6)* 39 filed by Defendant Trustee of Dartmouth College. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V)(Corley, Kanika) (Entered: 08/02/2019) |
| 08/02/2019 | 41 | NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint filed by Defendant USC Keck School of Medicine. Motion set for hearing on 9/16/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration) (Ryzewska, Katarzyna) (Entered: 08/02/2019) |
| 08/02/2019 | 42 | REQUEST FOR JUDICIAL NOTICE re NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint 41 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 08/02/2019) |
| 08/04/2019 | 43 | Amendment to NOTICE OF MOTION AND MOTION for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . Motion 36 *NOTICE OF MOTION AND MOTION (Amended)* filed by Plaintiff Jeffrey David Isaacs. (Attachments: # 1 Exhibit A - Preliminary Injunction Hearing Evidence, # 2 Proposed |

TAB 3                                                                                          SER020

| | | |
|---|---|---|
| | | Order Granting Preliminary Injunction, # 3 Proposed Order Granting Preliminary Injunction (Alternate))(Isaacs, Jeffrey) (Entered: 08/04/2019) |
| 08/09/2019 | 44 | NOTICE OF LODGING filed re NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint 41 (Attachments: # 1 Proposed Order)(Ryzewska, Katarzyna) (Entered: 08/09/2019) |
| 08/12/2019 | 45 | MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION re: NOTICE OF MOTION AND MOTION for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . Motion 36 filed by Defendants Dartmouth Hitchcock Medical Center, Trustee of Dartmouth College. (Attachments: # 1 Proposed Order)(Corley, Kanika) (Entered: 08/12/2019) |
| 08/19/2019 | 46 | Opposition to re: NOTICE OF MOTION AND MOTION for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . Motion 36 filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Declaration of Katarzyna Ryzewska in support of Medicine's Opposition to Plaintiffs Motion for Preliminary Injunction (Amended), # 2 Proposed Order)(Ryzewska, Katarzyna) (Entered: 08/19/2019) |
| 08/25/2019 | 47 | APPLICATION for Clerk to Enter Default against Defendants NH Board of Medicine filed by Plaintiff Jeffrey David Isaacs. (Isaacs, Jeffrey) (Entered: 08/25/2019) |
| 08/26/2019 | 48 | REPLY NOTICE OF MOTION AND MOTION for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . Motion 36 *Reply in support of Amended Motion* filed by Plaintiff Jeffrey David Isaacs. (Isaacs, Jeffrey) (Entered: 08/26/2019) |
| 08/26/2019 | 49 | NOTICE of Filing SAC after expiration of time for counsel Meet & Confer filed by Plaintiff Jeffrey David Isaacs. (Attachments: # 1 Exhibit A- SAC Exhibits)(Isaacs, Jeffrey) (Entered: 08/26/2019) |
| 08/26/2019 | 50 | *STRICKEN* SECOND AMENDED COMPLAINT against Defendants All Defendants amending Amended Complaint/Petition, 33 , filed by Plaintiff Jeffrey David Isaacs (Attachments: # 1 Exhibit A- SAC Exhibits, # 2 Affidavit of Dr Jeffrey Isaacs)(Isaacs, Jeffrey) Modified on 8/27/2019 (rfi). See Docket Entry # 51 (Entered: 08/26/2019) |
| 08/27/2019 | 51 | TEXT ONLY ENTRY: (IN CHAMBERS) ORDER by Judge Dale S. Fischer: The Second Amended Complaint 50 is stricken. Plaintiff must file a stipulation or noticed motion for leave to amend if he wishes to amend his complaint. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 08/27/2019) |
| 08/27/2019 | 52 | NOTICE OF MOTION AND MOTION to AMEND Amended Complaint/Petition, 33 filed by Plaintiff Jeffrey David Isaacs. Motion set for hearing on 10/7/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Exhibit A - Second Amended Complaint (Proposed), # 2 Exhibit B - SAC Exhibits, # 3 Affidavit of Jeffrey Isaacs) (Isaacs, Jeffrey) (Entered: 08/27/2019) |
| 08/28/2019 | 53 | DEFAULT BY CLERK F.R.Civ.P.55(a) as to Defendant NH Board of Medicine. (jp) (Entered: 08/28/2019) |
| 08/30/2019 | 54 | REPLY In Support NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint 41 filed by Defendant USC Keck School of Medicine. (Ryzewska, Katarzyna) (Entered: 08/30/2019) |
| 09/03/2019 | 55 | TEXT ONLY ENTRY: (IN CHAMBERS) ORDER by Judge Dale S. Fischer: Motion for Preliminary Injunction re maintaining and disseminating academic records subject to USDC settlement . The Court, on its own motion, continues the hearing in this matter. 36 |

TAB 3                                                     SER021

CM/ECF - California Central District

| | | |
|---|---|---|
| | | The Motion will be heard on 9/16/2019 at 01:30 PM before Judge Dale S. Fischer. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 09/03/2019) |
| 09/06/2019 | 56 | OPPOSITION Memorandum of Points and Authorities in Opposition to Motion to Amend re: NOTICE OF MOTION AND MOTION to AMEND Amended Complaint/Petition, 33 52 filed by Defendant Trustee of Dartmouth College. (Corley, Kanika) (Entered: 09/06/2019) |
| 09/12/2019 | 57 | NOTICE OF MOTION AND MOTION to Set Aside Default Re: Clerks Entry of Default (CV-37) - optional html form 53 . filed by Defendant NH Board of Medicine. Motion set for hearing on 10/21/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Kanika D. Corley, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Declaration of Penny Taylor, # 8 Declaration of Peggy Berube, # 9 Proposed Order) (Attorney Kanika D Corley added to party NH Board of Medicine(pty:dft)) (Corley, Kanika) (Entered: 09/12/2019) |
| 09/12/2019 | 58 | NOTICE of Interested Parties filed by Defendant NH Board of Medicine, (Corley, Kanika) (Entered: 09/12/2019) |
| 09/12/2019 | 59 | TEXT ONLY ENTRY (IN CHAMBERS) ORDER TAKING MOTIONS OFF CALENDAR AND UNDER SUBMISSION Judge Dale S. Fischer. The Court, on its own motions, takes the Motions 36 , 37 , 39 , and 41 set for Monday, September 16, 2019 off calendar and under submission. A written order will follow. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 09/12/2019) |
| 09/12/2019 | 60 | NOTICE of Voluntary Dismissal filed by Plaintiff Jeffrey David Isaacs. Dismissal is WITHOUT PREJUDICE AND SIMULTANEOUS FILILING OF PROPOSED SAC AS A NEW PROCESS. (Isaacs, Jeffrey) (Entered: 09/12/2019) |
| 09/12/2019 | 61 | NOTICE OF DISMISSAL filed by Plaintiff Jeffrey David Isaacs pursuant to FRCP 41a(1) *WITHOUT PREJUDICE AGAINST ALL DEFENDANTS EXCEPT DEFAULTED PARTY NH BOARD OF MEDICINE, AND WITH SIMULTANEOUS FILING OF PROPOSED SAC AS A NEW PROCESS* as to Dartmouth Hitchcock Medical Center, Geisel School of Medicine at Dartmouth, John or Jane Doe, Trustee of Dartmouth College, USC Keck School of Medicine. (Isaacs, Jeffrey) (Entered: 09/12/2019) |
| 09/13/2019 | 62 | Opposition re: NOTICE OF MOTION AND MOTION to AMEND Amended Complaint/Petition, 33 52 filed by Defendant USC Keck School of Medicine. (Attachments: # 1 Proposed Order, # 2 Declaration of Katarzyna Ryzewska, # 3 Request for Judicial Notice)(Ryzewska, Katarzyna) (Entered: 09/13/2019) |
| 09/17/2019 | 63 | APPLICATION of Non-Resident Attorney Lawrence M. Edelman to Appear Pro Hac Vice on behalf of Defendant NH Board of Medicine (Pro Hac Vice Fee - $400 Fee Paid, Receipt No. 0973-24450200) filed by Defendant NH Board of Medicine. (Attachments: # 1 Proposed Order) (Corley, Kanika) (Entered: 09/17/2019) |
| 09/18/2019 | 64 | ORDER by Judge Dale S. Fischer DENYING AS MOOT Dartmouth Hitchcock Medical Center's Motion to Dismiss (Dkt. 37 ) and Plaintiff's Motion to Amend Amended Complaint 9Dkt. 52 ). (SEE ORDER FOR SPECIFICS). (jp) (Entered: 09/18/2019) |
| 09/18/2019 | 65 | ORDER by Judge Dale S. Fischer: granting 63 Non-Resident Attorney Lawrence M Edelman APPLICATION to Appear Pro Hac Vice on behalf of Defendant NH Board of Medicine, designating Kanika D Corley as local counsel. (jp) (Entered: 09/18/2019) |
| 09/25/2019 | 66 | NOTICE OF MOTION AND MOTION to Strike Plaintiff's Amended Notice of Dismissal Without Prejudice (Doc. #61) Notice of Voluntary Dismissal of Party(ies) (Pursuant to |

**TAB 3** SER022

| | | |
|---|---|---|
| | | FRCP 41a(1)), 61 filed by Defendant NH Board of Medicine. Motion set for hearing on 10/28/2019 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order) (Corley, Kanika) (Entered: 09/25/2019) |
| 09/27/2019 | 67 | OPPOSITION to NOTICE OF MOTION AND MOTION to Strike Plaintiff's Amended Notice of Dismissal Without Prejudice (Doc. #61) Notice of Voluntary Dismissal of Party(ies) (Pursuant to FRCP 41a(1)), 61 66 , NOTICE OF MOTION AND MOTION to Set Aside Default Re: Clerks Entry of Default (CV-37) - optional html form 53 . 57 filed by Plaintiff Jeffrey David Isaacs. (Attachments: # 1 Exhibit A - PAED Default Opposition claiming interoffice lost 2013 summons, # 2 Exhibit B-Unopposed NH Board service in 2013 by Nason group, # 3 Declaration of Jeffrey Isaacs)(Isaacs, Jeffrey) (Entered: 09/27/2019) |
| 10/10/2019 | 68 | TEXT ONLY ENTRY (IN CHAMBERS) ORDER TAKING MOTION OFF CALENDAR AND UNDER SUBMISSION Judge Dale S. Fischer. The Court, on its own motion, takes the Motion 57 set for Monday, October 10, 2019 off calendar and under submission. A written order will follow. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (rfi) TEXT ONLY ENTRY (Entered: 10/10/2019) |
| 10/11/2019 | 69 | ORDER by Judge Dale S. Fischer GRANTING Motion to Strike Amended Notice of Dismissal (Dkt. No. 66 ). (SEE ORDER FOR SPECIFICS). (MD JS-6. Case Terminated.) (jp) (Entered: 10/11/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/19/2020 12:30:58 | | | |
| **PACER Login:** | lginexorinion | **Client Code:** | USC |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-02011-DSF-RAO Start date: 3/1/2019 End date: 11/19/2020 |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

FEE PAID



UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

**LACV1902011-DSF-RADx**

| | | |
|---|---|---|
| DR. JEFFREY ISAACS | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | |
| | ) | |
| DARTMOUTH HITCHCOCK MEDICAL CENTER, | ) | |
| GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, | ) | |
| USC KECK SCHOOL OF MEDICINE, | ) | |
| NH BOARD OF MEDICINE (individually) | ) | |
| and | ) | |
| JOHN or JANE DOE | ) | |
| Defendants. | ) | |
| | ) | |

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 13 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

## PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

### I.   INTRODUCTION

1. This case describes a small group of individuals with a nexus as academic medicine leaders from Harvard Medical School, who, owing to a personal vendetta, coordinated predicate acts over more than a decade to successfully ruin the Plaintiff's medical career and reputation.

2. In their small world controlling billion dollar NIH grants and coveted Ivy league medical school spots, they successfully recruited new actors each time Plaintiff went to a new institution where they had influence. They subverted institutional policies and generally pulled strings, as evidence will show, without having to answer to anyone for years, until, upon information and belief, the Executive Branch began to ask questions.

3. Specifically, this matter originated with a dispute dating back to 2005, between Plaintiff, a promising young medical student, and one Robert Baughman, a former NIH director,

TAB 4                                                                                    SER024

Harvard professor, and member of the White House Committee on Counterterrorism. Baughman had overseen a substantial $40 million dollar grant to the Keck School of Medicine, where his child was subsequently accepted with Dr. Isaacs into the MD Class of 2009. A dispute arose between Isaacs and the younger Baughman, and the school was alleged to have improperly yielded to the NIH donor, when they severely disciplined the Plaintiff. After protracted litigation in this District, a settlement agreement was reached that sealed all disciplinary records, dismissed all administrative charges, and cancelled all contracts between the parties. Years went by; Isaacs excelled without further incident at international medical school with training in London, Singapore, and New York and Florida, and achieved a top decile national board score higher than the average neurosurgeon.

4.   His achievement and persistence fueled an organized and relentless retaliation against him that continues to the present day. With his newly achieved medical diploma, Dr. Isaacs began residency training at Dartmouth. Knowledge of the sealed USC controversy, through John Doe, reached Dartmouth's medical school some five years after it began. John Doe's identity has been never been revealed by the Defendants and the Defendants have taken steps to conceal his or her identity. Motivated by John Doe's influence, Isaacs's arrival at Dartmouth was met with the strongest resistance. He was treated unethically and suffered extraordinary stress. Representative of the actions intended to break him down, he was ordered to conduct two unnecessary prostate exams his first two days of residency. Dartmouth terminated Isaacs without the normal peer review hearing process required by hospital bylaws.

TAB 4                                                                                      SER025

5.  Former Dartmouth & World Bank President Jim Yong Kim was notified to preserve evidence for federal court review of the circumstances. Within a week, Dr. Isaacs' emails and medical records at Dartmouth completely disappeared. Ultimately, the corruption extended from high academia to government officials. Dartmouth sent the sealed Keck records to the New Hampshire Board of Medicine. The Board, in turn, published the false, sealed records on the internet, declaring them to have never been sealed.

6.  Such activity precisely captures why Congress enacted the RICO Act – to prevent and expose the infiltration of legitimate institutions by corrupt individuals. To be sure, each institution named in this lawsuit is an otherwise venerable institution where the Plaintiff did, and does, seek to resume his medical research career. The Defendants executed constant, longstanding, and corrupt schemes intended to deprive Plaintiff of his medical career. Indeed, Plaintiff's fourteen year saga to practice medicine is unheard of for a physician with his top academic ranking and no other bar to employment.

7.  As a jury shall determine, Defendants willfully violated RICO statutes over a fourteen year period by recruiting new individuals to carry out an orchestrated pattern of retaliations, due process violations, and judicial obstructions meant to prevent Dr  Isaacs from ever becoming a doctor.

## II.    JURISDICTION AND VENUE

12.  Venue in the California Southern District is proper because the dispute transpired and originated in the district. Additionally, the settlement agreement and disclosures by John or Jane Doe, central to this case, necessarily stemmed from this district. The Plaintiff was retaliated against, for fourteen years, because he was a witness in an official proceeding in this district.

TAB 4                                                                                          SER026

no registered agent.  According to its webpage, the Board of Trustees "has ultimate responsibility for the financial, administrative and academic affairs of [Dartmouth] College.' Plaintiff's applications to study GME have been declined as recently as November 2018 by faculty employed by or associated with the College.

18. Defendant USC Keck School of Medicine ("Keck") is located at 1975 Zonal Avenue in Los Angeles, in the Southern California District. In 2008, Plaintiff and Keck settled a lawsuit in this district, CV-06-3338-GAF. This complaint alleges witness retaliation to present day for disclosure of federal violations in said settled litigation.

19. Information about John and/or Jane Doe will be amended when available.

## IV.   FACTUAL HISTORY

20. In August 2005, the Plaintiff matriculated into the Class of 2009 M.D. program at the Keck School of Medicine at University of Southern California.

21. During the first semester, a relationship with a fellow Keck Classmate, one A.B., turned sour. A.B. made threatening statements to the Plaintiff, such as "I got into Keck through my connections, I'll get a residency through my connections, don't mess with me." [1]

22. At the time, email return receipt technology was new and developing.  An electronic message Plaintiff had sent to A.B. started registering return receipts at NIH headquarters and the Zilkha Neuroscience Center Executive Office at Keck.

23. Shortly thereafter, USC Security served Plaintiff with a "stay-away" order from classmate A.B.

---

[1] Indeed, A.B. has attained faculty appointment at Harvard Medical School, while Plaintiff – with his higher merit scores – has spent well over a decade trying to correct the wrongs inflicted by the Defendants.

TAB 4                                                        SER027

24. At the suggestion of the Keck Administration, A.B. sought to press charges with the LAPD for a paragraph of electronic written messages, sent by the Plaintiff, which she purported to be insulting. The LAPD, however, declined to press charges related to the petty dispute.

25. At the time, Plaintiff alleged the "stay-away" order was being used to embarrass him amongst his classmates. Plaintiff had difficulty complying with said order given that there were only three lecture rooms used by the one hundred members of the Class of 2009 M. D. program.

26. As evidenced by the return receipts, in conjunction with A.B.'s statement concerning connections, Plaintiff realized A.B.s father, head of Neurological NIH, was communicating with Keck's new Dean, Brian Henderson, who had recently been promoted after securing millions in funding for the new Zilkha Neuroscience Center.

27. Plaintiff's academic performance began to deteriorate because of the distraction created by the stay away order. He telephoned A.B. and offered his apology for his role in the aforementioned dispute, hoping to de-escalate the situation. A.B. initially accepted the apology.

28. However, the Junior Keck Dean, Peter Katsufrakis, brought Plaintiff before the Keck Student Performance Committee, and expelled him for apologizing to A.B. while the stay-away order was under effect.

29. Plaintiff was hospitalized with what appears to have been an Adjustment Disorder, stemming from the trauma of being expelled.

30. Plaintiff filed a federal lawsuit, CV-06-3338-GAF, against Keck, Henderson, Katsufrakis, and A.B's father.

TAB 4                                                                                         SER028

31. For unknown reasons, in 2006 Deans Henderson and Katsufrakis left their Deanship posts at Keck. Additionally, A.Bs father left the NIH to move to Okinawa, Japan.

32. After two years of alleged discovery evasion taking advantage of Isaacs' *pro se* status, Keck finally agreed to settle the claims with Isaacs.

33. Dr. Isaacs executed the first settlement agreement with the University of Southern California in 2007. AR 000032 (See Attached). That settlement dismissed the individual defendants from the suit, including the USC Dean and a National Institutes of Health official. Paragraph 2 of that Agreement was entitled "Sealing of Disciplinary Records," and read:

> "In exchange for the Dismissal with Prejudice of the Individual Defendants, referenced above, Defendant USC agrees that commencing immediately upon the execution of this Settlement Agreement and receipt of the signed Dismissal with Prejudice, *USC will not release or disclose Isaacs' disciplinary records to any third party*, including but limited to other educational institutions and/or potential employers, unless it receives written consent from Isaacs or a subpoena or court order."

34. The only consideration Isaacs received for dismissing his case under the first settlement agreement was the sealing of his disciplinary records.

35. The intent of the settlement was to allow Isaacs, who was already well in his second year of medical school at AUC, to move on and continue his career in medicine.

36. A second settlement agreement between USC and Dr. Isaacs ended the litigation with that institution. AR 000031 (See Exhibit). The excerpted paragraph 8 of that agreement stated that, "[a]s a material inducement to Isaacs to enter into this Agreement, USC does

TAB 4                                                                                          SER029

hereby irrevocably release, acquit and forever discharge Isaacs from any and all charges .

. . obligations, promises, agreements . . . of any nature whatsoever, known or unknown . .

." *Id.*

37. This settlement agreement further dismissed any outstanding administrative charges against Dr. Isaacs.  AR 000462 (See Attached).

38. Based primarily on the quoted language of the two settlement agreements and the advice of his attorney at the time, Dr. Isaacs understood that anything relating to his attendance at Keck was sealed and could not be disclosed by anyone, *including Dr. Isaacs*.

39. There are very few cases of sealed disciplinary academic records, and little legal precedent as to how they should be handled by the courts.

40. Here, the authoritative federal statutory regulation is 20 U.S. Code § 1232g - Family educational and privacy rights.

41. Specifically, the provision dealing with disciplinary records is instructive:

    (h)Disciplinary records; disclosure

    Nothing in this section shall prohibit an educational agency or institution from—

    (1) including appropriate information in the education record of any student concerning disciplinary action taken against such student for conduct that posed a significant risk to the safety or well-being of that student, other students, or other members of the school community; or (2) disclosing such information to teachers and school officials, including teachers and school officials in other schools, who have legitimate educational interests in the behavior of the student. (i) Drug and alcohol violation disclosures

TAB 4

42. In simple terms, FERPA and other routine liability laws normally would grant Keck an absolute right and duty to disclose a student's disciplinary records to another university with a vested interest.

43. By "sealing" the disciplinary records so that future disclosure would be prohibited, and hence outside the realm of FERPA, Keck expunged Isaacs' student record.

44. If they hadn't intended to expunge those records with these settlement agreements, Keck would be in violation of FERPA and other routine liability laws by failing to report the discipline to an educational institute with an interest in knowing.

45. With the knowledge that the settlement agreements placed his issues at Keck behind him, Isaacs proceeded in an international medical program, and finished ahead of schedule in 3 ½ years without incident.

46. His medical training included clerkship training at St. George's University London, Cleveland Clinic and Mt. Sinai School of Medicine (NY). Dr. Isaacs received strong reviews, mostly honors, from supervising professors at more than twelve different clerkships at the aforementioned institutions.

47. Dr. Isaacs received his medical degree in 2010 after he placed in the top decile on the highly competitive United States Medical Licensure Exam Step 1.

48. In July 2011, Isaacs was admitted to a federally funded Graduate Medical Education program ("medical residency") at Dartmouth Medical School, and their associated teaching hospital, DHMC/Hitchcock.

49. Within days of arriving at Dartmouth, Isaacs's health took an immediate and substantial turn for the worse. Previously able to work thirty hour surgery shifts, suddenly Isaacs had difficulty staying awake for more than three hours at a time.

TAB 4                                                                                    SER031

192.     The Board even went so far as to blame Isaacs for Keck's failure to retract administrative charges, which Keck was contractually bound to do from the settlement agreements.

193.     The Board went ahead with a hearing despite the fact that 8 inches of snow prevented Isaacs from attending. The Board did so with the intent of obstructing due process in both their own hearing and pending federal litigation.

194.     Likewise, the Board failed to accommodate Isaacs disability request for a trial by videoconferencing, suggesting an intent to obstruct process.

195.     The NH Board's only training facility is operated by Dartmouth, the only academic medical center in New Hampshire. Dartmouth has a liaison physician to the Board, and the Board consists largely of accredited physicians. As such, despite being held under the auspices of a state entity, the Board as defined as its individuals was very much involved, ultimately, in the RICO nexus described herein.

**III.     Keck School of Medicine and John or Jane Doe**

196.     Keck was the origination of the enterprise to retaliate against Dr. Isaacs as a witness of a federal crime (improper NIH influence on Keck).

197.     Keck engaged in multiple predicate acts, which were the subject of a federal lawsuit in 2007. The Plaintiff settled (civil claims) against Keck via the two aforementioned settlement agreements.

198.     Nonetheless, John or Jane Doe followed him, over a span of some five years, and disclosed the sealed records to Dartmouth. Based upon information and belief, John or Jane Doe necessarily must have had some connection to Defendant USC, given their knowledge of the sealed records.

TAB 4                                                                                          SER032

199.    In any event, the New Hampshire Board of Medicine determined that USC breached the settlement agreement, as they never retracted "administrative charges" against Isaacs, including a charge of Unprofessional Conduct that lead to his suspension , and later, expulsion.

200.    As such, USC has violated anti-retaliation and wire and mail fraud provisions, with predicate acts spanning over a decade. Specifically, they continue to issue false transcript reports via wire and mail. USC has had knowledge of Plaintiff's continued legal struggles to practice medicine. USC could have easily intervened and clarified that the records had been sealed, annulled, and discharged. When they could have so easily helped conclude a decade of litigation in over a dozen venues, USC's inaction alone evidences continued intent to retaliate.

201.    These Defendants, all involved in RICO violations, progress an enterprise whose primary focus was to destroy Dr. Isaacs's career, through his mistreatment at Keck, Dartmouth and later with his mistreatment at the New Hampshire Board of Medicine and several federal courts. Generally, there is one unifying explanation for Plaintiff's fourteen year predicament: 1) in 2006, he reported activity concerning the improper NIH/Keck relationship, 2) such report included notice of federal litigation, 3) as a federal witness, and party to an official proceeding, Plaintiff should have been protected from retaliation, however 4) clearly Plaintiff has suffered an extensive retaliation that ended his medical career for being a party to said proceeding. The entire retaliation originated with an attempt to discredit him, then a promising medical student, from bringing claims against several of the most senior physicians in the nation. Forced to go "offshore," he completed his medical training and again resumed a promising path, based on his top ranking

TAB 4                                                                                          SER033

WHEREFORE, The Plaintiff respectfully requests that this Honorable Court:

A. Order damages in excess of $18,000,000 under the jurisdictional authority of this Court;

B. Award triple damages, under the so-called private attorney general provisions of RICO, costs and attorneys' fees;

C. Await the United States Attorney as a criminal prosecutor for RICO criminal violations,

D. Permit discovery of RICO civil and criminal claims to proceed pending appointment of the AUSA;

E. Grant any further relief as may be fair and just.


03/12/2019                                    Respectfully Submitted,


                                              /s/ Dr. Jeffrey D. Isaacs
                                              Dr. Jeffrey D. Isaacs, Pro se
                                              3553 W Chester Pk #177
                                              Newtown Square, PA 19073
                                              Jeffreydi@gmail.com
                                              (610) 202-1460

TAB 4                                                              SER034

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The University of Southern California ("USC") and Jeffrey Isaacs ("Isaacs") have agreed to enter into this Confidential Settlement Agreement and Mutual Release (the "Agreement").

### 1. Dismissal With Prejudice.

Isaacs agrees that he will execute and deliver for filing to counsel of record for USC, Robin D. Dal Soglio of Dal Soglio & Martens LLP, the Stipulation of Dismissal with Prejudice (attached hereto as Exhibit A) of USC from United States District Court Case No. CV-06-3338 GAF (Ex).  Counsel for USC will file the Dismissal with Prejudice with the Court.

### 2. No Future Application to University.

Isaacs understands and agrees that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future.  Isaacs further agrees that he will not apply for or otherwise seek admission to USC or any related or affiliated entity at any time in the future, under any circumstances whatsoever.

### 3. Non-Admission of Liability.

This Agreement shall not in any way be construed as an admission by USC that it has discriminated against or retaliated against Isaacs in any way, or otherwise acted wrongfully with respect to Isaacs or any other person, or that Isaacs has any rights whatsoever against it. USC specifically denies that it has any liability to or has done any wrongful acts against Isaacs or any other person.

### 4. Benefits for Isaacs.

Within fourteen (14) days of USC's receipt of the original of this Agreement signed by Isaacs and including executed copies of Exhibits A and B, USC will transmit to Isaacs one check made payable to Isaacs in the gross amount of Ten Thousand Dollars ($10,000).

### 5. Responsibility for Taxes.

Isaacs understands and acknowledges that USC will report the payment described in paragraph 4 to the appropriate taxing authorities as required by law.  Isaacs agrees that he is solely responsible for all tax obligations, including, but not limited to, all payment obligations which may arise as a consequence of this Agreement.  Isaacs further agrees promptly to pay and to indemnify and hold USC and others released herein harmless from and against any and all loss, cost, damage or expense, including, without limitation, attorneys' fees, interest, assessments, withholding and penalties, arising out of any dispute over underwithholding or other tax treatment of any of the proceeds received by Isaacs as a result of this Agreement. Isaacs further agrees not to seek or make any claim against USC or others released herein for any loss, cost, damage or expense if a claim or adverse determination is made in connection with underwithholding or other tax treatment of any of the proceeds of this Agreement or any portion

Initialed 2 Dd

1

USC 6

TAB 4                                                                 SER035

thereof. Isaacs understands and agrees that neither USC nor others released herein has any duty to defend against any claim or assertion in connection with underwithholding or other tax treatment of the proceeds of this settlement or any portion thereof, and Isaacs agrees to assume full responsibility for defending against any such claim or assertion.

6. **No Other or Future Lawsuits, Charges, Claims for Arbitration or Complaints of Any Nature Whatsoever.**

With the exception of United States District Court Case No. CV-06-3338 GAF (Ex), which is fully and finally settled herein, Isaacs represents that he has not filed any other lawsuits, charges, claims for arbitration, complaints, or appeals of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, and he agrees that he will not file any lawsuits, charges, claims for arbitration, complaints, or appeals at any time hereafter based on, referring to, or incorporating any events, acts or omissions through and including the date hereof.

If Isaacs's representations in this paragraph prove to be false, or if he violates the promises made in this paragraph and files a lawsuit, charge, claim for arbitration, complaint, or appeal of any kind with any court or administrative or governmental agency against USC or any other persons or entities released herein, based on any events, acts or omissions through and including the date hereof, Isaacs will pay for all costs and losses, including actual attorneys' fees, incurred by USC in connection with said lawsuit, charge, complaint, or appeal.

7. **Complete Release by Isaacs.**

As a material inducement to USC to enter into this Agreement, Isaacs hereby irrevocably and unconditionally waives and releases all rights and claims, known and unknown, which he may have against USC, the Keck School of Medicine, and each of their respective successors, assigns, agents, trustees, officers, administrators, faculty, students, current and former employees, representatives, attorneys, divisions, subsidiaries, affiliates (and agents, trustees, officers, administrators, faculty, current and former employees, representatives and attorneys of such divisions, subsidiaries, and affiliates), and Robert Baughman and each of his family members, and all persons acting by, through, under or in concert with any of them (collectively, the "Releasees") from the beginning of time to the date Isaacs signs this Agreement from any and all claims, demands, contracts, expenses, liens, covenants, debts, attorney's fees, causes of action, damages, judgments, orders, and liabilities (collectively "Claims") of whatever kind or nature in law, equity, or otherwise, whether now known or unknown, suspected, or unsuspected, and whether or not concealed or hidden, which Isaacs now owns or holds or had at any time heretofore owned or held against the Releasees.

Initialed

2

USC 7

TAB 4                                    SER036

8.   **Release by USC**

      As a material inducement to Isaacs to enter into this Agreement, USC does hereby irrevocably and unconditionally release, acquit and forever discharge Isaacs from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, grievances, costs, losses, and expenses (including attorneys' fees and costs) of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including but not limited to any claim for malicious institution of civil proceedings, and abuse of process. Notwithstanding any other provision herein, this release by the University is not intended to, and does not, release debts unrelated to the lawsuit, including but not limited to tuition or loans.

9.   **Knowing and Voluntary Waiver of Known and Unknown Claims**

      Consistent with the terms of their respective releases in paragraphs 7 and 8, Isaacs and USC acknowledge and agree that, as a condition of this Agreement, they expressly release all rights and claims that they do not know about, as well as those they know about. Thus, consistent with the terms of their respective releases, Isaacs and USC expressly waive all rights under Section 1542 of the Civil Code of the State of California, which reads as follows:

> "A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor."

10.   **Ownership of Claims**

      Isaacs represents and agrees that he has not assigned or transferred, or attempted to assign or transfer, to any person or entity, any of the claims he is releasing in this Agreement.

11.   **Encouragement to Consult With Attorney**

      USC encourages Isaacs to consult with an attorney before signing this Agreement, and Isaacs hereby acknowledges that he has had the opportunity to consult with an attorney prior to signing, and has either done so or voluntarily chosen not to do wo.

12.   **No Representations**

      The parties represent and agree that no promises, statements or inducements have been made to them which caused them to sign this Agreement other than those expressly stated in this Agreement.

Initialed 2 D d

3

USC 8

TAB 4                                                                                                   SER037

13.   <u>Successors</u>

This Agreement shall be binding upon the parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the parties and others released herein, their representatives, executors, successors and assigns.

14.   <u>Confidentiality of This Agreement</u>

a.   As a material inducement for USC to enter into this Agreement, Isaacs agrees not to disclose the negotiation, terms, conditions, or amount of this Agreement to anyone other than Isaacs's attorneys and tax adviser (hereafter referred to as "Isaacs's Confidants") and, even as to such a person, only if the person agrees to honor this confidentiality requirement. Violation of this confidentiality requirement by any of Isaacs's Confidants will be treated as a violation of this Agreement by Isaacs.

b.   This section does not prohibit Isaacs's disclosure of the negotiation, terms, conditions, or amount of this Agreement to the extent necessary legally to enforce this Agreement, nor does it prohibit disclosures to the extent otherwise required by law (but only if Isaacs notifies USC and its attorneys of a disclosure obligation or request within three business days after he learns of it and does not actively oppose USC's taking all steps it deems to be appropriate to prevent or limit the required disclosure).

c.   If Isaacs is asked about his claims against USC, including breach of enrollment contract and wrongful dismissal, and only if asked, he may state only that "the matter has been resolved." However, the parties further agree that Isaacs is not required to disclose this matter to anyone.

15.   <u>Damages for Isaacs's Breach of Confidentiality</u>

A breach of paragraph 14 will be deemed a material breach of this entire Agreement. Isaacs agrees to pay USC the sum of Five Thousand Dollars ($5,000) as liquidated damages for each violation in the event USC obtains a judgment, ruling, award, or decision that paragraph 14 has been violated. The parties to this Agreement agree that this liquidated damages provision is appropriate with regard to any breach of paragraph 14 because: (1) paragraph 14 is essential for the protection of USC's interests; (2) damages for breach of paragraph 14 would be difficult to prove with certainty; and (3) the sum of Five Thousand Dollars ($5,000) per breach represents a reasonable estimate of the harm likely to result from each such breach.

16.   <u>Newly Discovered Facts</u>

Isaacs acknowledges that he might hereafter discover facts different from or in addition to those he now knows or believes to be true with respect to a claim or claims released herein, and he expressly agrees to assume the risk of possible discovery of additional or different facts, and agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different discovered facts.

Initialed _____

4

USC 9

TAB 4                                                                                                         SER038

17.   **Voluntary Participation in This Agreement**

      The parties acknowledge that they have thoroughly discussed all aspects of their rights and this Agreement with their respective attorneys, or have knowingly and voluntary chosen not to do so, and that they have carefully read and fully understand all of the provisions of this Agreement, that they have been given a reasonable period of time to consider signing this Agreement, and that they are voluntarily signing this Agreement.

18.   **Governing Law**

      This Agreement is made and entered into in the State of California and shall in all respects be interpreted, enforced and governed under the laws of said State.

19.   **Further Necessary Actions**

      The parties agree, without further consideration, to sign and/or cause to be signed, and to deliver to counsel for one another, any other documents and to take any other action as may be necessary to fulfill their obligations under this Agreement, including, but not limited to, effecting the dismissal of all outstanding administrative charges.

20.   **Severability**

      Should any of the provisions in this Agreement, other than the Release set forth in Paragraph 7, be declared or be determined to be illegal or invalid, all remaining parts, terms or provisions shall be valid, and the illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

21.   **Proper Construction**

      a.   The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties.

      b.   As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

      c.   The paragraph headings used in this Agreement are intended solely for convenience of reference and shall not in any manner amplify, limit, modify or otherwise be used in the interpretation of any of the provisions hereof.

22.   **Entire Agreement**

      This Agreement is the entire agreement between Isaacs and USC and fully supersedes any and all prior agreements or understandings between the parties pertaining to its subject matter.

Initialed A-SQ 2 DA

5

USC 10

TAB 4

SER039

**PLEASE READ CAREFULLY.  THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Executed at <u>Saint-Jean, FRANCE</u> this 31st day of March 2008.

By: _____

Jeffrey Isaacs

Executed at Los Angeles, California, this ____APR 0 4____ 2008.

UNIVERSITY OF SOUTHERN CALIFORNIA

By: _____
Dennis F. Dougherty
Senior Vice President for Finance

6

USC 11

TAB 4                                                                    SER040

Dr Jeffrey Isaacs
3553 West Chester Pk #177
Newtown Square, PA 19073

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DR. JEFFREY ISAACS | ) | |
| Plaintiff, | ) | Case 2:19-CV-02011-DSF-RAO |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S AMENDED** |
| DARTMOUTH HITCHCOCK MEDICAL CENTER, | ) | **COMPLAINT FOR DAMAGES,** |
| GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, | ) | **DECLARATORY, AND** |
| USC KECK SCHOOL OF MEDICINE, | ) | **INJUNCTIVE RELIEF** |
| NH BOARD OF MEDICINE | ) | |
| and | ) | |
| JOHN or JANE DOE | ) | |
| Defendants. | ) | DEMAND FOR JURY TRIAL |

## PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND

## INJUNCTIVE RELIEF

### I.    INTRODUCTION

1. Plaintiff Jeffrey Isaacs enrolled in the USC Keck School of Medicine Class of 2009 in what by all means seemed to be the beginning of a promising medical career. By the end of the first semester, somewhat by accident he found himself in possession of evidence of corruption and abuse of power an NIH director and the Dean of Keck. Specifically, a dispute had arisen where a Class of 2009 classmate bragged to him and threatened him regarding 'connections' that got her into Keck, and verifiable electronic mail routing records furthered revealed her purported claims.

TAB 5                                                                                                    SER041

## IV.    <u>FACTUAL HISTORY</u>

20. The original complaint in this action was finalized on March 11 2019.  In this action, and a related 2006 action, the Plaintiff alleged admissions corruption, as well as an administrative cover-up and retaliation, that happened shortly after he matriculated into the Class of 2009 M.D. program at the Keck School of Medicine at University of Southern California. On March 12, 2019 federal RICO charges in "Operation Varsity Blues" were formally filed against USC for corrupt and criminal admissions procedures. The aforementioned federal investigation exposed widespread bribery, favoritism, and other corruption in USC's admissions process.

21. During the first semester at Keck, Plaintiff commenced a relationship with a fellow Keck Classmate, one A.B. As the matter turned sour, A.B. made threatening statements to the Plaintiff, such as "I got into Keck through my connections, I'll get a residency through my connections, don't mess with me." [1]

22. At the time, email return receipt technology was new and developing.  An electronic message Plaintiff had sent to A.B. started registering return receipts at NIH headquarters and the Zilkha Neuroscience Center Executive Office at Keck.

23. Plaintiff was concerned that A.B. was fostering rumors and gossip among classmates, and extending, he believed, to scientists at Zilkha her father knew. Plaintiff, who had a semester at Vanderbilt Law completed, sent a cease and desist letter on a United States District Court cover sheet to A.B demanding "inappropriate communications with Zilkha" officials cease, thinking it would be the end of it. He was wrong; fifty pages

---

[1] Indeed, A.B. has attained faculty appointment at Harvard Medical School, while Plaintiff – with his higher merit scores – has spent well over a decade trying to correct the wrongs inflicted by the Defendants.

TAB 5                                                                                                    SER042

follow in this complaint of abbreviated events and claims that would follow him for fourteen years.

24. Little did Plaintiff know, the Zilkha scientist was in fact the Dean of Keck, Brian Henderson. Henderson had recently been promoted to deanship after raising $40 million for the Zilkha institute, at least in part with NIH funds controlled by A.B.'s father.

25. Shortly thereafter, USC Security served Plaintiff with a "stay-away" order from classmate A.B. Also at the suggestion of the Keck Administration, A.B. sought to press charges with the LAPD against the Plaintiff. The LAPD declined to press charges related to the petty dispute. Plaintiff contended the "stay-away" order was being used by A.B. to embarrass him amongst his classmates.

26. Plaintiff learned in February 2006 that the Zilkha scientist's true identity was Dean Henderson. He immediately went to Dean Clive Taylor attempting to mitigate the circumstances, and said "I'm being kicked out for accidentally blackmailing the Dean," to which Taylor replied "Sometimes Jeff, you get a raw deal in life."

27. Plaintiff emailed an apology to A.B., hopeful it was the best way to resolve the situation. A.B. initially accepted the apology, and emailed the Dean that she didn't want to be responsible for further disciplinary action against Plaintiff, who she said "wasn't a [bad] person."

28. However, the Junior Keck Dean, Peter Katsufrakis, hauled Plaintiff before the Keck Student Performance Committee, and disciplined him. In truth, the Deans disciplined Isaacs to discredit, and out of anger for, his preliminary criminal and civil claims, which included abuse of office, corruption and bribery. This reasoning was not communicated to the voting faculty members, who were instead given Plaintiff's "apology email" as a

TAB 5                                                                                                    SER043

pretextual termination reason. Formally, the SPC charged Plaintiff with inability "to maintain Essential Characteristics & Abilities" of a Keck student, resulting in separation from the university. Katsufrakis' corrupt and retaliatory actions initiated Keck's role in the management and operation of an illegal enterprise. To the extent later settlements may have waived claims against Keck, a private criminal waiver contract does not legally preclude criminal charges. RICO is a criminal and civil cause of action, and thus Plaintiff did not waive RICO claims.

29. Plaintiff was hospitalized with what appears to have been an Adjustment Disorder, stemming from the trauma of losing his place in medical school.

30. Plaintiff filed a federal lawsuit, CV-06-3338-GAF, against Keck, Henderson, Katsufrakis, and A.B's father. For unknown reasons, in 2006 Deans Henderson and Katsufrakis left their Deanship posts at Keck. Additionally, A.B's father left the NIH to move to Okinawa, Japan.

31. Exhaustive settlement discussions took place over nearly two years. See *Amended Complaint Exhibits* (Pages 1-63) & *Affidavit of Dr Jeffrey Isaacs*, both of which are hereby incorporated entirely herein as facts in this complaint. Plaintiff's attorney Michel Payne exited discussions with USC Counsel, citing "unprofessional" conduct in simultaneously dishonoring settlement offers and riding out the discovery clock.

32. Nonetheless, two settlement agreements were reached over these two years. The first agreement, the "Individual Settlement," sealed Isaacs' disciplinary records, in exchange for Isaacs dropping any claims against the individuals, i.e. Katsufrakis, Henderson, and R.B.

TAB 5                                                                                                    SER044

33. Keck drafted the Individual Settlement days after Isaacs filed the "Zilkha tracking evidence" in court for the first time, which they also threatened to sanction him for filing. That settlement dismissed the individual defendants from the suit, including the USC Dean and a National Institutes of Health official. Paragraph 2 of that Agreement was entitled "Sealing of Disciplinary Records," and read:

> "In exchange for the Dismissal with Prejudice of the Individual Defendants, referenced above, Defendant USC agrees that commencing immediately upon the execution of this Settlement Agreement and receipt of the signed Dismissal with Prejudice, *USC will not release or disclose Isaacs' disciplinary records to any third party*, including but limited to other educational institutions and/or potential employers, unless it receives written consent from Isaacs or a subpoena or court order."

34. There was no consideration for Isaacs in the Individual Settlement other than the "factual innocence" provided by a record seal. Both the intent, and plain language use of "sealing" in the agreement were unambiguous to both parties. California Code 851.8 sealing procedures for factual innocence and exoneration were intended to apply, analogously, in this educational sealing, to which there was no direct statutory authority.  Isaacs accepted the Individual Settlement offer in September 2007, and in related correspondence had stated "By completely sealing and clearing my record at USC, your client will be removing any burden on me to disclose these events in future career endeavors. I have been fortunate enough to receive a second chance [at medical school]."

35. The additional intent of the settlement was to allow Isaacs, who was already well in his second year of medical school at AUC, to move on and continue his career in medicine.

TAB 5                                                                    SER045

36. A second settlement, the Global Settlement agreement between USC and Dr. Isaacs ended the litigation with that institution.  The excerpted paragraph 8 of that agreement stated that, "[a]s a material inducement to Isaacs to enter into this Agreement, USC does hereby irrevocably release, acquit and forever discharge Isaacs from any and all charges . . . obligations, promises, agreements . . . of any nature whatsoever, known or unknown . . ." *Id.*

37. This settlement agreement further dismissed any outstanding administrative charges against Dr. Isaacs.   Likewise, it acquitted him of charges of failing to "maintain Essential Characteristics" which lead to his discipline, in a redundant exoneration to the Individual Settlement agreement.

38. But the primary intent of the Global Settlement, negotiated over eighteen months, was to allow Isaacs the relatively "minor point" of not having to disclose his mere attendance at USC in the future. It did this by annulling any contracts between the parties. Comparatively, one may deny any retroactively annulled contract.

39. This agreement was drafted by Keck days after a teleconference between Isaacs and USC Counsel, in which he informed them discovery would also address claims of unusual abuse of power, and predatory tactics, by Dean Katsufrakis.

40. Both of Katsufrakis' successors likewise were terminated from USC for abuse of power and sexual misconduct. Dean Carmen Puliafito was found to have provided and used crack cocaine with a twenty year addict. Dean Rohit Varma was terminated for sexually harassing a young researcher.  This constitutes a pattern of failed deanship supervision.

TAB 5                                                                                                          SER046

41. In sum, both of Isaacs' claims that USC suffered from a pattern of inadequate supervision and reporting procedures for Dean misconduct, and that USC turned a blind eye to a pattern of admissions bribery, would prove true a decade later.

42. According to USC Counsel who drafted the Global Settlement, she "re-opened the issue to have USC advise [Plaintiff] of his need to disclose the academic history." Hours later, she sent him the final Global Settlement, with revised language stating "the parties further agree that Isaacs is not required to disclose this matter to anyone."

43. USC provided expert advice, coercion, guarantee, promises, and/or suggestions that the Global Settlement annulled the enrollment contract and the respective academic history was thereby, in entirety, subject to confidentiality clauses "not requiring" disclosure to any third party.

44. Based primarily on the quoted language of the two settlement agreements and the advice of USC, and his attorney at the time, Dr. Isaacs understood that anything relating to his attendance at Keck was sealed and could not be disclosed by anyone, including Dr. Isaacs.

45. There are very few civil cases of sealed disciplinary academic records, and little legal precedent as to how they should be handled by the courts.

46. Well known entities that can be sealed and rightfully disavowed include criminal arrests, marriages, and other serious matters. There is no known law in any United States jurisdiction forbidding a university from likewise contracting with a student to seal and/or annul a discipline.

47. Here, a relevant federal statutory regulation is 20 U.S. Code § 1232g - Family educational and privacy rights.

TAB 5                                                                                          SER047

48. Specifically, the provision dealing with disciplinary records is instructive:

"(h)Disciplinary records; disclosure

Nothing in this section shall prohibit an educational agency or institution from—

(1) including appropriate information in the education record of any student concerning disciplinary action taken against such student for conduct that posed a significant risk to the safety or well-being of that student, other students, or other members of the school community; or (2) disclosing such information to teachers and school officials, including teachers and school officials in other schools, who have legitimate educational interests in the behavior of the student. (i) Drug and alcohol violation disclosures" 20 U.S. Code § 1232g.

49. In simple terms, FERPA and other routine liability laws normally would grant Keck an absolute right and duty to disclose a student's disciplinary records to another university with a vested interest. Moreover, FERPA would require Isaacs to consent before Keck releasing his records to third parties.

50. By "sealing" the disciplinary records so that future disclosure would be prohibited even to interested parties, and hence outside the realm of FERPA, Keck expunged Isaacs' student record. If those records had not been expunged/annulled with these settlement agreements, Keck would be in violation of FERPA and other statutory and common liability laws by failing to report the discipline to an educational institute with an interest in knowing.

51. With reliance upon the fact that the settlement agreements placed his issues at Keck behind him, Isaacs proceeded in an international medical program, and finished ahead of schedule in 3 ½ years without incident.

TAB 5                                                                                                          SER048

159.    As a result of the aforementioned fraudulent concealment, and lengthy delays in the previous related lawsuits, the full nature of Plaintiff's injuries have been difficult to precisely ascertain.

160.    A jury shall determine that Dr Isaacs' currently cannot practice medicine as a result of a pattern of illegal, retaliatory behaviors initiated by John Doe in connection with Keck, spanning over fourteen years, and ultimately involving Dartmouth and the NH Board officers.

## V.    CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT

161.    Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

162.    There exists a genuine and bona fide dispute and an actual controversy between the parties as to the obligations of Keck under the Individual Settlement and Global Settlement agreements.

163.    Pursuant to the Uniform Declaratory Judgment Act, Plaintiff in good faith requests that the Honorable Court declare the following:

(a) Plaintiff and Keck formed the two settlement agreements over a two year period, with particularity and due consideration given to each and every term in the agreements.

(b) Keck and the Plaintiff had brought cross allegations and charges that the settlements were meant to dismiss. The charges against Plaintiff were "failure to demonstrate  the

TAB 5                                                                                          SER049

Essential Characteristics" of a Keck student physician. The charges against Keck and the Individuals included abuse of power, bribery/favoritism, and retaliation.

(c)  Plaintiff's only consideration in the Individual Settlement was the sealing of his Keck disciplinary records, i.e., the SPC administrative charge of not maintaining "Essential Characteristics" that formed the basis for his expulsion.

(d)  The parties did not cite any statutory authority defining sealed academic records, and indeed, none are known to exist.

(e)  The plain intent of sealing the records, evidenced by email communications, was for Keck to "remove any burden on Plaintiff to disclose these events in future" medical career endeavors.

(f)  In other words, Keck agreed to render "factual innocence" to Plaintiff in exchange for his dismissal of the case against Katsufrakis, Henderson, and Baughman.

(g)  "factual innocence" and exoneration are applicable in respective California Penal Code, and may be analogously applied here to academic administrative charges.

(h)  The law permits two private parties great authority and breadth to contract with one another in freedom. USC, a private institute, was permitted to contract to "factual innocence" and "exoneration" of Plaintiff, in recognition of possible wrongful determinations by their faculty, and they did so.

(i)  The American Academic of Medical Colleges and New Hampshire Employment Security tribunal were the first competent authorities to review this matter.

(j)  Both entities determined that the settlements were consistent with "factual innocence" and/or exoneration, and permitted Plaintiff's non-disclosure of the aforementioned charges.

TAB 5                                                                                      SER050

(k) These two determinations were fair and reasonable.

(l) Keck legally contracted with Plaintiff to afford him "factual innocence" and to allow him to put the matter, as a matter of fact and law, behind him.

(m) The Global Settlement agreement, redundantly, acquitted Plaintiff of the aforementioned charges.

(n) The Global Settlement agreement, redundantly, dismissed Plaintiff of any administrative charges, including that of unprofessional conduct.

(o) Under both Settlement Agreements, it would be a breach for USC/Keck to disclose the charges as if they hadn't been discharged, rendered "factually innocent," or otherwise impede on the intent of the settlements.

(p) The Global Settlement agreement annulled all contracts between the parties, including the enrollment agreement.

(q) A party such as the Plaintiff is allowed to disavow the existence of an annulled contract, in this case, enrollment.

(r) On the day the Global Settlement was reached, USC examined the issue of Plaintiff's disclosure liabilities to third parties regarding academic enrollment history.

(s) The settlement stated that USC agreed that Isaacs need not disclose any of the USC Keck discipline or academic enrollment history to any third party.

(t) The effect of the two settlements renders Isaacs enrollment and discipline at USC Keck a legal nullity, as Attorney Michael Payne testified in 2011.

(u) By not listing USC discipline or enrollment history on related applications, Isaacs was complying with the intent of the settlement agreements, the legally permissible

TAB 5                                                                                      SER051

effects of the settlement agreements, and furthermore, academic advice from USC contained therein.

## COUNT II
### Breach of Contract
### (Keck Defendants)

164.     Plaintiff repeats and re-alleges each and every allegation contained herein  as if fully stated under this count.

165.     Plaintiff and Keck entered into two contracts, the Global and Individual Settlement agreements.

166.     Plaintiff complied with the agreements, believing they had been court enforced and valid. As a Caribbean applicant to residency, disclosing Keck attendance may have helped his applications, but nonetheless, he did not disclose any of the matter to third parties.

167.     Keck was obliged under the agreements to annul their prior contracts with Plaintiff.

168.     Keck was obliged to dismiss administrative charges, including the SPC charge of unprofessional conduct.

169.     Keck was obliged to acquit the plaintiff of all charges.

170.     Keck was required to seal disciplinary charges, rendering Plaintiff "factually innocent."

171.     The NH Board of Medicine found "no evidence" Keck dismissed administrative charges against Plaintiff in 2014. The Board order, containing many inaccuracies, was appealed and cert was denied in June 2015. At that point in time, Plaintiff became

TAB 5                                                                                    SER052

reasonably suspicious, and informed, that Keck was not complying with the Settlement

Agreements.

172.     Keck has never taken action to comply with the settlement agreements.

173.     The Keck registrar was never informed to make the necessary changes to

Plaintiff's student record, including dismissal of admin charges and sealing the charges.

174.     The aforementioned breach directly and proximately caused Plaintiff severe

property loss, emotional distress, reputational and career harm, and physical stress and

harm.

175.     Plaintiff became aware that this breach was intentional in May 2019.

176.      Attorney Keith Mathews spent three months between April and June 2019

attempting to mediate with Keck concerns that Keck not fully complied with the

settlement. Keck was asked to "resolve any breaches and assist in repairing the residency

training dismissal that resulted from the breach." Keck Counsel Meyer wrote back that

"USC declines" to resolve the breach or assist and mitigating damages.

## COUNT III
## IIED
### (All Defendants)

177.      Plaintiff repeats and re-alleges each and every allegation contained herein as if

fully stated under this count.

178.     Plaintiff has suffered severe emotional distress as a result of Keck's willful choice

to dishonor their settlement contracts.

179.     If there was any doubt as to Keck's intent, Counsel Meyer clarified that in his

email refusing to look into Keck's breaches.

TAB 5                                                                                  SER053

180.     Wanton disregard for complying with a court ordered settlement contract, let alone a physician's career being needlessly after over a decade, is reckless and intentional behavior.

181.     Counsel Meyer's recent action is extreme and outrageous. A reasonable individual informed of Plaintiff's ten year difficulty complying with the settlement agreement would not respond the way Counsel Meyer did.

182.     Counsel Meyer quite simply refused to accept information about the breach in ADR, meditation, or otherwise, and refused to comply with the settlement agreement.

183.     Meyer stated USC "declined" to correct the breaches.

184.     Moreover, USC counsel Fogelman acts as if the two settlement agreements simply don't exist; in a recent Pleading, he said "USC did not cause Plaintiff's omissions [of disciplinary charges]," as if the charge records had never been sealed and dismissed and acquitted.

185.     In a civilized community, it is not tolerated to retract an agreement and act as if it doesn't exist, particularly when the agreement caused an individual to rely upon said agreement and undertake four years of medical school to only be effectively barred from the practice of medicine.

186.     Keck has taken these actions for the purpose of causing Dr. Isaacs emotional distress.

187.     Dartmouth has refused to even consider Plaintiff's application to federal GME, on the basis of "dishonesty" regarding his compliance with the Keck agreements.

188.     Dartmouth's declaration in July 2019 that Plaintiff's re-applications are "setting Plaintiff up for rejection" evidences new and improper emotional abuse, incorrectly

TAB 5                                                                                      SER054

stating that Plaintiff has some honesty deficiency that in no way could warrant admission to their program.

189.    Refusing to consider an individual from a government program, in perpetuity, because he is simply complying with a federal court ordered settlement agreement is unconscionable in and of itself.

190.    Likewise, the NH Board has decided to, in perpetuity, publish the contents of "factual innocence" on their website and national clearinghouses.

191.    As a result of these actions Dr. Isaacs has suffered distress, including a myriad of stress related conditions, sleep issues and other medical concerns.

## COUNT IV
### NIED
**(Keck Defendants)**

192.    Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

193.    To the extent some individual at Keck were not aware of their obligations inherent in the settlement agreements, such as the registrar's office, they are liable under the NIED doctrine.

194.    Keck had a duty to comply with the settlement agreement.

195.    This duty was breached and Plaintiff became aware of the breach around June 2015, pursuant to the NH Board declaration thereof.

196.    Keck continues to recklessly, intentionally, and/or negligently disregard its obligations to Plaintiff.

TAB 5                                                                                    SER055

197.     The negligent actions of Keck officials, such as the registrar's office, and failures in their official duty to comply with a court ordered settlement agreement have proximately caused Plaintiff's emotional distress.

<u>**Count V**</u>
<u>**Bivens Implied Cause of Action**</u>
**(Keck and Dartmouth Defendants)**

198.      Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

199.     Plaintiff has been actively denied participation in federally funded GME training programs operated by the Defendants. Plaintiff has top decile credentials, no criminal record, "good medical knowledge" and was a "good resident."

200.     The clear reality is that these residency programs have permanently blocked Plaintiff's enrollment because, over a decade ago, he raised civil and criminal charges against a prominent Dean and scientist.

201.     The Defendants employ Program Directors to make residency hiring decisions. In turn, these Program Directors act as arbiters of federal training funds. Though employed by Defendants, they are also federal officials who have been delegated the important responsibility of appropriating federal training funds to duly qualified individuals.

202.     The Program Director's refusal to admit Plaintiff, on the basis of his being a witness and filing law enforcement referrals, constitutes a violation of both his Due Process and First Amendment rights.

203.     Under Bivens, the Court is permitted to exercise an implied cause of action against a federal official, the Program Director, who violates Plaintiff's constitutional rights. Because there exist no GME programs directly administered by the government,

TAB 5                                                                                    SER056

and because Plaintiff is being blocked from federal GME funds in an unconstitutional and retaliatory fashion stemming from his federal claims against an NIH director, a Bivens claim may proceed.

204.     In addition to due process and First Amendment rights, the right to practice an occupation is a liberty interest protected by the 14th Amendment of the United States Constitution. <u>Gibson v. Berryhill</u>, 411 US 564 (1973).

205.     Dr. Isaacs was entitled to due process before he was barred unlawfully by these Defendants from practicing his chosen profession.

206.     Damages for seven years of refused GME training and injunctive relief to allow Plaintiff's GME to proceed  are allowable and appropriate in this Bivens claim against a federally funded residency Program Director.

<u>**Count VI**</u>
<u>**Intentional Interference With Contractual Relations**</u>
**(John and/or Jane Doe, NH Board)**

207.      Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

208.     Contracts existed between Plaintiff and Keck, namely the Individual and Global Settlement agreements.

209.     John Doe knew of these settlements. They were located in court records, and in all probability, John Doe negotiated these settlements as client to USC Counsel Dal Soglio.

210.     Dartmouth has confirmed they learned about Plaintiff's Keck academic and disciplinary records via John Doe. In other words, Dartmouth concedes they learned about the records, but refuses to name the source.

TAB 5                                                                                                    SER057

211.     By communicating Plaintiff's Keck records to Dartmouth, John Doe deliberately

defeated the purpose of the agreements, namely, to limit disclosure requirements and

absolve Plaintiff of future reputational and career harm.

212.     Plaintiff was harmed, as the disclosure triggered the formation of an illegal

enterprise, the inappropriate termination from federally funded GME, the inappropriate

loss of his medical license, the publication of sealed facts, emotional distress, and

workplace harassment.

213.     But for John Doe's transmission of the sealed records, none of the aforementioned

injuries would have occurred. John Doe provided additional continuity of the enterprise

by   recruiting Dartmouth to join USC's retaliatory cause, and serving as a link from

USC's custody and control of student records to Dartmouth's.

214.     Plaintiff has worked tirelessly with multiple attorneys and law enforcement to

ascertain the identity of John Doe, but at this point in time, cannot attest to his identity

without the aid of further discovery.

215.     Similarly, the NH Board of Medicine has chosen, despite being notified in

numerous processes, to publish a fake order to the public, which is meant to defeat

Plaintiff's consideration vested by the settlement agreements.


### COUNT VII
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)
### 18 U.S.C. § 1962(c)
**(All Defendants)**

216.      Plaintiff repeats and re-alleges each and every allegation contained herein as if

fully stated under this count.

TAB 5                                                                              SER058

222. The RICO Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering and activity described herein, in violation of 18 U.S.C. § 1962(c).

223. The Defendants committed numerous predicate acts, spanning no less than twelve years, which constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

224. Defendants used their knowledge of complex federal medical training norms to evade scrutiny, in what one witness describes as "experts in medical training standards….threw down a spike as a long term impediment" in Plaintiff's career. For example, as the operators (in the case of Katsufrakis) of national clearinghouse databases, the working of which cannot be fully known prior to discovery, Defendants have been able to sabotage Plaintiff's career and reputation through complex publication and dissemination channels.

225. Representative predicate acts are enumerated below for each defendant. This list is not exhaustive and shall be refined during discovery. Predicate acts have likewise been pleaded earlier in this complaint. Certain predicate acts may be deemed moot after declaratory judgement of the settlement agreement terms and disputed breaches.

226. This Amended Complaint enumerates substantial civil and criminal complaints ("law enforcement complaints" that Plaintiff filed against Defendants, forming the core basis for a retaliatory enterprise under witness retaliation and obstruction of justice laws (see below). Each wrongful deprivation cited in this Amended Complaint may be in retaliation for one or more law enforcement complaints. For example, Plaintiff's initial "Zilkha United States District Court" cover sheet served as evidence in an official proceeding , that Keck was aware of, took steps to prevent and to intimidate Plaintiff

TAB 5                                                                                                           SER059

from further dissemination, and likewise motivated retaliatory events against him including breach of settlement contracts, as well as the initial SPC discipline. Likewise, Dartmouth's refusal to conduct a fair hearing, and their 2019 open ended refusal to consider Plaintiff's applications, exists in retaliation for law enforcement referrals including DOJ/FBI notice of evidence spoliation. It additionally extends to the original Zilkha cover sheet, to the extent John Doe recruited Dartmouth. A non exhaustive list of law enforcement complaints that Defendants possessed knowledge of prior to committing predicate acts includes: 1) the Zilka cover letter, 2) the 2006 CACD civil action and related complaints of illegal activity, 3) numerous letters to Defendants and their counsel indicating violations of civil and criminal code, 4) 2013 motion for referral to US attorney of evidence spoliation, 5) 2012, 2014 and subsequent referrals to DOJ and FBI, 6) January 2012 referral documents to Dartmouth risk management and ethics committees, 7) various other complaints to local, state and federal authorities, such as EEOC, Office of Civil Rights, and NH State Police.

227.    The predicate acts described in this complaint all violate one or more of the following federal statutes:

    a.   18 U.S.C. § 1513 (hereafter "witness retaliation"), which forbids conduct that "damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for--  the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or, Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for

TAB 5                                                                      SER060

in 2013. To this day, the Board falsely publishes on nationwide databases that the Keck agreements do not exist.

239.     The Board even went so far as to blame Isaacs for Keck's failure to retract administrative charges, which Keck was contractually bound to do from the settlement agreements.

240.     The Board went ahead with a hearing despite the fact that 8 inches of snow prevented Isaacs from attending. The Board did so with the intent of obstructing due process in both their own hearing and pending federal litigation.

241.     The NH Board's only training facility is operated by Dartmouth, the only academic medical center in New Hampshire. Dartmouth has a liaison physician to the Board, and the Board consists largely of accredited physicians. As such, despite being held under the auspices of a state entity, the Board as defined by its individuals has a close personal and economic nexus to Dartmouth; it cannot administer training licenses without the existence of Dartmouth .

**III.     Keck School of Medicine and John or Jane Doe**

242.     Keck was the origination of the enterprise to retaliate against Dr. Isaacs as a witness of a federal crime (improper NIH influence on Keck).

243.     Keck engaged in multiple predicate acts, which were the subject of a federal lawsuit in 2007. The Plaintiff settled (civil claims) against Keck via the two aforementioned settlement agreements.

244.     Nonetheless, John or Jane Doe followed him, over a span of some five years, and disclosed the sealed records to Dartmouth. Based upon information and belief, John or

TAB 5                                                                                                    SER061

256.     This behavior is particularly nefarious when one considers all of the effort it took Isaacs to pursue his singular goal of being a doctor. He worked diligently to help others as a student physician, with the understanding that his settlement agreements would protect him and allow him to move on with his life.

257.     These Defendants, through criminal enterprise, thwarted for good Dr. Isaacs's pursuit of being a medical Doctor and need to be held accountable for their crimes. The Defendants wrongful acts directly deprived Plaintiff the value of 1) three years GME salary stipend no less than $150,000, 2) an inherent knowledge and credential value of residency that far exceeds the government's cost/reimbursement to Dartmouth of approximately $1million, 3) a year tuition at USC Keck, 4) costs for medical care, and 5) future earnings of an MD/MBA that amount to at least $4 million, 6) the property value of his tuition and student loan payments for his medical degree, amounting to $400,000 and 7) though this is presently not a *qui tam* action, a loss to the federal medicare health system of a skilled physician a value that exceeds items 1 through 5 inclusive, including $200,000 in training subsidies to Dartmouth.

### COUNT VIII
### Retaliation
### (USC Keck)

258.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

259.     In this District in 2006, Plaintiff filed claims against Defendant USC pursuant to 29 U.S.C. § 701 and 42 U.S.C. § 12101 and related acts.

260.     The aforementioned claims qualify as protected acts under their respective anti-retaliation statutes.

TAB 5                                                                              SER062

261.     In 2019, USC Counsel refused a request to "comply with the original settlement by correcting appropriate records and 2) help reinstate Plaintiff's GME training that was prematurely ended as a result of said breach."

262.     USC Counsel further took the position that two heavily negotiated settlement agreements simply didn't exist. They disavowed responsibility for sealing records, discharging administrative claims, acquitting claims, and annulling enrollment contracts. Evidence of this position is found in USC Counsel's statement that "USC did not "cause" Plaintiff's omission [of sealed and acquitted charges]. Had they accepted the validity of the settlement agreements, of course they would not hold Plaintiff responsible for their own breach.

263.     Keck took these actions due to the Plaintiff's previous suit against them and in unlawful retaliation against him.

264.     But for Plaintiff's civil and criminal charges against Defendant USC, Keck would not have breached their settlement. The breach was in retaliation against Plaintiff's claims.

**Count IX**
**Section 1983**
**(NH Board)**

265.      Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

266.     Section 1983 prevents an individual, acting under the color or state law, from violating Plaintiff's constitutional rights.

TAB 5                                                                                                    SER063

dole out the harshest of punishments to Plaintiff, who was merely trying to practice medicine.

273.     The Board successfully dismissed Plaintiff's Section 1983 Due Process claim this year, which is still under certiorari review at the Supreme Court. The Board argued Plaintiff had "no clearly established right" to due process and exonerating evidence admission to their hearing. A motion to amend was disallowed, and hence, this Eighth Amendment claim could not be amended. For this reason, Plaintiff respectfully requests that this Section 1983 Eighth Amendment be allowed to proceed in the interest of justice and preference for merit based adjudication.


### COUNT X
### CONSTRUCTIVE FRAUD
**(USC Keck)**

274.     Plaintiff repeats and re-alleges each and every allegation contained herein as if fully stated under this count.

275.     Under California Code 1573, Constructive fraud consists 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

276.     In this alternative claim, should Plaintiff's prior claims not succeed, it is apparent his settlement agreements with Keck would have been formed out of constructive fraud.

277.     The only consideration Plaintiff received in the Individual Settlement was that of "factual innocence."

TAB 5                                                                         SER064

278.     Keck would have gained an advantage in settling the case, if no consideration was afforded to Plaintiff in his settlement agreement(s).

279.     Keck had a duty to engage in a good faith "meeting of the minds" in forming two complex settlement contracts. Experts in education and medical training, Keck had a particular negotiation advantage in understanding the entire ramification of the settlement terms, and had a duty not to mislead Plaintiff, lead him on, coerce him, or misrepresent facts and/or intents of the parties.

280.     In short, Keck breached their duty in issuing a proposed settlement, and signing it, in which they knew Plaintiff would not be granted the consideration he believed he would receive.

281.     An appropriate remedy would be re-opening of the claims and facts, pre-2008, that had been subject to settlement , and/or allocation of damages. Public interest warrants re-opening of this case in particular, specifically, there exists a real public concern regarding USC's inability to curtail abuses of power and bribery. Ongoing federal and state investigations have revealed a disturbing incidence at USC & Keck confirming a pattern of existence of both of Plaintiff's original claims, i.e. abuse of power and bribery.

WHEREFORE, The Plaintiff respectfully requests that this Honorable Court:

A.  Order damages in excess of $18,000,000 under the jurisdictional authority of this Court;

B.  Award triple damages, under the so-called private attorney general provisions of RICO, costs and attorneys' fees;

C.  Await the United States Attorney as a criminal prosecutor for RICO criminal violations,

TAB 5                                                                         SER065

D.  Permit discovery of RICO civil and criminal claims to proceed pending appointment of the United States as party;

E.  A permanent injunction under USC 28 Section 1331 and/or Bivens restraining Defendant's Program Directors from blocking access to federal GME training and violating Plaintiff's Due Process rights;

F.  A permanent injunction restraining the NH Board from issuing a false order, on the internet and national medical clearinghouse databases, that interferes with a federal court ordered settlement agreement.

G.  Grant any further relief as may be fair and just under the All Writs Act.

TAB 5                                                                                              SER066

James P. Fogelman, SBN 161584
Shannon E. Mader, SBN 235271
Katarzyna Ryzewska, SBN 300386
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
  Los Angeles, California 90071-3197
Telephone: (213) 229-7000
  Facsimile: (213) 229-7520
JFogelman@gibsondunn.com
SMader@gibsondunn.com
KRyzewska@gibsondunn.com

Attorneys for Defendant
USC Keck School of Medicine

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>                Plaintiff,<br><br>        v.<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER, GIESEL SCHOOL OF MEDICINE AT DARTMOUTH, USC KECK SCHOOL OF MEDICINE, NH BOARD OF MEDICINE (individually) and JOHN or JANE DOE,<br><br>                Defendants. | CASE NO. 2:19-CV-02011-DSF-RAO<br><br>**DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[Defendant's Request for Judicial Notice, and Declaration of Katarzyna Ryzewska Filed Concurrently herewith]<br><br>**Hearing**<br>Date:        September 16, 2019<br>Time:        1:30 PM<br>Location:   Courtroom 7D<br>Judge:       Hon. Dale S. Fischer |

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

TAB 6                                                                                              SER067

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on September 16, 2019, at 1:30 p.m. in

3  Courtroom 7D of the United States District Court for the Central District of California

4  at First Street Courthouse, 350 West 1st Street, Los Angeles, California Defendant USC

5  Keck School of Medicine ("Keck") will and hereby does move the Court to dismiss with

6  prejudice all claims asserted by Plaintiff Dr. Jeffrey Isaacs ("Plaintiff") against Keck in

7  the above-captioned action under Federal Rule of Civil Procedure 12(b)(6) on the

8  following grounds:

9       • First, Plaintiff's claims are barred by res judicata. In 2012, Plaintiff filed suit

10        against the Trustees of Dartmouth College based on the same set of facts, and

11        summary judgment was entered against him. As such, the judgment in the 2012

12        action bars all of Plaintiff's claims.

13      • Second, Plaintiff's RICO claim fails because it is barred by the four-year

14        statute of limitations. *See Agency Holding Corp. v. Malley-Duff & Assocs.,*

15        *Inc.*, 483 U.S. 143, 156 (1987). Plaintiff's own allegations establish that he

16        learned of his alleged injuries more than four years ago. He expressly admits

17        that "Dartmouth terminated [him] in ***March 2012***," and that the Board of

18        Medicine "first published the above false [revocation] orders on the internet"

19        in "***mid-2014***." First Amended Complaint ("FAC") at ¶¶ 102, 147 (emphases

20        added).

21      • Third, Plaintiff's RICO claim fails because it is barred by the 2007 and 2008

22        settlement agreements, which released Keck from liability for any and all

23        claims based on pre-2008 conduct.

24      • Fourth, Plaintiff fails to plead any of the essential elements of a RICO claim.

25        He fails to allege a RICO enterprise, the operation or management of the RICO

26        enterprise, and at least two acts of racketeering activity: his wire and mail fraud

27        allegations are wholly conclusory and not pleaded with particularity; he pleads

28

1

Gibson, Dunn &
Crutcher LLP

TAB 6                                                                SER068

1   no facts to support his witness retaliation allegation; and his obstruction of

2   justice claim fails because he does not allege a pending federal judicial

3   proceeding. He also fails to plead a pattern of racketeering activity, a

4   cognizable injury, and causation. Additionally, statements by Keck's counsel

5   are immunized from liability under the *Noerr-Pennington* doctrine. *See Sosa v.*

6   *DirecTV, Inc.*, 437 F.3d 923, 933-39 (9th Cir. 2006) (*Noerr-Pennington*

7   applies to pre-litigation demand letters); *Columbia Pictures Indus., Inc. v.*

8   *Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) (*Noerr-*

9   *Pennington* applies to a decision to accept or reject a settlement offer);

10   *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014) (*Noerr-*

11   *Pennington* applies to the filing of a motion to dismiss).

12   • Fifth, Plaintiff's claims of retaliation under the Americans with Disabilities

13     Act ("ADA") and the Rehabilitation Act fail because refusing to acquiesce to

14     litigation demands is not an "adverse action," nor is filing a motion to dismiss.

15     *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833 (N.D.

16     Ill. 2006).  *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998)

17     ("[I]t will be the rare case in which conduct occurring within the scope of

18     litigation constitutes retaliation."). These actions are also immunized from

19     liability under the *Noerr-Pennington* doctrine.

20   • Sixth, Plaintiff's *Bivens* claim fails because a *Bivens* claim cannot be brought

21     against a private entity, even if the entity allegedly acted under the color of

22     federal law. *See Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002);

23     *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

24   • Seventh, Plaintiff's breach of contract claim fails because it is barred by the

25     four-year statute of limitations, and because Plaintiff fails to allege any breach.

26     *See* Cal. Civ. Proc. Code § 337(1). This claim is also barred by the litigation

27     privilege. *See, e.g., Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004)

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

TAB 6                                                                                    SER069

1  ("The [litigation] privilege has been broadly applied to demand letters and
2  other prelitigation communications by attorneys."); Cal. Civ. Code § 47(b).

3  • Eighth, Plaintiff's Intentional Infliction of Emotional Distress ("IIED") and
4  Negligent Infliction of Emotional Distress ("NIED") claims fail because they
5  are barred by the two-year statute of limitations, and because Plaintiff fails to
6  plead essential elements of each claim. *See* Cal. Civ. Proc § 335.1. Plaintiff's
7  IIED claim is also barred by the litigation privilege. *See, e.g., Blanchard.*, 123
8  Cal. App. 4th 903; Cal. Civ. Code § 47(b).

9  • Ninth, Plaintiff's claim for constructive fraud fails because it is barred by the
10  three-year statute of limitations, because Plaintiff fails to allege any fraud on
11  the part of Keck, and because it is not pleaded with particularity. Cal. Civ.
12  Proc. Code § 338(d).

13  • Finally, Plaintiff's declaratory judgment claim fails because there is no
14  genuine, ongoing dispute. *See Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036,
15  1064 (C.D. Cal. 2014).

16  This Motion is based on this Notice of Motion and Motion, the Memorandum of
17  Points and Authorities included herein, the accompanying Request for Judicial Notice,
18  any other matter of which judicial notice may be taken, the declaration of Katarzyna
19  Ryzewska, all further pleadings that will be filed by Defendant Keck herein, the paper
20  and records on file herein, and on such further evidence and argument as the Court may
21  permit or require at or prior to the time of the hearing on this Motion.

22  This Motion is made following the telephonic conference of counsel pursuant to
23  Local Rule 7-3, which took place on July 25, 2019.

24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

TAB 6                                                                        SER070

1

**RELIEF SOUGHT**

2

Keck seeks an order dismissing Plaintiff's claims with prejudice.

3

4

Dated:  August 2, 2019                    GIBSON, DUNN & CRUTCHER LLP

5

6

7

By:  _____*/s/ James P. Fogelman*_____

James P. Fogelman

8

Attorney for Defendant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

TAB 6                                                          SER071

Dr. Jeffrey Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DR. JEFFREY ISAACS | ) |
| Plaintiff, | ) Case 2:19-CV-02011-DSF-RAO |
| vs. | ) **PLAINTIFF'S NOTICE OF** |
| DARTMOUTH HITCHCOCK MEDICAL CENTER | ) **DISMISSAL WITHOUT** |
| GEISEL SCHOOL OF MEDICINE AT DARTMOUTH | ) **PREJUDICE** |
| USC KECK SCHOOL OF MEDICINE | ) |
| NH BOARD OF MEDICINE; | ) |
| | ) |
| and JOHN or JANE DOE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Isaacs v. Dartmouth, USC et al
Case No. 19-CV-02011-DSF

TAB 7                                                                 SER072

**NOTICE OF FILING SECOND AMENDED COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff hereby dismisses all claims, without prejudice. Plaintiff has retained counsel and is simultaneously filing the proposed SAC as a new complaint in this Court.

Given the unreasonable delays in filing critical, new information, Plaintiff must secure his rights , without undue delay, under California Anti-SLAPP and federal witness retaliation law. Given the motion practice currently underway, Plaintiff is simply not protected by a unreasonably delayed Motion for Leave to Amend, which should have been granted under "extraordinarily liberality."  Plaintiff is currently under threats by USC and Gibson Dunn where he cannot receive medical care in Los Angeles or conduct free commerce. Moreover, newly discovered critical "smoking gun" evidence is not being permitted to be considered in a pending MTD, in part because opposing counsel refused to grand a 7-3 Meet & Confer to strike the pending MTD.

Under applicable FRCP, the clerk is hereby requested to enter immediate dismissal of this action, without prejudice.

Respectfully submitted, this 12th day of September, 2019.

/s/ Jeffrey Isaacs

Dr Jeffrey Isaacs

3553 West Chester Pike Unit 177

Newtown Square, PA 19073

Plaintiff, *pro se*

Isaacs v. Dartmouth, USC et al
Case No. 19-CV-02011-DSF

TAB 7                                                                                                          SER073

1

2

3                        **CERTIFICATE OF SERVICE**

4

5          I, Dr. Jeffrey Isaacs, do declare as follows:

6

7     I certify that a copy of the foregoing **NOTICE OF DISMISSAL WITHOUT OPREJUDTCE** was
      delivered electronically to counsel for the Defendants with counsel, and emailed to those without
      known counsel.

8

9          Executed on this 12th day of September, 2019.

10

11

12

13                              _/s/ Dr Jeffrey Isaacs_

14                              Dr Jeffrey Isaacs

15                              Plaintiff, *pro se*

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DR. JEFFREY ISAACS,<br>        Plaintiff,<br><br>              v.<br><br>USC KECK SCHOOL OF<br>MEDICINE, et al.,<br>        Defendants. | CV 19-8000 DSF (RAOx)<br><br>Order DENYING Motion for<br>Preliminary Injunction (Dkt. No.<br>13) |

Plaintiff has moved for a preliminary injunction relating to the dissemination of various educational and licensing records.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted).

TAB 8                                                                                          SER075

Plaintiff has shown no likelihood of success on the merits. Aside from the problems of the statute of limitations and res judicata, he has simply not demonstrated any likelihood that he is correct on the merits of any of the claims in this case. Plaintiff's interpretation of the settlement agreements at issue appears to be erroneous, and there is no evidence that any party has violated either agreement as properly interpreted.

Plaintiff also cannot demonstrate irreparable harm that would be prevented by an injunction. The details of Plaintiff's educational and licensing history are a matter of public record at this point due to Plaintiff's repeated public litigation in various courts around the country. Anyone interested in this history can find it easily through Google and PACER.

Neither the balance of equities nor the public interest weighs in favor of Plaintiff either. The proposed injunction seeks to prohibit innocent third-parties from discovering information about Plaintiff that is undisputedly both true and relevant. In the absence of a strong showing of both success on the merits and irreparable harm, the Court declines to enter such an injunction.

The motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

Date:  November 6, 2019

Dale S. Fischer
United States District Judge

2

TAB 8                                                                                          SER076

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br>　　　Plaintiff,<br><br>　　　　　　v.<br><br>USC KECK SCHOOL OF<br>MEDICINE, et al.,<br>　　　Defendants. | CV 19-8000 DSF (RAOx)<br><br>Order DENYING Motion for<br>Reconsideration (Dkt. No. 73) |

　　　Plaintiff has filed a motion for reconsideration of the Court's
November 6 order denying Plaintiff's motion for a preliminary
injunction.  The Court finds the matter appropriate for decision without
further briefing or oral argument.  The hearing set for January 13,
2020 is removed from the Court's calendar.

　　　In the Central District of California, a motion for reconsideration
may be made only on grounds of:

> (a) a material difference in fact or law from that presented
> to the Court before such decision that in the exercise of
> reasonable diligence could not have been known to the
> party moving for reconsideration at the time of such
> decision, or (b) the emergence of new material facts or a
> change of law occurring after the time of such decision, or
> (c) a manifest showing of a failure to consider material facts
> presented to the Court before such decision.

L.R. 7-18.

TAB 9                                                                                      SER077

Plaintiff's motion for reconsideration fails to satisfy any of the criteria of Local Rule 7-18.  The Court considered the facts and arguments presented in the preliminary injunction motion and properly denied the motion.  There are also no grounds for a stay of proceedings because Plaintiff has virtually no chance of success on the merits of an appeal of the preliminary injunction order.  Plaintiff also has no potential for irreparable injury because even if he were somehow successful in his appeal, he would still be required to litigate the case.  The outcome of the appeal will not change the outcome of any pending or potential motions or change the course of discovery.

The motion is DENIED.

IT IS SO ORDERED.


Date: December 17, 2019

Dale S. Fischer
United States District Judge

TAB 9                                                                                    SER078

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DR. JEFFREY ISAACS,<br>Plaintiff,<br><br>v.<br><br>DARTMOUTH HITCHCOCK<br>MEDICAL CENTER, et al.,<br>Defendants. | CV 19-8000 DSF (RAOx)<br><br>Order GRANTING Motions to<br>Dismiss (Dkt. Nos. 29, 45, 58, 61,<br>72); Order GRANTING Special<br>Motions to Strike (Dkt. Nos. 64,<br>67) |

Plaintiff Jeffrey Isaacs has brought this suit challenging numerous actions by various Defendants relating to the aftermath of Plaintiff's tenure at the University of Southern California's (USC) Keck School of Medicine and Plaintiff's subsequent termination from a residency program at Dartmouth Hitchcock Medical Center.  All Defendants have filed motions to dismiss and Defendants USC Keck School of Medicine and Gibson, Dunn & Crutcher LLP have filed special motions to strike under California Code of Civil Procedure § 425.16.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

### A.    Claims Against the Dartmouth Entities

Plaintiff does not oppose dismissal of Dartmouth Hitchcock Medical Center and Geisel School of Medicine at Dartmouth.

### B.    Claims Against the University of Southern California

The claims against USC based on any acts prior to 2008 are barred by a combination of waiver and res judicata.  Plaintiff filed a lawsuit against USC in 2006.  Plaintiff and USC entered into two settlement

TAB 10                                                                                          SER079

agreements resolving that case.  As relevant here, in those agreements Plaintiff waived all claims against USC predating the settlements. Plaintiff then tried to avoid the settlements, but their validity was finally adjudicated against Plaintiff in 2008.  Therefore, Plaintiff cannot challenge the enforceability of the settlements because of res judicata and his claims against USC for acts prior to 2008 are barred by the waivers within those settlement agreements.

Some claims include alleged disclosures by USC in violation of various agreements between the parties.  These alleged disclosures are alleged to have led to Plaintiff's dismissal from his residency program at Dartmouth.  However, they are alleged to have occurred in 2012, well outside any relevant statute of limitations period.[1]  Even if Plaintiff did not have any reason to learn of the breach until June 2015 (when he admits knowing of it), all relevant limitations periods would have run prior to the filing of this suit in September 2019.  Any acts that form the basis of the RICO claim that are not barred by the settlement agreements are also barred by the statute of limitations.  A RICO claim must be brought within four years of when the plaintiff knew, or should have known, of his injuries.  <u>Living Designs, Inc. v. E.I. Dupont de Nemours & Co.</u>, 431 F.3d 353, 365 (9th Cir. 2005).  The very last possible harm suffered by Plaintiff occurred in March 2014 when the New Hampshire Board of Medicine posted its revocation order revoking Plaintiff's right to practice medicine.

**C.    Claims Against the New Hampshire Board of Medicine**

The New Hampshire Board of Medicine's status as a state agency ultimately bars all of Plaintiff's claims against it.[2]

---

[1] The relevant limitation periods are four years for breach of contract and rescission, Cal. Code Civ. Proc. § 337(a), (c), three years for the fraud claims, Cal. Code Civ. Proc. § 338(d), and two years for the emotional distress claims, Cal. Code Civ. Proc. § 335.1.

[2] Plaintiff asserts that certain individuals are also defendants in this case. However, none of those individuals are named in the complaint.

TAB 10                                                                                    SER080

The state law claims and any federal claims for retrospective relief are barred by the Eleventh Amendment.  The Ninth Circuit considers five factors to determine if a governmental entity is an "arm of the state":

> (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity.

Ray v. Cty. of Los Angeles, 935 F.3d 703, 709 (9th Cir. 2019) (internal quotation marks omitted).  The first factor – the source of any money judgment – is the most important.  Id. at 709-10.

By statute, New Hampshire provides sovereign immunity to the Board.  N.H. Rev. Stat. § 329:17, IX.  New Hampshire waives this immunity only for a limited class of claims not relevant here and provides that damages for any successful action will be paid from the state treasury.  See N.H. Rev. Stat. §§ 541-B:1, I, II-a; 541-B:13.  So, to the degree the Board can be sued at all, payment would be made from state funds.

The Board regulates the practice of medicine in New Hampshire.  The New Hampshire legislature has explicitly determined this to be a public function for the purposes of protecting the public.  N.H. Rev. Stat. § 329:1-aa ("The primary responsibility and obligation of the board of medicine is to protect the public.").  The Court finds this regulatory function to be a "central government function."

As stated earlier, the Board generally cannot be sued.  It also appears to have a limited ability to sue on its own behalf.  The only mention of suit in its enabling statues is a right to sue for injunctive relief against unauthorized practice of medicine. See N.H. Rev. Stat. § 329:17-b.  In such a suit, the Board is represented by the New Hampshire Attorney General.  Id.

TAB 10                                                                                    SER081

The Board's enabling statute does not appear to authorize it to take property in its own name.  The Board also does not have independent corporate status.  It is designated as an "administratively attached agency" within the New Hampshire Department of Health and Human Services.  N.H. Rev. Stat. § 329:2.  Such an agency is independent in substantive function, but not in administration.  See N.H. Rev. Stat. § 21-G:10.

All of the Eleventh Amendment factors favor a finding that the Board is an arm of the state.  Therefore, it is immune from suit under the Eleventh Amendment.

Plaintiff's federal claims for prospective relief could potentially survive under Ex parte Young, 209 U.S. 123 (1908), but those claims fail independent of the Eleventh Amendment bar.  Under Ninth Circuit law, state agencies are not capable of forming the specific malicious intent required by RICO and, therefore, cannot be liable under that statute.  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991).   Further, Plaintiff has not plausibly alleged any racketeering acts committed by the Board or the Board's involvement in any enterprise.  Plaintiff fails to allege any association between the Board and the other Defendants other than that the Board received information from them in accordance with its statutory duties, and Plaintiff's claims of obstruction of justice, retaliation, and fraud are not supported by any allegations that satisfy any of those statutes.  Finally, "[s]tate agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute."  Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)).[3]

---

[3] The Court notes that, while not raised by the Board, all claims against the Board would presumably be barred by the relevant statutes of limitations.  All challenged actions by the Board took place in 2013 and 2014.  See Compl. ¶¶ 150-51; 167-70.

4

TAB 10                                                                 SER082

### D.     Anti-SLAPP Motion by USC and Gibson, Dunn & Crutcher

The only other claims in this case are those against USC and its counsel, Gibson, Dunn & Crutcher LLP, that concern statements by Gibson Dunn on behalf of USC.  Plaintiff alleges that these statements amount to a "lifetime ban" on Plaintiff from entering the USC campus. The Court finds that the statements by Gibson Dunn were protected activity subject to the California anti-SLAPP statute and that they should be stricken.

Anti–SLAPP motions are subject to a two-step analysis with shifting burdens.  First, USC and Gibson Dunn must make a prima facie showing that Plaintiff's claims "arise[] from an act in furtherance" of their rights of petition or free speech.  <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 595 (9th Cir. 2010) (citations omitted).  They can meet their burden by demonstrating that the act underlying the challenged claim fits into one of the four categories of section 425.16, subdivision (e).  If USC and Gibson Dunn make this prima facie showing, the burden shifts to Plaintiff to demonstrate "a probability of prevailing on the challenged claims." <u>Mindys Cosmetics</u>, 611 F.3d at 595.  "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'"  <u>City of Cotati v. Cashman</u>, 29 Cal. 4th 69, 79 (2002) (quoting Cal. Civ. Code § 425.16(b)).

An "act in furtherance of a person's right of petition or free speech" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in

TAB 10                                                                                                          SER083

> furtherance of the exercise of the constitutional right of
> petition or the constitutional right of free speech in
> connection with a public issue or an issue of public interest.

Cal. Civ. Proc. § 425.16(e).  "The California Court of Appeal has
interpreted the anti-SLAPP statute's 'arising from' language to mean
that a claim is based on whatever conduct constitutes the 'specific act[ ]
of wrongdoing' that gives rise to the claim."  Jordan-Benel v. Universal
City Studios, Inc., 859 F.3d 1184, 1190 (9th Cir. 2017) (quoting
Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,
133 Cal. App. 4th 658, 671 (2005)).  "Put another way, a court focuses
its anti-SLAPP analysis on the specific conduct that the claim is
challenging."  Id. (citing Wang v. Wal-Mart Real Estate Bus. Trust, 153
Cal. App. 4th 790, 808 (2007)).

    The statements by the Gibson Dunn lawyer were in response to e-
mails from Plaintiff about Plaintiff's right to enter USC's campus and
to contact "USC Police."  At least one e-mail threatened "action against
[Gibson Dunn]" and another noted that Plaintiff "expects a concrete
answer or this will go straight to the judge."  The statements that have
been interpreted as a threat of a lifetime ban expressed USC's legal
position that Plaintiff had no right and no reason to be present on USC
property.

    The statements by the Gibson Dunn lawyer that are at issue were
statements of the legal position of USC in a long running legal dispute.
They were made in direct response to threats by Plaintiff to seek legal
relief against USC and Gibson Dunn itself.  This qualifies the
statements as acts in furtherance of USC and Gibson Dunn's right of
petition or free speech.

    Given that USC and Gibson Dunn satisfy the first prong of the anti-
SLAPP analysis, Plaintiff now must show some likelihood of success on
the merits.  To meet this requirement, "the plaintiff must demonstrate
that the complaint is both legally sufficient and supported by a
sufficient prima facie showing of facts to sustain a favorable judgment
if the evidence submitted by the plaintiff is credited."  Oasis W. Realty,

TAB 10                                                                              SER084

LLC v. Goldman, 51 Cal. 4th 811, 820 (2011) (internal quotation marks omitted).  Courts consider the pleadings and supporting and opposing affidavits, but do not make credibility determinations or compare the weight of the evidence.  Id.  Instead, courts "accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."  Id. (internal quotation marks and brackets omitted).  The anti-SLAPP motion must be granted "if the plaintiff fails to produce evidence to substantiate his claim or if the defendant has shown that the plaintiff cannot prevail as a matter of law."  Siam v. Kizilbash, 130 Cal. App. 4th 1563, 1570 (2005); see also Oasis W. Realty, 51 Cal. 4th at 820.

In denying Plaintiff's motion for a preliminary injunction, the Court found that Plaintiff has virtually no chance of success on the merits of this case.  As for the particular "lifetime ban" related claims, Plaintiff especially has no chance of success.  The statements are protected by the California litigation privilege as they were made during litigation between the parties in direct response to threatened legal action by Plaintiff.  Plaintiff has also not alleged or otherwise given any reason why USC is not within its rights to exclude him from the USC campus.  USC is a private school, and Plaintiff has not articulated any right to be there if USC does not want him there.

**E.    Conclusion**

The motions to dismiss and the motions to strike are GRANTED.  The Court finds that there is no reason to grant leave to amend.  Plaintiff has brought numerous lawsuits based on the same essential dispute in courts all around the country over a period of more than ten years.  He recently filed another case in this Court that he dismissed in the face of motions to dismiss.  Nothing Plaintiff could allege could avoid the settlement waiver, res judicata, statute of limitations, and Eleventh Amendment bars to his claims.  Any further pleadings would only be a futile waste of time and resources for all concerned.  The Court will enter judgment in favor of Defendants without further delay.  USC and Gibson Dunn may file a motion for a determination of

TAB 10                                                                                                  SER085

reasonable attorney's fees under § 425.16 no later than February 24, 2020.

   IT IS SO ORDERED.


   Date: 2-3-2020                          _____
                                           Dale S. Fischer
                                           United States District Judge

TAB 10                                                          SER086

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DR. JEFFREY ISAACS,<br>Plaintiff, | CV 19-8000 DSF (RAOx) |
| v. | JUDGMENT |
| DARTMOUTH HITCHCOCK<br>MEDICAL CENTER, et al.,<br>Defendants. |  |

The Court having dismissed all Defendants,

IT IS ORDERED AND ADJUDGED that Plaintiff take nothing, that the action be dismissed with prejudice, and that Defendants recover costs of suit pursuant to a bill of costs filed in accordance with 28 U.S.C. § 1920.

Date:  2-3-2020

_____
Dale S. Fischer
United States District Judge

TAB 11                                                                    SER087

James P. Fogelman, SBN 161584
Shannon E. Mader, SBN 235271
Katarzyna Ryzewska, SBN 300386
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
  Los Angeles, California 90071-3197
Telephone: (213) 229-7000
  Facsimile: (213) 229-7520
JFogelman@gibsondunn.com
SMader@gibsondunn.com
KRyzewska@gibsondunn.com

Attorneys for Defendant
USC Keck School of Medicine

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS, | CASE NO. 2:19-CV-08000-DSF-RAO |
| Plaintiff, | **DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| USC KECK SCHOOL OF MEDICINE, GIESEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER LLP and JOHN or JANE DOE, | |
| Defendants. | |

1

**TABLE OF CONTENTS**

2                                                                                          Page

3   I.     INTRODUCTION ................................................................................ 1

4   II.    ARGUMENT ....................................................................................... 2

5          A.     The Court's Order Did Not Limit Recovery to Fees Incurred in
                  Connection with the Anti-SLAPP Motion ............................... 2
6
           B.     USC Is the Prevailing Party ..................................................... 2
7
           C.     USC Is Entitled to Recover the Fees It Incurred in Defending
8                 against All of Plaintiff's Frivolous Claims ............................... 4

9          D.     USC Is Entitled to Recover the Fees It Incurred in Defending
                  against Plaintiff's Frivolous Claims in the Prior Action ........... 6
10
           E.     Plaintiff's "Unclean Hands" Argument Also Fails ................... 7
11
           F.     There Is Nothing "Unfair" about Awarding Fees Pursuant to a
12                Contract .................................................................................... 8

13         G.     USC's Fees Were Reasonable and Are Amply Documented ...... 11

14  III.   CONCLUSION .................................................................................. 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                          SER089

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Abdallah v. United Sav. Bank*,

5

43 Cal. App. 4th 1101 (1996), *as modified on denial of reh'g*

6

(Mar. 22, 1996) .................................................................................................. 6

7

*Akins v. Enterprise Rent–A–Car Co.*,

8

79 Cal. App. 4th 1127 (2000) .......................................................................... 5

9

*Amtower v. Photon Dynamics, Inc.*,

10

158 Cal. App. 4th 1582 (2008) ........................................................................ 5

11

*Arrow Elecs., Inc. v. E.ON AG*,

12

No. CV 05-2388 SVW (SSX), 2008 WL 11342597

13

(C.D. Cal. Nov. 12, 2008)................................................................................ 11

14

*Barrientos v. 1801-1825 Morton LLC*,

15

583 F.3d 1197 (9th Cir. 2009) .......................................................................... 5

16

*Behm v. Fireside Thrift Co.*,

17

272 Cal. App. 2d 15 (1969) .............................................................................. 8

18

*Billon, Inc. v. Slatin*,

19

No. SACV1600788CJCJPRX, 2018 WL 1409746

20

(C.D. Cal. Jan. 3, 2018) .................................................................................... 2

21

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,

22

162 Cal. App. 4th 858 (2008) .......................................................................... 5

23

*Bockman v. Lucky Stores, Inc.*,

24

No. CIV S 83-039 RAR, 1986 WL 425 (E.D. Cal. Nov. 20, 1986)........................ 11

25

*Cummins v. Shupps*,

26

No. CV1108081BROMANX, 2013 WL 12124099

27

(C.D. Cal. Aug. 9, 2013)................................................................................... 9

28

*Crossroads Partners v. Utah Crossing, Ltd.*,

191 F.3d 459 (9th Cir. 1999) ............................................................................ 6

ii

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                              SER090

*David S. Karton, A Law Corp. v. Dougherty*,
   231 Cal. App. 4th 600 (2014), *as modified on denial of reh'g*
   (Dec. 12, 2014) ...................................................................................... 2, 3

*Dell Merk, Inc. v. Franzia*,
   132 Cal. App. 4th 443 (2005) ....................................................................... 5

*Esquivel v. Arau*,
   913 F. Supp. 1382 (C.D. Cal. 1996) ............................................................ 6, 7

*Garza v. City of Los Angeles*,
   No. 216CV03579SVWAFM, 2018 WL 5859549
   (C.D. Cal. June 25, 2018) ............................................................................ 11

*Greenflight Venture Corp., et al. v. True Software Scandinavia A.B.*,
   2016 WL 3901170 (N.D. Cal May 13, 2016) ................................................ 9

*Grolsche Bierbrouwerij Nederland, B.V. v. Dovebid, Inc.*,
   2011 WL 5080175 (N.D. Cal. 2011) ............................................................. 3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................... 11, 12

*Hsu v. Abbara*,
   9 Cal. 4th 863 (1995) ............................................................................... 3, 8

*Isaacs v. Dartmouth-Hitchcock Med. Ctr.*,
   No. 12-CV-040-LM, 2014 WL 1572559 (D.N.H. Apr. 18, 2014) .......................... 10

*Isaacs v. DHMC et al.*,
   No. 2:19-CV-02011-DSF-RAO (C.D. Cal. 2019) ......................................... 1

*Isaacs v. Trustees of Dartmouth Coll.*,
   No. 17-CV-040-LM, 2018 WL 734182 (D.N.H. Feb. 5, 2018),
   No. 17-CV-040-LM, 2018 WL 2225097 (D.N.H. May 15, 2018),
   No. 18-1560, 2018 WL 6042640 (1st Cir. 2019), *cert. denied*,
   589 U.S. 15 (2019) ..................................................................................... 10

*Isaacs v. U.S. Dept. of Justice*,
   No. 1:18-CV-10886 (D. Mass. Apr. 9, 2019) ............................................... 10

*Isaacs v. United States Dep't of Educ.*,
   No. CV 17-11221-FDS, 2018 WL 1257760 (D. Mass. Mar. 12, 2018) ................ 10

iii

Gibson, Dunn & Crutcher LLP

TAB 12                                                                    SER091

*Kendall-Jackson Winery, Ltd. v. Superior Court,*
    76 Cal. App. 4th 970 (1999) ....................................................................... 8

*Kulas v. Arizona,*
    156 F. App'x 29 (9th Cir. 2005) ................................................................ 9

*LegalForce, Inc. v. LegalZoom.com, Inc.,*
    No. 18-CV-07274-MMC, 2019 WL 1170777
    (N.D. Cal. Mar. 13, 2019) ........................................................................ 6

*Marshall v. Marshall,*
    232 Cal. App. 2d 232 (1965) ................................................................... 8

*McGrath v. County of Nevada,*
    67 F.3d 248 (9th Cir. 1995) ................................................................... 11

*Miller v. Dugan,*
    764 F.3d 826 (8th Cir. 2014) ................................................................. 12

*Nielson v. Union Bank of California, N.A.,*
    No. CV0206942MMMCWX, 2003 WL 27374136
    (C.D. Cal. Mar. 31, 2003) ........................................................................ 7

*Pollard v. FCA US LLC,*
    No. 817CV00591JLSJCG, 2020 WL 57270 (C.D. Cal. Jan. 3, 2020) ...................... 3

*Reudy v. Clear Channel Outdoors, Inc.,*
    693 F. Supp. 2d 1091 (N.D. Cal. 2010), *aff'd sub nom.*
    *Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011) ............................... 6

*In re Rossco Holdings, Inc.,*
    No. CV 14-917-JFW, 2014 WL 2611385 (C.D. Cal. May 30, 2014) ................. 11

*Salas v. Sierra Chem. Go.,*
    59 Cal. 4th 407 (2014) ............................................................................. 8

*Scott Co. of California v. Blount, Inc.,*
    20 Cal. 4th 1103 (1999) .......................................................................... 3

*Sepehry-Fard v. Countrywide Home Loans. Inc.,*
    No. 13-CV-05769-BLF, 2014 WL 2707738 (N.D. Cal. June 13, 2014) ............. 9

*St. Julien v. Bank of Am.,*
    No. CV142410FMOMRWX, 2016 WL 9211677
    (C.D. Cal. Aug. 31, 2016) ........................................................................ 3

iv

*Whitepages, Inc. v. Isaacs*,
    196 F. Supp. 3d 1128 (N.D. Cal. 2016), *aff'd*,
    698 F. App'x 613 (Fed. Cir. 2017) ............................................................. 9

*Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*,
    2012 WL 538263 (E.D. Cal. 2012), *aff'd*,
    562 F. App'x. 560 (9th Cir. 2014) .............................................................. 3

**Statutes**

Cal. Civ. Code § 1717(b)(1) ........................................................................ 2

**Rules**

C.D. Cal. Local Rule 54-1 ........................................................................... 2

Fed. R. Civ. P. 41(d) ......................................................................... 1, 2, 6, 7

Fed. R. Civ. P. 43(c) ................................................................................. 12

Fed. R. Civ. P. 54 ...................................................................... 1, 2, 3, 7, 12

Fed. R. Civ. P. 78(b) ................................................................................ 12

Gibson, Dunn &
Crutcher LLP

TAB 12                                                                    SER093

## I.   INTRODUCTION

Plaintiff's Opposition is long on offensive rhetoric but short on substance; the Opposition fails to articulate **any** substantive basis to deny USC's Motion for Attorneys' Fees and Costs (the "Motion"). USC, as the prevailing party, is unquestionably entitled to recover its reasonable attorneys' fees and costs on a host of grounds: Federal Rules of Civil Procedure 41(d) and 54(d)(2); Central District of California Local Rules 54-2 and 54-7; California Civil Code § 1717 ("Section 1717"); and the April 4, 2008 settlement agreement between USC and Plaintiff (the "Agreement"). And USC's request to recover $182,925.97 in attorneys' fees and $1,009.32 in costs is more than reasonable, and does not even cover all of the fees and expenses it has incurred defending against Plaintiff's frivolous claims, let alone cover any of the fees incurred by its counsel of record, who were also wrongly sued by Plaintiff simply for defending USC in this Action and in the identical Prior Action Plaintiff filed. *See Isaacs v. DHMC et al.*, No. 2:19-CV-02011-DSF-RAO (C.D. Cal. 2019) (the "Prior Action"). Plaintiff has made no showing that either the hours billed or the rates charged are unreasonable or that any other valid basis exists to deny recovery by USC.

Plaintiff is a vexatious litigant who has been filing frivolous lawsuits for nearly a decade, seeking to blame others for his failed medical career. No one forced Plaintiff to file this Action or forced Plaintiff to dismiss the Prior Action in an attempt to forum shop, or forced Plaintiff to file numerous frivolous motions, and multiple complaints against multiple innocent parties. Plaintiff and his counsel have nobody to blame but themselves, though blame is irrelevant in any event: USC is entitled to recover its attorneys' fees and costs as a matter of law.

USC entered into the Agreement in 2008 for the very purpose of protecting itself against further litigation by Plaintiff. Plaintiff filed this Action and the Prior Action knowing that doing so was a clear breach of the Agreement and knowing that USC would be entitled to recover its fees and costs as a result. The Motion should be granted.

Gibson, Dunn &
Crutcher LLP

1

## II.   ARGUMENT

**A.   The Court's Order Did Not Limit Recovery to Fees Incurred in Connection with the Anti-SLAPP Motion**

Plaintiff argues that the Court's Order limited USC's recovery to fees incurred in connection with USC's Motion to Strike Plaintiff's Complaint ("Anti-SLAPP Motion"). ECF 110 at 6, 8, 12-14. Not so. The Court's Order simply stated that "USC and Gibson Dunn may file a motion for a determination of reasonable attorney's fees under § 425.16 no later than February 24, 2020." ECF 93 at 7-8. Nothing in the Order precludes USC from seeking to recover its fees and costs pursuant to Federal Rules of Civil Procedure 41(d) and 54(d)(2), Central District of California Local Rules 54-2 and 54-7, or California Civil Code § 1717 ("Section 1717"). Plaintiff's bizarre suggestion that the Court effectively already denied USC's Motion, even before it had been filed, defies common sense.

**B.   USC Is the Prevailing Party**

Plaintiff cannot genuinely deny that USC is "the party in whose favor judgment [was] entered." C.D. Cal. Local Rule 54-1 ("The 'prevailing party' entitled to costs under F.R.Civ.P. 54(d) is the party in whose favor judgment is entered, unless otherwise determined by the Court."). Nor can Plaintiff deny that he "recovered no 'relief in the action on the contract.'" *David S. Karton, A Law Corp. v. Dougherty*, 231 Cal. App. 4th 600, 608 (2014), *as modified on denial of reh'g* (Dec. 12, 2014) (quoting Cal. Civ. Code § 1717(b)(1)). The Court's Order expressly states: "The motions to dismiss and the motions to strike are **_GRANTED_**. . . . The Court will enter judgment **_in favor of Defendants_** without further delay." ECF 93 at 7 (emphasis added). And the Judgment expressly provides: "IT IS ORDERED AND ADJUDGED that **_Plaintiff take nothing_**, that the action be **_dismissed with prejudice_**, and that Defendants recover costs of suit pursuant to a bill of costs filed in accordance with 28 U.S.C. § 1920." ECF 94 (emphases added). Accordingly, because USC obtained an unqualified victory on Plaintiff's claims, it is the prevailing party under both federal and state law. *See, e.g.*, *Billon, Inc. v. Slatin*, No. SACV1600788CJCJPRX, 2018 WL 1409746, at *2 (C.D. Cal. Jan. 3, 2018)

2

1    (holding that defendants were entitled to recover attorney's fees pursuant to Section

2    1717 because they "obtained an unqualified victory on all three of Billon's claims");

3    *Scott Co. of California v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999) ("When a party

4    obtains a simple, unqualified victory by completely prevailing on or defeating all

5    contract claims in the action and the contract contains a provision for attorney fees,

6    section 1717 entitles the successful party to recover reasonable attorney fees incurred in

7    prosecution or defense of those claims."); *Pollard v. FCA US LLC*, No.

8    817CV00591JLSJCG, 2020 WL 57270, at *2 (C.D. Cal. Jan. 3, 2020) (holding that a

9    party is a prevailing party under Rule 54 if the court decides that the party has achieved

10   its main litigation objective) (citation omitted).[1]

11       Plaintiff's argument that USC did not "really" prevail because Plaintiff's claims

12   were dismissed on statute of limitations grounds, among many other grounds, is entirely

13   without merit. ECF 110 at 9. Indeed, even if Plaintiff's claims had only been dismissed

14   on statute of limitations grounds, USC would be entitled to recover its fees and costs.

15   The law provides that "[d]ismissals based on the expiration of the statute of limitations

16   are treated as dismissal on the merits for the purpose of awarding attorneys' fees."

17   *Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, 2012 WL 538263, *2 (E.D. Cal. 2012),

18   *aff'd*, 562 F. App'x. 560 (9th Cir. 2014). *See also St. Julien v. Bank of Am.*, No.

19   CV142410FMOMRWX, 2016 WL 9211677, at *2 (C.D. Cal. Aug. 31, 2016) (same);

20   *see also Grolsche Bierbrouwerij Nederland, B.V. v. Dovebid, Inc.*, 2011 WL 5080175,

21   *1 & *3 (N.D. Cal. 2011) (defendants were prevailing party under Section 1717 on the

22   grounds that plaintiff's claim was time-barred). Here, of course, the Court also dismissed

23

24

25   _____

26   [1]  *See also Hsu v. Abbara*, 9 Cal. 4th 863, 865–66 (1995) (holding that when the trial
     court "renders a simple, unqualified decision in favor of the defendant on the only

27   contract claim in the action[,] . . . the defendant, who is unquestionably the sole
     victor, is the party prevailing on the contract as a matter of law and therefore entitled

28   to reasonable attorney fees under section 1717"); *Karton*, 231 Cal. App. 4th at 609
     ("The trial court awarded Karton no relief on its contract claim, so it cannot be the
     prevailing party on the contract.").

Gibson, Dunn &
Crutcher LLP

3

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                    SER096

Plaintiff's claims on multiple additional grounds, including the grounds of res judicata and waiver/release. ECF 93 at 1-2.

## C. USC Is Entitled to Recover the Fees It Incurred in Defending against All of Plaintiff's Frivolous Claims

The Agreement authorizes an award of attorney's fees. Section 6 expressly provides that "[Plaintiff] agrees that *__he will not file any lawsuits__ . . . __incorporating any events, acts or omissions through and including the date hereof__*," and that "*__if [Plaintiff]__* violates the promises made in this paragraph and *__files a lawsuit . . . of any kind with any court . . . against USC . . . __based on any events, acts or omissions through and including the date hereof__, [Plaintiff] will pay* for *__all costs and losses, including actual attorneys' fees, incurred by USC in connection with said lawsuit__*." ECF 1-2, at 6 (emphases added). USC is entitled to recover the fees it incurred in defending against all of Plaintiff's meritless claims in both Actions.

Plaintiff's self-serving suggestion that Section 6 should not apply because his claims "can be traced to post contract behavior," and because he referred to alleged "events, acts or omissions" predating the Agreement only "for background," is disingenuous, to say the least, and legally irrelevant in any event. ECF 110, at 8, 10. Plaintiff's pleadings and motions include literally dozens of references to alleged "events, acts or omissions" predating the Agreement. ECF 110, at 8, 10; Prior Action, ECF 1, at 2-3, 5-9, 31-32; Prior Action, ECF 33, at 1, 6-12, 30, 41-42, 53, 56; Prior Action, ECF 36, at 3-4; ECF 1, at 2, 4, 5, 14-17, 25, 32, 33, 37, 44, 47, 54, 57, 62-64; ECF 1-1 at 1, 4, 13-43; ECF 1-2 at 27.

Far from being mere "background," these allegations were central to Plaintiff's claims. For instance, Plaintiff alleged that USC "illegally withheld the AAMC profile from a *__2008__* federal discovery production" and that this somehow caused USC to be in "breach of the settlements *__from the time they were formed__*." ECF 1 at 15, 37, 54 (emphases added). Plaintiff also alleged, as the basis for his purported RICO claim, that USC engaged in "multiple predicate acts, *__which were the subject of a federal lawsuit__*

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

TAB 12

SER097

1  *in 2007*." ECF 1 at 54 (emphasis added). And as part of his fraud claim, Plaintiff sought

2  the "***re-opening of the claims and facts, pre-2008, that had been subject to settlement***."

3  *Id.* at 67 (emphasis added). In addition, Plaintiff littered his pleadings and motions with

4  false and malicious allegations against USC. *See, e.g.*, *id.* at 9 (accusing USC's deans of

5  "abuse of office, corruption, and bribery"). Plaintiff included such scurrilous allegations

6  solely to smear USC and impugn its leadership. Having repeatedly and intentionally

7  included references to alleged pre-2008 "events, acts or omissions" in every pleading

8  and brief, Plaintiff cannot now claim these allegations were merely "for background."

9  Nor can Plaintiff legitimately demand that USC's fees be reduced because he

10 brought other claims. "California courts liberally construe the term 'on a contract' as

11 used within section 1717.  As long as the action 'involve[s]' a contract it is 'on [the]

12 contract' within the meaning of [s]ection 1717." *Blickman Turkus, LP v. MF Downtown*

13 *Sunnyvale, LLC*, 162 Cal. App. 4th 858, 894 (2008) (quoting *Dell Merk, Inc. v. Franzia*

14 (2005) 132 Cal. App. 4th 443, 455); *see also Barrientos v. 1801-1825 Morton LLC*, 583

15 F.3d 1197, 1216 (9th Cir. 2009) (holding that an action is "on a contract" whenever "the

16 underlying contract between the parties is not collateral to the proceedings but plays an

17 integral part in defining the rights of the parties"). Here, the action "involved" a contract.

18 Plaintiff asserted broad claims for breach of contract, declaratory relief, and rescission

19 based on the settlement agreements. ECF 1, at 33-38, 64; ECF 1-1, at 1-5. These claims

20 were integral, not collateral, to Plaintiff's complaints. Therefore, Plaintiff's Action and

21 Prior Action were based "on a contract." Moreover, "[a]llocation is not required when

22 the issues are 'so interrelated that it would have been impossible to separate them into

23 claims for which attorney fees are properly awarded and claims for which they are not.'"

24 *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1604 (2008), as modified

25 (Feb. 15, 2008) (quoting *Akins v. Enterprise Rent–A–Car Co.*, 79 Cal. App. 4th 1127,

26 1133 (2000)). Here, all of Plaintiff's claims turned on the settlement agreements, USC's

27 alleged breach of the settlement agreements, and the alleged "events, acts or omissions"

28 that gave rise to the settlement agreements. ECF 1, at 2, 3, 5, 10-16, 20, 26, 29, 30-41,

5

TAB 12

43-44, 47, 53-55, 58-64; ECF 1-1, at 1-5. It would have been impossible to separate out USC's fees by claim. *See, e.g.*, *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1111 (1996), *as modified on denial of reh'g* (Mar. 22, 1996) (holding that an allocation was not required where the claims "were inextricably intertwined, making it impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units") (internal quotations and citations omitted). Indeed, USC's entire defense of the Action and identical Prior Action, and every claim asserted therein, was necessary to protect its rights under the Agreement, the very purpose of which was to prevent Plaintiff from filing *any* future lawsuit based on alleged pre-Agreement conduct. *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1097 (N.D. Cal. 2010), *aff'd sub nom. Reudy v. CBS Corp.*, 430 F. App'x 568 (9th Cir. 2011) (using ordinary rules of contract interpretation to interpret attorneys' fees provision, and noting that by suing on released claims, even for non-contract claims, the Court found that defendant was entitled to attorneys' fees in defending all claims). C.f. *Crossroads Partners v. Utah Crossing*, Ltd., 191 F.3d 459 (9th Cir. 1999) (holding that, had the settlement and release contained a provision permitting the recovery of attorneys' fees, the non-breaching party who successfully defended an action brought in violation of the release would have been entitled to such fees).

**D.     USC Is Entitled to Recover the Fees It Incurred in Defending against Plaintiff's Frivolous Claims in the Prior Action**

USC is also entitled to recover the fees it incurred in defending the Prior Action. Plaintiff's arguments regarding Rule 41(d) are irrelevant and wrong.

Plaintiff's reliance on *LegalForce, Inc. v. LegalZoom.com, Inc.*, No. 18-CV-07274-MMC, 2019 WL 1170777 (N.D. Cal. Mar. 13, 2019) is unavailing. The court there recognized that "the issue of whether a court may award fees under Rule 41(d)(1) has not been addressed by the Ninth Circuit." *Id.* at *2. However, courts in this District consistently have held that attorneys' fees are recoverable under Rule 41(d). *See, e.g.*, *Esquivel v. Arau*, 913 F. Supp. 1382, 1392 (C.D. Cal. 1996) (holding that attorneys' fees

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

TAB 12                                                                 SER099

1  are recoverable under rule 41(d)); *Nielson v. Union Bank of California, N.A.*, No.

2  CV0206942MMMCWX, 2003 WL 27374136, at *6 (C.D. Cal. Mar. 31, 2003) (same).

3       Plaintiff is attempting to turn Rule 41(d) on its head. Under his interpretation, a

4  plaintiff facing dismissal could circumvent Rule 41(d) simply by dismissing his or her

5  complaint and re-filing the same complaint as a new action. In effect, Plaintiff is asking

6  the Court to "create a gaping loophole to Rule 41(d) that would effectively vitiate its

7  impact in these circumstances." *Nielson*, 2003 WL 27374136, at *3 (internal quotation

8  marks omitted) (holding that defendants were entitled to recover their attorney's fees

9  where the plaintiff voluntarily dismissed the first action after commencing the second

10  action). *See also* ECF 99, at 19.

11       It is irrelevant that Plaintiff claims he dismissed the Prior Action based on the

12  advice of counsel. Plaintiff admits the dismissal was not a mistake, but was done because

13  he allegedly "discovered new evidence." ECF 110, at 11. Plaintiff, however, filed a

14  motion to amend in the Prior Action that included the same alleged "new evidence"

15  included in this Action. Prior Action, ECF 52, at 3. Yet, instead of waiting for the Court

16  to rule on the parties' pending motions, Plaintiff elected to dismiss the Prior Action and

17  file a new action to avoid an unfavorable ruling by the Court and to forum shop.

18  Plaintiff's gamesmanship should not be rewarded.

19       USC is also seeking fees pursuant to Rule 41(d) and 54(d)(2) of the Federal Rules

20  of Civil Procedure, Central District of California Local Rules 54-2 and 54-7, *and* Section

21  1717. Thus, while Rule 41(d) authorizes fees for the Prior Action, the issue is ultimately

22  academic because the Agreement provides for the recovery of fees even where Plaintiff

23  voluntarily dismisses the case. ECF 99, at 17-18.

24  **E.    Plaintiff's "Unclean Hands" Argument Also Fails**

25       Plaintiff's attempt to argue that USC's fee request is barred by the doctrine of

26  unclean hands also fails. ECF 99 at 5, 9, 14. "[W]hen one party obtains a 'simple,

27  unqualified win' on the single contract claim presented by the action, the trial court may

28  not invoke equitable considerations unrelated to litigation success. . . . To admit such

1    factors into the 'prevailing party' equation would convert the attorney fees motion from

2    a relatively uncomplicated evaluation of the parties' comparative litigation success into

3    a formless, limitless attack on the ethics and character of every party who seeks attorney

4    fees under section 1717." *Hsu*, 9 Cal. 4th at 877 (internal citations omitted).[2]

5    Accordingly, because USC obtained a "simple, unqualified win" on Plaintiff's breach of

6    contract claim, Plaintiff's "unclean hands" argument fails as a matter of law.

7        Plaintiff is attempting to re-litigate his failed breach of contract claim. ECF 99, at

8    5 (arguing that USC has unclean hands because it "never honored the settlement

9    agreement"). Not only was Plaintiff's claim barred by the statute of limitations,

10   waiver/release, and res judicata, but the Court found that Plaintiff "has simply not

11   demonstrated any likelihood that he is correct on the merits of any of the claims in this

12   case." ECF 68, at 2.

13   **F.    There Is Nothing "Unfair" about Awarding Fees Pursuant to a Contract**

14       Plaintiff claims it is "unfair" to award fees because he was proceeding *pro se* for

15   part of the Prior Action. ECF 99, at 11-12. Plaintiff was always represented by counsel,

16   even though they did not always appear as counsel of record, but in any event there is

17   nothing unfair about awarding fees pursuant to a valid contract that Plaintiff freely and

18   voluntarily entered into and that was intended to protect USC against the filing of

19   lawsuits like this one and the Prior Action. ECF 1-2, at 6. The Agreement expressly

20   provides for the recovery of fees in the event that Plaintiff files a lawsuit based on alleged

21   "events, acts or omissions" predating the Agreement. ECF 1-2, at 6. USC is entitled to

22   the benefit of its bargain, and there are no factors that would militate against the award

23   of fees under these circumstances.

24

25   _____

26   [2]  Moreover, unclean hands is an affirmative defense. It applies "when a ***plaintiff*** has
     acted unconscionably, in bad faith, or inequitably in the matter in which the plaintiff

27   seeks relief." *Salas v. Sierra Chem. Go.*, 59 Cal. 4th 407, 432 (2014) (emphasis
     added). The defense also raises issues of fact. *See Kendall-Jackson Winery, Ltd. v.*

28   *Superior Court* (1999) 76 Cal. App. 4th 970, 978 (1999). As such, it must be raised
     prior to judgment. *See, e.g.*, *Marshall v. Marshall*, 232 Cal. App. 2d 232, 253
     (1965); *Behm v. Fireside Thrift Co.*, 272 Cal. App. 2d 15, 21 (1969).

8

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                    SER101

1    Plaintiff does not claim limited financial resources. Plaintiff is the founder and

2    CEO of a technology corporation called Greenflight Venture Corporation, that "allows

3    a mobile phone user to identify the name associated with a phone number through a

4    reverse lookup." *Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1130 (N.D. Cal.

5    2016), *aff'd*, 698 F. App'x 613 (Fed. Cir. 2017). While USC has no way of knowing

6    what sort of revenue Plaintiff derives from this or any other source, Plaintiff clearly has

7    the resources to bring a continuous string of lawsuits against various defendants,

8    including patent infringement suits. *See, e.g.*, *Greenflight Venture Corp., et al. v. True*

9    *Software Scandinavia A.B.*, 2016 WL 3901170 (N.D. Cal May 13, 2016) (Amended

10   Complaint). And even if Plaintiff were lacking in resources, that "lack of resources . . .

11   has not deterred [him] in the least," and "any 'financial ruin' which may potentially

12   befall [Plaintiff] is due to frivolous suits such as this, a situation entirely of [Plaintiff's]

13   own creation." *Kulas v. Arizona*, 156 F. App'x 29, 31 (9th Cir. 2005) (internal citation

14   omitted) (affirming an award for attorneys' fees against a *pro se* plaintiff).

15   Second, Plaintiff is anything but a typical *pro se* litigant. ECF 110, at 10. Plaintiff

16   has continually been filing lawsuits against individuals, educational institutions, and

17   state and federal governmental entities since 2006. *See* ECF 45, at 3-6. He is a

18   sophisticated, serial litigant well-versed in manipulating the legal system to maximize

19   the financial burden on his adversaries. *See Kulas*, 156 F. App'x at 31 (affirming fee

20   award against a *pro se* plaintiff who could "recognize the objective merit (or lack of

21   merit) of [his] claim" and who "has represented himself in approximately 19 lawsuits

22   filed in the District of Arizona alone . . . [and] has represented himself before the Ninth

23   Circuit more than 20 times"); *cf. Cummins v. Shupps*, No. CV1108081BROMANX,

24   2013 WL 12124099, at *5 (C.D. Cal. Aug. 9, 2013) (granting motion to dismiss where

25   plaintiff improperly served defendant after finding that the *pro se* plaintiff had actively

26   participated in the federal action, filing and responding to motions and appealing to the

27   Ninth Circuit); *Sepehry-Fard v. Countrywide Home Loans. Inc.*, No. 13-CV-05769-

28   BLF, 2014 WL 2707738, at *5 (N.D. Cal. June 13, 2014) (denying motion for leave to

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                        SER102

1   amend where plaintiff failed to plead jurisdiction after finding that the "Plaintiff [w]as

2   a sophisticated *pro se* litigant based upon the numerous federal court cases he has filed

3   over the years").

4         Although Plaintiff claims he "was unable to find counsel for some time," Plaintiff

5   filed the Prior Action with the aid of counsel, and had the advice of counsel throughout.

6   ECF 110, at 11; ECF 1-1, at 44-47. On August 3, 2018, Keith Matthews sent a letter to

7   USC of behalf of the Plaintiff threatening to sue USC for RICO violations, and attaching

8   a copy of the Prior Action Complaint, which was later filed on March 18, 2019. ECF 1-

9   1, at 44-46; Prior Action, ECF 1. On May 24, 2019, two months after filing the Prior

10  Action Complaint, Mr. Matthews reached out to USC again, this time seeking to engage

11  in a mediation with USC. ECF 1-1, at 47. Moreover, Mr. Matthews has been

12  representing Plaintiff for years in parallel litigation against some of the other

13  Defendants—litigation that resulted in the denial of certiorari on October 7, 2019, just

14  one month after Plaintiff's voluntary dismissal of the Prior Action and the same day Mr.

15  Matthews submitted his *pro hac vice* in this action. *See Isaacs v. Trustees of Dartmouth

16  Coll.*, No. 17-CV-040-LM, 2018 WL 734182, at *1 (D.N.H. Feb. 5, 2018), No. 17-CV-

17  040-LM, 2018 WL 2225097 (D.N.H. May 15, 2018), No. 18-1560, 2018 WL 6042640

18  (1st Cir. 2019), *cert. denied*, 589 U.S. 15 (2019) (No. 18-1411) (represented by Mr.

19  Matthews and John F. Skinner); ECF 32. Indeed, Mr. Matthews and Mark Josephs have

20  been assisting Plaintiff for years. *See Isaacs v. United States Dep't of Educ.*, No. CV 17-

21  11221-FDS, 2018 WL 1257760, at *1 (D. Mass. Mar. 12, 2018) (represented by Mr.

22  Josephs); *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-CV-040-LM, 2014 WL

23  1572559, at *1 (D.N.H. Apr. 18, 2014) (ECF 52, Appearance of Counsel Keith

24  Matthews); *Isaacs v. U.S. Dept. of Justice*, No. 1:18-CV-10886 (D. Mass. Apr. 9, 2019)

25  (ECF 4, Appearance of Counsel Keith Matthews). While Plaintiff has more federal

26  litigation experience than many lawyers, he certainly has not been acting alone.

27        In sum, to the extent that equitable considerations are relevant at all, they weigh

28  heavily in favor of granting the Motion.

## G.    USC's Fees Were Reasonable and Are Amply Documented

Under the Court's "Order re Format of Time and Expense Records," USC was required to submit a chronological record of the fees incurred, identifying the services rendered by timekeeper. It did so. It submitted a detailed record of all hours and services rendered and detailed declarations from James P. Fogelman, Shannon Mader, and Katarzyna Ryzewska describing the work that was done. No more is required. *See, e.g.*, *Garza v. City of Los Angeles*, No. 216CV03579SVWAFM, 2018 WL 5859549, at *3 (C.D. Cal. June 25, 2018) ("detailed, contemporaneous records" suffice); *In re Rossco Holdings, Inc.*, No. CV 14-917-JFW, 2014 WL 2611385, at *8 (C.D. Cal. May 30, 2014) ("[A]n attorney need not submit contemporaneous time records in order to recover attorney fees . . . Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (citation and internal quotation marks omitted).[3]

By contrast, Plaintiff has completely failed to meet his "'burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged.'" *Arrow Elecs., Inc. v. E.ON AG*, No. CV 05-2388 SVW (SSX), 2008 WL 11342597, at *2 (C.D. Cal. Nov. 12, 2008) (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)). Plaintiff has not even attempted to show that the hours billed or rates charged by Gibson Dunn are inaccurate or unreasonable. Considering the breadth of the legal and factual issues involved, the total hours billed—223.3—is completely reasonable. ECF 99, at 22-24; ECF 99-1; ECF 99-2; ECF 99-3. And the rates charged by Gibson Dunn are well within the range of rates generally charged by similar firms engaged in similar work. ECF 99-1 ¶ 9. Moreover, USC repeatedly asked Plaintiff to

---

[3] There is no requirement that fees be broken down by theory. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (recognizing that if the claims "involve a common core of facts," it may be "difficult to divide the hours expended on a claim-by-claim basis"); *Bockman v. Lucky Stores, Inc.*, No. CIV S 83-039 RAR, 1986 WL 425, at *4 (E.D. Cal. Nov. 20, 1986) ("[C]ounsel is not required to give a blow-by-blow, minute-by-minute dissertation of every minute, hour and method used in compiling the so-called composite time records.").

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                                    SER104

1   dismiss his meritless complaints and withdraw his frivolous preliminary injunction

2   motion. Prior Action, ECF 14-1, at 2; Prior Action, ECF 41-1, at 2; ECF 45-2, at 4; ECF

3   61-1, at 1; ECF 64-2, at 2; ECF 67-1, at 2. Plaintiff not only refused, but doubled down

4   on his dubious, and ultimately self-destructive, strategy by adding more claims and by

5   naming Gibson Dunn as a defendant. Plaintiff has only himself to blame for USC's fees.

6          The Court has already stated that it would take USC's Motion under submission

7   without oral argument. ECF 104. There is no requirement that the Court hold an

8   evidentiary hearing. *See, e.g.*, Fed. R. Civ. P. 54. *See also* Fed. R. Civ. P. 78(b) ("[T]he

9   court may provide for submitting and determining motions on briefs, without oral

10  hearings."); Fed. R. Civ. P. 43(c) ("[T]he court may hear the matter on affidavits or may

11  hear it wholly or partly on oral testimony[.]"). The Court can and should decide the issue

12  on the papers. "Nothing more [is] required by Rule 54." *Miller v. Dugan*, 764 F.3d 826,

13  830 (8th Cir. 2014). Plaintiff has had months to challenge specific entries and has failed

14  to do so. His request for an evidentiary hearing is just another stalling tactic. "A request

15  for attorneys' fees should not result in a second major litigation," *Hensley*, 461 U.S. at

16  437.

17                            **III.   CONCLUSION**

18          For all of the foregoing reasons, USC respectfully requests that the Court grant its

19  Motion for Fees.

20

21  Dated:  April 27, 2020                    GIBSON, DUNN & CRUTCHER LLP

22

23                                           By:  ___*/s/ James P. Fogelman*___
24                                                  James P. Fogelman
25                                             Attorney for USC Keck School of
                                               Medicine
26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS'
FEES AND COSTS

TAB 12                                                    SER105