No. 20-55633

*In the*

# United States Court of Appeals for the Ninth Circuit

---

JEFFREY ISAACS,

***Plaintiff-Appellant,***

v.

USC KECK SCHOOL OF MEDICINE,

***Defendant-Appellee,***

and

GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP, and JOHN or JANE DOE.

---

On Appeal from the U.S. District Court
for the Central District of California, Los Angeles
Case No. 19-CV-08000, the Hon. Dale S. Fischer, District Judge

---

### RESPONSE OF DEFENDANT-APPELLEE USC KECK SCHOOL OF MEDICINE TO PLAINTIFF-APPELLANT'S MOTION TO STRIKE

---

James P. Fogelman
  *Counsel of Record*
Shannon Mader
Katarzyna Ryzewska
GIBSON, DUNN & CRUTCHER, LLP
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

Linda D. Lam
  *Counsel of Record*
Lori G. Ginex-Orinion
AVISO LEGAL GROUP LLP
4000 Barranca Parkway, Suite 250
Irvine, California 92604
Telephone: (949) 262-3271
Facsimile: (949) 271-4037

*Attorneys for USC Keck School of Medicine,*
*Defendant-Appellee*

## <u>RESPONSE OF DEFENDANT-APPELLEE TO PLAINTIFF-APPELLANT'S MOTION TO STRIKE PORTIONS OF DEFENDANT-APPELLEE'S ANSWERING BRIEF</u>

Defendant-Appellee USC Keck School of Medicine ("USC") hereby opposes[1] Plaintiff-Appellant Dr. Jeffrey Isaacs ("Plaintiff") Motion to Strike (the "Motion") portions of USC's Answering Brief (the "Brief") – namely six lines provided as background to the parties' 2008 Settlement Agreement, the provisions of which are central to Plaintiff's appeal of the District Court's attorneys' fees award to USC. *See* Mot. at 3 (referencing portions of the Brief stating that Plaintiff was "expelled for harassing a classmate, making threats against the university, and violating a 'stay away' order" and then "sued USC, various USC officials, and the victim's father"). The allegedly offending language is (1) relevant to the current appeal, (2) has been used by USC in multiple filings without any objection from Plaintiff, and (3) is supported by USC's citations, including background allegations made by Plaintiff in his Complaint. As such, the Motion is meritless and appears to have been filed solely to support Plaintiff's continued improper efforts to malign USC and its counsel, all while failing to state any actual claim against them. Therefore, USC respectfully requests that the Court deny the Motion.

---

[1] Although Circuit Advisory Committee Note to Rule 27-1, subsection (5) states that "[u]nless precluded by extreme urgency, counsel are to make every attempt to contact opposing counsel before filing any motion and to either inform the Court of the position of opposing counsel or provide an explanation regarding the efforts made to obtain that position," Plaintiff failed to take such actions here.

*First*, central to the current appeal is the parties' 2008 Settlement Agreement, in which Plaintiff promised not to file any lawsuits "based on, referring to, or incorporating any events, acts or omissions" predating the 2008 Settlement Agreement; if he did, he agreed to "pay for all costs and losses, including actual attorneys' fees, incurred by USC in connection with said lawsuit." Excerpts of the Record ("ER") 207 (the 2008 Settlement Agreement) at ¶ 6; Brief at 2. Since both the Prior and Subsequent Actions (as defined in the Brief) were "based on, refer[ed] to, or incorporate[ed]" pre 2008-Settlement Agreement matters, USC was entitled to an award of "all" attorneys' fees it "incurred" "in connection with" the same, which is what the District Court awarded to USC. Brief at 2, 14-15, 17-23 (explaining in detail why the District Court's award to USC is authorized by the 2008 Settlement Agreement).

Because the first issue presented in Plaintiff's appeal turns on the language of the 2008 Settlement Agreement and whether Plaintiff violated that agreement by including pre 2008-Settlement agreement matters in his pleadings, USC appropriately referenced the lead-up to the 2008 Settlement Agreement in its Brief, just as it did previously when it filed its underlying Motion for Attorneys' Fees and Costs. *See* ER 035 (USC's Motion for Attorneys' Fees and Costs) (stating, in part, "[i]n 2005, Plaintiff enrolled at USC and was later expelled for harassing a classmate and violating a 'stay-away' order"). Plaintiff did not seek to strike such

language in February 2020, when USC's Motion for Attorneys' Fees and Costs was filed, and significantly, Plaintiff included the entirety of that motion in his Excerpts of Record in the current appeal. *See* ER 026-050.

**Second**, the language at issue here was stated verbatim in USC's response to Plaintiff's brief in the related appeal, which USC filed over three months ago, with no objection from Plaintiff. *See* **Exhibit A**, Ninth Cir. Case No. 20-55239, Excerpts of Dkt. No. 32 at 1, 4 (Introduction and Statement of the Case). It is also nearly identical to language used by USC in various other filings in addition to the Motion for Attorneys' Fees and Costs referenced above, including USC's Motion to Dismiss filed well over one year ago. *See, e.g.*, **Exhibit B**, Case No. 2:19-cv-08000 (the underlying matter), Excerpts of Dkt. No. 45 (USC's Motion to Dismiss Plaintiff's Complaint) at 2 ("The simple reality is that USC has had nothing to do with Plaintiff, other than as adverse party, since 2006, when he was expelled for harassing and stalking a student, violating a 'stay away' order, and making violent threats."); *id.* at 3 ("In 2005, Plaintiff enrolled at USC, and was later expelled for harassing a classmate and violating a 'stay away' order."). To the extent there was a basis to strike this language, Plaintiff should have pursued such motion much sooner. That he did not belies his claim that the allegedly offending language is "inaccurate, defamatory, scandalous," "inflammatory," "improper," "inappropriate" and meant to "further defame and damage." Mot. at 3-5.

***Third***, the language at issue is supported by USC's citations. For example, USC cited to *Isaacs v. Dartmouth-Hitchcock Med. Center ("DHMC")*, No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. April 18, 2014), *aff'd Isaacs v. DHMC*, No. 14-154 (1st Cir. 2015). Therein, in an order granting summary judgment to DHMC and three other defendants, the United States District Court for New Hampshire set forth the following facts: "In 2005 and 2006, Dr. Isaacs attended medical school at [USC]. During his first year, ***he was suspended and ultimately dismissed for harassing a classmate***." *Id.* (emphasis added). Apparently, since Plaintiff had failed to object to the pending summary judgment motions in that matter, the facts presented by the parties were deemed admitted by the court, and such facts, along with others gleaned from the record, served as a basis for the court's background section, including the above language. *Id.*

USC also cited to Plaintiff's Complaint filed in the underlying action, which:

- ¶ 23 – describes Plaintiff's relationship with a "fellow Keck Classmate" that "***turned sour***";

- ¶ 27 – states "***USC armed guards served Plaintiff with a 'stay-away' order from [the] classmate***" and that the classmate also "sought to press charges with the LAPD against the Plaintiff";

- ¶ 28 – attributes to Plaintiff the statement, "I'm being kicked out for accidentally ***blackmailing the Dean***";

4

- ¶¶ 29-30 – states that though the classmate "emailed the Dean that she didn't want to be responsible for further disciplinary action against Plaintiff," "the Junior Keck Dean ... hauled [Plaintiff] before the Keck Student Performance Committee, and disciplined him" anyway, ***ultimately "resulting in a separation from the university"***; and

- ¶ 32 – explains that Plaintiff "filed a federal lawsuit" against USC and multiple others, including the "***[classmate's] father***."

ER 066-068 (the Complaint) (emphasis added). Indeed, Plaintiff attached to his Complaint the Alert Notification issued by USC, which he also included in his excerpts of record. ER 199. In the alert, Plaintiff is quoted as stating, "I don't think they will expel me because they are afraid I'll come back with a gun," and the alert goes on to say that Plaintiff is "the subject of a harassment investigation and has been served with a stay away letter." *Id.* Such statements made by Plaintiff, or included in Plaintiff's excerpts, directly support USC's position that Plaintiff was "expelled for harassing a classmate, making threats against the university, and violating a 'stay away' order" and then "sued USC, various USC officials, and the victim's father." Brief at 2, 4.

Additionally, the entire record of Plaintiff's relationship with USC, including the details of his harassment of a fellow student and the subsequent stay away order, are all available on PACER in *Isaacs v. USC, et al.*, Case No. 2:06-cv-

5

03338-GAF-E (C.D. Cal. May 8, 2008), which includes declarations from faculty and the victim, all supported by documentary evidence, as well as a Memorandum of Contentions of Fact and Law submitted by Plaintiff, in which Plaintiff himself outlines his communications with the USC classmate, his subsequent expulsion, the issuance of a stay-away order, and the resulting suit against USC and the victim's father. *See Isaacs v. USC, et al.*, Case No. 2:06-cv-03338-GAF-E (C.D. Cal. May 8, 2008) at Dkt. Nos. 56, 66, 68-69.

In light of all of the above support for USC's statements, any issues with word choice is just semantics. For example, Plaintiff's argument that the USC classmate for whom a "stay-away" order was issued may not be described as a "victim" because Plaintiff was not charged with a crime is wrong. *Compare* Mot. at 4-5 (claiming no one at USC was a "victim") *with* Miriam-Webster, Definition of Victim, https://www.merriam-webster.com/dictionary/victim ("one that is acted on and usually adversely affected by a force or agent"). Regardless, such word choice should not result in striking any portion of USC's Brief here. Plaintiff has devoted significant portions of his filings to telling what he believes is his story and will surely do so again in response to the Brief.

**Lastly**, USC notes that Plaintiff's Motion is just one more instance of Plaintiff's years-long effort to attack multiple parties in multiple jurisdictions on meritless claims, including, most recently, by bringing claims against USC's

counsel.  *See* **Exhibit A** at 4-11 (detailing the various cases filed by Plaintiff and the outcome of the same, along with Plaintiff's more recent attacks on Gibson Dunn & Crutcher, LLP); **Exhibit B** at 3-6 (same).  Plaintiff's effort to continue this pattern by filing the current meritless Motion should not be sanctioned by this Court.

For this reason and each of those set forth above, USC respectfully requests that the Court deny Plaintiff's Motion.

Dated:  December 21, 2020                Respectfully submitted,

　　s/ *Linda D. Lam*　　　　

Linda D. Lam
   *Counsel of Record*
Lori G. Ginex-Orinion
AVISO LEGAL GROUP LLP
4000 Barranca Parkway, Suite 250
Irvine, California 92604
Telephone: (949) 262-3271
Facsimile: (949) 271-4037

*Attorneys for USC Keck School of*
*Medicine, Defendant-Appellees*

# EXHIBIT A

No. 20-55239

In the

# United States Court of Appeals for the Ninth Circuit

JEFFREY ISAACS,

***Plaintiff-Appellant,***

v.

USC KECK SCHOOL OF MEDICINE, GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, DARTMOUTH HITCHCOCK MEDICAL CENTER, NH BOARD OF MEDICINE, GIBSON, DUNN & CRUTCHER, LLP, and JOHN or JANE DOE,

***Defendants-Appellees.***

On Appeal from the U.S. District Court
for the Central District of California, Los Angeles
Case No. 19-CV-08000, the Hon. Dale S. Fischer, District Judge

**ANSWERING BRIEF OF DEFENDANTS-
APPELLEES USC KECK SCHOOL OF MEDICINE
& GIBSON, DUNN & CRUTCHER, LLP**

James P. Fogelman
  *Counsel of Record*
Shannon Mader
Katarzyna Ryzewska
GIBSON, DUNN & CRUTCHER, LLP
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

*Attorneys for USC Keck School of Medicine
& Gibson, Dunn & Crutcher, LLP,
Defendant-Appellee*

## I.    INTRODUCTION

Plaintiff-Appellant Jeffrey Isaacs ("Plaintiff") is a vexatious litigant who has

been filing meritless lawsuits against educational institutions for more than a

decade.  This is the seventh lawsuit Plaintiff has filed over his failed medical career

and the third he has filed against Defendant-Appellee USC Keck School of

Medicine ("USC").  In 2006, after being expelled for harassing a student, making

threats against the university, and violating a "stay away" order, Plaintiff sued

USC.  The parties settled, entering into two binding settlement agreements in

which Plaintiff waived and released all claims against USC, and agreed not to file

suit against USC "based on, referring to, or incorporating any events, acts or

omissions through and including the date hereof."  ER199 (2007 Agreement ¶ 4);

ER203 (2008 Agreement ¶ 6); ER109, ¶ 276; ER57, ¶ 2.  Yet in 2018, in direct

breach of those agreements, Plaintiff filed another lawsuit against USC based on

events predating the agreements.  Rather than oppose USC's motion to dismiss,

Plaintiff dismissed his complaint to avoid an unfavorable ruling, and then—just

days later—filed a nearly identical complaint in the same court, naming USC's

counsel, Defendant-Appellee Gibson, Dunn & Crutcher, LLP ("Gibson Dunn") as

a defendant, and forcing defendants to engage in another round of motion practice.

In the end, the district court saw through Plaintiff's increasingly unhinged and

implausible allegations, and granted USC's and Gibson Dunn's motions to dismiss

# V.     STATEMENT OF THE CASE

## A.     Plaintiff's 2007 And 2008 Settlements With USC.

In 2005, Plaintiff enrolled at USC, and was later expelled for harassing a classmate, making threats against the university, and violating a "stay-away" order. ER60, 63–64, ¶¶ 14, 23–30.  *See also Isaacs v. DHMC*, No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. 2014), *aff'd Isaacs v. DHMC*, No. 14-154 (1st Cir. 2015).[1]  In response, Plaintiff sued USC, various USC officials, and the victim's father, alleging claims for violations of the Rehabilitation Act, intentional infliction of emotional distress, and breach of contract.  ER65, ¶ 32.  *See also Isaacs v. USC*, No. CV-06-03338-GAF (C.D. Cal. Aug. 15, 2006) ("2006 Case").  The lawsuit resulted in two settlements in 2007 and 2008 (the "Agreements"), pursuant to which Plaintiff released all claims against USC and agreed not to assert any claims against USC "based on, referring to, or incorporating any events, acts or omissions through and including the date hereof."  ER65, ¶¶ 33–35; ER198 (2007 Agreement ¶ 4), ER203 (2008 Agreement ¶ 7).

Shortly thereafter, USC was forced to file a motion to enforce the

---

[1] At some point in 2006 after the stalking incident, Plaintiff told a counselor "I don't think [USC] will expel me because they are afraid I'll come back with a gun."  ER195.  In response, USC notified the Department of Public Safety that Plaintiff was subject to a "stay-away" order.  *Id.*  Plaintiff appears to regard the stay-away letter as a "lifetime ban."

Agreements when Plaintiff refused to dismiss the lawsuit. SER110. The district court granted the motion, holding that "[Plaintiff] fail[ed] to put[] forth any grounds to void the Settlement" and that "the mere fact that [Plaintiff] claims to no longer know if the Settlement accomplishes his ultimate goal is not grounds to undo the agreement." SER126. The district court rejected Plaintiff's allegations of lack of consideration, illegality/impracticability, duress, unclean hands, undue influence, and unconscionability. SER128–131. In conclusion, the district court held that Plaintiff "is bound by its terms" and ordered Plaintiff "to comply with its terms." SER131. Plaintiff never appealed the district court's order.

## B.    Plaintiff's Misstatements And Omissions.

In 2010, Plaintiff received his medical degree from a different program. ER60, ¶ 14. He then began a residency at the University of Arizona ("UA"), where he resigned after six weeks. *Isaacs*, 2014 WL 1572559, at *2. In September 2010, Plaintiff submitted an application to the Dartmouth-Hitchcock Medical Center ("DHMC"), omitting his attendance at USC and his residency at UA. *Id.* The next year, he began a residency at DHMC. ER72, ¶ 68. A few months later, a supervisor at DHMC discovered that Plaintiff had previously been a resident at UA. *Isaacs*, 2014 WL 1572559, at *4. On March 19, 2012, DHMC issued a letter to Plaintiff stating that he was being terminated for academic deficiencies and failing to disclose his time at USC and UA. *Id.* at *5. SER132–

37.  On March 11, 2014, the New Hampshire Board of Medicine (the "Board")
revoked Plaintiff's medical license and found that his termination from DHMC
was appropriate because he had concealed material information in his application.
SER138–46.  The Board further reprimanded Plaintiff for failing to provide any
"credible evidence" in support of his position and for "knowingly" making a false
statement.  SER145.

## C.     Plaintiff's Prior Lawsuits.

Since then, Plaintiff has filed multiple lawsuits against multiple defendants
in multiple jurisdictions:

- On February 3, 2012, Plaintiff sued DHMC, the Mary Hitchcock
  Memorial Hospital, and Geisel School of Medicine at Dartmouth (the
  "Trustees") in the District of New Hampshire.  *Isaacs*, 2014 WL
  1572559, at *1.  The court granted summary judgment in favor of the
  defendants.  *Id.*

- On September 30, 2013, Plaintiff sued the Trustees, the Arizona
  Board of Regents, the Board, the Mary Hitchcock Memorial Hospital,
  and the University of Arizona Health Sciences Center in the Eastern
  District of Pennsylvania.  *Isaacs v. Trustees*, No. CIV-A-13-5708,
  2014 WL 4186536, at *1 (E.D. Pa. Aug. 25, 2014), *aff'd sub nom.*

6

*Isaacs v. Arizona Bd. of Regents*, 608 F.App'x 70 (3d Cir. 2015). The court dismissed the complaint, and the Third Circuit affirmed. *Id.*

- On February 3, 2017, Plaintiff sued the Board, the Trustees, and DHMC in the District of New Hampshire. *Isaacs v. Trustees*, No. 17-CV-040-LM, 2018 WL 734182, at *1 (D.N.H. Feb. 5, 2018), *aff'd* No. 18-1560 (1st Cir. 2019), cert. denied, No. 18-1560 (2019). The court dismissed the complaint, and the First Circuit affirmed. *Id.*

- On June 30, 2017, Plaintiff sued the Department of Education ("DOE") in the District of Massachusetts. *Isaacs v. U.S. Dep't of Educ.*, No. CV-17-11221-FDS, 2018 WL 1257760, at *1 (D. Mass. Mar. 12, 2018). The complaint was dismissed. *Id.*

Except as otherwise noted, Plaintiff's actions have been dismissed on the pleadings or decided in favor of the defendants on summary judgment.

## D.    Plaintiff's Demand Letter.

On August 3, 2018, just months after the dismissal of Plaintiff's lawsuits against the Board, the Trustees, DHMC, and the DOE, Plaintiff's counsel sent USC's in-house counsel a letter threatening to sue USC unless USC agreed to mediate Plaintiff's purported claims. ER162–64. Plaintiff's counsel repeated the demand on May 24, 2019. ER165. On May 30, 2019, USC's in-house counsel rejected Plaintiff's demand. *Id.* Plaintiff responded the next day, stating that

USC's response would be considered "further violations of the RICO statute."
ER196.

### E.    Plaintiff's Prior Lawsuit Against USC.

On March 18, 2019, Plaintiff filed suit against USC, the DHMC, the
Trustees, and the Board in the Central District of California (the "Prior Action").
SER009–14.  The complaint asserted two meritless claims.  *Id.*

On June 26, 2019, Gibson Dunn filed a motion to dismiss Plaintiff's
complaint on USC's behalf.  SER015–19.  Rather than oppose the motion, Plaintiff
filed a First Amended Complaint ("FAC") adding *seven* new claims.  SER020–37.

On August 2, 2019, USC moved to dismiss the FAC, arguing that Plaintiff's
claims were barred by the statutes of limitations, res judicata, and waiver, and
failed as a matter of law.  SER038–42.  Plaintiff never filed an opposition.

### F.    The Parties' Meet And Confer.

Plaintiff emailed Gibson Dunn on August 2, 2019, threatening to seek a
preliminary injunction against USC unless USC agreed to his bizarre demands.
ER211.  Among other things, Plaintiff demanded that USC retract what he called a
"no trespass letter," and that he be permitted to file "criminal charges" with "USC
police."  *Id.*  In response, Gibson Dunn explained that Plaintiff was "free to call
any police department and tell them anything [he] want[ed]," but that he had "no
reason" and "no right" to be on the USC campus, which does not have a police

department.  *Id.*

In the same email exchange, Plaintiff demanded that he be allowed to communicate directly with USC instead of Gibson Dunn and to access USC's registrar's office to determine "whether [his] student records have been sealed, acquitted, dismissed, and annulled."  ER210–11.  Gibson Dunn responded:  "I still have no idea what you are talking about.  If this is some new way of asking whether anyone is 'blocking' you from calling the police, all I can do is reiterate that we have nothing to do with it and are not 'blocking' such a call or standing in your way."  *Id.*

The next day, Plaintiff again emailed Gibson Dunn, stating that he was considering "apply[ing] to USC programs again," and that he intended to file a motion to disqualify Gibson Dunn.  SER060.  Gibson Dunn asked Plaintiff if he had reviewed the 2007 Agreement, in which Plaintiff agreed not to apply to USC, and suggested Plaintiff "should really consult [a] lawyer."  *Id.*

On August 4, 2019, Isaacs filed the threatened preliminary injunction motion.  SER043–50.  USC opposed on August 19, 2019.  SER051–52.

## G.    Plaintiff's Threats Against Gibson Dunn.

On August 20, 2019, Plaintiff emailed Gibson Dunn, stating that "[y]ou are hereby notified that you shall be called as a witness," and that "[p]ursuant to Rule

3.7 of the State Bar of California, your immediate recusal and disqualification from this case is appropriate."  SER062–63.

A week later, Plaintiff emailed Gibson Dunn again, insisting that he still planned to file a motion to disqualify Gibson Dunn and now threatening to refer Gibson Dunn to the U.S. Marshal.  SER064.  Plaintiff accused Gibson Dunn of "witness intimidation," and demanded it "cease all communication with me."  *Id.*

## H.  Plaintiff's Voluntary Dismissal Of The Prior Action.

On August 26, 2019, the same day Plaintiff's opposition to USC's motion to dismiss was due, Plaintiff filed a Second Amended Complaint ("SAC") without leave.  SER006.  The SAC purported to name Gibson Dunn as a defendant.  The district court struck the SAC the next day, and Plaintiff quickly repackaged it as a motion for leave to amend.  *Id.*  USC opposed the motion for leave.  SER055–56.

The hearing on USC's motion to dismiss the FAC (as well as Plaintiff's motion for leave and preliminary injunction motion) was scheduled for September 16, 2019.  SER007.  On September 12, 2019, the district court took the hearing off calendar, stating that "[a] written order will follow."  *Id.*  Apparently unwilling to wait for or abide by the court's ruling, Plaintiff dismissed his lawsuit.  SER057–59.

## I.  Plaintiff's Duplicative New Lawsuit.

Days later, on September 16, 2019, Plaintiff filed the action below—a nearly

10

identical lawsuit asserting nearly identical claims.  ER56–228 (Compl.).

Plaintiff's new complaint asserted 11 claims against USC: RICO, retaliation, Due Process & First Amendment violations, *Bivens* implied cause of action, breach of contract, rescission, intentional and negligent infliction of emotional distress, fraud, constructive fraud, and declaratory judgment.  ER88–122, ¶¶ 182–344.  The complaint asserted five claims against Gibson Dunn: RICO, Due Process & First Amendment violations, intentional infliction of emotional distress, intentional interference with contractual relations, and declaratory judgment.  *Id.*

Plaintiff's new complaint purported to rely upon an Association of American Medical Colleges profile (the "AAMC Profile"), printed in 2006, that describes Plaintiff's status at USC as "Dismissed – Non-Academic Reasons."  AOB16.  Notably, the version of the AAMC Profile submitted by Plaintiff in this appeal is different than that the version he submitted below.  While the version below contained a timestamp showing the document had been printed in June 2006, the version submitted here is missing the timestamp.  *Compare* ER221 *with* SER186.

## J.    The Proceedings Below.

Soon after filing the new action, Plaintiff re-filed his preliminary injunction motion.  ER229.  USC opposed and the district court denied the motion.  ER230; ER234.  The district court found:

> Plaintiff has shown no likelihood of success on the merits.  Aside
> from the problems of the statute of limitations and res judicata, he has

# EXHIBIT B

James P. Fogelman, SBN 161584
Shannon E. Mader, SBN 235271
Katarzyna Ryzewska, SBN 300386
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
  Los Angeles, California 90071-3197
Telephone: (213) 229-7000
  Facsimile: (213) 229-7520
JFogelman@gibsondunn.com
SMader@gibsondunn.com
KRyzewska@gibsondunn.com

Attorneys for Defendant
USC Keck School of Medicine

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>            Plaintiff,<br><br>    v.<br><br>USC KECK SCHOOL OF MEDICINE.<br>GIESEL SCHOOL OF MEDICINE AT<br>DARTMOUTH, DARTMOUTH<br>HITCHCOCK MEDICAL CENTER,<br>NH BOARD OF MEDICINE, GIBSON,<br>DUNN & CRUTCHER, LLP and JOHN<br>or JANE DOE,<br><br>            Defendants. | CASE NO. 2:19-CV-08000-DSF-RAO<br><br>**DEFENDANT USC KECK SCHOOL<br>OF MEDICINE'S NOTICE OF<br>MOTION AND MOTION TO DISMISS<br>PLAINTIFF'S COMPLAINT; AND<br>MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>MOTION TO DISMISS**<br><br>[Defendant's Request for Judicial Notice,<br>Declaration of Katarzyna Ryzewska, and<br>Proposed Order Filed Concurrently<br>herewith]<br><br>**Hearing**<br>Date:        November 18, 2019<br>Time:        1:30 PM<br>Location:   Courtroom 7D<br>Judge:       Hon. Dale S. Fischer |

against USC's counsel of record for conduct that is clearly protected by the First Amendment and California's litigation privilege. Plaintiff's frivolous claims should be dismissed with prejudice and no further amendments should be allowed.

It defies common sense to suggest, as Plaintiff does, that USC would engage in a decade-long enterprise to destroy Plaintiff's medical career and reputation, let alone that it would conspire with a medical school, a hospital, and a medical board in a different state. The simple reality is that USC has had nothing to do with Plaintiff, other than as adverse party, since 2006, when he was expelled for harassing and stalking a student, violating a "stay-away" order, and making violent threats. Indeed, in 2007 and 2008, Plaintiff entered into binding settlement agreements with USC (the "2007 Settlement Agreement" and the "2008 Settlement Agreement," respectively), in which he "waive[d] and release[d] all rights and claims" against USC and agreed not to file any lawsuits against USC "based on, referring to, or incorporating any events, acts or omissions through and including the date hereof." ECF 1-2 at 31 (2007 Settlement Agreement ¶ 7).

Yet, by basing his claims on alleged predicate acts that "were the subject of a federal lawsuit in 2007" Plaintiff has breached those agreements. ECF 1 ¶ 276. *See also* ECF 1 ¶ 2. And by basing claims on actions taken by USC in this litigation, he is violating well settled law concerning litigation privilege and the *Noerr-Pennington* doctrine.[2] *See, e.g.*, *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 933–39 (9th Cir. 2006) (pre-litigation demand letters); *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) (decision to accept or reject a settlement offer); *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1159 (N.D. Cal. 2014) (filing a motion to dismiss); *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4th 903 (2004) ("The [litigation] privilege has been broadly applied to demand letters and other prelitigation communications."). Additionally,

---

the previous case. *See, e.g.*, *Serrato v. Cty. of Los Angeles*, No. CV 13-00449 AB (AJW), 2016 WL 3982330, at *4 (C.D. Cal. Apr. 11, 2016) (no tolling when a claim is voluntarily dismissed).

[2] "The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009) (quoting *Sosa*, 437 F.3d at 929).

Gibson, Dunn & Crutcher LLP

2

Plaintiff's claims are barred by the terms of the settlement agreements, implausible on their face, hopelessly time barred, and fail for a host of other reasons. For all the reasons set forth herein, Plaintiff's claims against USC should be dismissed with prejudice.

## II.    LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must plead *facts*, not mere legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, a complaint must plead facts that give rise to a *plausible* claim for relief, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 68–69. In determining whether a complaint satisfies Rule 12(b)(6), "a court may look beyond the pleadings" and "may take into account documents whose contents are alleged in a complaint." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations omitted).

## III.    BACKGROUND AND ALLEGATIONS

In 2005, Plaintiff enrolled at USC, and was later expelled for harassing a classmate and violating a "stay-away" order. ECF 1 ¶¶ 14, 27. *See also Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 12-CV-040-LM, 2014 WL 1572559, at *2 (D.N.H. Apr. 18, 2014) (granting summary judgment against Plaintiff and deeming certain facts admitted by Plaintiff), *aff'd Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, No. 14-1544, (1st Cir. 2015) (Declaration of Katarzyna Ryzewska, Ex. 1). In response, Plaintiff sued USC. ECF 1 ¶ 32. The lawsuit resulted in two settlements in 2007 and 2008: the first sealed Plaintiff's disciplinary records, and, pursuant to both, Plaintiff released and waived all claims against USC and agreed not to assert any claims against USC "based on, referring to, or incorporating any events, acts or omissions through and including the date hereof." *Id.* ¶ 33–35; ECF 1-2 at 30 (2007 Settlement Agreement ¶ 4), 35 (2008 Settlement Agreement ¶ 6).

In 2010, Plaintiff received his medical degree from a different program. ECF 1 ¶ 14. After graduating, Plaintiff began a surgical residency at the University of Arizona ("UA"), from which he resigned after six weeks. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at \*2. In September of 2010, Plaintiff submitted an application to DHMC, where he omitted both his attendance at USC and the residency at UA. *Id.* In 2011, Plaintiff began a residency at DHMC. ECF 1 ¶ 68. In January 2012, a supervisor at DHMC discovered that the Plaintiff had previously been a resident at UA. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at \*4. On March 19, 2012, DHMC issued a letter to the Plaintiff stating that he was being terminated for academic deficiencies, and for failing to disclose his attendance at USC and UA. *Id.* at \*5. On March 11, 2014, the Board of Medicine revoked Plaintiff's medical license and found that his termination from DHMC was appropriate because he concealed material information in his application. *See In re Jeffrey D. Isaacs M.D.*, New Hampshire Board of Medicine, Final Decision and Order, at 8–9 (Mar. 11, 2014) (incorporated by reference in ECF 1 ¶¶ 7, 133, 134, 137, 149–167, 170, 192.) (Ryzewska Decl., Ex. 2). The Board of Medicine further reprimanded Plaintiff for failing to provide any "credible evidence" in support of his position and for "knowingly" making a false statement. *Id.*

Since his termination from DHMC, Plaintiff has pursued claims against multiple defendants in multiple jurisdictions. On February 3, 2012, shortly before his termination from DHMC, Plaintiff filed a case against DHMC, the Mary Hitchcock Memorial Hospital, and the Trustees for claims arising out of his residency and pending termination. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at \*1 (granting summary judgment in favor of defendants). Next, on September 30, 2013, Plaintiff sued the Trustees, the Arizona Board of Regents, the Board of Medicine, the Mary Hitchcock Memorial Hospital, and the University of Arizona Health Sciences Center for claims arising out of his termination by DHMC and the revocation of his medical license by the Board of Medicine. *Isaacs v. Trustees of Dartmouth Coll.*, No. CIV.A. 13-5708, 2014 WL 4186536, at \*1 (E.D. Pa. Aug. 25, 2014) (Ryzewska Decl.,

Ex. 3), *aff'd sub nom. Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70 (3d Cir. 2015) (affirming dismissal of complaint based on lack of personal jurisdiction and immunity) (Ryzewska Decl., Ex. 4). On February 3, 2017, Plaintiff sued the Board of Medicine, the Trustees, and DHMC for claims arising out of his dismissal from the DHMC residency and the revocation of his medical license. *Isaacs v. Trustees of Dartmouth Coll.*, No. 17-CV-040-LM, 2018 WL 734182, at *1 (D.N.H. Feb. 5, 2018) (Ryzewska Decl., Ex. 5), *motion for relief from judgment denied*, No. 17-CV-040-LM, 2018 WL 2225097 (D.N.H. May 15, 2018) (dismissing certain claims with prejudice and denying Plaintiff's request to amend his complaint to add additional claims). Plaintiff next sued the DOE on June 30, 2017, when the Office of Civil Rights declined to investigate the circumstances surrounding his termination from DHMC. *Isaacs v. United States Dep't of Educ.*, No. CV 17-11221-FDS, 2018 WL 1257760, at *1 (D. Mass. Mar. 12, 2018) (dismissing complaint based on sovereign immunity) (petition for writ of certiorari pending) (Ryzewska Decl., Ex. 6). Finally, Plaintiff filed a nearly identical lawsuit asserting nearly identical claims against nearly identical defendants in this Court, and then dismissed the entire action rather than oppose the defendants' motions to dismiss. *Isaacs v. DHMC et al.*, No. 2:19-CV-02011-DSF-RAO (C.D. Cal. 2019). Except as otherwise noted, all of the claims brought by Plaintiff have been dismissed on the pleadings or decided in favor of the named defendants through summary judgment.

Plaintiff also has attempted to invent additional claims against USC and Gibson Dunn related to a meet and confer with USC counsel. On August 2, 2019, Plaintiff contacted Gibson Dunn threatening a preliminary injunction motion against USC unless USC acquiesced to his demands. Plaintiff demanded that he be able to file "criminal charges" with "USC police," and that they retract what he called a "no trespass letter."[3] ECF 35-1 at 8. Gibson Dunn explained that Plaintiff was "free to call any police department and tell them anything you want," that no one is "blocking" Plaintiff from

---

[3]  The document is actually an "Alert Notification" distributed within the USC Department of Public Safety that informed personnel that Plaintiff had made criminal threats concerning violence on campus after harassing and stalking a fellow student, and urges personnel to use caution when confronting the Plaintiff. ECF 1-2 at 27.

"from calling a police department," but that Plaintiff has "no reason," and "no right" to be on the USC campus. *Id.* at 6–8. As plainly evident from the exchange, this was neither a threat nor a "lifetime ban," but a statement of fact. *Id.* In response to these statements, Plaintiff filed a Motion for Preliminary Injunction. ECF 13.

The emails were also a response to demands by the Plaintiff that he be able to directly communicate with USC instead of their counsel, and enter USC's registrar's office to ascertain "whether [his] student records have been sealed, acquitted, dismissed, and annulled," questions which are directly linked to this litigation. ECF 35-1 at 5, 8, 10–11. Plaintiff additionally raised objections to USC's then-pending motion to dismiss, claimed that he "may apply to USC programs again," and stated that his email constituted a meet and confer request for a motion to disqualify USC's counsel. *Id.* at 4, 6, 10–11.

The only communications between Plaintiff and USC in the last two years have been concerning actual or threatened litigation. Until last week, Plaintiff was representing himself pro per, and USC has no choice but to communicate with him directly. Every one of these communications is absolutely protected by the litigation privilege or the *Noerr-Pennington* doctrine. *See, e.g.*, *Sosa*, 437 F.3d at 933–39; *Blanchard*, 123 Cal. App. 4th at 919.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Are Barred by Res Judicata

Res judicata bars all of Plaintiff's claims because they arise from exactly the same facts alleged in his 2008 action against USC, *Isaacs v. University of Southern California*, where USC successfully defended the validity of the settlement agreements when Plaintiff refused to dismiss the action, as required by the agreements. *See* Ryzewska Decl., Ex. 11, at 121 (Mot. to Enforce Settlement Agreement, Case No. CV-06-3338 GAF, ECF 77). Additionally, they are barred because they arise from exactly the same facts alleged in his 2012 lawsuit against the Trustees, which was resolved against him. *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at *1–2.

Under California law, res judicata precludes a party from relitigating (1) the same